## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

STEPHEN JIN-WOO KIM,

Defendant.

Criminal Action No. 10-225 (CKK)

## MEMORANDUM OPINION AND ORDER
(August 24, 2011)

Defendant Stephen Jin-Woo Kim ("Defendant" or "Kim") has been charged by

indictment with unlawfully disclosing national defense information to a person not entitled to

receive it in violation of 18 U.S.C. § 793(d) and making a false statement to agents of the Federal

Bureau of Investigation ("FBI") in violation of 18 U.S.C. § 1001(a)(2). Presently pending before

the Court are: Defendant's [23] Motion to Dismiss Count One of the Indictment Under the

Treason Clause of the Constitution; Defendant's [24] Motion to Dismiss Count One of the

Indictment on Due Process and First Amendment Grounds; and Defendant's [25] Motion to

Dismiss Count Two of the Indictment and for an Evidentiary Hearing.[1] The Government has

filed a consolidated opposition to these three motions, and Defendant has filed a consolidated

reply. Accordingly, the motions are ripe for the Court's resolution. For the reasons explained

below, the Court shall deny Defendant's motions.

## I. BACKGROUND

Defendant was charged in a two-count indictment on August 19, 2010 and arraigned on

August 27, 2010. Count One of the Indictment alleges that Kim had lawful possession of, access

---

[1] Defendant has also filed a [26] Motion to Suppress Statements and for an Evidentiary Hearing. The Court shall address this motion separately and set a date for an evidentiary hearing at a later time.

to, control over, or was entrusted with information relating to national defense—specifically, the contents of an intelligence report marked TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION concerning intelligence sources and/or methods and intelligence about the military capabilities and preparedness of a particular foreign nation. The indictment charges that Kim had a reason to believe that this information could be used to the injury of the United States and to the advantage of a foreign nation and that Kim knowingly and willfully communicated, delivered or transmitted that information to a reporter for a national news organization, who was not entitled to receive that information. The indictment charges this conduct was a violation of 18 U.S.C. § 793(d), part of the Espionage Act of 1917, as amended. Section 793(d) reads as follows:

> Whoever, lawfully having possession of, access to, control over, or being entrusted with any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted or attempts to communicate, deliver, transmit or cause to be communicated, delivered or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it . . . [s]hall be fined . . . or imprisoned not more than ten years, or both.

18 U.S.C. § 793(d).

Count Two of the indictment charges that on or about September 24, 2009, Kim denied to agents of the Federal Bureau of Investigation that he had had any contact with a named reporter for a national news organization since meeting the reporter in or about March 2009. The indictment alleges that Kim actually had repeated contact with the reporter in the months following the March 2009 meeting. The indictment charges that Kim knowingly and willfully

made a materially false, fictitious, and fraudulent statement and representation to the FBI in violation of 18 U.S.C. § 1001(a)(2). Section 1001 provides that any person within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States who knowingly and willfully:

> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined . . . imprisoned . . . or both.

18 U.S.C. § 1001(a). Kim contends that when they asked him about whether he had met with the news reporter, the FBI agents already knew the answer to the question. Kim also contends that he provided truthful information about his meetings with the reporter before the investigators could have relied on any false denials.

## II. DISCUSSION

### A.     *Motion to Dismiss Count One Under the Treason Clause*

Defendant's first motion to dismiss Count One of the indictment is based on his view that the Treason Clause, Article III, Section 3 of the United States Constitution, precludes Congress from imposing criminal liability for the conduct charged in Count One. Defendant argues that the Framers intended to limit the power of Congress to prosecute persons for "political" offenses against the United States, and they did so by enshrining in the Constitution a limited definition of treason with heightened evidentiary requirements. The Treason Clause provides in full:

> Treason against the United States, shall consist only in levying War against them, or

3

in adhering to their Enemies, giving them Aid and Comfort. No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court. The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attained.

U.S. Const., art. III, § 3. Defendant argues that the Framers intended treason to be the exclusive mechanism for prosecuting crimes against the United States, and therefore he contends that the Government cannot prosecute him under the Espionage Act for speech-based conduct against the United States. Defendant's argument, essentially, is that he must be charged with treason or nothing at all.

Defendant makes a compelling and eloquent argument based on the history of treason in England and America and the debate among the Framers regarding the Treason Clause. However, Defendant's interpretation of the Treason Clause has been rejected by the Supreme Court. In *Cramer v. United States*, 325 U.S. 1 (1945), the Supreme Court reviewed a conviction for treason. In doing so, the Court rejected the government's argument that the Treason Clause should be interpreted broadly, noting that "the treason offense is not the only nor can it well serve as the principal legal weapon to vindicate our national cohesion and security." *Id.* at 45. The Court elaborated:

> Of course we do not intimate that Congress could dispense with the two-witness rule merely by giving the same offense another name. But the power of Congress is in no way limited to enact prohibitions of specified acts thought detrimental to our wartime safety. The loyal and the disloyal alike may be forbidden to do acts which place our security in peril, and the trial thereof may be focussed [sic] upon defendant's specific intent to do those particular acts thus eliminating the accusation of treachery and general intent to betray which have such passion-rousing potentialities. Congress repeatedly has enacted prohibitions of specific acts thought to endanger our security and the practice of foreign nations with defense problems more acute than our own affords examples of others.

4

*Id.* at 45-46 (footnote omitted). Following the word "security" in this passage, the Court included a footnote referencing the prior version of the Espionage Act provision with which Kim is charged in Count One. *See id.* at 45 n.53. The Second Circuit has ruled, based on *Cramer*, that prosecutions for Espionage Act violations are not subject to the requirements of the Treason Clause and are properly prosecuted as separate offenses. *See United States v. Rahman*, 189 F.3d 88, 111-14 (2d Cir. 1999); *United States v. Drummond*, 354 F.2d 132, 152 (2d Cir. 1965). If Defendant's interpretation of the Treason Clause were correct, the prosecutions in these cases would have been declared unconstitutional.

In fact, in *Frohwerk v. United States*, 249 U.S. 204 (1919)—a case not cited by the parties in their discussion of this issue—the Supreme Court essentially rejected Defendant's argument without discussion. *Frohwerk* involved review of convictions under the Espionage Act shortly after its passage in 1917. Writing for the majority, Justice Oliver Wendell Holmes wrote,

> Some reference was made in the proceedings and in argument to the provision in the Constitution concerning treason, and it was suggested on the one hand that some of the matters dealt with in the Act of 1917 were treasonable and punishable as treason or not at all, and on the other that the acts complained of not being treason could not be punished. These suggestions seem to us to need no more than to be stated.

249 U.S. at 210. The Court upheld the indictment. Other courts have recognized this holding of *Frohwerk* and rejected similar arguments. For example, in *Wimmer v. United States*, 264 F. 11 (6th Cir. 1920), a case involving the Espionage Act, the court noted:

> Wimmer's first position is that the act is unconstitutional, because it punishes treasonable conduct, without proof of the overt act and without the two witnesses thereto required by the Constitution. As we understand the argument, it is, in substance, that adhering to and giving aid and comfort to the enemy is treason, according to the constitutional definition; that to support the cause of the enemy, or oppose that of the United States, against the prohibition of the Espionage Act, is adhering to and giving aid and comfort to the enemy, and is therefore treason; and

hence that it cannot be punished unless shown by the degree of proof required by the Constitution. A very similar contention was summarily overruled by the Supreme Court in *Frohwerk* . . . .

264 F. at 12; *accord Berg v. State*, 233 P. 497 (Okla. Crim. App. 1925) (rejecting challenge to criminal syndicalism statute based on Treason Clause).

Both *Frohwerk* and *Cramer* make clear that conduct which is not equivalent to treason as defined in the Treason Clause may be otherwise proscribed by Congress. Accordingly, the Court finds that Defendant's prosecution under § 793(d) does not violate the Treason Clause.

B.    *Motion to Dismiss Count One on Due Process and First Amendment Grounds*

In his second motion to dismiss Count One of the indictment, Defendant raises challenges under both the First and Fifth Amendments to the U.S. Constitution. First, Defendant argues that his prosecution under § 793(d) violates his right to due process under the Fifth Amendment because the statute fails to provide him constitutionally adequate notice that it was unlawful for him to verbally communicate information contained in or derived from a classified report to the news media. Second, Defendant argues that his prosecution under § 793(d) violates the First Amendment. The Court shall review each challenge in turn.

1.    Defendant's Due Process Challenge

At the beginning of his motion to dismiss Count One on due process grounds, Defendant briefly discusses the history of government leaks and essentially argues that the practice has become so commonplace in the modern era that he could not have had fair warning that the conduct charged in the indictment—which reaches the verbal disclosure of information obtained from a classified report—was unlawful. Defendant's argument is based on the void-for-vagueness doctrine, which generally holds that criminal statutes must be sufficiently specific that

6

they provide "fair warning" of the conduct that is proscribed. *See United States v. Lanier*, 520 U.S. 259, 266 (1997). The Fifth Amendment's guarantee of due process "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* at 266 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). This guarantee is also enforced through the rule of lenity, which "ensures fair warning by so resolving ambiguity in a criminal statute so as to apply it only to conduct clearly covered." *Id.* "[A]lthough clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.* (internal citations omitted). The void-for-vagueness doctrine "requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.'" *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974) (citations omitted). Where a statute criminalizes activity that would otherwise be protected by the First Amendment, "the doctrine demands a greater degree of specificity than in other contexts." *Id.* at 573; *see also Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267.

Defendant argues that 18 U.S.C. § 793(d) is vague as applied to him in Count One because it is not clear that the phrase "information relating to the national defense" encompasses intangible information that might be gleaned from classified documents. Defendant points to the fact that this phrase follows a series of tangible items (document, writing, code book, signal

book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note) and asks the Court to apply the doctrine of *noscitur a sociis*, a canon of statutory construction that says that "words are generally known by the company they keep." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 590 (D.C. Cir. 2001). This canon is applied "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). However, it is reasonably clear from the text and the structure of § 793(d) that Congress intended the phrase "information relating to the national defense" to encompass both physical and intangible forms of information.

Firstly, the word "information" is usually defined so as to include intangible forms of data or knowledge. *See* Merriam-Webster's Collegiate Dictionary 599 (10th ed. 1997) (defining information as "the communication or reception of knowledge or intelligence"). "It is well established that, when the statutory language is plain, we must enforce it according to its terms." *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009). Given this ordinary definition of the term, it would be unusual to construe the word "information" to refer only to information in tangible forms. This is particularly so in light of the fact that the list of tangible items in § 793(d) is structurally separated from the phrase "information relating to the national defense," which alone is modified by the requirement that "the possessor has reason to believe [the information] could be used to the injury of the United States or to the advantage of any foreign nation." 18 U.S.C. § 793(d). Congress's decision to impose a *mens rea* requirement for the communication, delivery, or transmission of "information" but not for tangible items demonstrates that Congress

8

understood and embraced the distinction between the tangible items listed in the statute and intangible "information." *See United States v. Aquino*, 555 F.3d 124, 131 n.13 (3d Cir. 2009) ("Section 793(e) differentiates between 'tangible' information, *i.e.*, the laundry list of items in the statute, and 'intangible' information, *i.e.*, knowledge.")[2]; *United States v. Morison*, 622 F. Supp. 2d 1009, 1011 (D. Md.), *appeal dismissed*, 774 F.2d 1156 (4th Cir. 1985).

Defendant argues that construing the word "information" as "knowledge" will lead to absurd results because § 793(d) makes it unlawful to "willfully retain[]" such information and "fail[] to deliver it on demand to the officer or employee of the United States entitled to receive it." 18 U.S.C. § 793(d). Defendant argues that it makes no sense to criminalize the retention of intangible information, as a person cannot relinquish knowledge he has acquired, voluntarily or otherwise. *See United States v. Rosen*, 444 F. Supp. 2d 664, 669 n.6 (E.D. Va. 2006) ("Because punishing someone for the willful retention of intangible information, *i.e.*, knowledge, is absurd, this clause could not apply to the information alleged to have been disclosed orally to [defendants]."). However, as Judge T.S. Ellis III recently explained in a thorough and thoughtful opinion, "[a] closer look at § 793's history reveals that th[is] absurdity . . . is a result of inadvertence and careless drafting, and not an indication that the drafters intended to restrict the prohibition of the first clause to tangible items." *United States v. Rosen*, 445 F. Supp. 2d 602, 615-17 (E.D. Va. 2006), *aff'd in part on other grounds*, 557 F.3d 192 (4th Cir. 2009). Therefore, the fact that the retention clause in § 793(d) might apply only to tangible items does not provide a basis for narrowing the plain meaning of "information" with respect to the communication

---

[2] Section 793(e) contains the same language at issue as § 793(d), but it applies to persons who have unauthorized rather than lawful access to information relating to national defense. *See* 18 U.S.C. § 793(e).

9

clause. Furthermore, Defendant was not charged under the retention clause and therefore he

lacks standing to challenge it on vagueness grounds. *See Vill. of Hoffman Estates v. Flipside,*

*Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) ("A [party] who engages in some conduct that is

clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of

others."); *Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly

applies may not successfully challenge it for vagueness.").

Defendant also argues that the phrase "relating to the national defense" is

unconstitutionally vague. However, the Supreme Court rejected this argument in *Gorin v. United*

*States*, 312 U.S. 19 (1941), which involved a challenge to the same language in § 2(a) of the

Espionage Act.[3] The Court found that the term "national defense" has "a well understood

connotation" and held that "[t]he language employed appears sufficiently definite to apprise the

public of prohibited activities and is consonant with due process." 312 U.S. at 28. "The question

of the connection of the information with national defense is a question of fact to be determined

by the jury as negligence upon undisputed facts is determined." *Id.* at 32. Other courts have also

---

[3] Section 2(a) of the Espionage Act provided as follows:

> Whoever, with intent or reason to believe that it is to be used to the injury of the
> United States or to the advantage of a foreign nation, communicates, delivers, or
> transmits, or attempts to, or aids or induces another to, communicate, deliver, or
> transmit, to any foreign government, or to any faction or party or military or naval
> force within a foreign country, whether recognized or unrecognized by the United
> States, or to any representative officer, agent, employee, subject, or citizen thereof,
> either directly or indirectly, any document, writing, code book, signal book, sketch,
> photograph, photographic negative, blue print, plan, map, model, note, instrument,
> appliance, or information relating to the national defense, shall be punished by
> imprisonment for not more than twenty years . . . .

40 Stat. 217.

recognized that the phrase "relating to the national defense" in § 793(d) is not unconstitutionally vague. *See United States v. Morison*, 844 F.2d 1057, 1071-74 (4th Cir. 1988); *Rosen*, 445 F. Supp. 2d at 618-22. Defendant's vagueness challenge is particularly unpersuasive in light of the fact that he is charged with disclosing the contents of an intelligence report concerning intelligence sources and/or methods and intelligence about the military capabilities and preparedness of a foreign nation and which was marked TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION, a classification level that was applied to information, "the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security." Exec. Order No. 12958 § 1.2, as amended by Exec. Order No. 13,292, 3 C.F.R. 196 (2004), *reprinted*, 50 U.S.C. § 435 note (2006). Furthermore, "[t]he unauthorized disclosure of foreign government information is presumed to cause damage to national security." *Id.* § 1.1. There can be no reasonable doubt that such information qualifies as "relating to the national defense." *Accord Morison*, 844 F.2d at 1074 (rejecting vagueness challenge to § 793(d) based in part on defendant's knowledge that information was classified as "Secret").

Defendant may dislike the breadth of the phrase "information relating to the national defense," but breadth and vagueness are not congruent concepts. To sustain a vagueness challenge, "the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614). The Due Process Clause does not require "that a person

11

contemplating a course of behavior know with certainty whether his or her act will be found to violate the [statute]. Rather, . . . [it] requires that the enactment be drafted with reasonable specificity sufficient to provide fair notice." *United States v. Thomas*, 864 F.2d 188, 195 (D.C. Cir. 1988). The Court finds that the ordinary meaning of "information relating to national defense" is sufficiently specific to put Defendant on notice that it includes intangible information.

Secondly, any vagueness concerns about the meaning of "information relating to national defense" are eliminated by the other limitations in the statute, most importantly the willfulness requirement. The Supreme Court has recognized that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Estates*, 455 U.S. at 499. In this case, the Government must prove not only that Defendant had a reasonable belief that the information he possessed could be used to the injury of the United States or to the advantage of any foreign nation but also that Defendant *willfully* communicated that information to a person not entitled to receive it. "[I]n order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (internal quotation marks omitted). Because the Government must prove that Defendant knew his conduct was unlawful, he cannot complain that he did not have fair warning that he could be criminally prosecuted for his actions. *See Screws v. United States*, 325 U.S. 91, 102 (1945) (plurality opinion) ("[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of

law."); *Gorin*, 312 U.S. at 27-28 (rejecting vagueness challenge based on scienter requirement in statute).

Defendant also argues that § 793(d) is unconstitutionally vague because it does not specify who is "not entitled to receive" such information. Defendant is correct that the statute does not define this phrase. However, courts interpreting similar language have generally construed the statute harmoniously with applicable regulatory restrictions on the disclosure of protected information. For example, in *United States v. Girard*, 601 F.2d 69 (2d Cir. 1979), the court affirmed the defendants' convictions under 18 U.S.C. § 641[4] for selling confidential law enforcement records; the court held that the law enforcement agency's own "rules and regulations forbidding such disclosure may be considered as both a delimitation and a clarification of the conduct proscribed by the statute." *Id.* at 71; *see also McGehee v. Casey*, 718 F.2d 1137, 1143-44 (D.C. Cir. 1983) (construing the term "national security" with reference to the classification system). As the district court explained in *United States v. Morison*, "[t]he phrase 'not entitled to receive' is not at all vague when discussed in reference with the classification system, which clearly sets out who is entitled to receive (those with proper security clearances and the 'need to know') and [defendant] was certainly aware of the proscripts of the classification system." 604 F. Supp. at 662; *accord Morison*, 844 F.2d at 1075 ("We . . . hold that the words 'entitled to receive' in the statute in this case can be limited and clarified by the Classification Regulations and, as so limited and clarified, are not vague."); "[W]hile the language of the statute, by itself, may lack precision, the gloss of judicial precedent has clarified

---

[4] The statute provides in pertinent part that "[w]hoever . . . without authority, sells, conveys or disposes of any record . . . of the United States" shall be subject to criminal sanction. 18 U.S.C. § 641.

that the statute incorporates the executive branch's classification regulations, which provide the requisite constitutional clarity." *Rosen*, 445 F. Supp. 2d at 623.

Defendant argues that incorporating the classification regulations does not resolve the ambiguity in the statute with respect to oral disclosures of information. Defendant proffers a hypothetical situation in which a government official has access to classified information that is also published in a newspaper. Because classification regulations dictate that "[c]lassified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information," Exec. Order No. 13292 § 1.1(b), Defendant argues that the hypothetical government official might be prosecuted for orally discussing the contents of the newspaper article with a member of the press, whereas another government official who did not have access to the classified information could discuss the same article without fear of prosecution. Defendant also argues that applying § 793(d) to oral disclosures is problematic because not all information contained within a classified document is necessarily classified, and therefore government officials are not given fair notice as to what information can or cannot be revealed. The Court fails to see a vagueness problem with Defendant's hypothetical. First of all, it is far from clear that the hypothetical defendant would be found to have "communicated, delivered, or transmitted" information if he did not explicitly or implicitly confirm the validity of the newspaper article. Second of all, the hypothetical defendant might be able to persuade a jury that based on the public disclosure of the information, he did not act "willfully." Ultimately, these are factual issues that must be decided by the jury in a particular case; they do not indicate unconstitutional vagueness in the statute. To the extent that Defendant intends to argue that the information he is charged with leaking was previously disclosed or was not properly classified,

14

he may do so as part of his defense, but such arguments do not render the statute vague.

Finally, Defendant argues that his prosecution for Count One violates the "arbitrary enforcement" aspect of the vagueness doctrine, which "require[s] that a legislature establish minimal guidelines to govern law enforcement." *Smith*, 415 U.S. at 574. Defendant argues that government leaking is commonplace but rarely prosecuted, and therefore it is nearly impossible to determine the circumstances under which § 793 will be enforced. Again, however, the willfulness requirement in the statute effectively eliminates any concerns that Defendant may have been subject to arbitrary enforcement. *See United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("The intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement."). The fact that the government infrequently prosecutes leakers under § 793(d) does not necessarily suggest that enforcement is arbitrary. To the contrary, the statute requires the Government to prove: (1) that the defendant lawfully had possession of, access to, control over, or was entrusted with (2) information relating to the national defense (3) that the defendant reasonably believed could be used to the injury of the United States or to the advantage of a foreign nation and (4) that the defendant willfully communicated, delivered, or transmitted such information to a person not entitled to receive it. 18 U.S.C. § 793(d). The difficulty in establishing such a violation, combined with the sensitive nature of classified information and the procedures that must be followed in using such information in a trial, *see* 18 U.S.C. App. 3, are the most likely reasons for the dearth of prosecutions. Our justice system's reliance on prosecutorial discretion means that Defendant cannot be set free merely because others have escaped prosecution for similar acts. The Court is not persuaded that § 793(d) is so vague as to permit arbitrary enforcement. Therefore, the Court

15

shall deny Defendant's motion to dismiss Count One on due process grounds.

<h2 style="text-align:center">2.   Defendant's First Amendment Challenge</h2>

Defendant argues that § 793(d), when applied to information communicated orally, amounts to a content-based restriction on his First Amendment right to free speech that cannot survive strict scrutiny. The Government argues that the conduct charged in the indictment is not protected by the First Amendment; alternatively, it argues that § 793(d) can withstand any level of First Amendment scrutiny.

Although oral disclosures of national security information do qualify as "speech," the Supreme Court has made clear that not all categories of speech are protected by the First Amendment. "From 1791 to the present, . . . the First Amendment has permitted restrictions upon the content of speech in a few limited areas." *United States v. Stevens*, 130 S. Ct. 1577, 1584 (2010) (quotation marks and citation omitted). "These historic and traditional categories . . . includ[e] obscentiy, defamation, fraud, incitement, and speech integral to criminal conduct." *Id.* (quotation marks and internal citations omitted). With respect to the latter category, the Supreme Court has said, "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1946); *accord United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985) ("[W]here speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone."). Because § 793(d) makes it unlawful to communicate national defense information to those not entitled to receive it, courts have held that the First Amendment affords no protection for this type of conduct even though it clearly

involves speech. *See, e.g., Haig v. Agee*, 453 U.S. 280, 308-09 (1981) (holding that defendant's "repeated disclosures of intelligence operations and names of intelligence personnel" are "clearly not protected by the Constitution"); *Frohwerk*, 249 U.S. at 205-06 (holding that defendants' attempts to cause disloyalty and mutiny in the military through the publication of newspaper articles in violation of the Espionage Act were not protected by the First Amendment); *Morison*, 844 F.2d at 1069 ("[I]t seems beyond controversy that a recreant intelligence department employee who had abstracted from the government files secret intelligence information and had wilfully transmitted or given it to one 'not entitled to receive it' as did the defendant in this case, is not entitled to invoke the First Amendment as a shield to immunize his act of thievery.").

Defendant acknowledges that "the First Amendment does not confer on a government official a right to violate the law in order to disseminate information to the public," Def.'s Br. at 30, but he contends that purely oral dissemination of information is somehow protected. The Supreme Court, however, has made clear that the First Amendment protects expressive conduct whether it is oral, written, or symbolic. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word."). There is no authority for Defendant's proposition that the First Amendment protects his ability to orally disclose the contents of a classified document but not his transmission of that document in writing.

Recently, the U.S. Court of Appeals for the D.C. Circuit, sitting *en banc*, noted that "there are many federal provisions that forbid individuals from disclosing information they have lawfully obtained," including § 793(d), and that "[t]he validity of these provisions has long been assumed." *Boehner v. McDermott*, 484 F.3d 573, 578 (D.C. Cir. 2007) (en banc). Relying on

the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995), the D.C. Circuit

explained that "those who accept positions of trust involving a duty not to disclose information

they lawfully acquire while performing their responsibilities have no First Amendment right to

disclose that information." 484 F.3d at 579.  Under that standard, it seems clear that Defendant's

prosecution under § 793(d) does not run afoul of the First Amendment.  By virtue of his security

clearance, Defendant was entrusted with access to classified national security information and

had a duty not to disclose that information.  He cannot use the First Amendment to cloak his

breach of that duty.  The Government also notes that Defendant expressly waived in writing his

right to disclose the national security information he obtained while in his government position.

Courts have uniformly held that government employees who sign such nondisclosure agreements

lack protection under the First Amendment.  *See McGehee*, 718 F.2d at 1143 (holding that CIA's

enforcement of secrecy agreement signed by former employee does not violate the First

Amendment); *Berntsen v. CIA*, 618 F. Supp. 2d 27, 29 (D.D.C. 2009) ("[T]he CIA's enforcement

of its secrecy agreement, and the corresponding prohibition on [defendant's] publication of

classified information, do not implicate the first amendment.").

　　　　Accordingly, the Court finds that Defendant's First Amendment challenge lacks merit.

　　　　*C.*　　　*Motion to Dismiss Count Two of the Indictment and for an Evidentiary Hearing*

　　　　Defendant moves to dismiss Count Two of the Indictment, which charges that Kim

intentionally made materially false statements to FBI agents during the course of their

investigation by lying about never having met with a certain national news reporter.  Defendant

argues that he is being prosecuted simply for denying his guilt to investigators, and he argues that

his prosecution cannot stand because (1) the government set a "perjury trap" by asking questions

to which it already knew the answers and (2) Defendant recanted any false statements before the

government relied on them. Because these arguments involve factual issues, Defendant asks the

Court for an evidentiary hearing. The Government contends that Defendant's motion should be

denied on both procedural and substantive grounds. The Government argues that Defendant's

motion raises factual issues concerning Kim's defenses that cannot be resolved in a pretrial

motion. The Government also argues that even assuming Kim's version of the facts, his motion

is legally meritless. The Court shall review Defendant's arguments below.

1. Section 1001 Does Not Contain an Exception for False Statements that Do Not Influence the Government's Decisions

Defendant argues that the Government may not prosecute a defendant under 18 U.S.C.

§ 1001 for simply denying guilt or for providing a false response to a question for which the

government already knows the answer. Defendant's argument is based on the requirement that

the statement be *materially* false; Defendant contends that a statement cannot be materially false

if it is merely an exculpatory denial.

The Government contends that Defendant's argument is foreclosed by the Supreme

Court's decision in *Brogan v. United States*, 522 U.S. 398 (1998). In *Brogan*, the Supreme Court

ruled that § 1001 does not contain an exception for false statements that merely deny

wrongdoing, the so-called "exculpatory no." The facts of *Brogan* are similar to those alleged by

the Government in this case. The defendant in *Brogan* voluntarily agreed to answer questions

asked by federal agents who visited him at his home. 522 U.S. at 399. The agents asked the

defendant whether he had ever received any cash or gifts from a certain real estate company

during his tenure as a union officer. *Id.* The defendant answered "no," and the agents then

19

disclosed evidence showing that the defendant had in fact received such payments. *Id.* at 399-400. The agents told the defendant that lying to them was a federal crime, but the defendant declined to change his answer. *Id.* at 400. The defendant was found guilty of making a false statement in violation of § 1001, and he appealed, arguing that § 1001 covers only false statements that "pervert governmental functions" and that his simple denial did not do so. *Id.* at 401-02. The Supreme Court rejected both arguments:

> We cannot imagine how it could be true that falsely denying guilt in a Government investigation does not pervert a governmental function. Certainly the investigation of wrongdoing is a proper governmental function; and since it is the very *purpose* of an investigation to cover the truth, any falsehood relating to the subject of the investigation perverts that function. It could be argued, perhaps, that a *disbelieved* falsehood does not pervert an investigation. But making the existence of this crime turn upon the credulousness of the federal investigator (or the persuasiveness of the liar) would be exceedingly strange; such a defense to the analogous crime of perjury is certainly unheard of.... In any event, we find no basis for the major premise that only those falsehoods that pervert governmental functions are covered by § 1001.

*Id.* at 402. The Court also rejected the defendant's claim that the Fifth Amendment protected his right to deny wrongdoing, noting that "the privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely." *Id.* (quoting *United States v. Apfelbaum*, 445 U.S. 115, 117 (1980)). Finally, the Court rejected the notion that allowing an exception for the "exculpatory no" was necessary to curb the potential for prosecutorial abuse, explaining that Congress "has decreed the obstruction of a legitimate investigation to be a separate offense, and a serious one." *Id.* at 405.

The only relevant difference between the version of § 1001 addressed in *Brogan* and the current version of the statute is the addition of the word "material" to § 1001(a)(2).[5] Therefore,

_____

[5] According to the legislative history, Congress added the materiality requirement to subsection (a)(2) to resolve a conflict among circuits as to whether materiality was an element of

the question is whether the requirement that a statement be *materially* false meaningfully changes

the Supreme Court's analysis in *Brogan*. The Supreme Court has not explicitly defined what

"material" means in the context of the amended § 1001(a)(2). However, the Court recognized in

*Kungys v. United States*, 485 U.S. 759 (1988), that "[t]he federal courts have long displayed a

quite uniform understanding of the 'materiality' concept as embodied in . . . statutes [such as

§ 1001]." *Id.* at 770. "The most common formulation of that understanding is that a

concealment or misrepresentation is material if it 'has a natural tendency to influence, or was

capable of influencing, the decision of' the decisionmaking body to which it was addressed." *Id.*

(quoting *Weinstock v. United States*, 231 F.2d 699, 701-02 (D.C. Cir. 1956)). This definition is

consistent with the Supreme Court's rejection of the "exculpatory no" defense in *Brogan*. A

false statement concerning the subject of an investigation will generally be deemed material

because it will have a tendency to influence the investigators. *See United States v. McBane*, 433

F.3d 344, 350-52 (3d Cir. 2005) (holding that false statements were material even though they

did not actually influence the government's decisions because they were "capable of influencing

a *reasonable* decisionmaker"); *United States v. Service Deli Inc.*, 151 F.3d 938, 941 (9th Cir.

1998) ("The false statement need not have actually influenced the agency, and the agency need

not rely on the information in fact for it to be material.") (internal citations omitted).

Ultimately, the question of whether Kim's alleged statements were materially false is one

---

all three offenses listed in § 1001 (which are now separated in subsections (a)(1), (a)(2), and
(a)(3)). *See* H.R. Rep. No. 104-680 at 8 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3935, 3942.
*Compare United States v. Corsino*, 812 F.2d 26, 30-31 (1st Cir. 1987) (holding that materiality is
an element of every offense listed in § 1001), *with United States v. Elkin*, 731 F.2d 1005 (2d Cir.
1984) (holding that materiality was not an element of the offense of making a false statement
under § 1001).

for the jury. *United States v. Gaudin*, 515 U.S. 506, 511-23 (1995). It is not the province of the Court to make a pretrial determination of materiality based on facts found at an evidentiary hearing. *See United States v. Yakou*, 428 U.S. 241, 246 (D.C. Cir. 2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context.").

2.     Section 1001 Does Not Contain a Recantation Defense

Defendant also argues that the Court should impute a recantation defense into § 1001 in order to avoid an overly expansive application of the statute. Defendant notes that recantation is a defense under the federal perjury statutes, *see* 18 U.S.C. § 1623(d), and he argues that similar principles should apply in the false statements context as well. Defendant relies heavily on *United States v. Cowden*, 677 F.2d 417 (8th Cir. 1982), a case in which the defendant's conviction under § 1001 was reversed on materiality grounds. The defendant in *Cowden* was convicted for making a false statement on a customs declaration form by indicating that he was not carrying over $5,000 in currency. *See* 677 F.2d at 418. When the customs inspector asked if he was carrying over $5,000 in currency, the defendant answered affirmatively and asked to amend his declaration. *Id.* The customs official refused to let him amend his declaration, and a search of the defendant's belongings revealed the currency. *Id.* In reversing the conviction, the court noted that had the customs official followed the governing regulations, the defendant would have been allowed to amend his declaration prior to the discovery of the currency. *Id.* at 420-21. The court therefore concluded that "the government's conduct contributed to the ultimate existence of a material false statement" and held that under such circumstances, a conviction under § 1001 could not stand. *Id.* at 421.

Defendant's reliance on *Cowden* underscores the fact that his motion to dismiss is based on factual issues relating to his defense on the element of materiality. Defendant contends that a recantation of a false statement should bar a prosecution under § 1001 because it "cures the only feasible ill" associated with the false statement. Def.'s Br. at 11. But as the Court noted above, the Government need not prove that it actually relied on Kim's statement, only that Kim's statement had a tendency to influence a reasonable investigator. Establishing that Kim recanted a prior false statement could prove lack of actual reliance, but that would not negate the element of materiality that the Government is required to prove. The Court also notes that the statutory recantation defense for perjury under 18 U.S.C. § 1623(d) is distinct from the element of materiality required for prosecution under that statute. *See United States v. Moore*, 613 F.2d 1029, 1038 (D.C. Cir. 1979). The Court sees no reason to impute a recantation defense under § 1001 where, unlike in § 1623(d), Congress has chosen not to do so. Accordingly, the Court declines to impute a recantation defense under § 1001.

For these reasons, the Court shall deny Defendant's motion to dismiss Count Two of the Indictment and for an evidentiary hearing.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Defendant's prosecution under 18 U.S.C. § 793(d) does not violate the Treason Clause, the Due Process Clause, or the First Amendment to the United States Constitution. The Court also finds that Defendant may be held liable under 18 U.S.C. § 1001(a)(2) even if his false statements were merely a denial of wrongdoing and were recanted as long as they may have influenced a reasonable decisionmaker.

Accordingly, it is, this 24th day of August, 2011, hereby

23

**ORDERED** that Defendant's [23] Motion to Dismiss Count One of the Indictment Under the Treason Clause of the Constitution is DENIED; it is further

**ORDERED** that Defendant's [24] Motion to Dismiss Count One of the Indictment on Due Process and First Amendment Grounds is DENIED; and it is further

**ORDERED** that Defendant's [25] Motion to Dismiss Count Two of the Indictment and for an Evidentiary Hearing is DENIED.

**SO ORDERED.**

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge