UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Case No. CR-10-225 (CKK) |
| v. | ) |
| | ) |
| STEPHEN JIN-WOO KIM, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S *EX PARTE*,
*IN CAMERA*, UNDER SEAL MOTION FOR A PROTECTIVE
ORDER PURSUANT TO CIPA § 4 AND FED. R. CRIM. P. 16(d)(1)**

Defendant Stephen Kim submits this response to the September 7, 2012, filing of the "Government's *Ex Parte*, *In Camera*, Under Seal Motion and Memorandum of Law for a Protective Order Pursuant to CIPA § 4 and Fed. R. Crim. P. 16(d)(1)." [Dkt. 81]

## INTRODUCTION

The investigation of this case appears to have begun in June or July 2009 and the indictment in the case was handed up on August 19, 2010. On October 15, 2010, the government began to provide discovery, which continues to the present. Curiously, the government seems not to have taken certain investigative steps until as recently as this past month (over three years after the investigation began and more than two years after the indictment), perhaps prompted by Mr. Kim's discovery requests. This recent activity has led to the discovery of new materials which were described to the Court at the last status conference and which might bear on important aspects of the case. Then, just two days after the status conference, the government made a CIPA § 4 filing for the first time in this case.

At no point during the status conference -- or during the preparation of the joint status report that preceded it -- did the government advise that it would be seeking the Court's

permission to withhold otherwise-discoverable classified information from the defense pursuant to CIPA § 4.  In order to properly respond to the notice, defense counsel contacted the government to seek information -- not (of course) what was in the material but whatever the government could provide (e.g., was the filing about past information provided or information it was now seeking to withhold).  The government refused the request and has not provided defense counsel with any information about the nature or subject of its CIPA §4 filing.

By invoking CIPA §4, the government presumably seeks the Court's permission "to delete specified items of classified information from documents to be made available to the defendant …, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. App. 3, § 4.  The government has invoked the *ex parte* mechanism of CIPA § 4 despite the fact that Mr. Kim's counsel all possess security clearances, and classified discovery has been proceeding subject to an existing Protective Order for close to two years.

As explained more fully below, courts have been reluctant to proceed *ex parte* in cases involving cleared defense counsel in the absence of some heightened showing of potential harm to national security interests.  Accordingly, the Court should not permit the government to proceed *ex parte* without first demonstrating that there is a justifiable need for the § 4 procedure in this instance.  See United States v. Libby, 429 F. Supp. 2d 18, 25 (D.D.C. 2006), amended by 429 F. Supp. 2d 46 (D.D.C. 2006).  The Court should require the government to "detail why the classified documents the government is producing *ex parte* are of a nature and quality distinguishable from the classified documents already produced" to defense counsel.  Id.  Should the Court allow the government to proceed *ex parte*, it should follow prior precedent in this District and defer ruling on the government's request to redact or make substitutions for any

classified information until after the defendant has had a fair opportunity to file an *ex parte* memorandum detailing the nature of the defense so that the Court will be in a better position to evaluate the materiality of the information the government seeks to withhold.[1]

For the reasons set forth below, the defense therefore opposes the government's motion to proceed *ex parte* and, alternatively, asks the Court to defer judgment on the government's motion until after the defense files its own *ex parte* memorandum on materiality.

## ARGUMENT

### I. *Ex Parte* Proceedings Are Unwarranted In This Case

CIPA is a procedural statute that does not create any privilege against the discovery of classified information.  United States v. Mejia, 448 F.3d 436, 455 (D.C. Cir. 2006).  CIPA § 4 permits -- but does not require -- the Court to authorize the government to delete (or substitute for) "specified items of classified information" from discovery documents upon a "sufficient showing."  The statute similarly permits -- but does not require -- the Court to allow the government to proceed *ex parte* when it requests such a deletion or substitution.

The statute provides, in relevant part:

> The court, upon a sufficient showing, <u>may</u> authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that

---

[1]   Defense counsel has mentioned the possible need for such an *ex parte* filing on its theories of the case, as has been done in other CIPA cases, at prior status conferences.  Given the status of discovery, the likelihood of motions to compel, and now the government's CIPA § 4 notice, the timing for this filing has come.

3

> the classified information would tend to prove. The court <u>may</u> permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. App. 3, § 4 (emphasis added). By its plain terms, CIPA § 4 does not provide the government with an automatic right to proceed *ex parte*. Instead, the Court retains the discretion to determine whether the government can meet its burden of showing that this is one of the "rarest of circumstances" where adversary treatment must be foreclosed. <u>See Libby</u>, 429 F. Supp. 2d at 21-22.

In this case, the defendant is a former Department of State official who had access to classified information, and his counsel all have obtained security clearances. In <u>Libby</u>, the Court held, under similar circumstances, that the government must justify any request to proceed *ex parte* under CIPA §4 by explaining why such a procedure is necessary and adherence to the normal adversarial process would harm national security interests. <u>Id.</u> at 25. In that case, like this one, defense counsel had already obtained security clearances[2] and "been privy … to a variety of classified documents" by the time the government filed its *ex parte* motion to withhold classified documents pursuant to CIPA § 4. <u>Id</u>. In light of the classified discovery already underway in that case and the general presumption against *ex parte* proceedings, the Court required the government "to justify, as part of any *ex parte* filing pursuant [to] Section 4, that an *ex parte* filing is necessary." <u>Id.</u>

---

[2]   Defense counsel also have been involved in other Espionage Act cases, have held similar clearances, and have dealt with equally sensitive classified material without incident or issue.

In particular, the Libby court required the government to submit a declaration or affidavit from an intelligence community official with the requisite classification review authority that:

> (1) described the reasons for the classification of the information at issue;
>
> (2) set forth the potential harm to national security that could result from its disclosure;
>
> (3) explained why the defense, based upon appropriate classification guidelines, does not have a 'need-to-know the information' in its unaltered form; and
>
> (4) detailed why the classified documents the government is producing *ex parte* are of a nature and quality distinguishable from the classified documents already produced to the defense.

See id. Only after the government had provided such information would the Court determine "whether the filing should remain *ex parte*, or whether all or some portions of it should [be] provided to the defendant." Id.

Without access to the government's *ex parte* filings, the defense obviously cannot comment on whether the government can meet its burden in this case. On its face, however, it would appear difficult for the government to satisfy, particularly with respect to prong (4). For the past twenty-two months, the government has produced over 3,000 pages of classified information to defense counsel pursuant to the Protective Order entered by the Court. Defense counsel have obtained all necessary security clearances to review this information, and have been required to review this material in a sensitive compartmented information facility ("SCIF"). Defense counsel have been further limited to date in what discovery can be shown to Mr. Kim himself in aid of his own defense. They have followed all of these procedures without any problem arising. It is difficult to imagine how such procedures that have been in place for the past two years are now insufficient to satisfy the government's professed national security

concerns.[3] It is similarly difficult to imagine how the materials at issue in the government's CIPA §4 request could be of such a nature and quality as to be distinguishable from the classified documents already produced. The defense respectfully submits that, if required to do so, the government would not be able to meet its burden under Libby, and the Court should therefore permit the defense to participate in any further proceedings regarding the classified information at issue.

## II.     Any Classified Information That Is "Relevant and Helpful" to the Defense Must Be Produced

If the government satisfies its burden of demonstrating that *ex parte* proceedings are necessary in this particular case, the Court must then determine whether to permit the requested deletions/substitutions. CIPA §4 states that the government must make a "sufficient showing" to justify its requests. Importantly, however, CIPA does not require the Court to permit the deletions/substitutions even if this standard is met. CIPA §4 is permissive, not mandatory. Thus, the Court may reject the government's *ex parte* request in its discretion even if the government makes a "sufficient showing." Given the discovery practice to date, the existence of counsel with security clearances, and the existing Protective Order, the Court would be well within its discretion to reject any government request at this late stage of the discovery process.

The D.C. Circuit employs a three-part test to determine whether the classified information that the government seeks to withhold is discoverable. See Mejia, 448 F.3d at 455-

---

[3]  The Court will recall that the only question at this stage is what classified information must be produced to defense counsel, with appropriate security clearances, in the SCIF. The government will have an opportunity to address the extent to which this information may be used at trial during the CIPA §6 hearings.

56.[4]  First, the Court must find that the information "crosses the low hurdle of relevance."  Id. at 455 (internal quotation omitted).  Second, the Court must determine whether the government has asserted a colorable claim of privilege.  Id.  Third, the Court must determine whether otherwise-privileged information is "at least helpful to the defense of the accused."  Id. at 456 (internal quotation omitted).  If the classified information is relevant and helpful to the defense, then it must be produced, notwithstanding the government's claim of privilege.  Id.; see also United States v. Aref, 533 F.3d 72, 80 (2d Cir. 2008); United States v. Yunis, 867 F.2d 617, 621-23 (D.C. Cir. 1989).  "To be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under Brady."  Aref, 533 F.3d at 80; see also Mejia, 448 F.3d at 456-57.

Because they are not permitted to see the classified information that is the subject of the government's *ex parte* motion, the defendant and defense counsel, "who are in the best position to know whether information would be helpful to their defense," are obviously ill-equipped "to assist the court in its assessment of the information's helpfulness" in any response or opposition.  Mejia, 448 F.3d at 458.  To correct this imbalance, however, courts have employed two separate mechanisms.

---

[4]  The deletion/substitution authority under CIPA §4 only applies to classified information.  It does provide a mechanism for the government to withhold unclassified information.  This is not an academic point.  In this case, the government has produced a volume of documents in discovery that have not received final classification review, but which counsel have been directed to treat as classified.  CIPA §4 by its own terms applies solely to classified information, and thus the government cannot invoke its procedures unless and until any given item of information is actually classified.

First, when the materiality or helpfulness of the information presents a close question, "[courts] have applied the 'at least helpful' test in a fashion that gives the defendants the benefit of the doubt." <u>Mejia</u>, 448 F.3d at 458.  At this stage of the proceedings, when the only possible "disclosure" at issue is a disclosure to three cleared defense counsel, the Court should resolve any question regarding materiality or helpfulness in Mr. Kim's favor.

Second, courts have been "mindful of the Supreme Court's admonition" that "'[t]he determination of what may be useful to the defense can properly and effectively be made only by an advocate.'" <u>Libby</u>, 429 F. Supp. 2d at 26 (quoting <u>Dennis v. United States</u>, 384 U.S. 855, 875 (1966)).  To "strik[e] a balance between the Supreme Court's admonition in <u>Dennis</u> and Congress's adoption of Section 4," courts have provided defendants with "the opportunity to submit an *ex parte* affidavit from counsel detailing the defense so that the Court will be in a more informed position to determine whether the government's proposed redactions or substitutions for a particular document adequately provide the defendant with what he needs to pursue his defense." <u>Libby</u>, 429 F. Supp. 2d at 26 (collecting cases); see also <u>Aref</u>, 533 F.3d at 76-77 (noting that the district court held an *ex parte*, *in camera* conference with defense counsel during CIPA § 4 proceedings "to assist the court in deciding what information would be helpful to the defense").

If the Court permits the government to proceed *ex parte* under CIPA § 4 despite the defense's objection, the defense therefore respectfully asks the Court to follow the procedures outlined in <u>Libby</u> and defer ruling on the merits of the government's motion until counsel for Mr. Kim have had the opportunity to file an *ex parte* memorandum describing his defense.  Such a filing should only take place, however, if the government provides adequate justification for its

request to withhold otherwise-discoverable information from cleared defense counsel without affording them the opportunity to be heard in those proceedings.

## CONCLUSION

The adversary process is the cornerstone of the American system of justice. Courts routinely disfavor *ex parte* proceedings, permitting them in only the rarest of circumstances. See Libby, 429 F. Supp. 2d at 21 (citing cases). While both Rule 16(d)(1) and CIPA §4 permit *ex parte* filings, such mechanisms should only be invoked by the government upon a proper showing of potential harm to national security. While defense counsel do not know the content of the government's motion, it is hard to imagine that the government can make such a showing in this case, in light of the classified discovery already underway for the past two years. Like the Libby court, this Court should be mindful of the Supreme Court's admonition that the "determination of what may be useful to the defense can properly and effectively be made only by an advocate," Dennis, 384 U.S. at 875, and resist the government's invitation to allow *ex parte* proceedings when a sufficient mechanism for protecting classified discovery materials is already in place.

Dated:  September 17, 2012

Respectfully submitted,

/s/
Abbe David Lowell (D.C. Bar No. 358651)
Chadbourne & Parke LLP
1200 New Hampshire Avenue, N.W.
Washington, DC  20036
(202) 974-5605 (Telephone)
(202) 974-6705 (Facsimile)
ADLowell@Chadbourne.com

Scott W. Coyle (D.C. Bar No. 1005985)
Chadbourne & Parke LLP
1200 New Hampshire Avenue, N.W.
Washington, DC  20036
(202) 974-5713 (Telephone)
(202) 974-5602 (Facsimile)
SCoyle@Chadbourne.com

*Counsel for Defendant Stephen Kim*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2012, I caused a true and correct copy of the foregoing to be served via the Court's ECF filing system to all counsel of record in this matter.

/s/ Abbe David Lowell