**FILED**

JUL 24 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **REDACTED** |
| vs. | Criminal No. 10-255 (CKK) |
| STEPHEN JIN-WOO KIM, | Filed with Classified Information Security Officer |
| Defendant. | CISO _____ Date _____ |

MEMORANDUM OPINION
(May 30, 2013)

Defendant Stephen Jin-Woo Kim is charged by indictment with one count of unauthorized disclosure of national defense information in violation of 18 U.S.C. § 793(d), and one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). Presently before the Court is the Defendant's [98-1] First Motion to Compel Discovery (Regarding Additional Source Documents).[1] Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Defendant's First Motion to Compel is GRANTED IN PART and DENIED IN PART as set forth below. To the extent necessary and relevant, the Court supplements the reasoning set forth in this Memorandum Opinion in the memorandum opinion resolving the Government's *ex parte* motions for a protective order. Procedurally, the Court addresses the Defendant's and the Government's motions separately, but the decisions regarding each party's respective motions are consistent.

---

[1] The Court addresses the Defendant's Second, Third, and Fourth Motions to Compel under separate cover.

[2] Def.'s First Mot., ECF No. [98-1]; Gov't's Omnibus Opp'n ("Gov't's Opp'n"), ECF No. [99]; Def.'s Omnibus Reply ("Def.'s Reply"), ECF No. [101].

REDACTED / CLEARED FOR PUBLIC RELEASE

SECRET

## I. BACKGROUND

*A.    Factual Background*



---

[3] For purposes of this motion, the Court cites to the Government's factual background for relevant and undisputed background information.

[4] The report is also referred to as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ by the parties. *See* Def.'s Ex. 1 at 1.

[REDACTED]

At or about 3:16 PM that same day, James Rosen, a Fox News reporter working out of the State Department headquarters, published an article entitled "North Korea Intends to Match U.N. Resolution with New Nuclear Test." Gov't's Opp'n at 8; Def.'s Ex 2 (Rosen Article).

[REDACTED]

In June 2009, the Defendant was detailed from the Lawrence Livermore National Laboratory to the State Department's Bureau of Verification, Compliance, and Implementation ("VCI"). Gov't's Opp'n at 11. As part of his detail, the Defendant served as the Senior Advisor for Intelligence to the Assistant Secretary of State for VCI. *Id.* Based on evidence detailed in the Government's Opposition, the Government contends the Defendant disclosed the contents of the [REDACTED] report to Mr. Rosen. *Id.* at 9-25. The Government obtained an indictment against the Defendant for unauthorized disclosure of national defense information, and one count of making false statements in connection with the Defendant's statements to the FBI during its investigation of the alleged leak.

---

[5] Unless otherwise indicated, all references to the "Defendant's Motion" or the "Defendant's Exhibits" refer to the Defendant's First Motion to Compel and related exhibits.

3

REDACTED / CLEARED FOR PUBLIC RELEASE

B.  *Motion Practice*

On September 7, 2012, the Government filed its First *Ex Parte* Motion for a Protective Order Pursuant to CIPA § 4 and Federal Rule of Criminal Procedure 16(d)(1), which seeks authorization under section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3 § 4, and Federal Rule of Criminal Procedure 16(d)(1) for the redactions, substitutions, and withholdings during discovery. *See generally* Gov't's First *Ex Parte* Mot., ECF No. [81]. The Court permitted the Defendant to provide an *ex parte* submission to the Court detailing, to the extent the Defendant deemed appropriate, his anticipated defenses at trial, for the Court's consideration in resolving the Government's *ex parte* motion. Def.'s *Ex Parte* Mem. Concerning the Theory of the Defense, ECF No. [96]. The Government has since filed two additional *ex parte* motions for protective orders, the latter of which also serves as an *ex parte* addendum to its Opposition to the Defendant's four motions to compel and attached unredacted versions of some of the documents at issue in the Defendant's motion to compel. The Court requested unredacted copies of additional documents at issue in the Defendant's motion, which the Government provided on a read and return basis. The Court considered each of these submissions in addition to the parties' briefs in resolving the Defendant's motion to compel.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 16(e), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" any item that is within the Government's "possession, custody, or control," and is "material to preparing the defense." Fed. R. Cr. P. 16(e). The Government must disclose information sought under this rule "only if such evidence enables the defendant significantly to alter the quantum of proof in his favor." *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) (citation omitted).

4

A more stringent, three-part test applies where the Defendant seeks classified information from the Government. First, the Defendant must show that the information sought "cross[es] the low hurdle of relevance." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Second, the Court "should determine if the assertion of privilege by the government is at least a colorable one." *Id.* Finally, the Defendant must show that the information sought "is at least 'helpful to the defense of [the] accused.'" *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). "This standard applies with equal force to partially classified documents." *Al Odah v. United States*, 559 F.3d 539, 544 (D.C. Cir. 2009) (citing *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998)).

The Defendant further moves to compel pursuant to *Brady v. Maryland*. "*Brady* and its progeny hold that due process requires the disclosure of information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching' of a government witness." *United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "While *Brady* information is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant, information can be helpful without being 'favorable' in the *Brady* sense." *Id.* Accordingly, the Defendant's request for exculpatory information under *Brady* is subsumed within the Court's analysis of whether requested information would be useful to the defense.

### III. DISCUSSION

For ease of reference, the Court addresses the Defendant's specific requests as outlined in the Proposed Order submitted with his motion. The Court also relies on the Proposed Order and the Defendant's June 22, 2012 discovery letter to define the scope of documents sought by the Defendant within the categories identified in general terms in the Defendant's motion.

5

REDACTED / CLEARED FOR PUBLIC RELEASE

### A. Intelligence Reports

Initially, the Defendant seeks "any intelligence reports created between April 1, 2009, and June 11, 2009," which discuss any of eleven topics. Def.'s Mot. at 6. The topics can be grouped into five general categories: ▮

The Government indicates that it has produced all classified documents containing the same intelligence information as that found in the ▮ report, including ▮ Gov't's Opp'n at 32-33. The Government also represents that, without conceding the relevance of any such materials, it has searched for and produced all materials responsive to the Defendant's request for "any additional intelligence reports concerning any of the specific topics discussed in the Rosen article, namely ▮ Id. at 33 (quoting Def.'s Mot. at 8).

The Defendant argues that the Government is obliged to disclose a broader universe of intelligence reports because "[a]ny evidence the Rosen article was based on intelligence reports other than the ███ report is [] exculpatory" insofar as "the government has not alleged that Mr. Kim disclosed the contents of any intelligence report other than the ███ report]." Def's Mot. at 7. The problem with this argument is that the Defendant requests a broad range of documents, far beyond just documents that could have served as the basis for the Rosen article. The Defendant failed to articulate how the Rosen article could have been based on the intelligence reports the Defendant seeks to compel, or any combination thereof, but were not captured by the searches conducted by the Government (discussed above). This shortcoming is particularly striking with respect to the Defendant's request for reports pre-dating ███

███

By way of example, even if reports regarding ███ ███ are relevant to the subject matter of this case as a general principle, such reports would not be *helpful* to the defense absent some link within the report to ███

███ The Defendant's request for any reports regarding ███ ███ as a general matter—particularly if drafted and produced prior to ███ —is nothing more than a fishing expedition. Admittedly, the Defendant is somewhat limited in his ability to establish the relevance of documents he does not possess. But the Defendant did not even attempt to articulate how the requested information would be helpful to the defense in showing alternative source documents for the Rosen article unless the report connects that information to ███

7

REDACTED / CLEARED FOR PUBLIC RELEASE

███████████████ On the present record, any intelligence report that would be helpful to the Defendant for the reason cited in his motion would have been captured by searches previously performed by the Government. Therefore, the Defendant's motion to compel additional intelligence reports as defined in the Proposed Order is denied.

B. *June 11, 2009 Russel Email*

The Defendant's second request concerns an email sent by Daniel Russel, the National Security Council Director for Japan and Korea, at 8:59 AM on June 11, 2009. The Government produced a redacted version of Mr. Russel's email to the Defendant. The unredacted portion of the email produced to the Defendant states that ████████████████████████████████████████████ Def.'s Ex. 3 (6/11/09 Russel email). The Defendant requests an unredacted copy of the email as well as "any intelligence reports or other material relied upon or reviewed by Russel (or anyone working at his direction) to identify and discuss the ███████████████████████ Proposed Order ¶ 2.

The Defendant argues that the Russel email and underlying documents are relevant and helpful to the defense because the email explicitly refers to ███████████████████████████████████████████████ Def.'s Mot. at 9. The Government provided the Court with an unredacted copy of the Russel email and the underlying source material.[6] Upon review of the unredacted email and underlying source material referenced in the text of the email, the Court finds that the information redacted from the Russel email and the underlying

---

[6] The unredacted email was included as an attachment to the Government's Third *Ex Parte* Motion for a Protective Order. At the Court's request, the Government provided the underlying source material to the Court to review *in camera* on a read and return basis.

source material does not meet the threshold relevance requirement for production under Rule 16(e), and in any event, is not helpful to the defense and therefore need not be disclosed.

The Defendant further argues that the Russel email and related documents are helpful to the defense in rebutting the Government's claim that the information purportedly disclosed to Mr. Rosen was "information relating to national defense," as required by 18 U.S.C. § 793(d). The Court addresses the Defendant's construction of this element at length in the Memorandum Opinion regarding the Defendant's Third Motion to Compel. For purposes of this motion, suffice it to say that even if the Defendant's interpretation of the statute is correct (which it is not), the unredacted Russel email and underlying documents would not be relevant and helpful to the defense.

The Defendant draws two inferences from the Russel email. First, in light of the statement that █████████████████████████████████████████████ ███████████████████████████████████████████████████ Def.'s Ex. 3, the Defendant argues that the email suggests "there was nothing particularly surprising or damaging about the information allegedly disclosed to Mr. Rosen." Def.'s Mot. at 10. The text of the email the Defendant refers to does not support such a leap of logic; the fact that Russel or others within the intelligence community ████████████████████████████████ ███████████████████████ does not mean that public disclosure ████████ would not be damaging to the United States or helpful to a foreign county. Regardless, nothing in the redacted portion of the Russel email or the underlying source material is relevant or helpful to the Defendant in evidencing this theory of the defense. therefore this is not a basis for compelling the Government to produce to the Defendant an unredacted copy of the email and source material.

REDACTED / CLEARED FOR PUBLIC RELEASE

Second, the Defendant notes that later in the email, Mr. Russel refers to ███████ ███████ Def.'s Ex. 3. The Defendant argues that this phrase implies that ███████ ███████████████████████████████████████████████████ Def.'s Mot. at 10. There are several flaws in this argument. Initially, the Defendant offers no authority for the proposition that intelligence regarding ███████████ is not "information relating to the national defense" for purposes of section 793(d). Moreover, there is nothing to suggest that the phrase ███████████ as used by Mr. Russel in this email actually means ███████████ as the Defendant claims. To the contrary, in the very first paragraph, Russel indicates that ███████████████████████████████ ███████ Def.'s Ex. 3 (emphasis added). Ultimately, neither the redacted text of the email nor the underlying source material is relevant or helpful to this interpretation of the Russel email, therefore, the Government need not produce unredacted copies of these documents to the Defendant.

C. *June 11, 2009 Bader Email*

Third, the Defendant moves to compel the Government to produce an unredacted copy of Jeffrey Bader's June 11, 2009 reply to the June 11 Russel email, "as well as any intelligence reports or other material relied upon or reviewed by Bader (or anyone working at his direction) to identify and discuss the ███████████████████████████████" Proposed Order ¶ 3. The Government submitted an unredacted version of the Bader email to the Court for review.[7] Upon review of the email, the Court finds the redacted information is irrelevant. Moreover, there is nothing in the redacted portion of the email to suggest that in drafting the email Mr. Bader (or

---

[7] *See* Attachment to Gov't's Third *Ex Parte* Mot.

anyone working at his direction) reviewed any underlying materials that would be helpful to the defense. Therefore the Defendant's third request is denied.

D. ████████████ Email

The Defendant's fourth request concerns two emails sent on ████████████ ████████████. In an email sent on ████████ and provided in redacted form to the Defendant, ████████ quoted a message conveyed to ████████ regarding ████████████ ████████ Def.'s Ex. 7 ████████████ at 1. The message indicated that



Id. The Defendant seeks an order compelling the Government to produce: (1) "[a]ny email describing ████████████████████████████████ (2) a list of all recipients of the ████████ email; (3) an unredacted copy of the ████████ email; and (4) a list of all recipients of the ████████ email. Proposed Order ¶ 4. The Government provided the Court with unredacted copies of both emails.[8] In his motion, the Defendant asserts that the ████████ email is unclassified and thus not subject to the heightened relevance standard under *Yunis*. It is not clear from the face of the ████████ email or the Government's opposition whether the message is classified. The Court need not resolve this issue because under either Rule 16(e) or the *Yunis* standard, the Government would be required to produce a redacted version of the ████████ email to the Defendant.

---

[8] *See* Attachment to Gov't's Third *Ex Parte* Mot.

Based on the Court's review of both emails, the Court finds the information redacted from the ▮▮▮ email is not relevant, and is certainly not helpful to the defense. The Court agrees with the Defendant that insofar as portions of the ▮▮▮ email were quoted verbatim in the unredacted portions of ▮▮▮ email, there is no apparent justification for the Government to withhold the ▮▮▮ email *in toto*. Therefore, the Government must produce the ▮▮▮ email referenced in the ▮▮▮ email to the Defendant. After reviewing the ▮▮▮ email, the Court finds the text of the ▮▮▮ email that was *not* quoted in the ▮▮▮ email is not material to the preparation of the defense as required by Rule 16(e) and thus need not be produced. To the extent any portion of the email is also classified, the Court finds the text not quoted in the ▮▮▮ email is neither relevant nor helpful to the defense. Therefore, the Government may redact the portions of the ▮▮▮ email not quoted by ▮▮▮ email.

With respect to the Defendant's request for a list of recipients of each email, the Defendant argues that the threatened actions listed in the ▮▮▮ email are ▮▮▮ and thus the recipient list would reflect other potential leakers of the information contained in the Rosen report. Def.'s Mot. at 12, 13. ▮▮▮ and the Rosen article. As a threshold matter, the ▮▮▮ email ▮▮▮ or the Rosen article. The ▮▮▮ email



Rosen article, which refer to ███████████████████ Ultimately, a person that received an email detailing ███████████████████ without more, a "potential leaker." On the present record, the Court cannot say that a list of recipients of either email would be helpful to the defense.

However, the Government did not dispute the Defendant's claim that the wide distribution of similar, ███████████████████ is helpful to the defense's claim that the Defendant did not have reason to believe that the disclosure to Rosen of ████████ could be used to the injury of the United States or to the advantage of a foreign nation. Therefore, the Court shall require the Government to disclose to the defense the total number of individuals that received the ████████ email, and the total number of individuals that received the ████████ email. In sum, the Defendant's request for an unredacted copy of the ████████ email and for a list of the recipients of the ████ ████ email and the ████████ is denied. The Government shall provide the Defendant with a redacted copy of the ████████ email, and shall disclose the total number of recipients of the ███████████████████ emails, respectively.

E. *FBI Materials Concerning Daniel Russel*

Fifth, the Defendant moves to compel the Government to produce unredacted copies of the FBI 302 and corresponding FBI Special Agent's notes for the August 11, 2009 interview of Daniel Russel. The Government submitted unredacted copies of both documents to the Court *ex*

*parte*.[9] Upon review of the documents, the Court finds that the information redacted from paragraph five of the FBI 302 is not relevant. Much of the information redacted in the FBI Special Agent's notes is likewise irrelevant. None of the redacted information in either document suggests the existence of another source document for the Rosen article, nor is it otherwise helpful to the defense, and therefore need not be disclosed to the Defendant.

F.   Report from ▮▮▮▮

Sixth, the Defendant requests a copy of the report from ▮▮▮▮ referred to ▮▮▮▮ interview. The Defendant has received the information referred to by ▮▮▮▮ during his interview, making this request moot.

G.   ▮▮▮▮ *and Related Documents*

Next,[10] the Defendant seeks a copy of ▮▮▮▮ circulated by an email from ▮▮▮▮ at 2:41 PM on June 11, 2009, as well as related documents. The Government has produced to the Defendant ▮▮▮▮ from 12:16 PM, but asserts that the 2:41 PM email and related materials do *not* "discuss ▮▮▮▮." Gov't's Opp'n at 38; *see also id.* ("The body of the email ▮▮▮▮ does not discuss its contents). The Court reviewed the 2:41 PM email and attachment *in camera*. The email does not attach a "longer" version of the 12:16 PM ▮▮▮▮ as suggested by the FBI 302 for ▮▮▮▮'s July 12, 2012 interview; Def.'s Ex. 14 at 2. As the Government indicated, the email references the ▮▮▮▮ report but neither that reference nor the remainder of the email is relevant or helpful to the defense.

---

[9] *See* Attachment to Gov't's Third *Ex Parte* Mot.

[10] The Defendant withdrew his request for intelligence reports identified by ▮▮▮▮ and additional materials related to that employee's efforts to identify source documents for the Rosen Article, Proposed Order ¶¶ 7-8. Gov't's Opp'n at 37 n.16.

Moreover, nothing in either document is relevant or helpful to the issue of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Def.'s Mot. at 21-22 & n.14. The Court takes no position as to the appropriate "cut-off" time for discovery in this matter, but after viewing the documents at issue, the Court concludes that the information sought in this request is not discoverable. The Court shall raise one issue regarding the 2:41 PM email *ex parte* with the Government that, depending on the Government's response, may lead the Court to revisit this issue.

    H.    *June 12, 2009* ▮▮▮ *Email*

During his July 12, 2012 interview with the FBI, ▮▮▮▮▮▮ provided the FBI with a copy of a June 12, 2009 email, which is described as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Def.'s Ex. 14 (FBI 302) at 2. The Defendant argues the ▮▮▮ email is helpful to the defense because "it discusses the relationship between the information contained in the Rosen article and the information contained in ▮▮▮ and "supports the defense's theory that the Rosen article may have been based on [other] documents, including ▮▮▮▮▮." Def.'s Mot. at 24. After reviewing the June 12, 2009 email, the Court finds that on its face the email is not helpful to the Defendant in evidencing this theory of the defense. However, the Court shall inquire of the Government as to one issued raised by the Court's *in camera* review of the email, which may lead the Court to revisit this issue depending upon the Government's response.

I. ███████████ *Publication*

During his July 12, 2012 interview, ███████████ also produced to the FBI a ███ publication dated ███████ entitled ███████████████████████████████ Def.'s Ex. 14 at 2. Having not seen the document, the Defendant offers a number of theories regarding how the document might be helpful to the defense despite post-dating the Rosen article, including that it might have "debunked the intelligence contained in the ███████ report," or that if the ███ publication was being drafted before the Rosen article was published, it could be a potential source document for the disclosure to Mr. Rosen. Def.'s Mot. at 24-25. The Government responds by stating that the document did not discuss the issues mentioned in the Defendant's motion. Gov't's Opp'n at 39. Upon review of the ███ publication *in camera* the Court finds the publication is not helpful to the Defendant and therefore is not discoverable.

J. *Other Documents*

The Defendant seeks two intelligence reports, identified as ███████████ and ███████████████████████████████ analyst and document control officer, identified the first report as a possible source document for the leak when interviewed by the FBI on August 28, 2009. Def.'s Ex. 17 (8/28/09 FBI-302) at 2. During a subsequent interview in March 2011, ███████████ stated that she mistakenly referred to the report, but meant to refer to the ███████ report. Def.'s Ex. 18 (3/2/11 FBI-302). ███████████ identified the second report as a potential source document in response to an investigative questionnaire. Def.'s Ex. 19 (1/11/10 Investigative Questionnaire) at 5. Nearly two years later, the FBI interviewed ███████████ at which time he indicated he must have confused certain information in the report leading him to list it as a potential source document. *Id.* at 2. After reviewing the ███████ report, ███████████ indicated he believed the ███████ report was

the source document for the Rosen article. *Id.* The Court reviewed both reports *in camera* and finds that neither document is a possible source document for the Rosen article, nor are the documents otherwise relevant or helpful to the defense. Accordingly, the Government need not produce ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ to the Defendant.

K.  *Email Searches*

Finally, the Defendant broadly seeks "[a]ny emails sent or received during the period June 10 to June 11, 2009, in which any government employees and/or contractors who accessed the ▬ prior to publication of the Rosen article discussed any of the topics addressed in the Rosen article." Proposed Order ¶ 14. The Defendant's discovery correspondence indicates he has requested that the Government search for emails regarding the eleven topics at issue in the Defendant's request for additional intelligence reports, as well as any emails discussing "[t]he source of the alleged disclosure of the information contained in the intelligence reports at issue in this case," "[t]he relationship, if any, between the alleged disclosure of information in the June 11 Rosen article and any prior leak of intelligence related to North Korea," and "[t]he effect, if any, of the alleged disclosure of information in the June 11 Rosen article on national security." 6/22/12 Ltr A. Lowell to J. Malis.

The Government indicates it reviewed the emails of the individuals who accessed the ▬▬▬▬▬ report during that time frame, and produced all "discoverable" emails. Gov't's Opp'n at 41. The Defendant argues this response is insufficient, suggesting that the Government failed to produce emails (1) "in which ▬ analysts comment on the content of the ▬▬▬▬▬ report or discuss the reliability of the information contained therein," (2) "discussing the alleged significance of the ▬▬▬▬▬ report[]," or (3) "in which one employee or contractor instructed another employee or contractor to view the report." Def.'s Mot. at 30.

17

REDACTED / CLEARED FOR PUBLIC RELEASE

The Government identifies emails produced to the Defendant that the Government suggests fall into each of those three categories. Gov't's Opp'n at 41. The Court notes that the Government objects to the discoverability of emails discussing ▓▓▓▓▓ report, except to the extent such emails are separately relevant, among other things, to "identify other potential source documents or other individuals who may have had access to [the ▓▓▓▓▓ report]." *Id.* at 41 n.18. Ultimately, the Court is unable to determine from the Government's response whether it has performed email searches for the relevant individuals regarding *all* fourteen topics identified in the Defendant's original discovery request. *See* Gov't's Opp'n at 42 ("[W]ithout conceding that the United States was required to do so, the Government has already conducted a broad search through government employee and contractor email for potentially discoverable email."). Therefore, prior to the June 4, 2013 status hearing if possible, but in any event by no later than June 6, 2013, the Government shall indicate which, if any, of the fourteen topics the Government has *not* included in its searches, and articulate why such emails would not be helpful to the defense.

## IV. CONCLUSION

The Defendant has made a sufficient showing as to the ▓▓▓▓▓ email, as well as the total number of recipients of the ▓▓▓▓▓ and ▓▓▓▓▓ emails. Moreover, the Court shall require the Government to supplement its response to the Defendant's request for emails from individuals who viewed the ▓▓▓▓▓ report. The Court shall also raise two discrete issues with the Government *ex parte* that may lead the Court to revisit the holdings with respect to the June 11 and June 12, 2009 ▓▓▓▓▓ emails. However, on the present record, the Court finds the Defendant has failed to show that the remainder of the classified information sought in his first motion to compel is relevant and helpful to the defense. Accordingly, the Defendant's [98-1] First Motion to Compel Discovery

REDACTED / CLEARED FOR PUBLIC RELEASE

(Regarding Additional Source Documents) is GRANTED IN PART and DENIED IN PART. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR KOTELLY
UNITED STATES DISTRICT JUDGE

REDACTED / CLEARED FOR PUBLIC RELEASE