UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUL 2 4 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA,

vs.

STEPHEN JIN-WOO KIM,

Defendant.

Criminal No. 10-255 (CKK)

Filed with Classified
Information Security Officer

CISO _____

Date _____

MEMORANDUM OPINION
(May 30, 2013)

Defendant Stephen Jin-Woo Kim is charged by indictment with one count of unauthorized disclosure of national defense information in violation of 18 U.S.C. § 793(d), and one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). Presently before the Court is the Defendant's [98-2] Second Motion to Compel Discovery (Regarding Other Contacts for the Reporter).[1] Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Defendant's Second Motion to Compel is DENIED on the present record. To the extent necessary and relevant, the Court supplements the reasoning set forth in this Memorandum Opinion in the memorandum opinion resolving the Government's *ex parte* motions for a protective order. Procedurally, the Court addresses the Defendant's and the Government's motions separately, but the decisions regarding each party's respective motions are consistent.

---

[1] The Court addresses the Defendant's First, Third, and Fourth Motions to Compel under separate cover.

[2] Def.'s Second Mot., ECF No. [98-2]; Gov't's Omnibus Opp'n ("Gov't's Opp'n"), ECF No. [99]; Def.'s Omnibus Reply ("Def.'s Reply"), ECF No. [101].

# I. BACKGROUND

*A.*    *Factual Background*



---

[3] For purposes of this motion, the Court cites to the Government's factual background for relevant and undisputed background information.

[4] The report is also referred to as ███████████████████████ by the parties. *See* Def.'s First Mot., Ex. 1 at 1.



At or about 3:16 PM that same day, James Rosen, a Fox News reporter working out of the State Department headquarters, published an article entitled "North Korea Intends to Match U.N. Resolution with New Nuclear Test." Gov't's Opp'n at 8; Def.'s First Mot., Ex. 2 (Rosen Article)

In June 2009, the Defendant was detailed from the Lawrence Livermore National Laboratory to the State Department's Bureau of Verification, Compliance, and Implementation ("VCI"). Gov't's Opp'n at 11. As part of his detail, the Defendant served as the Senior Advisor for Intelligence to the Assistant Secretary of State for VCI. *Id.* Based on evidence detailed in the Government's Opposition, the Government contends the Defendant disclosed the contents of the ▆▆▆▆ report to Mr. Rosen. *Id.* at 9-25. The Government obtained an indictment against the Defendant for unauthorized disclosure of national defense information, and one count of making false statements in connection with the Defendant's statements to the FBI during its investigation of the alleged leak.

### B.    *Motion Practice*

On September 7, 2012, the Government filed its First *Ex Parte* Motion for a Protective Order Pursuant to CIPA § 4 and Federal Rule of Criminal Procedure 16(d)(1), which seeks authorization under section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3 § 4, and Federal Rule of Criminal Procedure 16(d)(1) for the redactions and substitutions made during discovery. *See generally* Gov't's First *Ex Parte* Mot., ECF No. [81]. The Court permitted the Defendant to provide an *ex parte* submission to the Court detailing, to the extent the Defendant deemed appropriate, his anticipated defenses at trial, for the Court's consideration in resolving the Government's *ex parte* motion. Def.'s *Ex Parte* Mem. Concerning the Theory of the Defense, ECF No. [96]. The Government has since filed two additional *ex parte* motions for protective orders, the latter of which also serves as an *ex parte* addendum to its Opposition to the Defendant's four motions to compel and attached unredacted versions of some of the documents at issue in the Defendant's First Motion to Compel. The Court considered each of these submissions in addition to the parties' briefs in resolving the Defendant's Second Motion to Compel.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 16(e), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" any item that is within the Government's "possession, custody, or control," and is "material to preparing the defense." Fed. R. Cr. P. 16(e). The Government must disclose information sought under this rule "only if such evidence enables the defendant significantly to alter the quantum of proof in his favor." *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) (citation omitted).

A more stringent, three-part test applies where the Defendant seeks classified information from the Government. First, the Defendant must show that the information sought "cross[es] the low hurdle of relevance." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Second, the Court "should determine if the assertion of privilege by the government is at least a colorable one." *Id.* Finally, the Defendant must show that the information sought "is at least 'helpful to the defense of [the] accused.'" *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). "This standard applies with equal force to partially classified documents." *Al Odah v. United States*, 559 F.3d 539, 544 (D.C. Cir. 2009) (citing *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998)).

The Defendant further moves to compel pursuant to *Brady v. Maryland.* "*Brady* and its progeny hold that due process requires the disclosure of information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching' of a government witness." *United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "While *Brady* information is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant, information can be helpful without being 'favorable' in the *Brady* sense." *Id.* Accordingly, the Defendant's request for exculpatory information under *Brady* is subsumed within the Court's analysis of whether requested information would be useful to the defense.

## III. DISCUSSION

The Defendant's second motion seeks an order compelling the Government to disclose three categories of information: (1) other leaks of intelligence related to North Korea; (2) other investigations into three National Security Council ("NSC") officials for unauthorized disclosure(s) of national defense information; and (3) other investigations into State Department

employee John Herzberg for unauthorized disclosure(s) of national defense information.[5] The first request concerns classified materials, and is thus analyzed under the *Yunis* framework. The second and third requests do not involve classified information, at least at this stage. Therefore, the Court evaluates the latter requests for materiality under Federal Rule of Criminal Procedure 16(c). The Defendant's motion is somewhat vague as to the scope of his requests, therefore the Court relies on the Defendant's June 22, 2012 discovery letter to the Government to clarify what documents the Defendant is actually seeking. Ultimately, the Defendant failed to meet his burden to show the Government is required to produce the broad swath of documents sought in the Defendant's present motion, but the Court may entertain narrower requests from the Defendant.

   *A      Other Leaks of Intelligence Related to North Korea*

   The Defendant initially moves to compel information regarding "any formal requests made by an agency in the intelligence community, the Department of Defense, or the White House . . . to the Department of Justice for a formal investigation of the potential leak of intelligence related to North Korea from June 2008 through June 2010." Def.'s Mot. at 8.[6] The Defendant identified eleven separate categories relating to



6/22/2012 Ltr. A.

---

   [5]   The Defendant initially requested document control records for hard copies of the ████████ report printed by thirteen individuals. Def.'s Mot. at 6. The Government indicated that it searched for the requested material and found no responsive material. Gov't's Opp'n at 43. The Defendant accordingly withdrew his motion to compel the document control records. Def.'s Reply at 17.

   [6]   Unless otherwise indicated, all references to the "Defendant's Motion" refer to the Defendant's Second Motion to Compel.

Lowell to J. Malis at 4-5 (defining "intelligence related to North Korea" for purposes of this request). The request is not limited to leaks to Fox News, or the media generally, and includes "all investigative materials, documents, and other information generated during the course of the investigation of such leak." *Id.* at 6. The Defendant also identified four specific incidents that he believes fall within the scope of this request:



*Id.* at 5-6.

The Court begins with the Defendant's broad request for information regarding other unauthorized disclosures before discussing his request for information regarding the four identified alleged leaks.

The Defendant argues that evidence of other leaks is relevant and helpful to the defense "as it tends to prove that someone other than Mr. Kim was actively leaking intelligence related to North Korea to Fox News during the same time period." Def.'s Mot. at 9. However, the Defendant has not limited his overarching request to alleged leaks that took place "during the same time period" as the June 11, 2009 disclosure to Mr. Rosen, nor did he limit the request to leaks to Fox News. Instead, the Defendant seeks an order requiring the Government to disclose *all* allegedly unauthorized disclosures of information regarding *eleven* different topics during a *two year* time frame to *any* party, media or otherwise. The shear breadth of this request precludes the Court from finding that the information sought would be at least helpful to the defense as *Yunis* requires.

The Defendant's assertion that all leaks within the scope of his overarching request would be helpful to the defense is particularly unavailing in light of two representations from the Government. First, the Government indicated that it "has searched for documents or information concerning any formal criminal investigation of unauthorized disclosures of national defense information by any of the 168 individuals who may have accessed the intelligence at issue," and "[n]othing was found." Gov't's Opp'n at 49. In other words, the Defendant's broad request will not produce evidence that any other person on the Access list is suspected of leaking other intelligence. Second, the Government stated that "no unauthorized disclosures about North Korea to any reporter at Fox News during the defense-identified timeframe were the subject of a formal request for formal investigation by the FBI." Gov't's Opp'n at 47. In light of this representation, the Defendant's broad request for information regarding other leaks will *not* produce the very evidence the Defendant asserts would be helpful—that is, evidence that someone else was leaking information to Fox News regarding North Korea during the general timeframe of the Rosen article. The Court acknowledges that the Defendant and his counsel, "who are in the best position to know whether information would be helpful to [his] defense, are disadvantaged by not being permitted to see the information—and thus assist the court in its assessment of the information's helpfulness." *Mejia*, 448 F.3d at 458. However, even giving the Defendant the benefit of the doubt, on this record, the Court cannot say that the requested information would be helpful to the Defendant.

The Defendant's specific requests fare no better. The Government indicated that the article regarding ███████████ was not subject to a formal request for formal investigation. Gov't's Opp'n at 47. Neither party offers any explanation as to the recipient of the classified essay or the information regarding ███████████████████ (the second and third

8

potential leaks), including whether or not the recipient was a member of the media. If the information was leaked to Fox News, the leaks were not subject to formal requests for formal investigations, and therefore are outside the scope of the Defendant's request. Gov't's Opp'n at 47. If the leaks were instead made to some other media organization, or to someone outside the media altogether, the Defendant has failed to explain how, assuming there was a formal request for a formal investigation, information regarding the leak would be helpful to the defense. Likewise, assuming *arguendo* there was a formal request for a formal investigation regarding the ███████████████████████ identified by the Defendant, the Defendant offers no explanation as to why evidence that a third party was leaking information███████████ ███████████████████████ is exculpatory or otherwise relevant and helpful to the defense.[7]

The Defendant asserts that several "high-ranking members of the intelligence community" reported to the FBI that the disclosure at issue in this case "was just one in a series of leaks of intelligence███████████during the same time period." Def.'s Mot. at 8. The Defendant notes in particular that Daniel Russel, who at the time served as the National Security Council Director for Japan and Korea, commented that the Rosen article was ███ ███████████████ *Id.* at 8; Def.'s Second Mot., Ex. 1 (FBI 302 for D. Russel) at 1. Based on the record before the Court, the ███████████ comment more than likely referred to ███████████ about which the Defendant is *not* seeking further information. Specifically, the Defendant is not seeking information regarding the

---

[7]   The Government argues that evidence regarding these purportedly unauthorized disclosures would in any event be inadmissible to prove the identity of a third party perpetrator, so called "reverse" Rule 404(b) evidence. Gov't's Opp'n at 46-47. Evidence need not be admissible at trial to be at least helpful to the Defendant in identifying a potential third party perpetrator.

unauthorized disclosure of information ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮ nor is he seeking information regarding the unauthorized disclosure of information in connection with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Gov't's Opp'n at 47, n.23; 6/22/2012 Ltr. A. Lowell to J. Mahs at 5. The Government indicates it has evidence ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Gov't's Opp'n at 47, n.23. Moreover, assuming Mr. Russel was also referring to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Def.'s Second Mot., Ex. 4, as noted above, this leak falls outside the scope of the Defendant's request because no formal request for a formal investigation was received by the Department of Justice. Gov't's Opp'n at 47. Neither party presents any evidence as to what Mr. Russel meant by his ▮▮▮▮▮▮▮▮▮▮▮ comment. Nevertheless, the record before the Court supports a finding that Mr. Russel was referring to leaks outside the scope of the Defendant's request, and thus his comments do not support the Defendant's assertion that the documents sought would be helpful to the defense.

B.   Other Investigations of National Security Council Officials

The Defendant also seeks "[a]ny documents relating to any investigation into the unauthorized disclosure of national defense information by John Brennan, Mark Lippert, or Denis McDonough." Proposed Order ¶ 3. Mr. Brennan is the former Deputy National Security Advisor for Homeland Security and Counterterrorism and Assistant to the President, and currently the Director of the CIA. Gov't's Opp'n at 48 & n.25. Mr. Lippert is the former Chief and Staff and Deputy National Security Advisor for Operations, and presently serves as the Assistant Secretary of Defense for Asian and Pacific Security Affairs. Id. at 48 & n.27. Mr. McDonough is the former Deputy National Security Advisor for Strategic Communications and the present White House Chief of Staff. Id. at 48 & n.26. This request is not limited to a

10

particular timeframe or to leaks regarding a specific subject matter. Def.'s Mot. at 10; 6/22/12 Ltr. A. Lowell to G. Harvey ¶21.

The Government objects to the Defendant's request on the grounds there is no evidence any of these individuals accessed the ▉▉▉▉ report prior to the publication of the Rosen article. The Defendant argues that "it is reasonable to assume that all three named NSC officials had access to the contents of the ▉▉▉▉ report]" prior to the publication of the Rosen article, for three reasons. First, on June 11, 2009, all three individuals worked at the NSC offices in the White House, "and were thus surrounded by colleagues who had accessed the intelligence report at issue earlier in the day." Def.'s Mot. at 11. Second, "[s]everal hard copies of the ▉▉▉▉ report had been printed by (or for) NSC officials at the White House prior to the publication of the Rosen article." Id. Third, the intelligence community drafted a piece for the ▉▉▉▉ based on the ▉▉▉▉ report ▉▉▉▉▉▉▉▉ ▉▉▉▉ Id. In light of the senior positions Messrs. Brennan, Lippert, and McDonough occupied, the Court finds it is more than reasonable to presume that they learned of the contents of an intelligence report that was distributed throughout their office, accessible to their colleagues, and of sufficient importance ▉▉▉▉▉▉▉▉▉▉ (until the Rosen article was published).

Moreover, there is evidence to suggest at least one of these individuals contacted Mr. Rosen on June 11, 2009. At 2:21 PM on June 11, Major Garrett of Fox News emailed Denis McDonough, indicating that Mr. McDonough "will receive a call or an e-mail from a trustworthy colleague, James Rosen," who "has some very good stuff on North Korea and would like some NSC guidance." Def.'s First Mot., Ex. 15. Mr. McDonough replied two minutes later with "[g]ot it." Id. At 2:33 PM, Mr. Rosen placed a call to a number associated with Mr.

McDonough.  Def.'s Mot. at 11-12.  The "trunk line" associated with the number contacted by Mr. Rosen was also used by Mr. Brennan and Mr. Lippert, as well as four other NSC employees. *Id.*; Gov't's Opp'n at 50, n.28.

Admittedly, the evidence that Mr. McDonough, Mr. Brennan, and/or Mr. Lippert learned of the contents of the ████████ report before the Rosen article was published is circumstantial, and "none of them has acknowledged even knowing about the intelligence prior to the publication of the Rosen article."  Gov't's Opp'n at 50.  Further, the Rosen article indicates that ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████  Def.'s First Mot., Ex. 2, calling into question whether Mr. Rosen had any substantive discussions with whomever he spoke with at NSC.  But the Government does not dispute the Defendant's contention that the Defendant's request regarding these individuals is subject only to the materiality requirement of Rule 16(e), and not the heightened "helpfulness" standard under *Yunis*.  On the present record, the Court finds some of the information sought by the Defendant could potentially be material to preparing the defense.

Ultimately, the Defendant's request as currently stated does not satisfy the requirements of Rule 16(e).  The Defendant seeks "[a]ny documents relating to *any* investigation into the unauthorized disclosure of national defense information by John Brennan, Mark Lippert, or Denis McDonough."  Proposed Order ¶ 3 (emphasis added).  The Defendant offers no explanation as to why evidence concerning an investigation into *any* unauthorized disclosure would enable the Defendant to "significantly alter the quantum of proof in his favor."  *Marshall*, 132 F.3d at 67.  However, the Court would seriously entertain a narrower request for information regarding investigations into unauthorized disclosures by these individuals, such as a request

limited to unauthorized disclosures to Fox News or unauthorized disclosures regarding North Korea, within a narrower time frame.

C.    *Other Investigations of John Herzberg*

Finally, the Defendant requests "[a]ny documents relating to any investigation into the unauthorized disclosure of national defense information by John Herzberg." Proposed Order ¶ 4. Mr. Herzberg was the Director of Public Affairs and Public Diplomacy for the VCI, the State Department office to which the Defendant was detailed in June 2009. Def.'s Mot. at 12; Gov't's Opp'n at 51. The Defendant bases this request on the fact that "[b]etween April 1, 2009, and July 22, 2009, Mr. Rosen and Mr. Herzberg exchanged at least 102 emails, several of which discussed recent developments in North Korea," and "Mr. Herzberg worked at the State Department, and therefore may have obtained the information at issue in this case by word-of-mouth or hard copy from any one of a number of State Department employees who accessed the ████████ report] on June 11, 2009." Def.'s Mot. at 13. Several of the emails from April 2009 discuss ███████████████, which was also discussed in the ████████ report and the June 11, 2009 Rosen article. Def.'s Ex. 5 at 1. The emails provided to the Court indicated that at least on some occasions Mr. Herzberg communicated with Mr. Rosen from his private Hotmail account rather than his State Department email account. *Id.*

The Government objects to the Defendant's request regarding Mr. Herzberg for two reasons: (1) none of the emails Mr. Herzberg exchanged with Mr. Rosen "demonstrate[] that Mr. Herzberg ever disclosed classified information to Mr. Rosen"; and (2) Mr. Herzberg "denied having access to the intelligence prior to its publication in the Rosen article." Gov't's Opp'n at 51. Notably, the Government does not dispute the Defendant's assertion that Mr. Herzberg disclosed *sensitive* information to Mr. Rosen, but denied doing so to the FBI. Def.'s Mot. at 13.

13

Mr. Herzberg's assertion that he did not have access to the intelligence in the ███████ report before the Rosen article was published notwithstanding, Mr. Herzberg had extensive contacts with Mr. Rosen regarding North Korea and would have had access to the intelligence regarding North Korea that was the subject of Mr. Rosen's June 11, 2009 article. However, the Court cannot say that the Defendant's sweeping request for any documents relating to any investigation of Mr. Herzberg for the unauthorized disclosure of any national defense information would enable the Defendant to "significantly alter the quantum of proof in his favor." *Marshall*, 132 F.3d at 67. Accordingly, the Court shall deny the Defendant's motion, but would seriously consider a more limited request for information regarding investigations into unauthorized disclosures by Mr. Herzberg, such as for investigations concerning unauthorized disclosures by Mr. Herzberg to Fox News or unauthorized disclosures regarding North Korea, within a narrower timeframe.

## IV. CONCLUSION

Logically, the Defendant seeks to obtain information indicating that other individuals were leaking classified information to Fox News during the time period at issue in this case. However, as currently framed, the Defendant's requests are too broad to satisfy the relevant standards of discoverability. The Government confirmed that no purportedly unauthorized disclosures to Fox News concerning North Korea between June 2008 and June 2010 were the subject of formal requests for formal investigation. The Defendant offers no explanation as to why formal requests for formal investigation into unauthorized leaks to *other* media outlets, or non-media persons, would be helpful to the defense. The Defendant produced persuasive circumstantial evidence that three NSC officials may have learned of the intelligence purportedly disclosed to Mr. Rosen, and there is evidence to suggest at least one of those officials had contact with Mr. Rosen on the day in question prior to the publication of the Rosen article. In

combination, this evidence may be sufficient to require the Government to produce to the Defendant information regarding investigations into these officials for unauthorized disclosure of information regarding North Korea, or disclosures to Fox News. But as currently framed, the Defendant's request for information regarding other investigations concerning the three NSC officials is too broad to satisfy the materiality requirement of Rule 16. Similarly, evidence that State Department employee John Herzberg had extensive contact with Mr. Rosen regarding North Korea, and could have learned of the intelligence at issue in this case, may be sufficient to require the Government to disclose to the Defendant information regarding other investigations into Mr. Herzberg for unauthorized disclosures to Fox News, or concerning North Korea. However, the breadth of the Defendant's request precludes a finding that the information sought would be material to the preparation of the defense. Accordingly, the Defendant's [98-2] Second Motion to Compel Discovery (Regarding Other Contacts for the Reporter) is DENIED on the present record. An appropriate Order accompanies this Memorandum Opinion.


                                        ____/s/____ _ _ _ _ _ _ _ _ _ _
                                        COLLEEN KOLLAR KOTELLY
                                        UNITED STATES DISTRICT JUDGE