**FILED**

**JUL 2 4 2013**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**REDACTED**

UNITED STATES OF AMERICA,

vs.

STEPHEN JIN-WOO KIM,

Defendant.

Criminal No. 10-225 (CKK)

Filed with Classified
Information Security Officer

CISO _____

Date _____

MEMORANDUM OPINION
(May 30, 2013)

Defendant Stephen Jin-Woo Kim is charged by indictment with one count of unauthorized disclosure of national defense information in violation of 18 U.S.C. § 793(d), and one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). Presently before the Court is the Defendant's [98-3] Third Motion to Compel Discovery (Regarding "National Defense Information" and Willfulness).[1] Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Defendant's Third Motion to Compel is GRANTED IN PART and DENIED IN PART, as set forth below. To the extent necessary and relevant, the Court supplements the reasoning set forth in this Memorandum Opinion in the memorandum opinion resolving the Government's *ex parte* motions for a protective order. Procedurally, the Court addresses the Defendant's and the Government's motions separately, but the decisions regarding each party's respective motions are consistent.

---

[1] The Court addresses the Defendant's First, Second, and Fourth Motions to Compel under separate cover.

[2] Def's First Mot., ECF No. [98-3]; Gov't's Omnibus Opp'n ("Gov't's Opp'n"), ECF No. [99]; Def's Omnibus Reply ("Def's Reply"), ECF No. [101].

## I. BACKGROUND

A.   *Factual Background*



---

[3]  For purposes of this motion, the Court cites to the Government's factual background for relevant and undisputed background information.

2

REDACTED / CLEARED FOR PUBLIC RELEASE

███████████████████████████████████████████████

At or about 3:16 PM that same day, James Rosen, a Fox News reporter working out of the State Department headquarters, published an article entitled "North Korea Intends to Match U.N. Resolution with New Nuclear Test." Gov't's Opp'n at 8; Def.'s First Mot., Ex. 2 (Rosen Article).

███████████████████████████████████████████████

In June 2009, the Defendant was detailed from the Lawrence Livermore National Laboratory to the State Department's Bureau of Verification, Compliance, and Implementation ("VCI"). Gov't's Opp'n at 11. As part of his detail, the Defendant served as the Senior Advisor for Intelligence to the Assistant Secretary of State for VCI. *Id.* Based on evidence detailed in the Government's Opposition, the Government contends the Defendant disclosed the contents of the ███████ report to Mr. Rosen. *Id.* at 9-25. The Government obtained an indictment against the Defendant for unauthorized disclosure of national defense information, and one count of making false statements in connection with the Defendant's statements to the FBI during its investigation of the alleged leak.

---

⁴ The report is also referred to as ███████████████████ by the parties. *See* Def.'s First Mot., Ex. 1 at 1.

3

REDACTED / CLEARED FOR PUBLIC RELEASE

### B    Motion Practice

On September 7, 2012, the Government filed its First *Ex Parte* Motion for a Protective Order Pursuant to CIPA § 4 and Federal Rule of Criminal Procedure 16(d)(1), which seeks authorization under section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3 § 4, and Federal Rule of Criminal Procedure 16(d)(1) for the redactions, substitutions, and withholdings during discovery. *See generally* Gov't's First *Ex Parte* Mot., ECF No. [93]. The Court permitted the Defendant to provide an *ex parte* submission to the Court detailing, to the extent the Defendant deemed appropriate, his anticipated defenses at trial, for the Court's consideration in resolving the Government's *ex parte* motion. Def's *Ex Parte* Mem. Concerning the Theory of the Defense, ECF No. [96]. The Government has since filed two additional *ex parte* motions for protective orders, the latter of which also serves as an *ex parte* addendum to its Opposition to the Defendant's four motions to compel and attached unredacted versions of some of the documents at issue in the Defendant's First Motion to Compel. The Court considered each of these submissions in addition to the parties' briefs in resolving the Defendant's motion to compel.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 16(e), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" any item that is within the Government's "possession, custody, or control," and is "material to preparing the defense." Fed. R. Cr. P. 16(e). The Government must disclose information sought under this rule "only if such evidence enables the defendant significantly to alter the quantum of proof in his favor." *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) (citation omitted).

REDACTED / CLEARED FOR PUBLIC RELEASE

A more stringent, three-part test applies where the Defendant seeks classified information from the Government. First, the Defendant must show that the information sought "crosses[] the low hurdle of relevance." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Second, the Court "should determine if the assertion of privilege by the government is at least a colorable one." *Id.* Finally, the Defendant must show that the information sought "is at least 'helpful' to the defense of [the] accused.'" *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). "This standard applies with equal force to partially classified documents." *Al Odah v. United States*, 559 F.3d 539, 544 (D.C. Cir. 2009) (citing *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998)).

The Defendant further moves to compel pursuant to *Brady v. Maryland*. "*Brady* and its progeny hold that due process requires the disclosure of information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching' of a government witness." *United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "While *Brady* information is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant, information can be helpful without being 'favorable' in the *Brady* sense." *Id.* Accordingly, the Defendant's request for exculpatory information under *Brady* is subsumed within the Court's analysis of whether requested information would be useful to the defense.

## III. DISCUSSION

The Defendant is charged by indictment with one count of unauthorized disclosure of national defense information in violation of 18 U.S.C. § 793(d), and one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). Section 793(d) provides in relevant part that

> Whoever, lawfully having possession of, access to, control over      being
> entrusted with any . . . information relating to the national defense which
> information the possessor has reason to believe could be used to the injury of the
> United States or to the advantage of any foreign nation, willfully communicates . . .
> the same to any person not entitled to receive it . . . [s]hall be fined under this
> title or imprisoned not more than ten years, or both.

18 U.S.C. § 793(d)   As the Court previously explained, this offense requires the Government to

prove four elements:

> (1) the defendant lawfully had possession of, access to, control over, or was
> entrusted with (2) information relating to the national defense (3) that the
> defendant reasonably believed could be used to the injury of the United States or
> to the advantage of a foreign nation and (4) that the defendant willfully
> communicated, delivered, or transmitted such information to a person not entitled
> to receive it.

*United States v. Kim*, 808 F. Supp. 2d 44, 55 (D.D.C. 2011). The Defendant's motion to compel

concerns the second and third elements. The Court begins by discussing the parties' competing

interpretations of the second and third elements before turning to the specific information

requested by the Defendant in this motion.

### A      *"Information Relating to the National Defense"*

Interpreting an earlier version of the Espionage Act, in 1941 the Supreme Court

explained that "national defense" as used in this context "is a generic concept of broad

connotations, referring to the military and naval establishments and the related activities of

national preparedness." *Gorin v. United States*, 312 U.S. 19, 28 (1941). The Defendant admits

that "[i]n this case, the parties do not dispute that the information satisfied this basic

requirement." Def.'s Mot. at 2, n.3. [5] Nevertheless, relying on the Fourth Circuit's decision in

*United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988), the Defendant argues that the

Government must also prove two additional elements in order to show the information

---

[5]   Unless otherwise indicated, all references to the "Defendant's Motion" refer to the
Defendant's Third Motion to Compel.

REDACTED / CLEARED FOR PUBLIC RELEASE

purportedly disclosed to Mr. Rosen was "national defense information"; (1) that "the disclosure of the information reasonably could be damaging to the United States or helpful to an enemy", and (2) that the information was "closely held." Def.'s Mot. at 2. The Court declines to adopt the *Morison* court's construction of information relating to the "national defense" insofar as it requires the Government to show that disclosure of the information would be *potentially* damaging to the United States or useful to an enemy of the United States. The Government agrees to concede that it must show the information was "closely held," thus, the Court assumes that requirement applies for purposes of this motion.

                1.    Potentially Damaging to the United States or Useful to an Enemy of the United States

The trial court in *Morison* defined the term "national defense" for the jury as follows:

> The term national defense[] includes all matters that directly or may reasonably be connected with the defense of the United States against any of its enemies. It refers to the military and naval establishments and the related activities of national preparedness. To prove that the [documents] relate to national defense there are two things that the government must prove. First, it must prove that the disclosure of the [documents] would be potentially damaging to the United States or might be useful to an enemy of the United States. Secondly, the government must prove that the [documents] are closely held in that they] . . . have not been made public and are not available to the general public.

*Morison*, 844 F.2d at 1071-72 (ellipses in original). The Court declines to adopt this construction of the statute for several reasons.

*First*, the *Morison* court endorsed the trial court's instruction as a means to avoid potential overbreadth issues caused by the statute's use of the term "national defense." *Morison*, 844 F.2d at 1076 ("This narrowing of the definition of 'national defense' information or material removed any legitimate overbreadth objection to the term."). The Defendant has not brought an overbreadth challenge in this case, raising only a vagueness challenge in prior motion practice. *See generally United States v. Kim*, 808 F. Supp. 2d 44 (D.D.C. 2011)

7

REDACTED / CLEARED FOR PUBLIC RELEASE

The overbreadth and vagueness doctrines are related but distinct. A vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanction; in contrast, a law that is overbroad may be perfectly clear but it permissibly purport to penalize protected First Amendment activity.

*Hastings v. Judicial Conference of U.S.*, 829 F.2d 91, 105 (D.C. Cir. 1987). In rejecting Defendant Kim's earlier vagueness challenge, the Court cited to the *Morison* decision for the proposition that the phrase "relating to the national defense" was not unconstitutionally vague in the context of the unauthorized disclosure of classified information. *Kim*, 808 F. Supp. 2d at 52 (citing *Morison*, 844 F.2d at 1074); *id.* at 54 (same). Absent any constitutional concern, the Court is bound by the broader definition of "national defense" provided by the Supreme Court in *Gorin*.

*Second*, the requirement that the disclosure of information be potentially damaging to the United States, or that it might be *useful to an enemy of the United States*, *Morison*, 844 F.2d at 1071-72, is inconsistent with 18 U.S.C. § 793(d). With respect to the Defendant's state of mind, the statute requires that the Defendant have "reason to believe" that the information disclosed could be used to the injury of the United States or to the advantage of any *foreign nation*." 18 U.S.C. § 793(d) (emphasis added). As the Supreme Court explained in *Gorin*, the statute is not limited to information that might aid an *enemy* of the United States:

> The statute is explicit in phrasing the crime of espionage as an act of obtaining information relating to the national defense "to be used . . . to the advantage of any foreign nation." No distinction is made between friend or enemy. Unhappily the status of a foreign government may change. The evil which the statute punishes is the obtaining or furnishing of this guarded information, either to our hurt or another's gain.

*Gorin*, 312 U.S. at 29-30 (ellipses in original). It would be illogical to require the Government to show that the information might be useful to an enemy of the United States when the statutory requirement broadly refers to information that could be used to the advantage of a foreign nation.


REDACTED / CLEARED FOR PUBLIC RELEASE

*Third*, in cases like this which involve the alleged unauthorized disclosure of classified information, the *Morison* approach invites (if not requires) the jury to second guess the classification of the information. The information purportedly disclosed to Mr. Kim in this case was classified as Top Secret//Sensitive Compartmented Information "a classification level that [is] applied to information, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security." *Kim*, 808 F. Supp. 2d at 53 (quoting Exec. Order No. 12958 § 1.2, as amended by Exec. Order No. 13,292, 3 C.F.R. § 196 (2004), *reprinted in* 50 U.S.C. § 435 note (2006)). Under the Defendant's construction of the phrase "information relating to the national defense," the Jury would be left to determine whether disclosure of this classified information "would be potentially damaging to the United States or might be useful to an enemy of the United States," despite its prior classification as information, the disclosure of which "reasonably *could be expected* to cause exceptionally grave damage" to national security. The D.C. Circuit noted the "absurdity" of this type of inquiry in *Scarbeck v. United States*, 317 F.2d 546 (D.C. Cir. 1962), noting that the trial of the individual charged with unauthorized disclosure would be converted into a trial of the classifying party. *See id.* at 560 (analyzing 50 U.S.C. § 783(b)). "The Government might well be compelled either to withdraw the prosecution or to reveal policies and information going far beyond the scope of the classified documents transferred by the employee." *Id.* "The embarrassments and hazards of such a proceeding" could render section 783 "an entirely useless statute." *Id.*

*Fourth*, although the Defendant emphasizes the Government's failure to cite a case explicitly rejecting the *Morison* framework, the Court was unable to locate a single case outside the Fourth Circuit employing this standard. Moreover, it is not clear that district courts within the Fourth Circuit apply *Morison* in the way the Defendant urges – that is, by requiring the

Government to show that the specific information at issue would be potentially damaging to the United States. At least two courts have interpreted *Morison* to require the Government to show that the information "is the *type* of information that, if disclosed, could harm the United States." *United States v. Rosen*, 445 F. Supp. 2d 602, 618 (E.D. Va. 2006) (emphasis added); *accord United States v. Kiriakou*, No. 1:12cr127, 2012 WL 3263854, at *6 (E.D. Va. Aug. 8, 2012), *but see Kiriakou*, 2012 WL 3263854, at *6, n.5 ("Of course, at trial the Government must prove that the disclosed information was 'related' to the national defense,' which is a second and separate question.")

Fifth and finally, the Court was unable to find any court outside the Fourth Circuit that employed this construction of "national defense." To the contrary, at least one court has utilized the *Gorin* definition of "national defense." *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 385 (D. Conn. 2009), *aff'd*, 630 F.3d 102 (2d Cir. 2010); *cf. United States v. Boyce*, 594 F.2d 1246, 1251 n.2 (9th Cir. 1979) (rejecting the defendant's argument that the *Gorin* definition of "national defense" should be limited to information concerning the "military establishment" and "military preparedness for defending the territory of the United States").

For these reasons, the Court declines to construe section 793(d) to require the Government to show that the disclosure of the information at issue would be potentially damaging to the United States or might be useful to an enemy of the United States in order to satisfy the statutory requirement that the information relate to the "national defense."

    2.    Closely Held

The Defendant also argues that the Government should be required to show that the information in question was "closely held" by the Government. This requirement was included in the *Morison* court's jury instruction defining "national defense," but the requirement pre-dates

the *Morison* decision. *See United States v. Truong Dinh Hung*, 629 F.2d 908, 918, n.9 (4th Cir. 1980). The Second Circuit held in 1945 that the definition of "national defense" set forth in *Gorin* did not include information that the Government itself makes public. *United States v. Heine*, 151 F.2d 813, 816 (2d Cir. 1945); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 135-36 (2d Cir. 2010), 1-29 Modern Fed. Jury Instrs. Cr. § 29-23 ("[I]f the information is lawfully accessible to anyone willing to take pains to find, to sift, and to collate it, you may not find the defendant is guilty of espionage under this section. Only information relating to our national defense which is not available to the public at the time of the claimed violation falls within the prohibition of [section 793(d)]."). The Government does not dispute that it must show the information allegedly disclosed in this case was "closely held," and instead argues that the Defendant bases one of his requests on a flawed understanding of the "closely held" requirement. Gov't's Opp'n at 57 (arguing that the Defendant's request for electronic security profiles "should be denied as it is based on a misunderstanding of the meaning of the term 'closely held'"). At this juncture, the Court assumes the Government must show the information disclosed to Mr. Rozen was closely held, but need not decide which interpretation of "closely held" is correct.

   B.   *"Reason to Believe"*

   Section 793(d) explicitly requires the Government to prove that the Defendant "reasonably believed" the information that was allegedly disclosed "could be used to the injury of the United States or to the advantage of a foreign nation", 18 U.S.C. § 793(d). The Government argues in its Opposition that this inquiry is an objective one: "the defendant must [] be shown to have known the facts from which he reasonably should have concluded that the information could be used for the prohibited purpose." Gov't's Opp'n at 59 (citing *Truong Dinh Hung*, 629 F.2d at 919). The Defendant refers to this as the Government's "construction of the

REDACTED / CLEARED FOR PUBLIC RELEASE

statute." Def's Reply at 25, yet offers no alternative interpretation or contrary authority. Accordingly, for purposes of this motion, the Court employs the objective "reason to believe" standard articulated by the Government in considering whether the documents sought by the Defendant are discoverable.

C.   *Defendant's Requests*

The Defendant moved to compel six categories of information but subsequently withdrew three of those requests.[6]  Only three requests remain pending before the Court: (1) damage assessments concerning the alleged disclosure to Mr. Rosen; (2) documents relating to ███████████████████████████████████████ report, including ████████████ ████████ and (3) all Top Secret intelligence reports accessed by Mr. Kim from April 1, 2009, through June 11, 2009.

1.   Damage Assessments

Initially, the Defendant requests "any 'damage assessment' or other document addressing the effects, if any, of the alleged disclosure on national security interests." Def's Mot. at 5. The Defendant argues that "[a]ny document tending to show that someone in Mr. Kim's position reasonably could have believed that the disclosure of the information would not harm U.S. national security interests or aid a foreign is exculpatory" because such documents "tend[] to prove that the information at issue was not 'national defense information.'" Def's Mot. at 6 (emphasis in original).  This argument confuses two separate inquiries: the question of whether the Defendant had reason to believe that the information could be used to the injury of the United States or to the advantage of a foreign nation is a separate question from whether the information

---

[6] The Court refers to the Defendant's request for documents concerning ████████ ████████████████████████████████████████████████████████ as a single request. *See* Proposed Order ¶¶ 3-4.

REDACTED / CLEARED FOR PUBLIC RELEASE

allegedly disclosed related to the national defense. The Defendant offers no explanation as to how damage assessments would be helpful to the defense in showing that the information purportedly disclosed to Mr. Rosen did not relate to the national defense as set forth in *Gorin*; to the contrary, the Defendant conceded the information "satisfies this basic requirement." Def.'s Mot. at 2, n.1.[7] Thus, as a threshold matter, the Defendant failed to demonstrate that damage assessments as a general category are relevant and helpful to the defense with respect to whether the information purportedly disclosed to Mr. Rosen related to the national defense.

The Defendant also argues that "if a damage assessment concluded that the alleged disclosure did not harm national security because the same information contained in the report had been reported in documents X, Y, and Z, that information is discoverable . . . it is likely to lead to the discovery of other admissible evidence," namely "reports X, Y, and Z, containing the same intelligence." Def.'s Reply at 25. To the extent any damage assessments in the Government's possession, custody, or control contain otherwise discoverable information — such as the potential source documents for the purported disclosure to Mr. Rosen — that information must be disclosed.

The Defendant's third argument is more persuasive. The Defendant contends that "if a damage assessment discussed other intelligence reports or documents that were also known to Mr. Kim at the time of the alleged disclosure, such information would be discoverable" insofar as they would assist the jury in determining whether the Defendant reasonably believed that disclosure could be damaging." Def.'s Reply at 25. The Government argues that after-the-fact damage assessments by definition are not relevant to this inquiry because the reasonableness of the Defendant's belief if based on the facts known to the Defendant at the time of the disclosure.

---

[7] At no point in his motion or reply brief does the Defendant argue damage assessments would be helpful to the Defendant in showing the information was not "closely held."

REDACTED / CLEARED FOR PUBLIC RELEASE

Gov't's Opp'n at 59; *id.* ("The damage assessments were created or compiled after the alleged offenses were committed. . . . What, if any, future damage occurred after disclosure was not knowable by the accused during the time period of the charged offenses.") (quoting *United States v. Manning*, Slip. Op. at 4-5 (U.S. Army 1st Judicial Cir. Jan. 16, 2013)). The Government's objection is misplaced, for two reasons.

First, damage assessments drafted after a particular event are not necessarily based only on facts discovered after that event. To the contrary, logically, a damage assessment drafted shortly after a purportedly unauthorized disclosure of information would be based primarily on facts known prior to the disclosure. Thus for example, if on June 12, 2009, a member of the intelligence community drafted a damage assessment analyzing the *Rosen* article, that assessment would be informed by knowledge the intelligence community acquired on June 11, and in the days, months, or years preceding the leak. A damage assessment is not necessarily irrelevant to the reasonableness of the Defendant's belief merely because it was drafted after the allegedly unauthorized disclosure.

Second, the Defendant does not move to compel the production of damage assessments in order to show that no harm resulted from the purported disclosure to Mr. Rosen. Regardless of whether or not the leak actually injured the United States or aided a foreign nation is irrelevant. What is helpful to the Defendant is evidence regarding whether another member of the intelligence community, relying on information known to the Defendant at the time of the release, believed the disclosure could cause injury to the United States or could be used to the advantage of a foreign nation. This type of third-party analysis, if it existed, could potentially be relevant to show whether *objectively* the Defendant should have had reason to believe disclosure of the information could be used to the injury of the United States or to the advantage of a

foreign relation. The Government's parade of horribles is based on a theory of relevance the
Defendant does not advance.

Nevertheless, the Court notes that the Defendant's request is not limited to damage
assessments based on information known to the Defendant at the time of the alleged disclosure.
Rather, the Defendant seeks *any* damage assessment or other document assessing the effects of
the reported leak. Therefore, although the Defendant may be able to show that some subset of
these documents is relevant and helpful to the defense, the Defendant fails to establish the
discoverability of the broad category of documents sought.

    2.    █████████████████████████████ Report

Second, the Defendant seeks all documents "relating to the ███████████████
██████████████████████" including ██████████████████ as well as the
Intelligence community's "confidence level" in ██████████ and other information in the
██████████ report. Proposed Order ¶¶ 3-4. Noting that ██████████ involved in drafting
the ████████████ referred to ████████████████" Def.'s Third Mot.
Ex. 3 (6/11/09 ██████ email), the Defendant argues this information is relevant and helpful to
the Defendant because "it is far from clear that the ██████████ report] contained actual
intelligence information that Mr. Kim reasonably could have believed was [national defense
information." Def.'s Mot. at 11. The Defendant suggests that if the ██████████ report was
based on "informed speculation' from ████████████████ publically-available
open-source materials," the report would not qualify as national defense information. *Id.* The
Defendant thus moves to compel the disclosure of "*any* information related to ██████████
████████████████ report] and the intelligence's community's
'confidence level' in that reporting," *Id.* at 11 (emphasis added). The Defendant once again

conflates two di███ ██████ whether ███████████████ is a ███ ██ █████ ████ whether the information was publicly-available. The Court addresses both issues in the context of both the "national defense" and "reason to believe" inquiries under section 793(d).

> *a*      *Information Relating to the National Defense*

With respect to documents regarding ███████████████████████
████████████ the Defendant's argument rests entirely on his interpretation of "national defense." The Defendant offers no explanation as to how ███████████ are relevant to the question of whether the disclosed information related to the national defense under *Gorin* Def.'s Reply at 26-27. However, the Government does not dispute that even under its own interpretation of the "closely held" requirement—evidence supporting the intelligence at issue was based on "publically-available open-source materials" would be helpful to the Defendant. *See* Def.'s First Mot., Ex. 1 ███████ (report) at 3 ██████████████
████████████████████████████████████████████████████████

Accordingly, the Government must produce any documents relating to whether the information contained in the ████████ report was based on open-source or public materials

> *b.*      *Reason to Believe*

The Defendant also argues that reports regarding ████████████
████████████ and/or the open-source nature of the information are helpful to show that the Defendant did not have reason to believe disclosure of the information could be used to the injury of the United States or to the advantage of a foreign nation. The Government does not dispute that information regarding ███████████████ or the open-source nature of the intelligence may be relevant to this inquiry. Rather the Government objects to the

16

REDACTED / CLEARED FOR PUBLIC RELEASE

Defendant's request on the grounds that the documents sought are not discoverable because the defendant cannot prove that he had access to ▮▮▮▮▮▮ material that he now seeks in discovery." Gov't's Opp'n at 65.

As the D.C. Circuit recognized in *Yunis* that "the defendant and his counsel in CIPA cases are hampered by the fact that the information they seek is not available to them until [a showing of helpfulness] is made." *Yunis*, 867 F.2d at 624. However the flaw in the Defendant's request is not that he fails to identify specific documents that he reviewed regarding this subject, a burden *Yunis* likely does not impose. *See id.* (noting that a proffer of "the events to which a witness may testify, and the relevance of those events to the crime charged may well demonstrate either the presence or absence of the required materiality) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982)). The Defendant's request, as currently framed, seeks *any* documents relating to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ regardless of whether the Defendant had access to those documents. Proposed Order ¶¶ 3-4. The Government notes, without rebuttal from the Defendant, that "the defendant cannot prove that he had access to ▮▮▮▮▮▮ material that he now seeks." Gov't's Opp'n at 65. The Court cannot say that all documents regarding ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—including documents the Defendant had no authority or capacity to access—would be helpful to the defense for the reason articulated by the Defendant.

3.   Other Top Secret Intelligence Reports Accessed by the Defendant

Third, the Defendant moves to compel the production of "all intelligence reports accessed by Mr. Kim from April 1, 2009, through June 11, 2009, which were classified as Top Secret." Proposed Order ¶ 7. The request is not limited to any particular topic. For context, the

17

Government notes that on five hours during the morning of June 11 alone the Defendant accessed at least nine Top Secret reports on a single classified database. Gov't's Opp'n at 69, n 42. Assuming the Defendant reviewed just ten Top Secret reports each day for the 52 work days encompassed by the Defendant's request, the Defendant's request would include over 500 Top Secret Reports.

The Defendant argues that the requested reports would be at least helpful to the defense for two reasons: (1) to rebut the implication by the Government that the Defendant disclosed intelligence to Mr. Rosen, to curry favor with Fox News; and (2) to "construct conversations and events that took place nearly four years ago." Def.'s Mot. at 15-16. The Court's analysis of this request is somewhat more difficult in light of the Government's silence on the issue of whether it intends to offer evidence of the Defendant's motive. If the Government intends to offer evidence of the Defendant's motive at trial, the Government must notify the Defendant so as to allow the Defendant sufficient time to seek discovery at least helpful to the defense in rebutting the Government's evidence of motive.

The Government's pleading focuses on the inadmissibility of evidence of a defendant's "good acts" on other occasions in order to negate criminal intent. Gov't's Opp'n at 70-71. The Court understands the Defendant to be making a different argument. The Defendant does not contend that he is entitled to other Top Secret reports in order to demonstrate to the jury that because he did not disclose these reports, he must not have disclosed the ████████ report to Mr. Rosen. Rather, the Defendant argues that if the Government suggests to the jury that he disclosed information to Mr. Rosen in order to curry favor with Fox News, the Defendant has a right to rebut that contention with evidence he had access to intelligence that would better satisfy that goal—an argument the Government fails to address.

REDACTED / CLEARED FOR PUBLIC RELEASE

In any event, the Defendant's motion to compel falls short because the Defendant's request encompasses every report reviewed by the Defendant during the specified time frame, regardless of the topic or information at issue. The Defendant's detail to the State Department was not limited to North Korea or █████████████████████████████ meaning the Defendant seeks reports that lack any apparent connection to this case. The Defendant's request is not limited to specific report or categories of reports that would be helpful to his defense in rebuttal of the Government's purported evidence of motive.

Nor does the Defendant limit his request to types of reports that might be helpful to the Defendant in preparing for his testimony, such as other intelligence reports concerning North Korea. The Defendant's suggestion that he needs every Top Secret report in order to prepare for his testimony is particularly unpersuasive in light of the amount of discovery that has been provided to the Defendant regarding his work at the Department of State. The parties' discovery correspondence indicates the Government has produced a spreadsheet of the Defendant's ███████████ activity on June 11, 2009, as well as certain classified "briefings [and] other narrative reports" prepared by the Defendant. 5/19/11 Ltr. G. Harvey to A. Lowell at 3; 10/6/11 Ltr. A. Lowell to G. Harvey at 3. The Government also produced screenshots of the Defendant's Department of State "Open Net" workstation computer and Internet activity from August 24, 2009 through October 1, 2009, and an image of the unclassified material on the Defendant's Department of Energy Laptop. 11/15/10 Ltr. G. Harvey to A. Lowell. 12/20/10 Ltr. G. Harvey to A. Lowell. In this context, the Defendant fails to demonstrate that every Top Secret report accessed by the Defendant between April 1 and June 11, 2009, would be at least helpful to the defense.

## IV. CONCLUSION

REDACTED / CLEARED FOR PUBLIC RELEASE

For the foregoing reasons, the Court declines to adopt the definition of "national defense" employed by the Fourth Circuit. The Court utilizes the definition of that term provided by the Supreme Court, and assumes for purposes of this motion that the Government must show the information at issue was "closely held" at the time of the purportedly unauthorized disclosure. Absent any contrary argument from the Defendant, the Court also assumes that the Government must that the Defendant have reason to believe disclosure of the information could be used to the injury of the United States or to the advantage of a foreign nation as an objective inquiry based on the facts known to the Defendant at the time of the alleged disclosure.

Within this legal framework, most of the Defendant's motion fails short of establishing the discoverability of the broad categories of documents sought. The Defendant failed to demonstrate that damage assessments as a general category are relevant and helpful to the defense with respect to the element concerning whether the information related to the national defense. The Defendant may be able to show that damage assessments based on information known to the Defendant at the time of the purported disclosure are relevant and helpful to the question of whether the Defendant had reason to believe release of the information could be used to the injury of the United States or to the advantage of a foreign, but the Defendant's request is not limited to this subset of documents. The Defendant is entitled to otherwise discoverable information even if it is contained within damage assessments within the Government's possession, custody, or control.

In terms of the Defendant's request for documents addressing ████████████ ████████████████████████████████████ the Defendant is entitled to any such documents discussing whether the intelligence was based on publicly available information. The Defendant may be able to demonstrate that these documents are also helpful to the defense in

correcting whether the Defendant had reason to believe the contents of the ████████ report could be used to the injury of the United States or to the advantage of a foreign nation, if such documents are based on information known to the Defendant at the time of the disclosure. However, the Defendant's motion seeks documents that by definition the Defendant could not access, and therefore shall be denied. Finally, assuming arguendo that the Defendant could show that certain Top Secret reports reviewed by the Defendant between April 1 and June 11, 2009, the Defendant's request as presently stated is not limited to discoverable material, and is therefore denied. Accordingly, the Defendant's Third Motion to Compel is GRANTED IN PART and DENIED IN PART.

An appropriate Order accompanies this Memorandum Opinion.

                                        /s/
                              COLLEEN KOLLAR KOTELLY
                              UNITED STATES DISTRICT JUDGE