

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**NOV 1 3 2013**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA,

vs

STEPHEN JIN-WOO KIM,

Defendant.

Criminal No.  10-225 (CKK)

Filed with Classified
Information Security Officer

CISO _Carl F.P._

Date __10/10/2013__

## MEMORANDUM OPINION
(October 8, 2013)

Defendant Stephen Jin-Woo Kim is charged by indictment with one count of unauthorized disclosure of national defense information in violation of 18 U.S.C. § 793(d), and one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). Presently before the Court is the Defendant's [116] Motion for Reconsideration of the Court's Rulings on His Third Motion to Compel Discovery. The Defendant asks the Court to reconsider its decision declining to adopt the Fourth Circuit's definition of "national defense information."[1] Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court declines to revisit its earlier ruling, and therefore denies the Defendant's motion.

Before addressing the merits of the Defendant's motion, the Court emphasizes that based on the present record, the definition of "national defense information" affects only a portion of a single defense discovery request, namely, damage assessments based on information *not* available to the Defendant at the time of the alleged leak. As set forth in greater detail below,

[1]  5/30/13 Mem Op re Def's Third Mot. to Compel. A redacted version of the Memorandum Opinion is posted on the public docket as docket number 129. The Court assumes familiarity with that Memorandum Opinion, and incorporates it in its entirety herein.

[2]  Def.'s Mot. ECF No. [116]; Gov't's Opp'n, ECF No. [121]; Def.'s Reply, ECF No. [123]; Gov't's Am. Surreply, ECF No. [162].



adopting the Fourth Circuit's definition of national defense information would not dramatically increase the amount of discovery to which the Defendant might be entitled,[3] nor would it significantly expand the arguments the Defendant would be permitted to make to the jury. The Court uses the word "might" to emphasize that even if damage assessments based on information not known to the Defendant were theoretically relevant under the Fourth Circuit's approach---which is not at all clear based on several district court decisions in the Fourth Circuit---and assuming further that such damage assessments even existed, the Defendant would only be entitled to classified damage assessments if they would be useful to the Defendant. Despite the limited effect utilizing the Fourth Circuit's approach would have on this case, both in discovery and at trial, the Court once again does not adopt the Fourth Circuit's definition of national defense information

The Court further notes that the legal basis for seeking reconsideration is questionable at best when the Defendant's motion is based on the fact he simply disagrees with the Court's conclusion. Given that there is little case law on the subject in this Circuit, in order to assist parties in this case and in future cases, the Court takes this opportunity to eliminate any potential ambiguity regarding the Court's prior ruling regarding the definition of national defense information.

## I. DISCUSSION

The Defendant is charged by indictment with one count of unauthorized disclosure of national defense information in violation of 18 U S C § 793(d), and one count of making false statements in violation of 18 U.S.C. § 1001(a)(2)  Section 793(d) provides, in relevant part, that

---

[3] The Court uses the term "might" to emphasize that even if damage assessments based on information not known to the Defendant were theoretically relevant under the Fourth Circuit's approach, and assuming further that such damage assessments even existed, the Defendant would only be entitled to classified damage assessments if they would be useful to the Defendant.

> Whoever, lawfully having possession of, access to, control over, or being
> entrusted with any . . . information relating to the national defense which
> information the possessor has reason to believe could be used to the injury of the
> United States or to the advantage of any foreign nation, willfully communicates . .
> . the same to any person not entitled to receive it . . . [s]hall be fined under this
> title or imprisoned not more than ten years, or both.

18 U.S.C. § 793(d). As the Court previously explained, this offense requires the Government to

prove four elements:

> (1) the defendant lawfully had possession of, access to, control over, or was
> entrusted with (2) information relating to the national defense (3) that the
> defendant reasonably believed could be used to the injury of the United States or
> to the advantage of a foreign nation and (4) that the defendant willfully
> communicated, delivered, or transmitted such information to a person not entitled
> to receive it

*United States v. Kim*, 808 F. Supp. 2d 44, 55 (D.D.C. 2011).

Interpreting an earlier version of the Espionage Act, in 1941 the Supreme Court

explained that "national defense" as used in this context "is a generic concept of broad

connotations, referring to the military and naval establishments and the related activities of

national preparedness." *Gorin v. United States*, 312 U.S. 19, 28 (1941). In his Third Motion to

Compel, the Defendant urged the Court to adopt the Fourth Circuit's approach set forth in *United

States v. Morison*, 844 F.2d 1057 (4th Cir. 1988), which held that in order to show that the

(allegedly) wrongfully disclosed information was "national defense information," the

Government was required to prove two additional elements: (1) that the "disclosure of the

information reasonably could be damaging to the United States or helpful to an enemy"; and (2)

that the information was "closely held." *Id.* at 1071-72. The Government appears to have

conceded, and the Court assumes, that the Government is required to show the information was

"closely held," but urged the Court to otherwise reject the Fourth Circuit's interpretation of

"national defense information."

The Court rejected the *Morison* definition of national defense information, for five reasons: (1) the definition of *Morison* was adopted to avoid overbreadth concerns, but the Defendant has not raised an overbreadth challenge in this case; (2) the Fourth Circuit's definition is inconsistent with the plain text of section 793(d); (3) the *Morison* approach requires the jury to second-guess the classification decision of the information at issue; (4) courts in the Fourth Circuit do not apply *Morison* in the manner urged by the Defendant; and (5) no court outside the Fourth Circuit has followed *Morison* on this issue   Accordingly, the Court rejected the Defendant's request that the Government be required to produce *all* damage assessments concerning the purported leak to Mr Rosen, but agreed damage assessments based on information known to the Defendant at the time of the purported leak would be helpful to the Defendant in showing that the Defendant did not have reason to believe disclosure of the information at issue could be used to the injury of the United States or to the advantage of any foreign nation. 5/30/13 Mem Op. at 12-15. The Defendant asks the Court to reconsider that decision, and the Court addresses each of the Defendant's arguments in turn

First, the Defendant challenges the Court's characterization of the *Morison* decision as endorsing the proffered definition of national defense information only as a means to avoid potential overbreadth issues  The Defendant argues that the *Morison* court endorsed the definition as a way to avoid both overbreadth *and* vagueness issues with the statute, noting that Defendant Kim previously raised a vagueness challenge. Def.'s Mot. at 5-6. The *Morison* decision speaks for itself  Regardless, the Court previously rejected the Defendant's vagueness challenge to the phrase "information relating to the national defense " *Kim*, 808 F. Supp. 2d at 52-54. The Court need not adopt a definition of "national defense information" to avoid

potential vagueness issues when the Court has already determined that the statutory language is not unconstitutionally vague.

Second, the Defendant takes issue with the Court's finding that the requirement that the Government show that disclosure of the information would be "potentially damaging to the United States or that it might be useful to *an enemy* of the United States," is inconsistent with the statutory language requiring the Government to show the Defendant had reason to believe disclosure of the information "could be used to the injury of the United States or to the advantage of any *foreign nation*." 18 U.S.C. § 793(d) (emphasis added). The Defendant concedes that the term "enemy" is inconsistent with the statute, but he nonetheless argues that the scienter requirement of section 793(d) supports the Fourth Circuit's interpretation. Def.'s Mot. at 7. In short, the Defendant suggests that no defendant would ever have reason to believe the disclosure of certain information could be used to the injury of the United States or to the advantage of any foreign nation unless the disclosure of that information *actually could be* used to the injury of the United States or to the advantage of any foreign nation.

The fact that the Fourth Circuit explicitly approved a jury instruction using a term that is inconsistent with a critical phrase in the statutory language should give any court pause in taking the same course as the Fourth Circuit.[4]  In any event, even if the Defendant is correct that the Government could not prove that a defendant acted with the relevant scienter unless disclosure of the information in question would be potentially damaging to the United States or helpful to any

---

[4]  In fact, the term "enemy" is inconsistent with the statutory phrase "any foreign nation" for two independent reasons. First, the Fourth Circuit's terminology limits liability to cases in which information may be used to the advantage of someone adverse to the United States, while the statutory language extends to information that could be used to the advantage of even friendly nations. Second, the statute references information that could be used to the advantage of other *nations*, while the Fourth Circuit definition appears to expand liability to include information that could be used to the advantage of non-state actors or groups adverse to the United States, e.g., Al Qeada.

foreign nation, Congress elected to require the Government to make the requisite showing of potential injury in the context of the defendant's state of mind. Moreover, if the Defendant's contention is correct, then defining national defense information to require that release of the information be potentially damaging is duplicative of the mens rea requirement in the statute, and thus unnecessary.

Third, the Defendant notes that the Court rejected the *Morison* approach in part because it would invite, if not require, the jury to second guess the classification of the information contained in the ████████report. The Defendant goes to great lengths to emphasize that the D.C. Circuit's decisions in *Scarbeck v. United States*, 317 F.2d 546 (D.C. Cir. 1962), which the Court cited in the Memorandum Opinion, interpreted a different statute. The Court is well aware of the fact that the *Scarbeck* court was not interpreting section 793(d), and indicated as much in the parenthetical following the citation. 5/30/13 Mem. Op. at 9. The Court cited to *Scarbeck* because the *Morison* definition of national defense information requires the jury to question whether disclosure of the information could be potentially damaging to the United States, which in effect calls into question the classification of the information insofar as potential damage to national security is a requirement for classification. Exec. Order No. 12,958 § 1.2, *as amended by* Exec. Order No. 13, 292, 3 C.F.R. § 196 (2004). Although decided in the context of a different statute, *Scarbeck* stands for the principle that if the Government is required to prove that disclosure of the information would be potentially damaging to the United States, "[t]he Government might well be compelled either to withdraw the prosecution or to reveal policies and information going far beyond the scope of the classified documents transferred by the employee." *Scarbeck*, 317 F.2d at 560. On its face, section 793(d) limits this inquiry only to the context of what the defendant had reason to believe, thus minimizing the risk that the

Government would be forced to either reveal other policies or information, or withdraw the prosecution.

The Court further agrees with the Defendant that whether or not information relates to the national defense is question of fact for the jury, and classification (or lack thereof) of information is not dispositive in all cases   One could imagine cases in which closely held information relating to naval establishments (for example) has not been classified, but an individual with authorized access to that information would have reason to believe disclosure of the information could be used to the injury of the United States or to the advantage of any foreign nation.  At the same time, because the definition of "national security" for purposes of classification is broader and in some ways different than the definition of "national defense information" set forth in *Gorin*, one can imagine situations involving the disclosure of information that is classified but that a reasonable jury would not consider related to the activities of national preparedness.  The fact that the information purportedly released to Mr. Rosen is classified is not dispositive in this case either.   But under *Gorin* the relevant inquiry for the jury is whether the information allegedly provided by the Defendant relates to "military and naval establishments and the related activities of national preparedness," not whether the information should have been classified. Furthermore, the fact that the ▓▓▓▓▓▓▓ report was classified is not necessarily dispositive of whether the Defendant acted with the required mens rea.  Classification may be relevant to this issue, but the Defendant is free to argue that despite the classification, he did not have reason to believe disclosure of the information at issue could be used to the injury of the United States or to the advantage of any foreign nation

The Defendant latches onto the Court's earlier statement that "[t]o the extent the Defendant intends to argue that the information he is charged with leaking was previously

disclosed *or was not properly classified*, he may do so as part of his defense, but such arguments do not render the statute vague." *Kim*, 808 F. Supp. 2d at 55 (emphasis added). The Court is not saying, as the Defendant suggests in his motion, that classification of information is dispositive of whether disclosure of the information could be used to the injury of the United States. Rather, the Court finds that there is no free-standing requirement that the Government show disclosure of the information at issue would be potentially damaging to the United States as the *Morison* court held. In any given case a defendant could make any number of arguments that bear on the proper classification of a document, including whether the information was closely held, or whether the document bore the proper classification markings, which may be relevant to whether the defendant acted willfully. Likewise, a defendant could argue that other information known to the defendant led the defendant to believe disclosure of the information could not be used to the injury of the United States. The Court's decision does not limit a defendant's ability to make any of these arguments.

Fourth, the Defendant takes issue with the Court's reference to a district court case in the Second Circuit in which the court utilized the same approach adopted by the Court here. *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 385 (D. Conn. 2009), *aff'd*, 630 F.3d 102 (2d Cir. 2010). The *Abu-Jihaad* court held that the general phrase "information relating to the national defense" is subject to two limitations: (1) that the information be closely held; and (2) that the defendant have reason to believe disclosure of the information could be used to the injury of the United States or to the advantage of any foreign nation. 600 F. Supp. 2d at 386-389. The district court permitted the parties to introduce evidence regarding the accuracy of the information allegedly released by the defendant as probative of the issue of whether the information related to the national defense, and some of that evidence appears to have concerned whether the

8

disclosure of the information was potentially damaging to the United States. As a threshold matter there is nothing in the opinion to suggest the Government objected to the introduction of this type of evidence in *Abu-Jihaad*. The willingness of both parties to introduce evidence on an issue is not dispositive of whether the Government is *required* to produce such evidence, as the Defendant contends here. Additionally, at no point has Defendant Kim suggested to the Court that he intends to argue the information at issue here was inaccurate, ████████████████████ ██████████████████████████████ The Defendant raised the issue regarding *Morison* only in the context of seeking to compel the Government to produce damage assessments regarding the disclosure in question. Ultimately, in what circumstances inaccurate information may still be considered national defense information is a separate inquiry from whether the Government is required to, *in all cases*, prove disclosure of the information at issue would be potentially damaging to the United States. The first question is not posed in this case. The *Abu-Jihaad* court implicitly reached the same conclusion as this Court with respect to the second: the "judicial gloss" the Fourth Circuit has placed on "national defense information" is not appropriate. *See* 600 F. Supp. 2d at 386-389 (identifying the requirement that the information be "closely held" as the only judicially-imposed limitation on "national defense information).

Several weeks after the Defendant filed the present motion, the Department of Justice released a "Report on Review of News Media Policies," dated July 12, 2013. The Defendant notes that section X of the report explains that "[c]ases involving the unauthorized disclosure of classified or national defense information are inherently difficult to investigate and prosecute," because, among other reasons, these cases "require proof of harm that may itself result in further harmful disclosures." The Defendant thus argues that the Government's position in this case is

inconsistent with the Department of Justice's own guidance regarding these types of prosecutions. The Government indicates that the policy revisions set forth in the Report will be incorporated into the Department of Justice policy entitled "Policy with regard to the issuance of subpoenas to members of the news media, subpoenas for telephone toll records of members of the news media, and the interrogation, indictment, or arrest of, members of the news media," codified at 28 C.F.R. § 50.10. Section (n) of that policy makes clear that "[t]he principles set forth in this section are not intended to create or recognize any legally enforceable right in any person." 28 C.F.R. § 50.10(n)  Fundamentally, the Report does not purport to set forth the Department of Justice's interpretation of any specific statutory language

Finally, the Court notes that the Defendant's statement in the reply that the Court "denied discovery across the board" is outright false. Def.'s Reply at 10. The only information the Defendant moved to compel based on the *Morison* definition were damage assessments regarding the leak to Mr Rosen. The Court granted the Defendant's motion to compel such assessments to the extent they are based on information known to the Defendant. The only discovery the Court denied on the grounds that *Morison* did not apply in this case were damage assessments based on information not known to the Defendant at the time of the release. The Defendant still has not shown that this subset of damage assessments---that is, damage assessments not based on information known to the Defendant at the time of the alleged leak--- would be helpful to the Defendant in showing the Defendant did not have reason to believe disclosure of the information in the ████████ report could be used to the injury of the United States or to the advantage of any foreign nation.

## IV.  CONCLUSION

For the foregoing reasons, the Court once again declines to adopt the definition of "national defense" employed by the Fourth Circuit  The Supreme Court has defined information

relating to the national defense, and the Court finds no reason to limit that definition, particularly where the Fourth Circuit's definition is facially inconsistent with the text of section 793(d). Justice does not require the Court to follow non-binding precedent from the Fourth Circuit on an issue the Supreme Court has provided sufficient guidance simply because the Defendant is being prosecuted in this District rather than the Fourth Circuit.   Accordingly, the Defendant's [116] Motion for Reconsideration of the Court's Rulings on His Third Motion to Compel Discovery is DENIED.  An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE