REDACTED / CLEARED FOR PUBLIC RELEASE

**FILED**

NOV 1 3 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

███████████████████

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| vs. | Criminal No. 10 - 225 (CKK) |
| STEPHEN JIN-WOO KIM, | Filed with Classified Information Security Officer |
| Defendant | CISO _____ |
| | Date _____ |

### MEMORANDUM OPINION
(October 9, 2013)

Defendant Stephen Jin-Woo Kim is charged by indictment with one count of unauthorized disclosure of national defense information in violation of 18 U.S.C. § 793(d), and one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). Presently before the Court is the Defendant's [125] Fifth Motion to Compel Discovery. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Defendant's Fifth Motion to Compel is GRANTED IN PART and DENIED IN PART, as set forth below. To the extent necessary and relevant, the Court supplements the reasoning set forth in this Memorandum Opinion in the memorandum opinion resolving the Government's Fourth *Ex Parte* Motions for a Protective Order. Procedurally, the Court addresses the Defendant's and the Government's motions separately, but the decisions regarding each party's respective motions are consistent.

---

[1] Def.'s Fifth Mot. to Compel ("Def.'s Mot."), ECF No. [125]; Gov't's Opp'n, ECF No. [149]; Def.'s Reply, ECF No. [152].

███████████████████

# I. BACKGROUND

The Court presumes familiarity with the factual background set forth in the Memorandum Opinions regarding the Defendant's First, Second, Third, and Fourth Motions to Compel.[2] In ruling on the Defendant's Third Motion to Compel, the Court ordered the Government to indicate whether it intends to offer evidence of the Defendant's motive at trial in order to allow the Defendant sufficient time to seek discovery that would be at least helpful to the defense in rebutting the Government's evidence of motive. Mem. Op. re Third Mot. to Compel, ECF No. [137], at 18. To that end, on June 12, 2013, the Government informed the Defendant via letter that it may rely on three theories of motive at trial: (1) that the Defendant was "a disgruntled government employee because he believed that his insights regarding North Korea were being ignored or rejected by other government personnel"; (2) that the Defendant "believed that the intelligence information from the ▮▮▮▮▮▮report on June 11, 2009, confirmed the accuracy of his view that North Korea ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (3) that the Defendant "wanted to resign from his government position and find a new job, including at Fox News as a specialist in Korea and East Asian affairs and national security issues." Gov't's Opp'n at 10. Based on this disclosure and the Court's rulings regarding several of the Defendant's other discovery requests, the Defendant submitted supplemental discovery requests to the Government on June 14, 2013. The present motion addresses several requests in the Defendant's June 14 letter, and certain miscellaneous issues arising out of the Court's prior rulings on the parties' discovery-related motions. The Court shall address the Defendant's request for damage▮▮▮▮▮▮ assessments based on information known to the Defendant at

---

[2] Redacted versions of the Memorandum Opinions are available on the public docket as docket numbers [133], [135], [137], and [139]. Unredacted copies are maintained by the Court.

the time of the alleged leak, as well as the Government's e-mail search protocol under separate cover.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" any item that is within the Government's "possession, custody, or control," and is "material to preparing the defense." Fed. R. Crim P. 16(e). The Government must disclose information sought under this rule "only if such evidence enables the defendant significantly to alter the quantum of proof in his favor." *United States v Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) (citation omitted).

A more stringent, three-part test applies where the Defendant seeks classified information from the Government. First, the Defendant must show that the information sought "cross[es] the low hurdle of relevance " *United States v Yunis*, 867 F 2d 617, 623 (D.C. Cir. 1989). Second, the Court "should determine if the assertion of privilege by the government is at least a colorable one." *Id.* Finally, the Defendant must show that the information sought "is at least 'helpful to the defense of [the] accused.'" *Id* (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). "This standard applies with equal force to partially classified documents." *Al Odah v. United States*, 559 F.3d 539, 544 (D.C. Cir 2009) (citing *United States v Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998)). For the first time in his Reply brief, the Defendant argues inculpatory information would be "helpful" to the Defendant under *Yunis*. The Court does not address this argument because, in light of the Court's disposition of the present motion, the Defendant's approach would not expand the scope of documents to which the Defendant is entitled with respect to the discovery requests at issue

The Defendant further moves to compel pursuant to *Brady v. Maryland*. "*Brady* and its progeny hold that due process requires the disclosure of information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching' of a government witness." *United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "While *Brady* information is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant, information can be helpful without being 'favorable' in the *Brady* sense." *Id.* Accordingly, the Defendant's request for exculpatory information under *Brady* is subsumed within the Court's analysis of whether requested information would be useful to the defense.

## III. DISCUSSION

### A.   *Any Classified Intelligence Reports Accessed by Mr. Kim between May 1, 2009, & June 11, 2009*

Initially, the Defendant seeks an order compelling the Government to produce all classified intelligence reports accessed by Mr. Kim between May 1 (the day Mr. Kim first met Mr. Rosen) and June 11, 2009. The Defendant argues these reports would be helpful to the Defendant in rebutting the Government's theory that Mr. Kim leaked the contents of the ███████████ Report to Mr. Rosen in order to curry favor with Fox News. Def.'s Mot. at 5. The Government argues Defendant's request is "overbroad and bears little relation to the government's motive theory" in that the request (1) is not limited to the topics discussed by Mr. Rosen in his emails with the Defendant, (2) seeks reports reviewed by Mr. Kim before Mr. Rosen outlined what information he would like to acquire from Mr. Kim, and (3) is not limited to reports classified at the TOP SECRET level. Gov't's Opp'n at 21.

The Court agrees that other intelligence reports accessed by the Defendant between May 1 and June 11, 2009, would be useful to the Defendant in rebutting the Government's theory that

Mr. Kim leaked the contents of the ████████ report to Mr. Rosen in hopes of securing employment as a specialist in Korean and East Asian affairs and national security issues at Fox News. The Government offers no cogent explanation as to why only TOP SECRET level reports would be useful to the Defendant; SECRET level or compartmented intelligence may have been more valuable to Mr. Rosen and/or Fox News than the ██████ report for any number of reasons. The Defendant has limited his request to reports accessed by the Defendant since his introduction to Mr. Rosen. Even though Mr. Rosen may not have conveyed what information he was seeking until May 22, if the Government's theory is correct, logically Mr. Kim would have been on the lookout for useful intelligence to provide to Mr. Rosen even before Mr. Rosen's May 22 email. Moreover, the Government's reading of Mr. Rosen's May 22 email is exceedingly narrow; Mr. Rosen provided a list of "possible examples" of information he would like to report, but does not indicate that the list was intended to be exhaustive. Gov't's Opp'n at 17 (quoting Mr. Rosen's May 22 email in full). Finally, although Mr. Rosen expressed an interest in intelligence relating to North Korea, the Government itself theorizes that Mr. Kim wanted to market himself as an expert in Korean and East Asian affairs and national security issues, and not just as a potential specialist in North Korean matters. The Court doubts any reporter in Mr. Rosen's position would have declined intelligence regarding South Korea, China, or other national security issues if offered by the Defendant. Nor could one reasonably believe that the Defendant would not offer useful information to Mr. Rosen relating to nations other than North Korea if he sought to curry favor with Fox News. Thus, intelligence reports addressing matters other than North Korea would be useful to the Defendant in rebutting the Government's motive theory.

Without attempting to quantify the number of reports at issue, the Government laments that producing six weeks of classified intelligence reports would be time consuming. The Defendant has offered a reasonable solution to reduce the potential burden on the Government: if the Government provides a list of the titles of all intelligence reports responsive to this request, the Defendant will attempt to narrow the list by identifying those reports that best satisfy the request. At that time, the Government may seek specific relief under CIPA section 4, if appropriate. Accordingly, subject to this procedure, the Defendant's motion to compel the Government to produce all classified intelligence reports accessed by Mr. Kim between May 1 and June 11, 2009, is GRANTED.

### B   Any Classified Intelligence Reports Accessed by Mr. Kim between June 1, 2008, & June 11, 2009, Regarding North Korea's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Defendant also asks the Court to require the Government to produce any classified intelligence reports accessed by Mr. Kim between June 1, 2008, and June 11, 2009, regarding North Korea's ▮▮▮▮▮▮▮▮▮▮▮▮ The Defendant argues that these reports would be helpful to the defense in rebutting the Government's theory that Mr. Kim leaked the contents of the ▮▮▮▮▮ report to Mr. Rosen because the report confirmed the accuracy of his view that North Korea ▮▮▮▮▮▮▮▮▮▮▮▮▮ at the time of the leak, for two reasons.[4] First, the Defendant argues that the requested reports would be helpful to the defense because the

---

[1]   The Government initially argued this portion of the Defendant's motion was not ripe because the Government had yet to substantively respond to the Defendant's request. However, on September 25, 2013, the Government informed the Court that it believes the request calls for classified material to which the Defendant is not entitled, and the request is now ripe for adjudication by the Court. Jt. Notice, ECF No. [158], at 4. The parties fully addressed the merits of the Defendant's request in their briefing, and the Court sees no reason to further delay ruling on this issue.

[4]   In connection with this motive theory, the Defendant also moved to compel documents relating to Mr. Kim's alleged views regarding whether North Korea ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ but withdrew that request in light of the representations in the Government's Opposition. Def.'s Reply at 12-13, n. 12.

Government's theory is untenable unless the ████████ report was the first document that confirmed the Defendant's (alleged) view that North Korea ████████████████████████████ Second, the Defendant contends that because the ████████ report merely indicated that North Korea ████████████████████████████████████████████ ████████████████████████████████████ Second, the Defendant suggests that other classified intelligence available to Mr. Kim would be helpful to the defense in arguing that report of ████████████████████ was not sufficient confirmation of the Defendant's alleged views to warrant leaking the contents of the ████████ report to Mr. Rosen.

The Government argues that the requested documents would not be useful to the defense because the only relevant inquiry is what the Defendant believed regarding ████████████ ████████████████ on June 11, 2009. Absent contemporaneous statements by the Defendant, both parties are forced to rely on circumstantial evidence to establish what Mr. Kim did or did not believe on June 11. The Government relies on emails sent by Mr. Kim on June 13 and June 15, 2009. The Defendant seeks to rely on other intelligence reports viewed by Mr. Kim in the months leading up to the alleged leak. Apart from the Defendant's own statements, the other intelligence reports accessed by the Defendant before the purported leak relating to North Korea's ████████████████ constitute useful evidence of what Mr. Kim did or did not believe on June 11, 2009. If the Defendant uses the earlier reports at trial to argue that he did not believe North Korea ████████████████ on June 11, 2009, it is up to the jury to decide whether this argument is simply a post-hoc justification by the Defendant. Furthermore, prior intelligence reports regarding North Korea's ████████████████████████ would be useful to the Defendant in arguing that the ████████ report was not noteworthy or significant enough to warrant leaking to Mr. Rosen. However, the Court agrees that the request as written is

overbroad in terms of the timeframe. Therefore, the Government shall be required to produce any classified intelligence reports accessed by Mr. Kim between April 11 and June 11, 2009, regarding North Korea's ██████████████████

> C.   *Documents Regarding the Government's Theory that Mr. Kim was a Disgruntled Employee*

The Defendant further seeks to compel the Government to produce any documents or other evidence tending to support or refute the Government's theory that Mr. Kim leaked the contents of the ████████ report to Mr Rosen because Defendant Kim was a disgruntled employee insofar as he believed his insights regarding North Korea were being ignored or rejected by other Government personnel. The Government indicates that it has produced all classified inculpatory materials it intends to introduce at trial, and completed a *Brady* review of the classified materials  However, based on footnote 29 in the Government's Opposition. it is clear the Government has taken an unjustifiably narrow view of what would be considered exculpatory with respect to this motive theory. The Government shall be required to produce any classified documents tending to show that the Defendant's superiors at VCI or high-level government employees outside VCI acknowledged the Defendant's contributions regarding North Korea or solicited his input regarding North Korea.

> D.   ████████ *Records for* ████████████



The Defendant moves to compel the Government to produce ████████ records from June 10 and 11, 2009, ████████████████████████ ████████████████████████████████ The Government indicates that it will produce ████████████████████ ████████████████ at issue  Gov't's Opp'n at 35. The Government objects to producing the ████████████████████████ because the records might enable

███████████████████████████████████ Cognizant of the Government's

concern, to the Court's knowledge the ███████████ records themselves are not classified.

The records are certainly material to the preparation of the defense in that the records would

assist the Defendant in determining whether ███████████████ might have conveyed the

contents of the ███████ report to Mr. Rosen, or to a third party who then conveyed the

information to Mr. Rosen, meaning the records are discoverable under Rule 16. However,

pursuant to Federal Rule of Criminal Procedure 16(d)(1), the Court may "for good cause, deny,

restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P.

16(d)(1). On the present record, the Court finds good cause to permit the Government to

withhold the ███████ utilized by ██████████ when ███████████

██ because of the significant risk those ██████████████████████████

██████████████ With that exception, at this stage, the Government has not presented

good cause for withholding *all* records of ██████████████████████████

██████████████

    The Court acknowledges that the Government may be able to show that specific ███

██████ should not be disclosed to the Defendant, thus the question becomes how to balance the

Defendant's interest in obtaining the records with the Government's interest ███████████

██████████████████ During the closed hearing on September 27, 2013, the Court

and the parties discussed two possible arrangements. First, the Court discussed requiring the

Government to review the records and seek a protective order with respect to specific ███

██████ on the records. This approach poses a significant disadvantage for the Defendant

because the Court would be forced to make a decision regarding whether or not a particular

██████ should be produced to the Defendant despite the Court's limited (or non-existent) insight

into how that particular ███████ might be material to the defense. The parties discussed an alternative arrangement for reviewing the records in which a walled-off team at the United States Attorney's Office (or Department of Justice) would review the ████ records to determine whether ████████████████████████████████████████████████████████████████ ███████ to be provided by the Defendant This procedure may provide the Defendant a greater opportunity to demonstrate that the materiality (to the defense) of a particular ███████ outweighs any concerns set forth by the Government, without forcing the Defendant to reveal possible defense strategies to counsel for the Government in this matter. The parties indicated that they would continue to meet and confer regarding logistics for reviewing the records. Accordingly, the Defendant's motion to compel production of the █████████████████████████████ ██████████████████████ is granted, but the Government shall not be required to physically produce the records to the Defendant pending further order of the Court Ultimately the burden will be on the Government to demonstrate why it should not be required to provide specific records to the Defendant

        With respect to the Defendant's request for ████ records, the Government indicates that it has searched the classified and unclassified ████ records for ████████████████ June 10 and 11, 2009, but did not locate (1) any ████████████████████████████████ ████████ and Mr Rosen; or (2) any ████████████████████████████████████ ██████████████████████████████████ regarding the contents of the ████████████ ████████ report or the June 11th Rosen article prior to 3:16 PM on June 11, 2009." Gov't's Opp'n at 38. To the extent the Government discovered any records of █████████████ ████████████████████████████████ regarding the contents of the ████████ report or the June 11 Rosen article prior to 3:16 PM on June 11, the Government must produce

those records to the Defendant.  With that exception, the Defendant failed to show the ████

records of ███████████ would be material to the preparation of the defense, or with respect

to classified ████ that the records would be helpful to the Defendant, therefore the Defendant's

request is otherwise denied.

     *E.*     *Miscellaneous Issues Arising Out of the Court's Prior Rulings*

     In addition to the Defendant's revised discovery requests, the Defendant's motion

addresses several issues arising out of the Court's prior discovery rulings  First, the Defendant

asks the Government to indicate whether in searching for potential source documents it searched

*only* for documents referring to ███████████████████████████ report, or

whether it searched for documents referring to ██████████████  The Court can confirm

that the Government searched for documents referring to ██████████████ and has

produced all discoverable information to the Defendant

     Second, the Defendant notes that in his First Motion to Compel, the Defendant sought a

copy of the report from ██████████████ referenced by Daniel Russel in his August

11, 2009, interview with the FBI.  The Court denied the Defendant's request, indicating that

"[t]he Defendant has received the information referred to by Mr. Russel during his interview,

making this request moot."  Mem. Op. re First Mot. to Compel at 14.  The Government

subsequently referred the Defendant to the ██████████ email from ████████████

The Defendant seeks clarification regarding this issue insofar as the email from ████████

████ was not produced to Defendant until after the Court issued the Memorandum Opinion.

Having reviewed unredacted copies of the relevant documents *in camera* in connection with the

Defendant's initial motion, the Court can confirm that the Government's representation is

accurate.  The Court stated that the Defendant "had received" the information referred to by Mr.

Russel because at that time the Defendant was already in possession of a subsequent email from

Mr. Russel ███████████████ email.

     The Defendant also notes that Mr. Russel referred separately to "information from ██

██████████████ and ████████████████████ on email." Def.'s

Mot at 20. As the redacted version of ████████████ email indicates, ████████████

████████████████ which ████████████ Mr. Russel via email.[5] *See* Def.'s

Ex. 5. Based on its *in camera* review, the Court can confirm that there is no inconsistency

between the Government's representation and the statements made by Mr. Russel.

     Third, the Defendant moves to compel the Government to produce ████████████

derived from, referencing, or discussing the contents of ██████ that was drafted or circulated

prior to 3:16 PM on June 11, 2009." including the ████████████ referenced by ████████

████████ FBI 302. Def.'s Mot at 22. The Government has confirmed that it produced the

relevant ████████ and provided the Defendant with the applicable bates ranges. Gov't's Opp'n

at 41. Based on its *in camera* review of the relevant documents, the Court once again confirms

that despite the language in ████████ FBI 302, ████████████ 2:41 PM email did not attach a

████████████████████ The Defendant also took issue with the extensive redactions

made to emails regarding ██████████ specifically the pages bearing bates numbers

CLASS_0003205 through CLASS_003218. The Court also reviewed unredacted versions of

CLASS_0003205 through CLASS_003218 and determined that the redacted information would

not be helpful to the defense.

---

    [5] The Court permitted the Government to redact the details of ████████████████
████████ and other information in ████████████████ email because, even if not classified, the
redacted information is not material to the preparation of the defense.

In his Reply, the Defendant's request appears to shift, and the Defendant focuses on the Government's failure to produce ██████████ on the ████████ report, and revisions to ████████ proposed by ████████████████████████████████████████ Def.'s Reply at 28. To the extent the "revisions" are reflected in the redactions made to CLASS_0003205 through CLASS_003218, the Court finds the revisions would not be helpful to the Defendant. However, the Government has not had an opportunity to address the Defendant's request for ██████████████████████ Accordingly, the parties are instructed to meet and confer regarding these materials and seek further relief through the Defendant's sixth motion to compel, or pursuant to CIPA section 4, as appropriate. As initially framed in the present motion, the Defendant's request for documents regarding ████████ is largely moot and otherwise denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's [125] Fifth Motion to Compel Discovery is GRANTED IN PART and DENIED IN PART. Subject to the procedure proposed by the Defendant, the Government shall produce all classified intelligence reports accessed by Mr. Kim between May 1 and June 11, 2009. The Government shall also produce any classified intelligence reports accessed by Mr. Kim between April 11 and June 11, 2009, regarding North Korea's ████████████ If it has not done so already, the Government shall produce any classified documents tending to show that the Defendant's superiors at VCI or high-level government employees outside VCI acknowledged the Defendant's contributions regarding North Korea or solicited his input regarding North Korea. The parties shall meet and confer regarding a procedure to review the ████████ records for ████████████ ████████ and shall probably notify the Court if the parties reach an impasse. To the

extent the Government discovered any records of ███████████████████ ████████████████ regarding the contents of the ████████ report or the June 11 Rosen article prior to the cut-off time, the Government must produce those records to the Defendant, but the Defendant's request for ████ records for these ████████████ is otherwise denied.  Finally, the Defendant's request for additional materials relating to ████████ as framed in his motion to compel, is denied.   An  appropriate  Order  accompanies  this Memorandum Opinion.

/s/
**COLLEEN KOLLAR KOTELLY**
UNITED STATES DISTRICT JUDGE

14