IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Government,               CR No. 10-225

                             Washington, DC
      vs.                     January 7, 2014
                             1:12 p.m.
STEPHEN JIN-WOO KIM,

      Defendant.
_____

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:         G. MICHAEL HARVEY, ESQUIRE
                        JONATHAN M. MALIS, ESQUIRE
                        THOMAS A. BEDNAR, ESQUIRE
                        U.S. Attorney's Office
                        555 Fourth Street, NW
                        Washington, DC  20530
                        (202) 252-7810

                        JULIE A. EDELSTEIN, ESQUIRE
                        DEBORAH A. CURTIS, ESQUIRE
                        Department of Justice
                        NSD Counterespionage Section
                        600 E Street, NW
                        10th Floor
                        Washington, DC  20004
                        (202) 233-2113

For the Defendant:                ABBE D. LOWELL, ESQUIRE
                                  KEITH M. ROSEN, ESQUIRE
                                  SCOTT W. COYLE, ESQUIRE
                                  Chadbourne & Parke, LLP
                                  1200 New Hampshire Avenue, NW
                                  Suite 300
                                  Washington, DC  20036
                                  (202) 974-5605




Court Reporter:                   Lisa M. Foradori, RPR, FCRR
                                  Official Court Reporter
                                  U.S. Courthouse, Room 6706
                                  333 Constitution Avenue, NW
                                  Washington, DC  20001
                                  (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1              P R O C E E D I N G S

2              COURTROOM DEPUTY:  Criminal Case 10-225, the United

3    States of America versus Steven Kim.  Counsel, would you

4    please identify yourselves for the record.

5              MR. HARVEY:  Good afternoon.  Michael Harvey for

6    the United States.  With me here today is Jonathan Malis from

7    the U.S. Attorney's, and Deborah Curtis and Julie Edelstein

8    from the counterespionage session of the Department of

9    Justice.

10             THE COURT:  All right.

11             MR. LOWELL:  Good morning, Your Honor.  Abbe

12   Lowell, Keith Rosen and Scott Coyle from Chadbourne & Parke,

13   counsel to Mr. Kim.  Mr. Kim is in court.

14             THE COURT:  All right.  We have a number of things

15   to talk about.  Pretrial services' report is in.  Mr. Kim is

16   compliant.  You filed a joint status report, which didn't tell

17   me much.  It would have been helpful, Government, if you had

18   indicated that I would likely -- even if you weren't sure --

19   likely to receive a missive today that was classified.

20             I had told Court Security there would be no need to

21   have a closed hearing; we do need one at the end.  And it also

22   makes a difference for the court reporter.  So, if you'd just

23   alert us, a call or otherwise, that there might be a need for

24   a closed hearing, it's easier to plan for that than it is to

25   have it come up at the last minute.

1              MR. HARVEY:  I understand, Your Honor.

2              THE COURT:  So, in terms of the future.  I'm going

3    to go through the types of things that I want to talk about.

4    You've talked about the status of the phone number filter

5    process.  It looks like it's moving forward.  It wasn't clear

6    to me whether some of the issues that were in the discovery

7    request crossed into this or they're totally separate?  I just

8    need a yes or no at this point.

9              MR. HARVEY:  They are separate.

10             MR. LOWELL:  They are separate, Your Honor.

11             THE COURT:  Okay.  So that one is moving forward

12   then.

13             MR. LOWELL:  We do have one issue to resolve for us

14   to complete that task, whenever it's convenient.

15             THE COURT:  Okay.  Is this something that we should

16   talk about today or --

17             MR. HARVEY:  Yes.  It doesn't have to be

18   classified -- the hearing doesn't have to be sealed.

19             THE COURT:  All right.  Then let's hear what the

20   issue is.

21             MR. HARVEY:  The issue is what additional

22   information needs to be provided to the Government in this

23   case.  Just a quick recap.  The filter team has compared the

24   numbers provided by the defense -- the phone numbers provided

25   by the defense -- with the telephone numbers of the certain

1   employees that are involved in this case, Your Honor, their

2   commercial phone lines.  There were a number of hits.

3          So the question now is:  What is the next step?

4   And the parties have agreed on some issues, but disagreed on

5   one.  We've agreed that both the defense and the Government

6   should receive the USG employee number of the individual or

7   individuals that are at issue.

8          THE COURT:  Okay.

9          MR. HARVEY:  But not the identity of the

10  individual.  That may be an issue we have to litigate down the

11  road.  But at that phase we just want to receive -- both sides

12  would receive that USG employee number.  Also, the defense

13  would then receive the actual hits, that is, the number that

14  produced the hit.

15         THE COURT:  In other words, the phone number that

16  was called.

17         MR. HARVEY:  That's right.

18         THE COURT:  Or they were called?

19         MR. HARVEY:  And the date, time and duration of

20  that call.

21         THE COURT:  Okay.

22         MR. HARVEY:  What the Government has requested and

23  the parties have not been able to agree on, is the Government

24  would also like to receive the actual -- whether or not the

25  hits occurred before or after the cut-off in this case, Your

1   Honor.

2           So, the Government agrees that it should not at

3   this point receive the actual phone number from the

4   defendant's list that produced the hit.  We're in agreement on

5   that.  All we want to know, though, because we think it will

6   be relevant to any determination this Court may have to make

7   down the road, is whether or not the hit occurred before or

8   after the cut-off time.

9           Just going through my notes last time, I hope there

10   hasn't been confusion between the parties about what it is the

11   Government is proposing.  There might have been some confusion

12   about whether or not we are proposing that if the hit occurred

13   after the cut-off, that the defense would not be notified of

14   that hit.  That's not what we're seeing.

15          The defense -- the Government's proposal would be

16   notified of the number, the date, the time and duration,

17   whether it occurred before or after the cut-off.  All the

18   Government would like no know is whether it occurred before or

19   after the cut-off.

20          THE COURT:  And I'm assuming when you say the

21   Government, what you would be getting is -- you know, the

22   employee, the phone number, and whether it occurred before or

23   afterwards; is that what you'd be asking for?

24          MR. HARVEY:  We would know the USG employee number.

25          THE COURT:  Right.

1          MR. HARVEY:  We know whether or not the hit

2   occurred before or after the cut-off.  We would not know the

3   phone number from the defendant's list, they're saying that

4   that's part of their work product.  The Government does have

5   all of these records; understand that.  We do have all of the

6   phone records, but we would not know which of the calls

7   actually resulted in the hit.

8          What we're requesting now, again, is just to know

9   whether or not the call was before or after the cut-off

10  because we think that would be important to any determination

11  concerning the relevance of the -- ultimately, the parties

12  have to litigate whether or not the defense should receive the

13  actual identity of that USG employee.

14         THE COURT:  All right.  Let me hear from you,

15  Mr. Lowell.

16         MR. LOWELL:  Your Honor, a small point of

17  disagreement, but I'd like to frame it a little differently

18  than the Government did.  So, under the -- what we have agreed

19  to is, yes, they would know the name of the employee for which

20  there was a now match.  We have been informed through the

21  filter process that there are numerous, we're calling them

22  hits --

23         THE COURT:  Okay.

24         MR. LOWELL:  -- there's a bunch of hits.  And what

25  we'd like -- the only area of disagreement -- that match being

1   between government officials and a list of phone numbers that

2   we provided the filter team based on criteria that we created

3   to determine that there might be potentially other sources,

4   et cetera.

5          THE COURT:  Right.

6          MR. LOWELL:  So where we have the point of

7   disagreement is that the Government thinks it ought to get

8   now, whether or not, what we're calling the hit, occurred

9   before or after the -- what we've defined in this case as

10   being the cut-off time.  We believe two things.

11          First, it's premature for the Government to get

12   that.  They're absolutely right that down the road one of the

13   factors that they may contest would be if such a call or

14   communication between another government official and somebody

15   else occurred at a time at which that person could be the

16   source of what was published.  They're right about that as at

17   least it being one factor.

18          What they're wrong about is that they need to know

19   that now, because we're still in our work product.  So, for

20   example, when we find out what we're allowed to find out, the

21   number of the employee, the date, the time, and which is the

22   phone number that produced the connection, it will be

23   incumbent upon us, for example, to then notice that in a

24   CIPA 5.  And when we do that, when we notice it, we will then

25   have to tee up whether or not it becomes relevant for the

1    other proceedings.

2            If we determine, Your Honor, that we don't want to

3    use this material because it doesn't match what we thought it

4    might match --

5            THE COURT:  Okay.

6            MR. LOWELL:  -- it will remain sacrosanct within

7    our file, never to be seen again.  In which case, to give the

8    Government any part of our work product prior to the time that

9    it needs to have a relevancy determination is invading our

10   work product a moment too soon.

11           THE COURT:  Okay.  So, let me hear from the

12   Government.  It doesn't sound like you're -- assuming they

13   decided they wanted to use something from this, we'll call it

14   the hits, without getting more detailed -- they wanted to use

15   something with it, which presumably would come up in a CIPA 5.

16   I don't see it coming up in any further discovery, because

17   this is what we're doing through the discovery anyway.  The

18   CIPA 5, they'd have to give you that information in order for

19   you to do it.  Why do you need it now?

20           MR. HARVEY:  Again, the conversation has progressed

21   here further than it has before, so we appreciate that.  I

22   would -- I think it would come up in two ways, one is the way

23   mentioned by counsel and the Court, but I think it could come

24   up in discovery.  We were under the impression that at some

25   point we may receive a request from them for the actual

1 identity of whoever this individual or individuals are.

2 So, that's the second way it could come up.

3 　　　　It's true, nothing may come of it.  Meaning, the

4 defense may decide that these hits are not meaningful.  So, I

5 think the Government would be amenable to -- or provided that

6 information before that next step is taken or as that next

7 step is taken, whether it's a further request for discovery or

8 if it's going to be part of a Section 5 where they want to --

9 　　　　THE COURT:  Why don't we do it this way.  Why don't

10 we consider -- I think it's premature to hand it out because I

11 think they -- the defendants should have an opportunity to

12 figure out what they may or may not wish to use or more

13 information.   You are not conceding you shouldn't get this

14 information.   You're preserving your rights to request it at a

15 later point should you need it to resolve either a discovery

16 dispute or a CIPA 5 or something else.

17 　　　　Is that acceptable?

18 　　　　MR. HARVEY:  That's fine, Your Honor.

19 　　　　THE COURT:  Does that work for you?

20 　　　　MR. LOWELL:  Yes, Your Honor.

21 　　　　THE COURT:  Okay.  Then let's move to -- so, we

22 basically kicked the can down to another day maybe, but that's

23 all right.  I think it's appropriate.  Let's move to the

24 motions to compel.  The part that I want to do in a closed

25 hearing really relates to this.  I have just a couple of

1   questions.  I did not get a chance to look at it very

2   carefully, but there's a couple of things we can do in the

3   open courtroom.  I resolved the sixth motion to compel.  The

4   seventh motion, which I assume is what the correspondence is

5   back and forth with.  We had vacated some dates when they were

6   going to be filing in order to allow you to confer.  Obviously

7   you have, and it looks from my cursory review that issues have

8   been -- some issues have been resolved in one way or another

9   and there's a couple that are left.

10          The one question that I have is -- are there -- and

11  I will -- if after our discussion we need to have something in

12  writing with this to move quickly, because I don't want the

13  motions to compel to impede an orderly process for the CIPA 5,

14  CIPA 6.  I have done a review of the timing of this with our

15  court date and it's very tight.  It assumes that everybody is

16  going to do what they're supposed to do within the timeframes

17  we set out.

18          So, I would like to know -- have some idea --

19  assuming that we resolve one way or the other what's in the

20  seventh motion to compel, I'll call it that, because that's

21  what the universe of documents -- do you today anticipate any

22  more being filed?  In other words, do I have to count on

23  leaving some time for it?  Understanding it's still a work in

24  progress and I'm not going to say you can't file one.  I just

25  want to know now whether there's an issue.

1           MR. LOWELL:  Would you give me about --

2           THE COURT:  Sure.  Not a problem.

3           MR. LOWELL:  So, in the universe of discovery, Your

4    Honor, it's safe to say that the seventh motion to compel,

5    depending on what the correspondence says, and my colleagues

6    have had a chance to read it and I have not, ought to be the

7    last on what has right now been identified as our discovery

8    material.  There are some potential exceptions to that.

9           One of the things we'll discuss, I suppose, is what

10   needs to be done with any -- I don't know if any additional

11   discovery will be made available to us based on what the

12   letter shows, that might then lead to a follow-up request,

13   which then might not be denied.  I consider that to be sort of

14   a trailing matter in that case.

15          THE COURT:  Right.

16          MR. LOWELL:  So, putting that aside, the other big

17   topics that might create motions will be when we address

18   issues of the Government's witnesses and Jencks, for example.

19   When we get to the issue of litigating over what might be our

20   requests for government officials as witnesses at trial.

21          So, those aren't quite in the motion to compel, a

22   subject matter of written discovery but it certainly could

23   lead to motions practice in a discovery concept.

24          THE COURT:  Okay.  They might also fall into the

25   category of motions in limine, in the context of --

1           MR. LOWELL:  That's very much true.

2           THE COURT:  And I will set dates for those at some

3    point, but they will relate to what happens actually at the

4    trial.

5           MR. LOWELL:  And in a normal case that is exactly

6    what it would be deemed as and that's when it would be

7    confronted.  We'll have to take into consideration that once

8    we get to some of those issues of witnesses, we will have to

9    also then deal with the CIPA 5 ramifications of identifying

10   such witnesses, so that could then create a little procedural

11   step that normally would take place, as you called it, in a

12   motion in limine right at the threshold of trial, which would

13   be a little bit before.  So, that's what I think.

14          THE COURT:  So, I'll look at it in terms of sort of

15   figuring dates out today, that in the traditional sense of a

16   motion to compel discovery that this, that you've identified

17   what in this last motion or grouping of requests or the last

18   one that you can anticipate as of today -- leaving the door

19   open.  I understand there may be follow-up requests to it.

20   There may be issues when we get to the trial issues.  And some

21   of those may need to be dealt with at an earlier point than in

22   traditional trials.

23          I have sort of a schedule I'm going to throw out to

24   you, very tight, but to throw out to see whether this is going

25   to be something that is workable or not.

```
 1              MR. LOWELL:  I'm sorry.  No, I was going to say
 2    that while you're on the issue of the motion to compel, we
 3    have conferred with the Government and there's a part that has
 4    been resolved and there's a part not.  And for the part not,
 5    if it's acceptable to the Court, the Government and we have
 6    worked out a schedule for us to file that motion to compel,
 7    what would be their opposition and what would be our reply, if
 8    you want to hear it now.
 9              THE COURT:  In terms of a schedule?
10              MR. LOWELL:  Yes.
11              THE COURT:  Are we talking about what you
12    provided -- what I got at 12:00 today?
13              MR. LOWELL:  Yes.  So, we had the meet and confer.
14    We made a request in writing.  The Government has responded
15    and that is what I believe you've seen today --
16              THE COURT:  Right.
17              MR. LOWELL:  -- which my colleagues have seen.  And
18    that's going to inform what will be our -- what you're calling
19    the seventh motion to compel.
20              THE COURT:  Why don't you give me the schedule and
21    then I will revisit it when I have just a couple of questions
22    at the end.
23              MR. LOWELL:  Okay.  So, the idea that -- because of
24    other pleadings and one federal holiday in between -- would be
25    that we would file our motion to compel on the 22nd of
```

15

 1    January.  The Government would file its opposition/response on

 2    February 5th.  We would file our reply on February 12th.

 3              THE COURT:  It's probably not going to work.

 4    That's too long, but I'll get back to you.  Let's move to the

 5    CIPA 5.  The first CIPA 5 was completed.  I resolved the

 6    adequacy of notice, and giving as much guidance as I could in

 7    the second CIPA 5 filing, particularly asking that the

 8    up-front request be very specific.  So, when I get the

 9    response from the Government and then your reply that

10    everything is -- any legal arguments, inadequacy claims,

11    proposed solutions are actually fully briefed for me, so I'm

12    not getting them at a point when the other side hasn't been

13    able to respond.

14              So, what we've got left, it seems to me, is the

15    CIPA 5, the second one, which we had set out a schedule when

16    we canceled the last meeting.  That defendant was to refile

17    January 13th, Government response to whatever it's going to

18    be, if any.  Hopefully it will be that that all is well, it

19    would be January 24th.  And it's going to be really important

20    to do an adequate job on the notice now that I've given as

21    much guidance as I can, because it is going to create some

22    scheduling difficulties.

23              I would be inclined then to try and resolve it very

24    quickly.  I sort of got a period in here when I can focus on

25    what I'm doing.  And I also said that the third one would be

1  filed on January 13th, and the Government would file a

2  response on January 24th.  So, I'm not moving those dates,

3  you're stuck with them.

4           MR. LOWELL:  Judge, we understand your dates, and

5  this is what we would provide information to the Court about

6  them.  The CIPA 5, second batch, number two.

7           THE COURT:  Right.

8           MR. LOWELL:  You have parsed through the

9  Government's objections to it and provided guidance.  In your

10  order you ruled and also said, based on what you could, that

11  if the defendant had additional arguments based on

12  burdensomeness or invasion of his rights not to provide

13  information as to whether he would or would not testify,

14  et cetera, that we could come back and tell you, and we could

15  come back and/or brief it or come back in some fashion.  We

16  appreciated that opportunity.

17           We are close to providing or completing the redo of

18  the CIPA 5 second batch, and we will have that filed, as you

19  asked, on January 13th.  We can go two ways.  In light of what

20  you just said, we're going to suggest what we think makes

21  sense, but if you say, do it another way, of course we will.

22           We thought rather than coming to you now or between

23  now and the 13th, and say:  Well, did we get this right?  And,

24  by the way, we read your order to say this, but you've invited

25  us to come back and ask.  Rather than coming back and asking

1   between now and then, we would provide the Court, Government,

2   with, on the 13th, our best effort.

3           Now, it would seem to me that they ought to see

4   whether we have fixed what it is that they objected to and

5   what you've ordered us to do before we file the third batch of

6   a CIPA 5, rather than litigating or -- litigating is not the

7   right word -- rather than asking for further guidance from you

8   before we've done that.

9           It seemed to us that rather than take you up on

10  your offer, we would best be served to move this along by

11  giving everybody our next best effort and determine if it

12  worked.  If it worked, then it wouldn't take us long to get to

13  the next CIPA, which we'll call, for the record, the third

14  batch of CIPA 5 notices.  It makes sense that way to us,

15  Judge, but if you want, we'll take our best efforts on both.

16          It would strike me that if we got it right, great,

17  if we didn't and it needed to be tweaked, it would skip a step

18  if we did it this way, even though it looks like we're

19  creating a step, we're actually saving a step because you

20  invited us to return to you and we're trying not to do that.

21          THE COURT:  So, in terms of what you're indicating

22  is that when you refile it, that you would have additional

23  arguments to be made as to why you shouldn't say anything

24  more?

25          MR. LOWELL:  No, I think what we're saying --

```
1               THE COURT:  I'm not sure what the initial

2   briefing -- instead of my guessing at what it is, why don't

3   you tell me.

4               MR. LOWELL:  Yeah, I'm not saying that right.  What

5   I'm saying is I think we have resolved what you ordered us to

6   do.

7               THE COURT:  Okay.

8               MR. LOWELL:  As best as we can do it.

9               THE COURT:  Okay.

10              MR. LOWELL:  And we're not sure whether we did, and

11  so rather than asking for an advisory opinion as to whether we

12  did, it makes more sense for us to give you our best effort

13  and give the Government, mostly, our best effort.  If that's

14  right, then we don't have to ask for further briefing from the

15  Court.

16              If we didn't get it right, according to what they

17  read your order to have said, we might be able to work it out

18  or maybe not.  It's just that we appreciated the Court's

19  invitation to explain why some of the things you've ordered

20  might still be more onerous than is possible.  And rather than

21  sort of tweaking that, we thought, okay, we're going to take

22  the spirit and the letter of your order, do it, and see if we

23  got it right.

24              So, I'm not asking that after we file on the 13th

25  we have a brief that accompanies it that says why we couldn't
```

19

1    do more than we did on the 13th, but that we give everybody

2    the 13th, second batch, and we see if it worked.  We don't

3    have to wait a long time to see if it worked, perhaps the

4    schedule that you asked the Government for is in response, and

5    then file our third batch after the second to see if it

6    worked, as opposed to continuing to pile up a way of

7    interpreting your order, which may be wrong as to all of it.

8    I don't think it's wrong as to all of it, but I've got to

9    address the eventualities.

10              THE COURT:  I think --

11              MR. LOWELL:  Maybe that explains it better.  I'm

12   asking, in effect, for us to keep the date of the 13th and

13   whatever the Government needs in response, and to then have

14   the next CIPA 5 occur somewhat after that to see if we've

15   gotten it right.  Whether it's a week or two --

16              THE COURT:  You're not going to be able to do this

17   and have an April 28th trial.  I'll go through this and we'll

18   discuss it and then I'll show you what the problem is going to

19   be.  I'm not anxious to move that case -- the trial.  Let me

20   show you in terms of how -- to be able to do the motion to

21   compel, to do the CIPA 5, which we need to resolve before the

22   CIPA 6 shows up.  We need to have the hearing on the CIPA 6A

23   and C, and do all the other stuff that's in there before

24   April 28th.  It's going to be very tight to do it.

25              MR. LOWELL:  May I just address the issue, too.

1        THE COURT:  All right.

2        MR. LOWELL:  I know you've put a premium, as you

3   should, and certainly as defense counsel, given the

4   requirements of getting things speedily tried, we do, too.

5   That said, before we address whatever the schedule you have

6   that sort of still gets us to whatever the date, we should, on

7   the CIPA 5, explain -- so this is what I believe the CIPA 5s

8   will have to entail, however, we then move on to 6A.

9        We have the second submission, which on the 13th we

10  will do.  Whether we do the third on the 13th, or as I'm

11  requesting, have a moment thereafter, that is there.  There

12  will have to be additional CIPA 5s, Your Honor, at the very

13  least for the remainder of whatever the discovery is that

14  we've created based on the motion to compel for sure, in

15  addition to which there will have to be a CIPA 5 based on

16  Jencks material.

17       There will have to be a CIPA 5 --

18       THE COURT:  How many CIPA 5s are you contemplating,

19  is my last question?

20       MR. LOWELL:  I think that the CIPA 5s have to be as

21  follows:  I think there has to be the remainder of discovery

22  that we presently have in our possession.  So, that

23  theoretically was what you and I are calling the third

24  submission.

25       THE COURT:  Okay.

1              MR. LOWELL:  The fourth submission would be based

2    on anything that we now get from the Government as a result of

3    the motion to the seventh motion to compel.  The next CIPA 5

4    would come about, depending on what we get from the Government

5    and Jencks material.  The next CIPA 5 would have to address

6    the issue that we've not addressed yet, which is the issue of

7    the expert witnesses.

8              And the last CIPA 5, if it would occur, would be

9    after we have litigated the issue of -- if we are going to

10   litigate -- we the defense will end up seeking, as we have

11   required under the rules, subpoenas to present or former

12   government officials through the Touhy process -- of Touhy

13   affidavits explaining the relevance, et cetera.

14             We were going to tell the Court today that we were

15   going to go ahead and notice the Court and the Government of

16   who those witnesses were likely to be, so we could tee that

17   issue up if there will be litigation.  So, theoretically, you

18   have two batches of discovery, the possibility of Jencks, we

19   have to address whether there will expert witnesses in the

20   case.  So there will be, no doubt, CIPA issues involved there.

21             And, last, depending on who ends up subpoenaed as

22   witnesses, it may create the need for us to say what might

23   implicate classified information among nonexpert witnesses

24   that the defense would call.  And how many of those can be

25   combined over what period of time?  That's one issue.  The

 1   next issue, of course --

 2          THE COURT:  So, 2015 would be what you would be

 3   thinking of as a trial, based on the schedule that you've just

 4   simply indicated.  This is going to be compressed a good deal

 5   more than you've discussed.  So, we're going to figure this

 6   out in terms of -- I may not be able to set the whole schedule

 7   today, but you're going to have to double up on your work,

 8   both sides.

 9          I'm not going to have this pushed off with each one

10   of these.  In terms of the remainder of the discovery, which

11   you should be able to do on the three -- I would hope that

12   I've given you enough of an instruction that you should be

13   able to get it correctly done on the second CIPA, in terms of

14   doing it.  And I'll take my chances on, frankly, to listening

15   to the rest of what you're planning on doing on the third.

16          I'll hear from the Government, but it seems to me

17   I've given you as close as I can my instructions in terms of

18   what it needs to be.  And if we wind up doing some briefing of

19   two and three together; so be it.  But the Jencks material,

20   it's not clear to me, that frankly the Jencks material should

21   raise -- I'll hear from the Government.  We were going to

22   discuss today when that would be provided, which means that

23   they have to have decided on what witnesses generally they're

24   going to be calling, which is a little early, but maybe they

25   can do that.

```
 1              Do you envision a lot of issues in the Jencks
 2    material or has a lot of it already been provided?
 3              MR. HARVEY:  No, Your Honor, we don't.  We don't.
 4              THE COURT:  We don't what?
 5              MR. HARVEY:  We do not believe that there's going
 6    to be issues within the Jencks material.  CIPA does not call
 7    for accelerated production of Jencks material.  Certainly, the
 8    Jencks Act does not.  And given the Government's approach to
 9    discovery in this case, we just think it's a red-herring.  We
10    have provided the defense with a great deal of material that
11    other prosecution teams would be considered Jencks material.
12    They have provided all the 302s and other interview memoranda
13    and --
14              THE COURT:  What is the likely -- what is the
15    basket of Jencks material that has not been provided, if you
16    were going to generalize it?
17              MR. HARVEY:  Your Honor --
18              THE COURT:  I mean, jury testimony --
19              MR. HARVEY:  I can't -- sorry.
20              THE COURT:  Go ahead.
21              MR. HARVEY:  I can't imagine Jencks material that
22    would raise a CIPA issue because the Government essentially --
23    I mean, we controlled the classification decision.  If there
24    is a Jencks statement that has not otherwise been produced,
25    which is considered a Jencks Act statement of a Government
```

1    witness in its case in chief, the Government will have a

2    choice if there are classification issues there, meaning,

3    either that information will be declassified or that witness

4    is not going to be testifying about that information.  That's

5    why it's just -- it's a red-herring.  There is not a Jencks --

6    CIPA/Jencks issue in this case.

7              So, no, we do not believe, obviously -- the Jencks

8    Act is frequently, it is set up that Jencks is produced prior

9    to what the Jencks Act calls for, and the Government is open

10   to that.  But the idea that we are going to now be producing

11   Jencks to the defense.  Effectively telling the defense who

12   our witnesses are and the subject matter of their testimony,

13   which is an issue that this Court was careful not to require

14   the defense, just would not be -- it's just not justified in

15   this case because we do not believe there's going to be any

16   significant CIPA issue as a result of the Jencks -- any

17   additional Jencks that may be produced prior to trial in this

18   case.

19             So, we do object to the suggestion from the

20   defense, which we believe is effectively a way -- additional

21   discovery -- to accelerate Jencks Act requirements beyond what

22   the Court would do in the normal case, which again, we

23   acknowledge 10 days before the witness testifies.  I don't

24   know what the Court's standard practice is, but we would

25   certainly be open to that.

 1            THE COURT:  One question that we've still been

 2   going around and around about is how long this case is going

 3   to take.  Do we have some sense of how long it's going to be?

 4   We've had varying degrees of it.

 5            MR. HARVEY:  Your Honor, I mean, I believe we could

 6   put on our case in maybe a week and a half to two weeks.

 7            THE COURT:  All right.  I'm going to leave the

 8   Jencks issue go for a moment.  You mentioned expert witnesses.

 9   Do we need to do some of this thing, instead of waiting, do

10   this at an earlier point?

11            MR. HARVEY:  Well, again, you know --

12            THE COURT:  Do you see the expert witnesses as

13   being susceptible to -- are you expecting them to -- in terms

14   of their CIPA 5 filings, from your perspective?

15            MR. HARVEY:  No, Your Honor.  Same sort of issue.

16   We do not perceive Government experts in this case -- they're

17   not going to be testifying about classified information.

18            THE COURT:  I'm assuming you're talking about

19   Government, or are you talking about some other -- your own

20   witnesses, Mr. -- experts?

21            MR. LOWELL:  As to the expert issue, Your Honor,

22   I wasn't sure if the Government was going to use any.  I was

23   talking about our own.  We will have experts that opine on the

24   classification system and the issues as they apply to what has

25   or has not been deemed classified in this case.  Also, when we

1   get to the issues of whether or not something is or is not NDI

2   and where else it might exist, the information in this case

3   being in other forms and other places.

4            Again, just under the concepts of putting the

5   Government on notice of what questions or areas of testimony

6   might implicate classified information on the cautious side in

7   the two cases about which I have been defense counsel in the

8   past, in which we've gotten to the issue of CIPA 5, both of

9   which has required earlier identification of experts that

10  might implicate CIPA 5.  And, by the way, when we get back to

11  Jencks, that's where that idea came from, it wasn't one of my

12  invention, it was one of the Court's invention.

13           So, I don't know what they're using, but there's

14  the possibility that experts will notice now that we have the

15  discovery and we can make those decisions -- would implicate

16  CIPA 5 issues.

17           THE COURT:  I think in the past we have also held

18  off on doing anything in terms of setting out experts.  Should

19  we address this at this point?

20           MR. HARVEY:  Your Honor, I responded with regard to

21  potential expert testimony the Government may be using, and

22  we're not anticipating that they're going to be testifying

23  about classified information.  Obviously the defense is aware

24  of classified information that it intends to elicit at trial,

25  then, yeah, that should be part of the Section 5 -- should be

1    part of the Section 5 next Monday.  Because if they're aware

2    of that now, that should be included in their Section 5.

3              Classified testimony that they anticipate eliciting

4    from whatever witness, whether it's a fact witness or an

5    expert witness.  My response is with regard to the

6    Government's expert obligations and how that may impact the

7    CIPA process.  We don't think it will, but there's nothing

8    stopping -- in fact, our understanding of the next Section 5

9    should be every piece of classified information the defense

10   has either received from the Government or is aware of

11   themselves, should be part of that third CIPA Section 5

12   notice, which is due on Monday.

13             Just a side point, I mean, the defense here seems

14   to want to re-litigate what the Court already decided last

15   month with regard to what's due next Monday.  We do think it's

16   important that the defense provide us with a comprehensive

17   CIPA notice, including both the redone section two -- a second

18   CIPA Section 5 notice and the third one next Monday.

19             THE COURT:  Mr. Lowell, I have to say that I would

20   have assumed in the third CIPA 5, that you would -- any

21   information you had at the present time, that you would have

22   put it into that one, and anyone that you did after the third

23   would be whatever additional discovery that you're getting.

24             So, I don't understand why -- if you already know

25   what expert witnesses, et cetera, you're going to be using,

1    why you would not be filing --

2              MR. LOWELL:  We don't know, Your Honor.  Now, that

3    addresses a separate issue, which you've already alluded to.

4    And I'm not asking you to take your violin out, but I am

5    asking everybody to understand.  When you say that we should

6    be redoubling our efforts and doubling up, again, don't take

7    your violin out, I know what I got ourselves into.

8              This is not a case that we have the resources of

9    the Government.  We have two people, for all intents and

10   purposes, working on this.  You will have noticed from the

11   Court pleadings that the Government has added their sixth

12   prosecutor to the case on the pleadings and on the merits.  We

13   don't have those resources.  We're not getting paid.  That's

14   not why I'm saying it.  I've taken the case because I've taken

15   the case.  But the reality is I can't bring people in, I have

16   to deal with the resources I have.  To provide effective

17   assistance --

18             THE COURT:  I'm not going to disadvantage your

19   client.  You've done a very neat job and I fully understand.

20   I'm not going to do orders that will disadvantage your client,

21   so be assured of that, Mr. Lowell.  I understand your point.

22   So, let's get back to what can reasonably be done, and I think

23   that there's a couple of things.

24             MR. LOWELL:  One thing I wanted to reason -- the

25   reason I made that clarification, Judge, is because while I

1   have concepts of what expert testimony would be relevant and

2   helpful and admissible, I'm in the process now of actually

3   getting those people to say, yes, and see whether they can

4   testify.

5            And, in addition, among other reasons, Your Honor,

6   I don't have the resources to pay expert witnesses.  So, not

7   only do I have to find people, I have to find people who are

8   willing to do it.  And, therefore, it's not just theoretical

9   that I have somebody who can tell the jury about the

10  classification system from the defense point of view, but I

11  need to identify the actual human being, and that's why I have

12  this glitch as to when I can get that done.

13           So, the Government says, you should have had this

14  done by now and should have had it ready to go by next week.

15  That's just not likely, it's impossible.  I was going to

16  suggest, that among other things, I know how much we're

17  holding on to the total schedule, I had an idea about that

18  that would not -- it should not be too terribly upsetting, but

19  probably doesn't allow for everything to happen quite by

20  April 28th.

21           That said, I know we have to figure out who the

22  experts are.  We have to do a 5 about them.  We're in the

23  process of identifying those experts right now.  We're going

24  as fast as we can.

25           THE COURT:  I have to say, this is a case

1   from 2010.  Okay?  And to some degree, I mean, I've left the

2   two sides to work out the discovery because you would have a

3   much better idea of how to do this in terms of getting it

4   together.  So, there's been a long time working on all these

5   discoveries and getting it back and forth, et cetera.  And

6   there is a fair amount of stuff to do before that.

7            And what I am not going to set is a schedule, one,

8   that nobody can meet, because that's not useful.  But, also,

9   I'm not going to set a schedule that doesn't double up some of

10  this information in terms of how it needs to be done.  It may

11  wind up it's a little more work for me in terms of looking at

12  stuff, but that's what I'm going to do.  I'm not moving the

13  trial date unless it becomes impossible.

14            MR. LOWELL:  Judge, I understand the back and

15  forth.  And, again, I'm not rising to the podium in order --

16  because I think that a delay for its own sake is to the

17  advantage of Mr. Kim.  It's not.  And I will point out, I know

18  that this is a 2010 case to start off with, and my limited

19  experience of the two cases that I brought this far, that's

20  not unusual in a CIPA case.

21            THE COURT:  I realize that they take time or I

22  would have been jumping up and down on both of you earlier

23  than this.  But I do think that at this point, in the terms of

24  the amount of information we have, there needs to be a closer

25  look at what needs to be done in terms of setting dates or not

1    setting a date when you come back for a date out.

2              So, in that vein, then let me do a couple of

3    things.  In terms of the experts, we have not set dates, I

4    believe, for either reports or identifying them.  Okay.  I

5    want that said.  I'm going to ask that you propose such that

6    you can do in a report -- you can propose -- I won't make you

7    do it off the top of your head today.  But I want you to --

8    identification of experts and the reports, in such a way that

9    that basically gets taken care of in a CIPA 5 in a reasonable

10   way on both sides.

11             And I would see this as coming up -- I, frankly,

12   was going to make your -- a shorter time period for the motion

13   to compel.  I'll hang on to that until I talk to you in the

14   closed hearing portion, but it seems to me that in terms of

15   the reports that at this point, at least in terms of

16   identification and the reports themselves, they need to be

17   done early on before we get into some of the other dates for

18   the CIPA 5 and CIPA 6, understanding what you've indicated as

19   your limitations.

20             MR. LOWELL:  And I thought we would set those

21   dates, Your Honor, and I'd be glad to sit immediately with the

22   Government and do that.  I didn't realize that you had come to

23   the bench today with a lot of dates on a piece of paper in

24   front of you.

25             THE COURT:  It seemed to me that if we did it by

32

1   each coming in each date and setting dates forward, there's no

2   way this case is going to get tried this year.  So, I'm not

3   going to have that happen.  So, that's why I started looking

4   at the things that we need to do, which are quite a few

5   things.  And it depends, obviously, on the amount of -- the

6   motion to compel to come in, how many more CIPA 5s you have,

7   which means these need CIPA 6, the hearings, et cetera, apart

8   from the typical things that are done within a trial.

9          So, I came up with particular dates so that this

10  would work, understanding that they might or might not, but at

11  least there's a proposal from which we can work from.  So,

12  I will get back to you in terms of when you need to file the

13  status report regarding dates in terms of the experts.

14         The Jencks material, I had a date for -- which I'll

15  get to -- a status date, and my inclination would be -- which

16  would be in February.  At that point I will set a date by

17  which they need to provide it.

18         MR. LOWELL:  Judge, on the Jencks, I only had one

19  sentence if you'd let me -- the first is -- there's always the

20  issue between the Government and the defense as to how --

21  sooner than the statute requires, which is actually after the

22  witness testifies that Jencks should be provided in a white

23  collar-ish case without concerns of witness intimidation or

24  flight or obstruction.  Sometimes it's many months ahead,

25  sometimes it's many weeks ahead.  It's rarely just days ahead.

1          THE COURT:  I have to say to you that I haven't had

2     a trial where -- they may have volunteered to give some

3     information at an earlier point, but three months in advance,

4     the Court ordering Jencks material?  I've never seen it.

5          MR. LOWELL:  I wouldn't necessarily say three

6     months.  The add-on factor about the CIPA part, Your Honor, is

7     simply this, despite what Mr. Harvey said.  Every 302 that has

8     been provided to us is classified, every single one.  I don't

9     know if they have grand jury material that will be part of

10    that CIPA material or not, but I assume if it is, following

11    what they've done in the 302s, it's likely to be classified.

12         Consequently, if they're saying that anybody

13    they're going to call, they're going to identify whatever the

14    statements are and declassify them ahead of time or --

15         THE COURT:  -- or not use the witness.  That's what

16    I understood.  I'm going to hold them to that.

17         MR. LOWELL:  But then we're the ones who have the

18    onus of stating what might be.  So, as long as we hold out the

19    fact that we can't address that until they do give us their

20    Jencks material --

21         THE COURT:  Not exactly.  It may be, it seems to

22    me, the compromise that they have offered is as far as -- the

23    way I interpret it is, is that maybe you won't get it two

24    months in advance, but what their idea is is that you will get

25    it in advance and we'll work out when that is.  You know,

1    instead of going through a whole CIPA 5 thing, they will

2    either declassify it or not call the witness.  So, that is

3    their shorter time period, that's the return on it.

4         MR. LOWELL:  And then we'd just be in the normal

5    tug of war of Jencks at that point as to when that should be.

6    If there's not going to be a CIPA part of it, that's fine, I

7    just want the Court to remember that we have 302s already and

8    they're all classified.

9         THE COURT:  Right.  Which presumably is what you're

10   working on in terms of moving forward, and they're going to

11   have to make their decision as to -- and I will discuss it in

12   February when we have a few more things taken care of in here.

13   At the next status, I will discuss at that point doing it and

14   they will have to have the compromise that if it's not -- if

15   it's closer to the trial date, then where there would not be

16   easily done as a CIPA 5, then they need to fish or cut bait on

17   the witness.

18        Okay.  But I wouldn't -- they have made their

19   comment and I'll keep that in mind.

20        MR. LOWELL:  And when we get to the issue of

21   whatever your suggested schedule is, with my having complained

22   already, I have some other things that I can at least inform

23   the Court about -- other things that I think, from whatever

24   experience I have, need to be addressed before we ever get to

25   that actual trial date.

```
1              THE COURT:  Let me go through -- let me finish the
2     CIPA 5 and 6 discussions because we have those outstanding,
3     and then we can bring up some other issues.  In part, around a
4     schedule that I've identified some things that you definitely
5     will need to do in terms of time points when I think they
6     potentially should be done, and you can tell me what
7     additional things that you want.
8              So, in the CIPA 5 things at this point what we have
9     is -- the second CIPA will be January 13th and whatever
10    objections, if there are going to be any, hopefully none, will
11    be the January 24th.  My suggestion would be if you've got,
12    Mr. Lowell -- in the order that I issued relating to the
13    adequacy of the notice, I raised some points that you might
14    need to consider.
15             It seems to me that in the -- what you may view as,
16    from your perspective, requiring additional briefing or
17    additional arguments from your part.  You can certainly drop a
18    footnote to identify what it is so we have some sense of
19    whether this is something that needs additional attention or
20    whether you need to do it within the period so it is not -- I
21    don't get it back and the Government claiming or objecting to
22    it and then you're responding to this in that context, so we
23    have some idea what it is that you think I've invited you to
24    bring up.
25             I still think that the third CIPA 5 should be filed
```

1    on the dates that we've talked about.  I'm going to make an

2    assumption, if I turn out to be wrong, it will be on my head

3    and it will work for me.  But I'm going to make an assumption

4    that what you're going to do in the second one, having spent a

5    lot of time trying to give you as much advice as I could, that

6    you're going to -- it will comply on the second and it will

7    work for the third.  If it doesn't, then we can figure it out.

8            I want them at the same time so we have some idea

9    of the universe of it.  In terms of the third, it would seem

10   to me that it should be whatever you know now.  I don't want

11   to have it -- if there's going to be an additional one, a

12   fourth one, that should be strictly whatever you get

13   additionally beyond what we've talked about, which I would

14   hope would be a fairly narrow group of information based on

15   what I've seen as it winnows down.  It shouldn't be an

16   enormous amount of information that would go into it.  But we

17   can deal with it when we come back the next time.  Let's deal

18   with the first two -- the second and the third CIPA filing.

19           I will hold off on setting other dates for this.

20   I think your idea of doing the Touhy subpoena and starting

21   that process is probably useful, since some of it involves not

22   only the prosecutor but other agencies, and they're going to

23   need to talk to those other agencies to make this work and to

24   work out a system to do it, which I know in other cases they

25   have.  So, the earlier you let them know, they go talk to the

1  agencies and we work out a smooth system for doing this.  So,

2  the faster you get that done, the better we'll be.  I'll leave

3  at this point the dates that I have.

4  So, let's move to CIPA 6 for discussion.  The first

5  CIPA 6A filings having been completed and as far as I can tell

6  they're ready for a hearing.  The next question is what

7  happens with the CIPA 5, 2 and 3, as to whether that's

8  actually going to have objections.  I have a suggestion -- it

9  assumes that we will not have objections or if they are, they

10 are going to be pretty small.  That may not happen.  If he's

11 talking about -- Mr. Lowell is talking about more CIPA 5s,

12 then we're obviously talking about more CIPA 6s -- 6A is in

13 response to that.

14 But I would see a goal, unless we wind up into a

15 lot of problems with objections, I have some dates which would

16 be February 3rd, February 14th and February 21st for replies.

17 MR. HARVEY:  Your Honor, the Government has a

18 counterproposal.

19 THE COURT:  I'm sorry.

20 MR. HARVEY:  We have a counterproposal.

21 THE COURT:  All right.

22 MR. HARVEY:  With regard to the CIPA 6s.

23 THE COURT:  What's that?

24 MR. HARVEY:  We propose coming back the last week

25 of January for a status to set those dates.  It's just nearly

1    impossible for the Government to set a briefing schedule when

2    we haven't seen what the defendant is going to notice.  We

3    don't know --

4              THE COURT:  I would prefer -- I would prefer to

5    have -- this assumes -- this schedule assumes that there are

6    going to be minimal or no objections to the adequacy of the

7    notice.  If that does not happen, this schedule is not going

8    to work.  And I guarantee you as soon as it comes in and I

9    have the second and third and I take a look at them, I will

10   bring you back in and we will have a different discussion.

11             But from my feeling, I'm going to make an

12   assumption that Mr. Lowell is going to do what I set out as

13   best I could and we will not have any problems with it.  If we

14   do, we'll come back and revisit it.  But I don't want to come

15   back in January, which will then have later dates in February,

16   and that's the problem.  That's why I'm pushing for dates now.

17   They may need to be adjusted based on some realities that

18   occur.  But every time I bring you back, the dates -- those

19   dates that are passed are gone and nothing is done during that

20   time.

21             So, to wait until the end of January means we do

22   much later dates in February, in all likelihood, to do this.

23   So, I'd rather set the dates today.  If it turns out -- that

24   it either -- there are no objections or they're pretty quickly

25   resolved.  If it doesn't work that way, these dates will not

1    be workable.  And that's certainly correct.  My own feeling

2    was to be able to move towards -- in order to be able to have

3    the CIPA 8 hearings, there needs to be a break in there.

4    CIPA 6C, and then having some hearings and being ready.

5    I wanted to do them in March.

6              MR. HARVEY:  You wanted to do the hearings in

7    March?

8              THE COURT:  Right.

9              MR. HARVEY:  I hear the Court, obviously, we can --

10   the Court's strong --

11             THE COURT:  No, I want to set in goals out here, I

12   mean, the realities may be that, you know, if everybody makes

13   the best effort, we'll see if we can stick to them.  If things

14   come up, and I understand that, then I'll adjust them.  I'm

15   not going to set a date -- it's not in my interest to -- for

16   several reasons -- to set it up so that I don't get adequate

17   pleadings from either the defense or the Government, and both

18   of you are entitled to a fair opportunity to present your case

19   and prepare.

20             MR. HARVEY:  Right.

21             THE COURT:  On the other hand, from the Court's

22   perspective, I am not interested in getting perhaps not the

23   best pleadings, which makes it much more difficult, frankly,

24   for me to make intelligent and informed and expeditious

25   rulings, because the worse the pleadings are the harder it is,

1    frankly, to make any rulings.  So, I understand all of these

2    dynamics and I'm not going to push it so that it can't be

3    done.

4            But I think I'd like to set some goals out, which

5    we may wind up having to adjust.  But in order to have the

6    April 28th, which may or may not work as a date, we need to

7    have some dates moving this and identifying things that need

8    to be done.  If we need to push it back, which I'm not

9    prepared to say today, then it should be an incremental and

10   something much shorter than basically opening it and making it

11   open-ended, such that the trial date wouldn't be the 28th but

12   we'll figure out when it is.  I'm not doing that.

13           So, understanding all the balancing interests, this

14   would be my feeling.

15           MR. HARVEY:  Just one footnote to that, just so the

16   Court is clear about the Government's position.  The issue is

17   not only the objections or potential objections, it's, as you

18   know, putting together the 6A motion.  Are first one was some

19   60 pages long and involved multiple declarations --

20           THE COURT:  A lot of work.

21           MR. HARVEY:  -- lengthy coordination with the IC,

22   which cannot even begin if we don't know what it is that

23   they're going to be requesting.  And that takes a lot of time.

24   So, I suspect if we come back and say we need additional time,

25   that that's going to be the reason because we just -- it

1    just --

2           THE COURT:  And it may be.  And if you make a

3    reasonable request and it's obvious from what has come back

4    that you need it, I will give it to you.  But I think we need

5    to have some goals.  If we don't have any goals in here and

6    it's just sort of an open-ended thing, this is not going to

7    get done in a timely way.

8           So, as I said, in terms of the discovery issues, I

9    left a pretty free hand in terms of you all working it out.

10   It made sense and I think it was a good way of going to the

11   extent that you basically had discussions, you conferred, and

12   you moved things along, and I agree.  We're now at the time

13   point where there's some additional proceedings that need to

14   be done, and I'm leaving my calendar open.  So, this isn't

15   working around my calendar.

16          I'm, at this point, in fairly good shape in terms

17   of other criminal cases, and civil cases also get bumped by

18   criminal anyway.  So, I will make this work within my calendar

19   in terms of doing it and getting rulings back as quickly as

20   possible as well.  But I need to have at least some goals so

21   that you're at least looking at this.  I will go through all

22   of these so that you at the end will have some idea of why I'm

23   setting this up.

24          We can consider adjustments, and that's why I'm

25   giving you dates, and you can then tell me why you think they

1   need to be juggled around in a different way.  And I'm willing

2   to give some thought to that.  But if it's all one thing, then

3   comes the next and then comes the next.  You have to get the

4   discovery done in order to do the CIPA 5, then you need the

5   CIPA 5 done in order to do the CIPA 6.  6A has to have

6   hearings, and then you need a period of time, and then a 6C.

7   And then you've got all the other issues that have been

8   raised.

9        So, there needs to be sort of a procedure, which

10  may need some fine-tuning along the way, and I'm willing to

11  consider it.  These are not set in stone, but they have to at

12  least have some goal in order to be able to move it to the

13  dates that I think we need to be at.

14       MR. HARVEY:  Your Honor, can I just ask the Court

15  for the dates again that the Court is proposing?

16       THE COURT:  Sure.  February 3rd, February 14th for

17  response, February 21st for any reply.

18       MR. HARVEY:  Okay.  We would ask February 7th.  If

19  I have any chance of getting this done, given my prior

20  experience.

21       THE COURT:  All right.  And I'll make it

22  February 18th.  I'll add the four days up to it -- that still

23  puts you in the 25th.  Okay.  Let me -- at the end -- I'm

24  doing this incrementally, and I'm setting up dates so that you

25  understand why I've set the dates that I have when you begin

1   to look at what we need to actually do in terms of these

2   other, because certain things have to be completed before we

3   can do the rest.  So, I'll hear at the end whether this is all

4   going to work.

5           MR. HARVEY:  Just one other point to be addressed

6   here.  If we do file objections because we believe the notices

7   are --

8           THE COURT:  I'm not precluding you from filing what

9   you think you do -- I'm not in any way indicating that you

10  can't, you know, do that, or because you have to do this

11  quickly you shouldn't file if you think it's appropriate.

12          MR. HARVEY:  If we do file objections, that may

13  also impact the schedule.

14          THE COURT:  Of course, I understand this.

15          MR. HARVEY:  Okay.

16          THE COURT:  Let me go through the rest of this

17  before everybody leaps up.  I know you're all very aggravated

18  about the dates and are not spending a lot of time on anything

19  else.  Let me indicate to you, at least, sort of a progression

20  here so you have some sense of why I'm doing it this way.

21          You've proposed, and I frankly probably might

22  tighten up a bit on the motion to compel.  We've set out what

23  I would like, which -- on the second and third CIPA.  I'm

24  going to wait until we see whether there's a third -- a fourth

25  one.  I've set out the dates for the 6A on the second and

1   third, and it may be that we need to separate them out

2   depending on what actually gets filed as the third.

3           You certainly know pretty much from the second what

4   it is that -- and I put in my order, you know, they said they

5   were going to use every single one of what it is, and I won't

6   put it on the record.  And you should assume, unless they've

7   told you otherwise, that that's what they're doing.  I'm

8   taking them at their word.

9           When they say they do things in pleadings, I'm

10  assuming that that's what they're going to do, unless they

11  tell you something different.  So, you've known for some time,

12  well before the holiday, what they were planning on and

13  insisting on doing, even though you thought that perhaps they

14  could have cut it down.  They indicated they weren't, they

15  haven't, you're stuck with it.

16          So, there has been some notice as to what they

17  wanted and what I let through on the CIPA 2 -- the second one.

18  Now, the third one will be news.  But you at least have some

19  of the information on the second one.  I was focusing on them

20  in March because the -- if you have the hearings in the early

21  March period, you then have to have the hearings under C --

22  6C.  You have to have a briefing and you have to have a

23  briefing and/or hearing, depending on how it works out.

24          You're going to need that information, it seems to

25  me, to do a lot of the information about the witnesses and

1    some of the motions in limine because it will depend on what

2    evidence actually is going to be used.  And if you don't know

3    the evidence, I don't know how you're going to be able to do

4    some of the other work.  If you push it too close into April,

5    it's not going to be possible to do it.

6            Then let me move on to what I would view as the

7    status hearings.  I was going to propose around this date.

8    February 28th is the next one, unless we need one earlier.  If

9    it comes in -- the material comes in on CIPA 5, I see a

10   problem, I'll bring you back.  February 28th.  By then I would

11   have ruled on the motions to compel.  I would hopefully have

12   ruled on the CIPA 5, second and third, which at that point

13   everything should be briefed.

14           So, by February I would have had to have done that.

15   Hopefully by then we would have them all ready for a hearing.

16   We would have to set some dates in advance doing witness

17   lists, Jencks, exhibit lists, not that we're going to do them

18   immediately, but anticipating what needs to be done in

19   addition -- jury instructions.

20           The March -- I would be inclined not to have a

21   separate status, but if we're having the hearings both on 6A

22   and 6C, the 6C hearings would be the briefing -- excuse me,

23   I made a mistake here.  The 6A hearings would be in March.

24   The briefings on 6C would be near the end of March.  And the

25   hearings on 6C would be in early April, which I had looked at

1   as the CIPA 6A is March 3rd to the 7th.  I don't know how long

2   they're going to be, but starting during that time period.

3           The briefings, March 17th on 6C, March 24th,

4   March 28th.  The hearings on the 6C would be April 7th to the

5   11th.  I'd bring you back on the 16th for the evidentiary

6   hearing on the statements and whatever other things we need to

7   do.  And a pretrial on the 23rd with the trial date on the

8   28th.

9           Now, you can see if you're going to get there that

10  you have to have these kinds of dates in order to both have

11  you file and have these -- it's obviously going to be a lot of

12  work for me in terms of getting all of these things done.  But

13  these are the proposals that I have.  I'd like to start with

14  the ones that we can definitely set today.  The others I'll

15  set tentatively so you'll know they're out there.  It's

16  obviously going to depend on some initial things coming in.

17          The motion to compel on the discovery and, frankly,

18  what comes in on the CIPA 5, the second and third, as to

19  whether any of the -- how the other dates will work.  But they

20  are dates that I think are workable.  It requires not a lot of

21  glitches.  If there are glitches, these are not going to work,

22  which means that we'd have to move them back.  But in order to

23  get to the April 28th date, I see this as the -- what you'd

24  have to do.

25          No, have I discussed everything that needs to be

1    done?  Of course not.  There's lot of extra stuff in the trial

2    that you need to do.  Mr. Lowell?

3              MR. LOWELL:  Thank you.  I have a list that I have

4    prepared coming today.  One thing that I -- at least, again,

5    it's been whatever limited experience I have and I want to

6    point out to the Court that -- I'll address all of your

7    points, but as to the 6A part of it -- the way that I think we

8    suggested and you were amenable to, that it seems is the most

9    expeditious way that I've seen it done.

10             After there's a 6A hearing, it's usually the

11   parties that do their best to come up with a 6A order.  It has

12   to be done, obviously, in a SCIF, and it has to be done at a

13   level of specificity that will not only give credence to what

14   you've done, but provide the Government the ability to seek an

15   appeal should they want to.

16             THE COURT:  Right.  If they appeal, it's

17   obviously -- this is gone.

18             MR. LOWELL:  I didn't mean that if they would

19   appeal, but --

20             THE COURT:  No, no, I understand it.  Assumes

21   certain things that may not happen or that may happen.  Okay.

22             MR. LOWELL:  The task of writing a 6A order, you

23   will not be surprised, given everything else that's happened

24   in this case, is itself a little bit task intensive.  In the

25   last -- it's not a day's event.  It has taken more than a few

48

1   days, because it's every part of whatever document in a

2   fashion that will explain the Court's reasoning and decision.

3           And depending on how many documents there are or

4   how many parts of documents, it can be fairly intricate, as

5   also will be the case for a 6C order.  So, what you didn't

6   factor in, which I did in coming here and trying to figure out

7   whether April 28th was going to work or not, was considered

8   that one of the periods that have to be included is the period

9   to write, meet and confer, and submit to you a 6A order.  And

10  to do the same for a 6C order.

11          THE COURT:  Right.  And there's some room in here

12  for doing that.

13          MR. LOWELL:  So, I can raise those issues with you.

14          THE COURT:  Okay.

15          MR. LOWELL:  Other than that, you have touched on

16  all the issues.  But my list, Your Honor, would be in the

17  order that you've now put it, for things that have to be

18  scheduled.  And I have a suggestion as to how we might inform

19  the Court on its schedule, is that we have the resolution of

20  the CIPA 2, based on the submissions on the 13th of January.

21  The additional --

22          THE COURT:  You're talking about the CIPA 5s?

23          MR. LOWELL:  CIPA 5.  I'm sorry, I said CIPA 2.

24  Yeah, second and third CIPA 5s.  And what I'll call the

25  clean-up one.  Whatever else is resolved, being motions to

 1    compel or experts or whatever.  Then there will be -- what

 2    you've asked us to do is to identify a date for the

 3    identification of experts, and I don't know whether you'll

 4    schedule, if the Government wants, a separate set of Daubert

 5    hearings or combine that with right before trial; but there's

 6    that issue.

 7            THE COURT:  Well, I have in here dates -- what I

 8    would view as evidentiary hearings, which presumably -- we

 9    have one that is statements, and I would see if we did wind up

10    with Daubert hearing, doing them much closer to trial.  So, I

11    put that sort of the middle of April -- a couple of weeks in

12    there, understanding that there are religious holidays for

13    various people.

14            MR. LOWELL:  I was going to point out that for me

15    there is a significant gap.

16            THE COURT:  I tried to choose dates that don't fit

17    that.

18            MR. LOWELL:  A significant gap.  So, other than

19    that, you have at least put on the list the motions to compel,

20    the motion to suppress that is still outstanding.  I think

21    you've raised, because it would fit into the category of

22    evidentiary hearings or motions, perhaps, litigation over the

23    subpoenas of Government witnesses.

24            The 6A hearings, the 6A order, the 6C hearings, the

25    6C order, I know we don't factor in the possibility that one

50

1    of those orders will necessitate an appeal or something.

2            THE COURT:  Well, if it does, then obviously --

3    that's what I said, there are a lot of events that are

4    floating out there that can totally skew this schedule.  I'm

5    assuming it will move smoothly, which from experience is

6    unlikely, but, just in general, as being a judge this long.

7    But it certainly is worthwhile setting out goals, and then

8    there is room here to move some stuff around.

9            MR. LOWELL:  That said, I think you have all the

10   moving pieces.  I think they don't find themselves amenable

11   exactly to the schedule that you set out, which I know is

12   created because there's that date of April 28th from which you

13   then went backwards for everything that went.

14           With that in mind, I agree that we should set out

15   the first dates for sure, and you already have.  Whether it's

16   sticking to the January 13th for the next CIPA 5, and you've

17   already set out the three dates for the 6A motion that's going

18   to come from the second and third CIPA 5.

19           What the Government and I had suggested, I don't

20   know what the Court's schedule was.  We were thinking of a

21   status conference at the end of January before that.  Now that

22   I see your moving part, we might suggest to you a schedule.

23           THE COURT:  We could have one in January.  I mean,

24   I, frankly, was trying to not bring you back without having

25   ruled on the motions to compel, the second and third CIPA 5.

1        MR. LOWELL:  And I agree with that.  The only

2   reason I was going to suggest it, but it's only based on your

3   having given us dates now, it seems to me the only efficacy of

4   a status conference at a date earlier than you have one, which

5   is February 28th, would be if we would get together and take

6   your dates and either say, yes, we can do it, Your Honor, or

7   this is how we would suggest we tweak them.  But that would be

8   the only reason, it seems to me, to bring us back before you

9   on the 28th, but I didn't think -- that's not a bad -- it's

10  not a bad idea from my point of view.  I don't know how the

11  Government feels about that.

12        You've given us dates and you've given us tasks.

13  It's a lot of absorb.  You know my skepticism about our

14  ability to do it, although I know you have the power to say:

15  Do it.

16        THE COURT:  Well, as I said, it's a balancing act

17  in terms of doing it.  If for some reason we cannot do the

18  trial on the 28th, it will be -- we will have moved it back

19  for a particular reason.

20        MR. LOWELL:  I understand.

21        THE COURT:  It will be a shorter pushing back,

22  frankly, than I think if we just sort of leave it open-ended

23  without choosing it.  So, I'd work from that and then,

24  obviously, if things occur that make other events not being

25  able to be done during the schedule, it may impact ultimately

1    what needs to be done.

2            But I tried to come up with the order in which they

3    need to be done in order to -- you need certain things in

4    order for the other things to happen.  There is room in here

5    for adding the orders and some of the others -- they're within

6    the dates that are here.  It also is going to depend, frankly,

7    on how long the CIPA 6 hearings are.

8            MR. LOWELL:  Right.

9            THE COURT:  And that I have no clue at this point.

10   I don't know whether the parties do, but I just left a week.

11   And for whatever period it is, we will do nothing.  I'm not

12   going to have anything else on my calendar but that, which

13   requires preparation on your part, but it also requires

14   preparation on mine so I can make rulings.

15           MR. LOWELL:  Judge, with all that schedule in mind,

16   the last two points I'd make is -- I certainly understand what

17   you're trying to achieve.  When I came to court today, I came

18   to court today thinking that if we got to the moment we're at,

19   I would have said:  Judge, I'm not so sure about April 28th,

20   but I am sure about some date in June.

21           So, I'm just saying that on the record because I

22   thought the additional three months is probably what it would

23   take if you went backwards in a way that accommodated

24   everybody's ability, putting aside that we go sideways on an

25   appeal.  That said, there is one more thing that we have on

[object Object]

```
 1   our task list, which the Government has never responded to,

 2   and it's time consuming, and especially because, again, I'm

 3   going to try to give this case as many resources as we can,

 4   but it's not unlimited.

 5            And, that is, in October we made a request of the

 6   Government, they had said this is the way to proceed in one of

 7   our requests, to have interviews that they have to chaperone

 8   with the covert operatives that are in the various

 9   discoveries.  And I don't know how many that will entail,

10   partially that's the give and take of who is going to be

11   witnesses, and it had a little bit to do with finding out how

12   many hits we had, et cetera.

13            But that said, I think those are the very time

14   consuming because we have to be chaperoned to some extent, we

15   haven't worked out the protocol for the chaperone.  It

16   probably has to be SCIF interviews, and it probably has to

17   happen where they exist.  And it just has to be factored in.

18            THE COURT:  Okay.  Well, obviously there are things

19   that are, from my perspective, I can look at it and

20   anticipate, there are things from your perspective that I have

21   not included that need to be considered.  My suggestion would

22   be that I've set out some, initially firmly, and others I've

23   given you what I would like it to be.

24            I think the February 28th I'd like to leave anyway

25   as a date.  We may do something earlier, but let's leave that
```

1    as a date.  And I would suggest that after the 24th, is that

2    you give a report that would set out -- we'd have a better

3    idea how much of a hassle -- if this is going to work -- as to

4    whether the other dates that I have for the CIPA 6 are

5    actually going to be workable, depending on whether I've been

6    able to take a look at it.  And you can give me at that point,

7    in the report, your issues relating to experts.  So, that

8    would give you a fair amount of time to come up with dates for

9    identifying them and also dates for the reports themselves.

10              I'm perfectly happy to put in a potential January

11   date if it looks like we really have to skew the schedule that

12   I've proposed.  But if we don't, I'd prefer to try to get as

13   much done and bring you back in February and get whatever has

14   been fully briefed done, particularly the motions to compel

15   and at least the rulings on the CIPA 5, second and third, so

16   that if that's done we can then look at whether the rest of

17   the schedule is actually going to be a workable one.

18              MR. HARVEY:  Your Honor, I think that we should set

19   a schedule for a status in the end of January -- it's easy

20   enough to cancel it.  But I'm just concerned that the

21   ambitious schedule the Court has set -- that we are going to

22   be in a better position at the end of January.  I think

23   realistically to figure out how much time all of this is going

24   to take.

25              THE COURT:  Well, I think one of the things that --

55

1    in terms of the -- we'll know if we set -- we'll have some

2    sense in terms of the January date.  I would prefer not to

3    have a whole new schedule for you all before we've actually

4    done some of the materials that may push things back.  In

5    other words, I want to discuss the motion to compel in terms

6    of working something on that, and I also want to see what

7    happens with the CIPA 5, second and third, and whether there's

8    going to be a fourth, and how extensive that's going to be.

9            If those are out of the way, relatively easily,

10   then the next question is whether how much -- what the other

11   dates are and whether they're workable.  I don't want to start

12   now and just decide this isn't going to work and we're going

13   to put a whole set of other dates.  Because I don't think,

14   other than tweaking it slightly here and there, if you're

15   going to do an April 28th date, that there is a lot of room to

16   push this completely off.

17           If it turns out we need to because people need to

18   be prepared and for reasons that -- because of the complexity

19   it winds up having to be moved, I prefer to do it then and not

20   do it now and make an assumption that they can't be done with

21   these dates because I think there's at least a shot at doing

22   them.  If it turns out that it can't be, then we'll need to

23   move --

24           MR. HARVEY:  Right.

25           THE COURT:  The longer we put this out, the harder

```
 1   it is for me to keep my calendar completely vacant for you
 2   all.  June also has the problem of witnesses, which you should
 3   start talking because once the summer starts witnesses are not
 4   always available.  You should find out what their schedules
 5   are.  Hopefully you've talked to them about the April dates.
 6            MR. HARVEY:  Your Honor, my only request was for --
 7   just to have an end of January status.  I think that that --
 8            THE COURT:  I agree, but I'm pointing a couple
 9   things out to you.  I don't want you to go into this with the
10   idea we come back in January and just drop all the dates.
11   That's not the mindset I want you to have.
12            MR. HARVEY:  I understand.
13            THE COURT:  Which is why I'm not proposing that you
14   come back, as Mr. Lowell had said, with a proposal about what
15   you think the dates should be.  I prefer to start with the
16   dates, the initial ones that we've got, and see if it works.
17   If it doesn't work, then I'll incrementally work around fixing
18   the dates, as opposed to scrapping it to start with.  Okay?
19            So, I'll set a January date.  I'll set a date by
20   which you'll have gotten the -- we will have the motions to --
21   motions to compel I think need to be done faster, but I'll
22   talk to you in the closed hearing why I think so, assuming I
23   understood what the issues -- the issues that really are left.
24            But certainly we have the dates for the CIPA 5, the
25   second and third, and a lot will depend on how much of an
```

1   issue that is as to how it's going to impact 6.  And it may be

2   that at that point we'll need to have a discussion about it.

3   So, I would be willing to set a hearing in January.  I would

4   still do the February 28th one, though, if we can -- no matter

5   what happens with the rest of it, even if we tweak some stuff.

6   Some of these things need to be done by then.

7              So, are people available on February 28th, so I at

8   least get you to -- it would be in the afternoon as we have

9   been doing these?

10             MR. HARVEY:  The Government is available.

11             MR. LOWELL:  Can I --

12             THE COURT:  Sure.  No problem.

13             MR. LOWELL:  The 28th is a good one, Your Honor.

14   And I don't know if the Court was available on the date that

15   the Government -- that we had suggested for the end of January

16   status, which was the 29th.

17             THE COURT:  What date was it, I didn't hear it.

18             MR. LOWELL:  January 29th, Your Honor.

19             THE COURT:  No, the 29th is fine, I can do that.

20   Am I correct?  Let me just double check, I don't have it on my

21   paper calendar.   I'll do this -- 1:00 o'clock seems to be the

22   prime time that works in terms of everybody's schedule.  Is

23   that okay, Dorothy?

24             COURTROOM DEPUTY:  I'm checking.

25             THE COURT:  Okay.  And I would ask the joint report

1  be January 28th at noon, which at that point you'll know what

2  has been filed or not filed in terms of the CIPA 5, second and

3  third, so we'll have some idea how complex they are.  So, if

4  you've got issues about it -- and certainly the expert and any

5  other dates that I have not or events that I have not

6  discussed, we should talk then.  As I said, the 28th --

7  February 28th, what I'd like to do is -- have ruled on the

8  motions to compel and the CIPA 5, second and third ones.  And

9  I will be able -- if this works in here, hopefully be able to

10  at least look at it if I can't rule on the CIPA -- you will

11  file the CIPA A2 and 3, and there may be issues as to whether

12  or not they're ready for a hearing or not.  They may have

13  issues with them.

14        And at that time I'll set a whole series of other

15  dates that need to be done for whatever -- for the trial --

16  that will just anticipate the typical things or not typical

17  that are beyond the CIPA procedures.  To set out dates so

18  you're at least on notice of when these things need to be

19  taken a look at.

20        MR. HARVEY:  Your Honor, the one date I didn't get

21  is the date for the -- I guess you said the joint report.

22        THE COURT:  Joint report -- if you do it

23  January 28th at noon.  It is the day before, but you will have

24  filed whatever -- if there are going to be objections on the

25  24th, which is Friday.  So, you'll have some sense of how this

1   is going to work, and I will as well.

2           MR. HARVEY:  Okay.

3           THE COURT:  As to whether there's additional

4   issues.  So, let me just run through and see if there's -- I

5   would like you to at least put on the calendar so you don't

6   wind up putting something else in there -- we may need to move

7   them, but the April 16th date for evidentiary hearings, which

8   would be -- you need to check with witnesses, which is

9   probably the reason I would do it, which would be the

10  statements.  We'll see where we are with Daubert, but at least

11  get that out of the way.  If we can do that in the morning so

12  that -- say at 10:00, would that work?

13          MR. LOWELL:  Your Honor, you were cognizant of the

14  fact that that week is a religious observance week for me and

15  I don't know who else, but for me for sure.

16          THE COURT:  I forgot that.

17          MR. LOWELL:  It begins on Monday the 14th and lasts

18  through that week.

19          THE COURT:  So it --

20          MR. LOWELL:  I will not be gone for all of it but

21  the first three days of which --

22          THE COURT:  I don't want to interfere with that,

23  which day would you be able to do it?

24          MR. LOWELL:  I could theoretically be around on --

25  well, that's another weird thing is that when I'm available, I

1    don't know what the Court's availability is on Friday the

2    18th, which my calendar indicates is Good Friday.

3              THE COURT:  That's not the first time my spring

4    break has been screwed, but go ahead.

5              MR. HARVEY:  That would work for the Government.

6    April 18th, Your Honor.

7              THE COURT:  Okay.  Then we'll set it tentatively at

8    10:00.  We may need to move these around, but at least if

9    we've got some dates, you can talk to witnesses and if they're

10   not available then we know we need to put another date in

11   there.  Okay.  Let me just make sure there's nothing else.  I

12   think that's it.  I think unless there's anything else in the

13   public portion, I just wanted to have a brief discussion with

14   you on the motion to compel.

15             MR. HARVEY:  Just one side point, for the record,

16   Your Honor, concerning an issue raised by Mr. Lowell

17   concerning possible interviews of covert employees.  You know,

18   as far as we -- we're under the understanding that -- I mean,

19   we received a single e-mail, it was tentative, and we've heard

20   nothing else about it.  So, we have not received a list of

21   individuals they want to interview.  We have agreed to try and

22   facilitate that process, but that's certainly going to take

23   some time.  So, I'd just state that for the record.

24             THE COURT:  So, the earlier you can give them a

25   list --

1          MR. LOWELL:   I didn't realize that they needed

2     more than a single e-mail that said:  When can we start doing

3     the interview.  But I will make it clearer the next time.

4          THE COURT:  Well, I think it would help if you

5     indicated agencies and/or people so they know who to talk to.

6          MR. LOWELL:  Part of that, Judge, we did based on

7     needing to see, for example, as I indicated before, where the

8     hits would be because that would be the good place to start,

9     but I will talk to the Government and start a priority list.

10          THE COURT:  All right.  Then I think that's it.

11     So, if there's nothing else, let me excuse people at this

12     point from the open courtroom.  We have a discussion -- a

13     closed hearing of classified material.

14     END OF PROCEEDINGS AT 2:35 P.M.

15                    C E R T I F I C A T E

16          I, Lisa M. Foradori, RPR, FCRR, certify that

17     the foregoing is a correct transcript from the record of

18     proceedings in the above-titled matter.

19

20

21

22     Date:_____          _____

23                              Lisa M. Foradori, RPR, FCRR

24

25

**1**

**10** [1] 24/23
**10-225** [2] 1/4 3/2
**10:00** [2] 59/12 60/8
**10th** [1] 1/20
**11th** [1] 46/5
**1200** [1] 2/4
**12:00** [1] 14/12
**12th** [1] 15/2
**13th** [14] 15/17 16/1 16/19 16/23 17/2 18/24 19/1 19/2 19/12 20/9 20/10 35/9 48/20 50/16
**14th** [3] 37/16 42/16 59/17
**16th** [2] 46/5 59/7
**17th** [1] 46/3
**18th** [3] 42/22 60/2 60/6
**1:00 o'clock** [1] 57/21
**1:12** [1] 1/6

**2**

**20001** [1] 2/11
**20004** [1] 1/21
**20036** [1] 2/5
**2010** [2] 30/1 30/18
**2014** [1] 1/5
**2015** [1] 22/2
**202** [4] 1/17 1/21 2/5 2/11
**20530** [1] 1/21
**2113** [1] 1/21
**21st** [2] 37/16 42/17
**225** [2] 1/4 3/2
**22nd** [1] 14/25
**233-2113** [1] 1/21
**23rd** [1] 46/7
**24th** [6] 15/19 16/2 35/11 46/3 54/1 58/25
**252-7810** [1] 1/17
**25th** [1] 42/23
**28th** [25] 19/17 19/24 29/20 40/6 40/11 45/8 45/10 46/4 46/8 46/23 48/7 50/12 51/5 51/9 51/18 52/19 53/24 55/15 57/4 57/7 57/13 58/1 58/6 58/7 58/23
**29th** [3] 57/16 57/18 57/19
**2:35 P.M** [1] 61/14

**3**

**300** [1] 2/4
**302** [1] 33/7
**302s** [3] 23/12 33/11 34/7
**3269** [1] 2/11
**333** [1] 2/10
**354-3269** [2] 2/11
**3rd** [3] 37/16 42/16 46/1

**5**

**555** [1] 1/16
**5605** [1] 2/5
**5s** [8] 20/7 20/12 20/18 20/20 32/6 37/11 48/22 48/24
**5th** [1] 15/2

**6**

**60** [1] 40/19
**600** [1] 1/20
**6706** [1] 2/10
**6A** [18] 19/22 20/8 37/5 37/12 40/18 42/5 43/25 45/21 45/23 46/1 47/7 47/10 47/11 47/22 48/9 49/24 49/24 50/17
**6C** [13] 39/4 42/6 44/22 45/22 45/22 45/24 45/25 46/3 46/4 48/5 48/10 49/24 49/25
**6s** [2] 37/12 37/22

**7**

**7810** [1] 1/17
**7th** [3] 42/18 46/1 46/4

**9**

**974-5605** [1] 2/5

**A**

**a 2010** [1] 30/18
**A2** [1] 58/11
**ABBE** [2] 2/2 3/11
**ability** [3] 47/14 51/14 52/24
**able** [17] 5/23 15/13 18/17 19/16 19/20 22/6 22/11 22/13 39/2 39/2 42/12 45/3 51/25 54/6 58/9 58/9 59/23
**about** [43] 3/15 4/3 4/4 4/16 6/10 6/12 8/16 8/18 12/1 14/11 16/5 21/4 24/4 25/2 25/17 25/18 25/19 25/23 26/7 26/23 29/9 29/17 29/22 33/6 34/23 36/1 36/13 37/11 37/11 37/12 40/16 43/18 44/25 48/22 51/11 51/13 52/19 52/20 56/5 56/14 57/2 58/4 60/20
**above** [1] 61/18
**above-titled** [1] 61/18
**absolutely** [1] 8/12
**absorb** [1] 51/13
**accelerate** [1] 24/21
**accelerated** [1] 23/7
**acceptable** [2] 10/17 14/5
**accommodated** [1] 52/23
**accompanies** [1] 18/25
**according** [1] 18/16
**achieve** [1] 52/17
**acknowledge** [1] 24/23
**act** [6] 23/8 23/25 24/8 24/9 24/21 51/16
**actual** [7] 5/13 5/24 6/3 7/13 9/25 29/11 34/25
**actually** [13] 7/7 13/3 15/11 17/19 29/2 32/21 37/8 43/1 44/2 45/2 54/5 54/17 55/3
**actually going** [1] 37/8
**add** [2] 33/6 42/22
**add-on** [1] 33/6
**added** [1] 28/11
**adding** [1] 52/5
**addition** [3] 20/15 29/5 45/19
**additional** [18] 4/21 12/10 16/1 17/22 20/12 24/17 24/20 27/23 35/7 35/16 35/17 35/19 36/11 40/24 41/13 48/21 52/22 59/3
**additionally** [1] 36/13
**address** [9] 12/17 19/9 19/25 20/5 21/5 21/19 26/19 33/19 47/6
**addressed** [3] 21/6 34/24 43/5
**addresses** [1] 28/3
**adequacy** [3] 15/6 35/13 38/6
**adequate** [2] 15/20 39/16
**adjust** [2] 13/14 40/5
**adjusted** [1] 38/17
**adjustments** [1] 41/24
**admissible** [1] 29/2
**advance** [4] 33/3 33/24 33/25 45/16
**advantage** [1] 30/17
**advice** [1] 36/5
**advisory** [1] 18/11
**affidavits** [1] 21/13
**after** [17] 5/25 6/8 6/13 6/17 6/19 7/2 7/9 8/9 11/11 18/24 19/5 19/14 21/9 27/22 32/21 47/10 54/1
**afternoon** [2] 3/5 57/8
**afterwards** [1] 6/23
**again** [11] 7/8 9/7 9/20 24/22 25/11 26/4 28/6 30/15 42/15 47/4 53/2

**agencies** [4] 36/23 36/23 37/1 61/5
**aggravated** [1] 43/17
**agree** [5] 5/23 41/12 50/14 51/1 56/8
**agreed** [4] 5/4 5/5 7/18 60/21
**agreement** [1] 6/4
**agrees** [1] 6/2
**ahead** [7] 21/15 23/20 32/24 32/25 32/25 33/14 60/4
**aided** [1] 2/24
**alert** [1] 3/23
**all** [42] 3/10 3/14 4/19 6/5 6/17 7/5 7/5 7/14 10/23 15/18 19/7 19/8 19/23 20/1 23/12 25/7 28/9 30/4 34/8 37/21 38/22 40/1 40/13 41/9 41/21 42/2 42/7 42/21 43/3 43/17 45/15 46/12 47/6 48/16 50/9 52/15 54/23 55/3 56/2 56/10 59/20 61/10
**allow** [2] 11/6 29/19
**allowed** [1] 8/20
**alluded** [1] 28/3
**along** [3] 17/10 41/12 42/10
**already** [8] 23/2 27/14 27/24 28/3 34/7 34/22 50/15 50/17
**also** [18] 3/21 5/12 5/24 12/24 13/9 15/25 16/10 25/25 26/17 30/8 41/17 43/13 48/5 52/6 52/13 54/9 55/6 56/2
**although** [1] 51/14
**always** [2] 32/19 56/4
**am** [5] 28/4 30/7 39/22 52/20 57/20
**ambitious** [1] 54/21
**amenable** [3] 10/5 47/8 50/10
**AMERICA** [2] 1/3 3/3
**among** [1] 21/23 29/5 29/16
**amount** [5] 30/6 30/24 32/5 36/16 54/8
**and/or** [3] 16/15 44/23 61/5
**another** [8] 8/14 10/22 11/8 16/21 59/25 60/10
**anticipate** [5] 11/21 13/18 27/3 53/20 58/16
**anticipating** [2] 26/22 45/18
**anxious** [1] 19/19
**any** [22] 6/6 7/10 9/8 9/16 11/21 12/10 12/10 15/10 15/18 24/15 24/16 25/22 27/20 35/10 38/13 40/1 41/5 42/17 42/19 43/9 46/19 58/4
**anybody** [1] 33/12
**anyone** [1] 27/22
**anything** [6] 17/23 21/2 26/18 43/18 52/12 60/12
**anyway** [3] 9/17 41/18 53/24
**apart** [1] 32/7
**appeal** [5] 47/15 47/16 47/19 50/1 52/25
**APPEARANCES** [1] 1/13
**apply** [1] 25/24
**appreciate** [1] 9/21
**appreciated** [2] 16/16 18/18
**approach** [1] 23/8
**appropriate** [2] 10/23 43/11
**April** [16] 19/17 19/24 29/20 40/6 45/4 45/25 46/4 46/23 48/7 49/11 50/12 52/19 55/15 56/5 59/7 60/6
**April 16th** [1] 59/7
**April 18th** [1] 60/6
**April 28th** [9] 19/17 19/24 29/20 40/6 46/23 48/7 50/12 52/19 55/15
**April 7th** [1] 46/4
**are** [69]
**area** [1] 7/25
**areas** [1] 26/5
**aren't** [1] 12/21
**arguments** [4] 15/10 16/11 17/23 35/17
**around** [10] 25/2 25/2 35/3 41/15 42/1 45/7 50/8 56/17 59/24 60/8
**as** [93]

**A**

aside [2]  12/16 52/24
ask [6]  16/25 18/14 31/5 42/14 42/18
57/25
asked [3]  16/19 19/4 49/2
asking [9]  6/23 15/7 16/25 17/7 18/11
18/24 19/12 28/4 28/5
assistance [1]  28/17
assume [3]  11/4 33/10 44/6
assumed [1]  27/20
assumes [5]  11/15 37/9 38/5 38/5 47/20
assuming [7]  6/20 9/12 11/19 25/18
44/10 50/5 56/22
assumption [4]  36/2 36/3 38/12 55/20
assured [1]  28/21
attention [1]  35/19
Attorney's [1]  1/15 3/7
availability [1]  60/1
available [7]  12/11 56/4 57/7 57/10
57/14 59/25 60/10
available to [1]  12/11
Avenue [2]  2/4 2/10
aware [3]  26/23 27/1 27/10

**B**

back [35]  11/5 15/4 16/14 16/15 16/15
16/25 16/25 26/10 28/22 30/5 30/14
31/1 32/12 35/21 36/17 37/24 38/10
38/14 38/15 38/18 40/8 40/24 41/3
41/19 45/10 46/5 46/22 50/24 51/8
51/18 51/21 54/13 55/4 56/10 56/14
backwards [2]  50/13 52/23
bad [2]  51/9 51/10
bait [1]  34/16
balancing [2]  40/13 51/16
based [13]  8/2 12/11 16/10 16/11 20/14
20/15 21/1 22/3 36/14 38/17 48/20 51/2
61/6
basically [4]  10/22 31/9 40/10 41/11
basket [1]  23/15
batch [6]  16/6 16/18 17/5 17/14 19/2
19/5
batches [1]  21/18
be [226]
because [39]  6/5 7/10 8/19 9/3 9/16
10/10 11/12 11/20 14/23 15/21 17/19
23/22 24/15 27/1 28/14 28/25 30/2 30/8
30/16 35/2 39/25 40/25 43/2 43/6 43/10
44/20 45/1 48/1 49/21 50/12 52/21 53/2
53/14 55/13 55/17 55/18 55/21 56/3
61/8
becomes [2]  8/25 30/13
BEDNAR [1]  1/15
been [28]  3/17 5/23 6/10 6/11 7/20 11/8
11/8 12/7 14/4 15/12 23/2 23/15 23/24
25/1 25/25 26/7 30/4 30/22 33/8 37/5
42/7 44/16 47/5 54/5 54/14 57/9 58/2
60/4
before [30]  1/10 5/25 6/7 6/17 6/18 6/22
7/2 7/9 8/9 9/21 10/6 13/13 17/5 17/8
19/21 19/23 20/5 24/23 30/6 31/17
34/24 43/2 43/17 44/12 49/5 50/21 51/8
55/3 58/23 61/7
begin [2]  40/22 42/25
begins [1]  59/17
being [11]  7/25 8/10 8/17 11/22 25/13
26/3 29/11 39/4 48/25 50/6 51/24
believe [10]  8/10 14/15 20/7 23/5 24/7
24/15 24/20 25/5 31/4 43/6
bench [1]  31/23
best [11]  17/2 17/10 17/17 17/15 18/8
18/12 18/13 38/13 39/13 39/23 47/11
better [5]  19/11 30/3 37/2 54/2 54/22

between [7]  6/10 8/1 8/11 14/24 16/22
17/7 32/20
beyond [3]  24/21 36/13 58/17
big [1]  12/16
bit [4]  13/13 43/22 47/24 53/11
both [11]  5/5 5/11 17/15 22/8 26/8 27/17
30/22 31/10 37/17 45/21 46/10
break [2]  39/3 60/4
brief [3]  16/15 18/25 60/13
briefed [3]  15/11 45/13 54/14
briefing [8]  18/2 18/14 22/18 35/16 38/1
44/22 44/23 45/22
briefings [2]  45/24 46/3
bring [10]  28/15 35/3 35/24 38/10 38/18
45/10 46/5 50/24 51/8 54/13
brought [1]  30/19
bumped [1]  41/17
bunch [1]  7/24
burdensomeness [1]  16/12

**C**

calendar [8]  41/14 41/15 41/18 52/12
56/1 57/21 59/5 60/2
call [12]  3/23 5/20 7/9 8/13 9/13 11/20
17/13 21/24 23/6 33/13 34/2 48/24
called [3]  5/16 5/18 13/11
calling [5]  7/21 8/8 14/18 20/23 22/24
calls [2]  7/6 24/9
came [4]  26/11 32/9 52/17 52/17
can [51]  10/22 11/2 13/18 15/21 15/24
16/19 18/8 21/24 22/17 22/25 26/15
28/22 29/3 29/9 29/12 29/24 30/8 31/6
31/6 32/11 34/22 35/3 35/6 35/17 36/7
36/17 37/5 39/9 39/13 41/24 41/25
42/14 43/3 46/9 46/14 48/4 48/13 50/4
51/6 52/14 53/3 53/19 54/6 54/16 57/4
57/11 57/19 59/11 60/9 60/24 61/2
can't [10]  11/24 23/19 23/21 28/15
33/19 40/2 43/10 55/20 55/22 58/10
cancel [1]  54/20
canceled [1]  15/16
cannot [2]  40/22 51/17
care [2]  31/9 34/12
careful [1]  24/13
carefully [1]  11/2
case [34]  3/2 4/23 5/1 5/25 8/9 9/7 12/14
13/5 19/19 21/20 23/9 24/1 24/6 24/15
24/18 24/22 25/2 25/6 25/16 25/25 26/2
28/8 28/12 28/14 28/15 29/25 30/18
30/20 32/22 33/9 33/18 47/24 48/5 53/3
cases [5]  26/7 30/19 36/24 41/17 41/17
category [2]  12/25 49/21
cautious [1]  26/6
certain [4]  4/25 43/2 47/21 52/3
certainly [12]  12/22 20/3 23/7 24/25
35/17 39/1 44/3 50/7 52/16 56/24 58/4
60/22
certify [1]  61/16
cetera [7]  8/4 16/14 21/13 27/25 30/5
32/7 53/12
Chadbourne [2]  2/3 3/12
chance [3]  11/1 12/6 42/19
chances [1]  22/14
chaperone [2]  53/7 53/15
chaperoned [1]  53/14
check [2]  57/20 59/8
checking [1]  57/24
chief [1]  24/1
choice [1]  24/2
choose [1]  49/16
choosing [1]  51/23
CIPA [96]
CIPA/Jencks [1]  24/6
civil [1]  41/17

claiming [1]  35/21
claims [1]  15/10
clarification [1]  28/25
classification [4]  23/23 24/2 25/24 29/10
classified [14]  3/19 4/18 21/23 25/17
25/25 26/6 26/23 26/24 27/3 27/9 33/8
33/11 34/8 61/13
clean [1]  48/25
clean-up [1]  48/25
clear [3]  4/5 22/20 40/16
clearer [1]  61/3
client [2]  28/19 28/20
close [3]  16/17 22/17 45/4
closed [6]  3/21 3/24 10/24 31/14 56/2
61/13
closer [3]  30/24 34/15 49/10
clue [1]  52/9
cognizant [1]  59/13
collar [1]  32/23
collar-ish [1]  32/23
colleagues [2]  12/5 14/17
COLLEEN [1]  1/10
COLUMBIA [1]  1/1
combine [1]  49/5
combined [1]  21/25
come [26]  3/25 9/15 9/22 9/23 10/2 10/3
16/14 16/15 16/15 16/25 21/4 31/1
31/22 32/6 36/17 38/14 38/14 39/14
40/24 41/3 47/11 50/18 52/2 54/8 56/10
56/14
comes [6]  38/8 42/3 42/3 45/9 45/9
46/18
coming [9]  9/16 16/22 16/25 31/11 32/1
37/24 46/16 47/4 48/6
comment [1]  34/19
commercial [1]  5/2
communication [1]  8/14
compared [1]  4/23
compel [27]  10/24 11/3 11/13 11/20
12/4 12/21 13/16 14/2 14/6 14/19 14/25
19/21 20/14 21/3 31/13 32/6 43/22
45/11 46/17 49/1 49/19 50/25 54/14
55/5 56/21 58/8 60/14
complained [1]  34/21
complete [1]  4/14
completed [3]  15/5 37/5 43/2
completely [2]  55/16 56/1
completing [1]  16/17
complex [1]  58/3
complexity [1]  55/18
compliant [1]  3/16
comply [1]  36/6
comprehensive [1]  27/16
compressed [1]  22/4
compromise [2]  33/22 34/14
computer [1]  2/24
computer-aided [1]  2/24
conceding [1]  10/13
concept [1]  12/23
concepts [2]  26/4 29/1
concerned [1]  54/20
concerning [3]  7/11 60/16 60/17
concerns [1]  32/23
confer [3]  11/6 14/13 48/9
conference [2]  50/21 51/4
conferred [2]  14/3 41/11
confronted [1]  13/7
confusion [2]  6/10 6/11
connection [1]  8/22
Consequently [1]  33/12
consider [5]  10/10 12/13 35/14 41/24
42/11
consideration [1]  13/7
considered [4]  23/11 23/25 48/7 53/21

C    Case 1:10-cr-00225-CKK    Document 29    Filed 11/12/14    Page 64 of 71

**C**

**Constitution** [1] 2/10
**consuming** [2] 53/2 53/14
**contemplating** [1] 20/18
**contest** [1] 8/13
**context** [2] 12/25 35/22
**continuing** [1] 19/6
**controlled** [1] 23/23
**convenient** [1] 4/14
**conversation** [1] 9/20
**coordination** [1] 40/21
**correct** [3] 39/1 57/20 61/17
**correctly** [1] 22/13
**correspondence** [2] 11/4 12/5
**could** [16] 8/15 9/23 10/2 12/22 13/10
15/6 16/10 16/14 16/14 21/16 25/5 36/5
38/13 44/14 50/23 59/24
**couldn't** [1] 18/25
**counsel** [5] 3/3 3/13 9/23 20/3 26/7
**count** [1] 11/22
**counterespionage** [2] 1/19 3/8
**counterproposal** [2] 37/18 37/20
**couple** [8] 10/25 11/2 11/9 14/21 28/23
31/2 49/11 56/8
**course** [4] 16/21 22/1 43/14 47/1
**court** [32] 1/1 2/9 2/9 3/13 3/20 3/22 6/6
9/23 11/15 14/5 16/5 17/1 18/15 21/14
21/15 24/13 24/22 27/14 28/11 33/4
34/7 34/23 39/9 40/16 42/14 44/15 47/6
48/19 52/17 52/18 54/21 57/14
**Court's** [8] 18/18 24/24 26/12 39/10
39/21 48/2 50/20 60/1
**Courthouse** [1] 2/10
**courtroom** [2] 11/3 61/12
**covert** [2] 53/8 60/17
**COYLE** [2] 2/3 3/12
**CR** [1] 1/4
**create** [4] 12/17 13/10 15/21 21/22
**created** [2] 8/2 20/14 50/12
**creating** [1] 17/19
**credence** [1] 47/13
**criminal** [3] 3/2 41/17 41/18
**criteria** [1] 8/2
**crossed** [1] 4/7
**cursory** [1] 11/7
**CURTIS** [2] 1/18 3/7
**cut** [10] 5/25 6/8 6/13 6/17 6/19 7/2 7/9
8/10 34/16 44/14
**cut-off** [8] 5/25 6/8 6/13 6/17 6/19 7/2
7/9 8/10

**D**

**date** [39] 5/19 6/16 8/21 11/15 19/12
20/6 30/13 31/1 31/1 32/1 32/14 32/15
32/16 34/15 34/25 39/15 40/6 40/11
45/7 46/7 46/23 49/2 50/12 51/4 52/20
53/25 54/1 54/11 55/2 55/15 56/19
56/19 57/14 57/17 58/20 58/21 59/7
60/10 61/22
**dates** [61] 11/5 13/2 13/15 16/2 16/4
30/25 31/3 31/17 31/21 31/23 32/1 32/9
32/13 36/1 36/19 37/3 37/15 37/25
38/15 38/16 38/18 38/19 38/22 38/23
38/25 40/7 41/25 42/13 42/15 42/24
42/25 43/18 43/25 45/16 46/10 46/19
46/20 49/7 49/16 50/15 50/17 51/3 51/6
51/12 52/6 54/4 54/8 54/9 55/11 55/13
55/21 56/5 56/10 56/15 56/16 56/18
56/24 58/5 58/15 60/4 60/9
**Daubert** [3] 49/4 49/10 59/10
**day** [3] 10/22 58/23 59/23
**day's** [1] 47/25
**days** [5] 24/23 32/25 42/22 48/1 59/21

**DC** [5] 1/5 1/16 1/24 2/5 2/11
**deal** [6] 13/9 22/4 23/10 28/16 36/17
36/17
**dealt** [1] 13/21
**DEBORAH** [2] 1/18 3/7
**decide** [2] 10/4 55/12
**decided** [3] 9/13 22/23 27/14
**decision** [3] 23/23 34/11 48/2
**decisions** [1] 26/15
**declarations** [1] 40/19
**declassified** [1] 24/3
**declassify** [2] 33/14 34/2
**deemed** [2] 13/6 25/25
**defendant** [5] 1/7 2/2 15/16 16/11 38/2
**defendant's** [2] 6/4 7/3
**defendants** [1] 10/11
**defense** [24] 4/24 4/25 5/5 5/12 6/13
6/15 7/12 10/4 20/3 21/10 21/24 23/10
24/11 24/11 24/14 24/20 26/7 26/23
27/9 27/13 27/16 29/10 32/20 39/17
**defined** [1] 8/9
**definitely** [2] 35/4 46/14
**degree** [1] 30/1
**degrees** [1] 25/4
**delay** [1] 30/16
**denied** [1] 12/13
**Department** [2] 1/19 3/8
**depend** [4] 45/1 46/16 52/6 56/25
**depending** [7] 12/5 21/4 21/21 44/2
44/23 48/3 54/5
**depends** [1] 32/5
**despite** [1] 33/7
**detailed** [1] 9/14
**determination** [3] 6/6 7/10 9/9
**determine** [3] 8/3 9/2 17/11
**did** [12] 7/18 11/1 16/23 17/18 18/10
18/12 19/1 27/22 31/25 48/6 49/9 61/6
**didn't** [10] 3/16 17/17 18/16 31/22 47/18
48/5 51/9 57/17 58/20 61/1
**difference** [1] 3/22
**different** [3] 38/10 42/1 44/11
**differently** [1] 7/17
**difficult** [1] 39/23
**difficulties** [1] 15/22
**disadvantage** [2] 28/18 28/20
**disagreed** [1] 5/14
**disagreement** [3] 7/17 7/25 8/7
**discoveries** [2] 30/5 53/9
**discovery** [24] 4/6 9/16 9/17 9/24 10/7
10/15 12/3 12/7 12/11 12/22 12/23
13/16 20/13 20/21 21/18 22/10 23/9
24/21 26/15 27/23 30/2 41/8 42/4 46/17
**discuss** [6] 12/9 19/18 22/22 34/1
34/13 55/5
**discussed** [3] 22/5 46/25 58/6
**discussion** [6] 11/11 37/4 38/10 57/2
60/13 61/12
**discussions** [2] 35/2 41/11
**dispute** [1] 10/16
**DISTRICT** [3] 1/1 1/1 1/11
**do** [108]
**document** [1] 48/1
**documents** [3] 11/21 48/3 48/4
**does** [6] 7/4 10/19 23/6 23/8 38/7 50/2
**doesn't** [9] 4/17 4/18 9/3 9/12 29/19
30/9 36/7 38/25 56/17
**doing** [22] 9/17 15/25 22/14 22/15 22/18
26/18 34/13 36/20 37/1 40/12 41/19
42/24 43/20 44/7 44/13 45/16 48/12
49/10 51/17 55/21 57/9 60/21
**don't** [51] 9/2 9/16 10/9 10/9 11/12
12/10 14/20 18/2 18/14 19/2 19/8 23/3
23/3 23/4 24/23 26/13 27/7 27/24 28/2
28/6 28/13 29/6 33/8 35/21 36/10 38/3

**DC** [5] 38/14 39/16 40/23 41/5 45/2 45/3 46/1
49/3 49/16 49/25 50/10 50/19 51/10
52/10 53/9 54/12 55/13 56/9
57/14 57/20 59/5 59/15 59/22 60/1
**done** [43] 11/14 12/10 17/8 22/13 28/19
28/22 29/12 29/14 30/10 30/25 31/7
32/8 33/11 34/16 35/6 37/2 38/9 40/3
40/8 41/7 41/14 42/4 42/5 42/19 45/14
45/18 46/12 47/1 47/9 47/12 47/12
47/14 51/25 52/1 52/3 54/13 54/14
54/16 55/4 55/20 56/21 57/6 58/15
**door** [1] 13/18
**Dorothy** [1] 57/23
**double** [3] 22/7 30/9 57/20
**doubling** [1] 28/6
**doubt** [1] 21/20
**down** [7] 5/10 6/7 8/12 10/22 30/22
36/15 44/14
**drop** [2] 35/17 56/10
**due** [2] 27/12 27/15
**duration** [2] 5/19 6/16
**during** [3] 38/19 46/2 51/25
**dynamics** [1] 40/2

**E**

**e-mail** [2] 60/19 61/2
**each** [3] 22/9 32/1 32/1
**earlier** [10] 13/21 25/10 26/9 30/22 33/3
36/25 45/8 51/4 53/25 60/24
**early** [4] 22/24 31/17 44/20 45/25
**easier** [1] 3/24
**easily** [2] 34/16 55/9
**easy** [1] 54/19
**EDELSTEIN** [2] 1/18 3/7
**effect** [1] 19/12
**effective** [1] 28/16
**effectively** [2] 24/11 24/20
**efficacy** [1] 51/3
**effort** [5] 17/2 17/11 18/12 18/13 39/13
**efforts** [2] 17/15 28/6
**either** [8] 10/15 24/3 27/10 31/4 34/2
38/24 39/17 51/6
**elicit** [1] 26/24
**eliciting** [1] 27/3
**else** [13] 8/15 10/16 26/2 43/19 47/23
48/25 52/12 59/6 59/15 60/11 60/12
60/20 61/11
**employee** [7] 5/6 5/12 6/22 6/24 7/13
7/19 8/21
**employees** [2] 5/1 60/17
**end** [14] 3/21 14/22 21/10 38/21 41/22
42/23 43/3 45/24 50/21 54/19 54/22
56/7 57/15 61/14
**ended** [3] 40/11 41/6 51/22
**ends** [1] 21/21
**enormous** [1] 36/16
**enough** [2] 22/12 54/20
**entail** [2] 20/8 53/9
**entitled** [1] 39/18
**envision** [1] 23/1
**especially** [1] 53/2
**ESQUIRE** [8] 1/14 1/14 1/15 1/18 1/18
2/2 2/2 2/3
**essentially** [1] 23/22
**et** [7] 8/4 16/14 21/13 27/25 30/5 32/7
53/12
**even** [5] 3/18 17/18 40/22 44/13 57/5
**event** [1] 47/25
**events** [3] 50/3 51/24 58/5
**eventualities** [1] 19/9
**ever** [1] 34/24
**every** [6] 27/9 33/7 33/8 38/18 44/5 48/1
**everybody** [6] 11/15 17/11 19/1 28/5
39/12 43/17

## E

**everybody's [2]** 52/24 57/22
**everything [6]** 15/10 29/19 45/13 46/25 47/23 50/13
**evidence [2]** 45/2 45/3
**evidentiary [4]** 46/5 49/8 49/22 59/7
**exactly [3]** 13/5 33/21 50/11
**example [4]** 8/20 8/23 12/18 61/7
**exceptions [1]** 12/8
**excuse [2]** 45/22 61/11
**exhibit [1]** 45/17
**exist [2]** 26/2 53/17
**expecting [1]** 25/13
**expeditious [2]** 39/24 47/9
**experience [5]** 30/19 34/24 42/20 47/5 50/5
**expert [12]** 21/7 21/19 25/8 25/12 25/21 26/21 27/5 27/6 27/25 29/1 29/6 58/4
**experts [14]** 25/16 25/20 25/23 26/9 26/14 26/18 29/22 29/23 31/3 31/8 32/13 49/1 49/3 54/7
**explain [3]** 18/19 20/7 48/2
**explaining [1]** 21/13
**explains [1]** 19/11
**extensive [1]** 16/9
**extent [2]** 41/11 53/14
**extra [1]** 47/1

## F

**facilitate [1]** 60/22
**fact [4]** 27/4 27/8 33/19 59/14
**factor [4]** 8/17 33/6 48/6 49/25
**factored [1]** 53/17
**factors [1]** 8/13
**fair [3]** 30/6 39/18 54/8
**fairly [3]** 30/14 41/16 48/4
**fall [1]** 12/24
**far [4]** 30/19 33/22 37/5 60/18
**fashion [2]** 16/15 48/2
**fast [1]** 29/24
**faster [2]** 37/2 56/21
**FCRR [3]** 2/9 61/16 61/23
**February [23]** 15/2 15/2 32/16 34/12 37/16 37/16 37/16 38/15 38/22 42/16 42/16 42/17 42/18 42/22 45/8 45/10 45/14 51/5 53/24 54/13 57/4 57/7 58/7
**February 12th [1]** 15/2
**February 14th [2]** 37/16 42/16
**February 18th [1]** 42/22
**February 21st [2]** 37/16 42/17
**February 28th [7]** 45/8 45/10 51/5 53/24 57/4 57/7 58/7
**February 3rd [2]** 37/16 42/16
**February 5th [1]** 15/2
**February 7th [1]** 42/18
**federal [1]** 14/24
**feeling [3]** 38/11 39/1 40/14
**feels [1]** 51/11
**few [3]** 32/4 34/12 47/25
**figure [7]** 10/12 22/5 29/21 36/7 40/12 48/6 54/23
**figuring [1]** 13/15
**file [16]** 9/7 11/24 14/6 14/25 15/1 15/2 16/1 17/5 18/24 19/5 32/12 43/6 43/11 43/12 46/11 58/11
**filed [9]** 3/16 11/22 16/1 16/18 35/25 44/2 58/2 58/2 58/24
**filed whatever [1]** 58/24
**filing [5]** 11/6 15/7 28/1 36/18 43/8
**filings [2]** 25/14 37/5
**filter [4]** 4/4 4/23 7/21 8/2
**find [6]** 8/20 8/20 29/7 29/7 50/10 56/4
**finding [1]** 53/11

**fine [4]** 10/18 34/6 47/10 57/19
**fine-tuning [1]** 42/10
**finish [1]** 35/1
**firmly [1]** 53/22
**first [9]** 8/11 15/5 32/19 36/18 37/4 40/18 50/15 59/21 60/3
**fish [1]** 34/16
**fit [2]** 49/16 49/21
**fixed [1]** 17/4
**fixing [1]** 56/17
**flight [1]** 32/24
**floating [1]** 50/4
**Floor [1]** 1/20
**focus [1]** 15/24
**focusing [1]** 44/19
**follow [2]** 12/12 13/19
**follow-up [2]** 12/12 13/19
**following [1]** 33/10
**follows [1]** 20/21
**footnote [2]** 18/18 40/15
**Foradori [2]** 2/9 61/16 61/23
**foregoing [1]** 61/17
**forgot [1]** 59/16
**former [1]** 21/11
**forms [1]** 26/3
**forth [3]** 11/5 30/5 30/15
**forward [4]** 4/5 4/11 32/1 34/10
**four [1]** 42/22
**fourth [5]** 1/16 21/1 36/12 43/24 55/8
**frame [1]** 7/17
**frankly [10]** 22/14 22/20 31/11 39/23 40/1 43/21 46/17 50/24 51/22 52/6
**free [1]** 41/9
**frequently [1]** 24/8
**Friday [3]** 58/25 60/1 60/2
**from [1]** 15/8 31/24
**from 2010 [1]** 30/1
**front [2]** 15/8 31/24
**fully [3]** 15/11 28/19 54/14
**further [5]** 9/16 9/21 10/7 17/7 18/14
**future [1]** 4/2

## G

**gap [2]** 49/15 49/18
**general [1]** 50/6
**generalize [1]** 23/16
**generally [1]** 22/23
**get [42]** 8/7 8/11 10/13 11/1 12/19 13/8 13/20 15/4 15/8 16/23 17/12 18/16 21/2 21/4 22/13 26/1 26/10 28/22 29/12 31/17 32/2 32/12 32/15 33/23 33/24 34/20 34/24 35/21 36/12 37/2 39/16 41/7 41/17 42/3 46/9 46/23 51/5 54/12 54/13 57/8 58/20 59/11
**gets [3]** 20/6 31/9 44/2
**getting [13]** 6/21 9/14 15/12 20/4 27/23 28/13 29/3 30/3 30/5 39/22 41/19 42/19 46/12
**give [19]** 9/7 9/18 12/1 14/20 18/12 18/13 19/1 33/2 33/19 36/5 41/4 42/2 47/13 53/3 53/10 54/2 54/6 54/8 60/24
**given [15]** 15/20 20/3 22/12 22/17 23/8 42/19 47/23 51/3 51/12 51/12 53/23
**giving [5]** 15/6 17/11 41/25
**glad [1]** 31/21
**glitch [1]** 29/12
**glitches [2]** 46/21 46/21
**go [15]** 4/3 16/19 19/17 21/15 23/20 25/8 29/14 35/1 36/16 36/25 41/21 43/16 52/24 56/9 60/4
**goal [2]** 37/14 42/12
**goals [6]** 39/11 40/4 41/5 41/5 41/20 50/7
**going [115]**
**gone [3]** 38/19 47/17 59/20

**good [8]** 3/5 3/11 22/4 41/10 41/16 57/13 59/2 61/8
**got [13]** 14/12 15/14 15/24 17/16 18/23 19/8 28/7 35/11 42/7 52/18 56/16 58/4 60/9
**gotten [3]** 19/15 26/8 56/20
**government [68]**
**Government's [6]** 6/15 12/18 16/9 23/8 27/6 40/16
**grand [1]** 33/9
**great [2]** 17/16 23/10
**group [1]** 36/14
**grouping [1]** 13/17
**guarantee [1]** 38/8
**guess [1]** 58/21
**guessing [1]** 18/2
**guidance [4]** 15/6 15/21 16/9 17/7

## H

**had [25]** 3/17 3/20 11/5 12/6 14/13 15/15 16/11 25/4 27/21 29/13 29/14 29/17 31/22 32/14 32/18 33/1 41/11 45/14 45/25 50/19 53/6 53/11 53/12 56/14 57/15
**half [1]** 25/6
**Hampshire [1]** 2/4
**hand [3]** 10/10 39/21 41/9
**hang [1]** 31/13
**happen [8]** 29/19 32/3 37/10 38/7 47/21 47/21 52/4 53/17
**happened [1]** 47/23
**happens [4]** 13/3 37/7 55/7 57/5
**happy [1]** 54/10
**harder [2]** 39/25 55/25
**HARVEY [3]** 1/14 3/5 33/7
**has [33]** 4/23 5/22 9/20 9/21 12/7 14/3 14/14 20/21 23/2 23/15 23/24 25/24 25/25 26/9 27/10 28/11 33/7 37/17 41/3 42/5 44/16 47/11 47/12 47/25 53/1 53/16 53/16 53/17 54/13 54/21 56/2 58/2 60/4
**hasn't [2]** 6/10 15/12
**hassle [1]** 54/3
**have [225]**
**haven't [4]** 33/1 38/2 44/15 53/15
**having [4]** 34/21 36/4 37/5 39/4 40/5 45/21 50/24 51/3 55/19
**he [1]** 16/13
**he's [1]** 37/10
**head [2]** 31/7 36/2
**hear [9]** 4/19 7/14 9/11 14/8 22/16 22/21 39/9 43/3 57/17
**heard [1]** 60/19
**hearing [17]** 1/10 3/21 3/24 4/18 10/25 19/22 31/14 37/16 44/23 45/15 46/6 47/10 49/10 56/22 57/3 58/12 61/13
**hearings [20]** 32/7 39/3 39/4 39/6 42/6 44/20 44/21 45/7 45/21 45/22 45/23 45/25 46/4 49/5 49/8 49/22 49/24 49/24 52/7 59/7
**held [1]** 26/17
**help [1]** 61/4
**helpful [2]** 3/17 29/2
**here [18]** 3/6 9/21 15/24 27/13 34/12 39/11 41/5 43/6 43/20 45/23 48/6 48/11 49/7 50/8 52/4 52/6 55/14 58/9
**herring [2]** 23/9 24/5
**his [1]** 16/12
**hit [8]** 5/14 6/4 6/7 6/12 6/14 7/1 7/7 8/8
**hits [9]** 5/2 5/13 5/25 7/22 7/24 9/14 10/4 53/12 61/8
**hold [3]** 33/16 33/18 36/19
**holding [1]** 29/17
**holiday [2]** 14/24 44/12

## H

**holidays [1]** 49/12
**Honor [33]** 3/11 4/1 4/10 5/1 6/1 7/16
9/2 10/18 10/20 20/14 20/12 23/3 23/17
25/5 25/15 25/21 26/20 28/2 29/5 31/21
33/6 37/17 42/14 48/16 51/6 54/18 56/6
57/13 57/18 58/20 59/13 60/6 60/16
**HONORABLE [1]** 1/10
**hope [3]** 6/9 22/11 36/14
**hopefully [6]** 15/18 35/10 45/11 45/15
56/5 58/9
**how [31]** 19/20 20/18 21/24 25/2 25/3
27/6 29/16 30/3 30/10 32/6 32/20 44/23
45/3 46/1 46/19 48/3 48/4 48/18 51/7
51/10 52/7 53/9 53/11 54/3 54/23 55/8
55/10 56/25 57/1 58/3 58/25
**however [1]** 20/8
**human [1]** 29/11

## I

**I'd [12]** 7/17 31/21 38/23 40/4 46/5
46/13 51/23 52/16 53/24 54/12 58/7
60/23
**I'll [26]** 11/20 13/14 15/4 19/17 19/18
22/14 22/16 22/21 31/13 32/14 34/19
37/2 39/14 42/21 42/22 43/3 45/10
46/14 47/6 48/24 56/17 56/19 56/19
56/21 57/21 58/14
**I'm [65]**
**I've [18]** 15/20 19/8 22/12 22/17 28/14
28/14 30/1 33/4 35/4 35/23 36/15 42/25
43/25 47/9 53/22 53/22 54/5 54/12
**IC [1]** 40/21
**idea [15]** 11/18 14/23 24/10 26/11 29/17
30/3 33/24 35/23 36/8 36/20 41/22
51/10 54/3 56/10 58/3
**identification [4]** 26/9 31/8 31/16 49/3
**identified [3]** 12/7 13/16 35/4
**identify [5]** 3/4 29/11 33/13 35/18 49/2
**identifying [5]** 13/9 29/23 31/4 40/7 54/9
**identity [3]** 5/9 7/13 10/1
**imagine [1]** 23/21
**immediately [2]** 31/21 45/18
**impact [4]** 27/6 43/13 51/25 57/1
**impede [1]** 11/13
**implicate [4]** 21/23 26/6 26/10 26/15
**important [3]** 7/10 15/19 27/16
**impossible [3]** 29/15 30/13 38/1
**impression [1]** 9/24
**inadequacy [1]** 15/10
**inclination [1]** 32/15
**inclined [2]** 15/23 45/20
**included [3]** 27/2 48/8 53/21
**including [1]** 27/17
**incremental [1]** 40/9
**incrementally [2]** 42/24 56/17
**incumbent [1]** 8/23
**indicate [1]** 43/19
**indicated [6]** 3/18 22/4 31/18 44/14 61/5
61/7
**indicates [1]** 60/2
**indicating [2]** 17/21 43/9
**individual [3]** 5/6 5/10 10/1
**individuals [3]** 5/7 10/1 60/21
**inform [3]** 14/18 34/22 48/18
**information [25]** 4/22 9/18 10/6 10/13
10/14 16/5 16/13 21/23 24/3 24/4 25/17
26/2 26/6 26/23 26/24 27/9 27/21 30/10
30/24 33/3 36/14 36/16 44/19 44/24
44/25
**informed [1]** 7/20 39/24
**initial [3]** 18/1 41/6 56/16
**initially [1]** 53/22

## J

**January [28]** 1/5 15/1 15/17 15/19 16/1
16/2 16/19 35/9 35/11 37/25 38/15
38/21 48/20 50/16 50/21 50/23 54/10
54/19 54/22 55/2 56/7 56/10 56/19 57/3
57/15 57/18 58/1 58/23
**January 13th [4]** 15/17 16/1 35/9 50/16
**January 24th [1]** 15/19
**January 28th [2]** 58/1 58/23
**January 29th [2]** 57/18
**Jencks [33]** 12/18 20/16 21/5 21/18
22/19 22/20 23/1 23/6 23/7 23/8 23/11
23/15 23/21 23/24 23/25 24/5 24/6 24/7
24/8 24/9 24/11 24/16 24/17 24/21 25/8
26/11 32/14 32/18 32/22 33/4 33/20
34/5 45/17
**JIN [1]** 1/6
**JIN-WOO [1]** 1/6
**job [2]** 15/20 28/19
**joint [4]** 3/16 57/25 58/21 58/22
**JONATHAN [2]** 1/14 3/6
**judge [10]** 1/11 16/4 17/15 28/25 30/14
32/18 50/6 52/15 52/19 61/6
**juggled [1]** 42/1
**JULIE [2]** 1/18 3/7
**jumping [1]** 30/22
**June [2]** 52/20 56/2
**jury [4]** 23/18 29/9 33/9 45/19
**just [48]** 3/22 4/7 4/23 5/11 6/9 7/8
10/25 11/24 14/21 16/20 18/19 19/25
22/3 23/9 24/5 24/14 24/14 26/4 27/13

## K

**keep [3]** 19/12 34/19 56/1
**KEITH [2]** 2/2 3/12
**kicked [1]** 10/22
**KIM [6]** 1/6 3/3 3/13 3/13 3/15 30/17
**kinds [1]** 46/10
**know [57]** 6/5 6/18 6/21 6/24 7/1 7/2 7/6
7/8 7/19 8/18 11/18 11/25 12/10 20/2
24/24 25/11 26/13 27/24 28/2 28/7
29/16 29/21 30/17 33/9 33/25 36/10
36/24 36/25 38/3 39/12 40/18 40/22
43/10 43/17 44/3 44/4 45/2 45/3 46/1
46/15 49/3 49/25 50/11 50/20 51/10
51/13 51/14 52/10 53/9 55/1 57/14 58/1
59/15 60/1 60/10 60/17 61/5
**known [1]** 44/11
**KOLLAR [1]** 1/10
**KOLLAR-KOTELLY [1]** 1/10
**KOTELLY [1]** 1/10

## L

**last [13]** 3/25 6/9 12/7 13/17 13/17
15/16 20/19 21/8 21/21 27/14 37/24
47/25 52/16
**lasts [1]** 59/17
**later [3]** 10/15 38/15 38/22
**lead [2]** 12/12 12/23
**leaps [1]** 43/17
**least [20]** 8/17 20/13 31/15 32/11 34/22
41/20 41/21 42/12 43/19 44/18 47/4
49/19 54/15 55/21 57/8 58/10 58/18
59/5 59/10 60/8
**leave [5]** 25/7 37/2 51/22 53/24 53/25
**leaving [3]** 11/23 13/18 41/14
**left [6]** 11/9 15/14 30/1 41/9 52/10 56/23
**legal [1]** 15/10
**lengthy [1]** 40/21
**let [17]** 7/14 9/11 19/19 31/2 32/19 35/1
35/1 36/25 42/23 43/16 43/19 44/17
45/6 57/20 59/4 60/11 61/11
**let's [8]** 4/19 10/21 10/23 15/4 28/22
36/17 37/4 53/25
**letter [2]** 12/12 18/22
**level [1]** 47/13
**light [1]** 16/19
**like [16]** 4/5 5/24 6/18 7/17 7/25 9/12
11/18 17/18 40/4 43/23 46/13 53/23
53/24 54/11 58/7 59/5
**likelihood [1]** 38/22
**likely [3]** 3/18 3/19 21/16 23/14 29/15
33/11
**limine [3]** 12/25 13/12 45/1
**limitations [1]** 31/19
**limited [2]** 30/18 47/5
**lines [1]** 5/2
**Lisa [3]** 2/9 61/16 61/23
**list [10]** 6/4 7/3 8/1 47/3 48/16 49/19
53/1 60/20 60/25 61/9
**listening [1]** 22/14
**lists [2]** 45/17 45/17
**litigate [4]** 5/10 7/12 21/10 27/14
**litigated [1]** 21/9
**litigating [3]** 12/19 17/6 17/6
**litigation [2]** 21/17 49/22
**little [7]** 7/17 13/10 13/13 22/24 30/11
47/24 53/11

Case 1:10-cr-00225-CKK

**L**

**LLP [1]** 2/3
**long [11]** 15/4 17/12 19/3 25/2 25/3 30/4 33/18 40/19 46/1 50/6 52/7
**longer [1]** 55/25
**look [10]** 1/1 13/14 30/25 38/9 43/1 53/19 54/6 54/16 58/10 58/19
**looked [1]** 45/25
**looking [3]** 30/11 32/3 41/21
**looks [4]** 4/5 11/7 17/18 54/11
**lot [16]** 23/1 23/2 31/23 36/5 37/15 40/20 40/23 43/18 44/25 46/11 46/20 47/1 50/3 51/13 55/15 56/25
**LOWELL [11]** 2/2 3/12 7/15 27/19 28/21 35/12 37/11 38/12 47/2 56/14 60/16

**M**

**made [8]** 12/11 14/14 17/23 28/25 34/18 41/10 45/23 53/5
**mail [2]** 60/19 61/2
**make [20]** 6/6 26/15 31/6 31/12 34/11 36/1 36/3 36/23 38/11 39/24 40/1 41/2 41/18 42/21 51/24 52/14 52/16 55/20 60/11 61/3
**makes [3]** 3/22 16/20 17/14 18/12 39/12 39/23
**making [1]** 40/10
**MALIS [2]** 1/14 3/6
**many [10]** 20/18 21/24 32/6 32/24 32/25 48/3 48/4 53/3 53/9 53/12
**March [11]** 39/5 39/7 44/20 44/21 45/20 45/23 45/24 46/1 46/3 46/3 46/4
**March 17th [1]** 46/3
**March 24th [1]** 46/3
**March 28th [1]** 46/4
**March 3rd [1]** 46/1
**match [4]** 7/20 7/25 9/3 9/4
**material [20]** 9/3 12/8 20/16 21/5 22/19 22/20 23/2 23/6 23/7 23/10 23/11 23/15 23/21 32/14 33/4 33/9 33/10 33/20 45/9 61/13
**materials [1]** 55/4
**matter [5]** 12/14 12/22 24/12 57/4 61/18
**may [42]** 5/10 6/6 8/13 9/25 10/3 10/4 10/12 10/12 13/19 13/20 13/21 19/7 19/25 21/22 22/6 24/17 26/21 27/6 30/10 33/2 33/21 35/17 37/10 38/17 39/12 40/5 40/6 40/6 41/2 42/10 43/12 44/1 47/21 47/21 52/25 53/25 55/4 57/1 58/11 58/12 59/6 60/8
**maybe [6]** 10/22 18/18 19/11 22/24 25/6 33/23
**me [47]** 3/6 3/17 4/6 7/14 9/11 12/1 14/20 15/11 15/14 17/3 17/16 18/13 19/19 22/16 22/20 30/11 31/2 31/14 31/25 32/19 33/22 35/1 35/7 35/6 35/15 36/3 36/10 39/24 41/25 42/23 43/16 43/19 44/25 45/6 45/22 46/12 49/14 51/3 51/8 54/6 56/1 57/20 59/4 59/14 59/15 60/11 61/11
**mean [9]** 23/18 23/23 25/5 27/13 30/1 39/12 47/18 50/23 60/18
**meaning [2]** 10/3 24/2
**meaningful [1]** 10/4
**means [4]** 22/22 32/7 38/21 46/22
**mechanical [1]** 2/23
**meet [3]** 14/13 30/8 48/9
**meeting [1]** 15/16
**memoranda [1]** 23/12
**mentioned [2]** 9/23 25/8
**merits [1]** 28/12
**MICHAEL [2]** 1/14 3/5
**middle [1]** 49/11

**might [22]** 3/23 6/24 8/3 8/4 12/12 12/21 12/17 12/19 14/24 18/17 18/20 21/22 27/14 26/2 26/6 26/10 32/10 32/10 33/18 35/13 43/21 48/18 50/22
**mind [3]** 34/19 50/14 52/15
**mindset [1]** 56/11
**mine [1]** 52/14
**minimal [1]** 38/6
**minute [1]** 3/5
**missive [1]** 3/19
**mistake [1]** 45/23
**moment [4]** 9/10 20/11 25/8 52/18
**Monday [5]** 27/1 27/12 27/15 27/18 59/17
**month [1]** 27/15
**months [5]** 32/24 33/3 33/6 33/24 52/22
**more [17]** 9/14 10/12 11/22 17/24 18/12 18/20 19/1 22/5 30/11 32/6 34/12 37/11 37/12 39/23 47/25 52/25 61/2
**morning [2]** 3/11 59/11
**most [1]** 47/8
**mostly [1]** 18/13
**motion [25]** 11/3 11/4 11/20 12/4 12/21 13/12 13/16 13/17 14/2 14/6 14/19 14/25 19/20 20/14 21/3 21/3 31/12 32/6 40/18 43/22 46/17 49/20 50/17 55/5 60/14
**motions [10]** 10/24 11/13 12/17 12/23 12/25 45/1 45/11 48/25 49/19 49/22 50/25 54/14 56/20 56/21 58/8
**move [17]** 10/21 10/23 11/12 15/4 17/10 19/19 20/8 37/4 39/2 42/12 45/6 46/22 50/5 50/8 55/23 59/6 60/8
**moved [3]** 41/12 51/18 55/19
**moving [8]** 4/5 4/11 16/2 30/12 34/10 40/7 50/10 50/22
**Mr [9]** 7/15 25/20 27/19 33/7 35/12 37/11 47/2 56/14 60/16
**Mr. [6]** 3/13 3/13 3/15 28/21 30/17 38/12
**Mr. Kim [4]** 3/13 3/13 3/15 30/17
**Mr. Lowell [2]** 28/21 38/12
**much [17]** 3/17 13/1 15/6 15/21 29/16 30/3 36/5 38/22 39/23 40/10 44/3 49/10 54/3 54/13 54/23 55/10 56/25
**multiple [1]** 40/19
**my [35]** 6/9 11/7 12/5 14/17 18/2 20/19 22/14 22/17 26/11 27/5 30/18 32/15 34/21 35/11 36/2 38/11 39/1 39/15 40/14 41/14 41/15 41/18 42/19 44/4 48/16 51/10 51/13 52/12 53/19 53/21 56/1 56/6 57/20 60/2 60/3

**N**

**name [1]** 7/19
**narrow [1]** 36/14
**NDI [1]** 26/1
**near [1]** 45/24
**nearly [1]** 37/25
**neat [1]** 28/19
**necessarily [1]** 33/5
**necessitate [1]** 50/1
**need [60]** 3/20 3/21 3/23 4/8 8/18 9/19 10/15 11/11 13/21 19/21 19/22 21/22 25/9 29/11 31/16 32/4 32/7 32/12 32/17 34/16 34/24 35/5 35/14 35/20 36/23 38/17 40/6 40/7 40/8 40/24 41/4 41/4 41/13 41/20 42/1 42/4 42/6 42/10 42/13 43/1 44/1 44/24 45/8 46/6 47/2 52/3 52/3 53/21 55/17 55/17 55/22 56/1 57/2 57/6 58/15 58/18 59/6 59/8 60/8 60/10
**needed [2]** 17/17 61/1
**needing [1]** 61/7
**needs [14]** 4/22 9/9 12/10 19/13 22/18

**30/19 30/24 39/25 36/19 39/3 42/9
45/18 46/25 52/17 71**
**never [2]** 9/7 33/4 53/1
**new [2]** 2/4 55/3
**news [1]** 44/18
**next [23]** 5/3 10/6 10/6 17/11 17/13 19/14 21/3 21/5 22/1 27/1 27/8 27/15 27/18 29/14 34/13 36/17 37/6 42/3 42/3 45/8 50/16 55/10 61/3
**no [21]** 1/4 3/20 4/8 6/18 14/1 17/25 21/20 23/3 24/7 25/15 32/1 38/6 38/24 39/11 46/25 47/20 47/20 52/9 57/4 57/12 57/19
**nobody [1]** 30/8
**none [1]** 35/5
**nonexpert [1]** 21/23
**noon [2]** 58/1 58/23
**normal [3]** 13/5 24/22 34/4
**normally [1]** 13/11
**not [148]**
**notes [1]** 6/9
**nothing [7]** 10/3 27/7 38/19 52/11 60/11 60/20 61/11
**notice [15]** 8/23 8/24 15/6 15/20 21/15 26/5 26/14 27/12 27/17 27/18 35/13 38/2 38/7 44/16 58/18
**noticed [1]** 28/10
**notices [2]** 17/14 43/6
**notified [6]** 6/13 6/16
**now [32]** 5/3 7/8 7/20 8/8 8/19 9/19 11/25 12/7 14/8 15/20 16/22 16/23 17/1 17/3 21/2 24/10 26/14 27/2 28/2 29/2 29/14 29/23 30/16 38/16 41/12 44/18 46/9 48/17 50/21 51/3 55/12 55/20
**NSD [1]** 1/19
**number [15]** 3/14 4/4 5/2 5/6 5/12 5/13 5/15 6/3 6/16 6/22 6/24 7/3 8/21 8/22 16/6
**numbers [4]** 4/24 4/24 4/25 8/1
**numerous [1]** 7/21
**NW [4]** 1/16 1/20 2/4 2/10

**O**

**o'clock [1]** 57/21
**object [1]** 24/19
**objected [1]** 17/4
**objecting [1]** 35/21
**objections [12]** 16/9 35/10 37/8 37/9 37/15 38/6 38/24 40/17 40/17 43/6 43/12 58/24
**obligations [1]** 27/6
**observance [1]** 59/14
**obstruction [1]** 32/24
**obvious [1]** 41/3
**obviously [13]** 11/6 24/7 26/23 32/5 37/12 39/9 46/11 46/16 47/12 47/17 50/2 51/24 53/18
**occur [4]** 19/14 21/8 38/18 51/24
**occurred [9]** 5/25 6/7 6/12 6/17 6/18 6/22 7/2 8/8 8/15
**October [1]** 53/5
**off [14]** 5/25 6/8 6/13 6/17 6/19 7/2 7/9 8/10 22/9 26/18 30/18 31/7 36/19 55/16
**offer [1]** 17/10
**offered [3]** 33/22
**Office [1]** 1/15
**official [2]** 2/9 8/14
**officials [3]** 8/1 12/20 21/12
**okay [29]** 4/11 4/15 5/8 5/21 7/23 9/5 9/11 10/21 12/24 14/23 18/7 18/9 18/21 20/25 30/1 31/4 34/18 42/18 42/23 43/15 47/21 48/13 56/18 57/23 57/25 59/2 60/7 60/11
**once [2]** 13/7 56/3

O | Case 1:10-cr-00225-CKK

**one [56]** 3/21 4/11 4/13 5/5 8/12 8/17 9/22 11/8 11/10 11/19 11/24 12/9 13/18 14/24 15/15 15/25 21/25 22/9 25/1 26/11 26/12 27/18 27/22 28/24 30/7 32/18 33/8 36/4 36/11 36/12 40/15 40/18 42/2 43/5 43/25 44/5 44/17 44/18 44/19 45/8 45/8 47/4 48/8 48/25 49/9 49/25 50/23 51/4 52/25 53/6 54/17 54/25 57/4 57/13 58/20 60/15
**onerous [1]** 18/20
**ones [4]** 33/17 46/14 56/16 58/8
**only [11]** 7/25 29/7 32/18 36/22 40/17 47/13 51/1 51/2 51/3 51/8 56/6
**onus [1]** 33/18
**open [9]** 11/3 13/19 24/9 24/25 40/11 41/6 41/14 51/22 61/12
**open-ended [3]** 40/11 41/6 51/22
**opening [1]** 40/10
**operatives [1]** 53/8
**opine [1]** 25/23
**opinion [1]** 18/11
**opportunity [3]** 10/11 16/16 39/18
**opposed [2]** 19/6 56/18
**opposition [2]** 14/7 15/1
**opposition/response [1]** 15/1
**order [28]** 9/18 11/6 16/10 16/24 18/17 18/22 19/7 30/15 35/12 39/2 40/5 42/4 42/5 42/12 44/4 46/10 46/22 47/11 47/22 48/5 48/9 48/10 48/17 49/24 49/25 52/2 52/3 52/4
**ordered [3]** 17/5 18/5 18/19
**ordering [1]** 33/4
**orderly [1]** 11/13
**orders [3]** 28/20 50/1 52/5
**other [43]** 5/15 8/3 9/1 11/9 11/22 12/16 14/24 15/12 19/23 23/11 23/12 25/19 26/3 26/3 29/5 29/16 31/17 34/22 34/23 35/3 36/19 36/22 36/23 36/24 39/21 41/17 42/7 43/2 43/5 45/4 46/6 46/19 48/15 49/18 51/24 52/4 54/4 55/5 55/10 55/13 55/14 58/5 58/14
**others [3]** 46/14 52/5 53/22
**otherwise [3]** 3/23 23/24 44/7
**ought [3]** 8/7 12/6 17/3
**our [27]** 8/19 9/7 9/8 9/9 11/11 11/14 12/7 12/19 14/7 14/18 14/25 15/2 17/2 17/11 17/15 18/12 18/13 19/5 20/22 24/12 25/6 25/23 27/8 28/6 51/13 53/1 53/7
**ourselves [1]** 28/7
**out [57]** 8/20 8/20 10/10 10/12 11/7 13/15 13/23 13/24 14/6 15/15 18/17 22/6 26/18 28/4 28/7 29/21 30/2 30/17 31/1 33/18 33/25 36/2 36/7 36/24 37/1 38/12 38/23 39/11 40/4 40/12 41/9 43/22 43/25 44/1 44/23 46/15 47/6 48/6 49/14 50/4 50/7 50/11 50/14 50/17 53/11 53/15 53/22 54/2 54/23 55/9 55/17 55/22 55/25 56/4 56/9 58/17 59/11
**outstanding [2]** 35/2 49/20
**over [3]** 12/19 21/25 49/22
**own [4]** 25/19 25/23 30/16 39/1

**P**
**p.m [2]** 1/6 61/14
**pages [1]** 40/19
**paid [1]** 28/13
**paper [2]** 31/23 57/21
**Parke [2]** 2/3 3/12
**parsed [1]** 16/8
**part [20]** 7/4 9/8 10/8 10/24 14/3 14/4

14/4 26/25 27/1 27/1 33/5 33/9 34/6 35/3 35/17 47/7 48/1 50/22 52/13 61/6
**partially [1]** 53/10
**particular [2]** 32/9 51/19
**particularly [2]** 15/7 54/14
**parties [6]** 5/4 5/23 6/10 7/11 47/11 52/10
**parts [1]** 48/4
**passed [1]** 38/19
**past [2]** 26/8 26/17
**pay [1]** 29/6
**people [10]** 28/9 28/15 29/3 29/7 29/7 49/13 55/17 57/7 61/5 61/11
**perceive [1]** 25/16
**perfectly [1]** 54/10
**perhaps [4]** 19/3 39/22 44/13 49/22
**period [10]** 15/24 21/25 31/12 34/3 35/20 42/6 44/21 46/2 48/8 52/11
**periods [1]** 48/8
**person [1]** 8/15
**perspective [5]** 25/14 35/16 39/22 53/19 53/20
**phase [1]** 5/11
**phone [10]** 4/4 4/24 5/2 5/15 6/3 6/22 7/3 7/6 8/1 8/22
**piece [2]** 27/9 31/23
**pieces [1]** 50/10
**pile [1]** 19/6
**place [2]** 13/11 61/8
**places [1]** 26/3
**plan [1]** 3/24
**planning [2]** 22/15 44/12
**pleadings [3]** 14/24 28/11 28/12 39/17 39/23 39/25 44/9
**please [1]** 3/4
**podium [1]** 30/15
**point [36]** 4/8 6/3 7/16 8/6 9/25 10/15 13/3 13/21 15/12 25/10 26/19 27/13 28/21 29/10 30/17 30/23 31/15 32/16 33/3 34/5 34/13 35/8 37/3 41/13 41/16 43/5 45/12 47/6 49/14 51/10 52/9 54/6 57/2 58/1 60/15 61/12
**pointing [1]** 56/8
**points [4]** 35/5 35/13 47/7 52/16
**portion [2]** 31/14 60/13
**position [2]** 40/16 54/22
**possession [1]** 20/22
**possibility [3]** 21/18 26/14 49/25
**possible [4]** 18/20 41/20 45/5 60/17
**potential [2]** 12/8 26/21 40/17 54/10
**potentially [2]** 8/3 35/6
**power [1]** 51/14
**practice [2]** 12/23 24/24
**precluding [1]** 43/8
**prefer [6]** 38/4 38/4 54/12 55/2 55/19 56/15
**premature [1]** 8/11 10/10
**premium [1]** 20/2
**preparation [2]** 52/13 52/14
**prepare [1]** 39/19
**prepared [3]** 40/9 47/4 55/18
**present [3]** 21/11 27/21 39/18
**presently [1]** 20/22
**preserving [1]** 10/14
**presumably [3]** 9/15 34/9 49/8
**pretrial [2]** 3/15 46/7
**pretty [4]** 37/10 38/24 41/9 44/3
**prime [1]** 57/22
**prior [4]** 9/8 24/8 24/17 42/19
**priority [1]** 61/9
**probably [8]** 15/3 29/19 36/21 43/21 52/22 53/16 53/16 59/9
**problem [7]** 12/2 19/18 38/16 45/10 50/2 57/12

**problems [2]** 37/15 38/13
**procedure [1]** 19/10 1
**procedure [1]** 42/9
**procedures [1]** 58/17
**proceed [1]** 53/6
**proceedings [5]** 2/23 9/1 41/13 61/14 61/18
**process [9]** 4/5 7/21 11/13 21/12 27/7 29/2 29/23 36/21 60/22
**produced [7]** 2/24 5/14 6/4 8/22 23/24 24/8 24/17
**producing [1]** 24/10
**product [4]** 7/4 8/19 9/8 9/10
**production [1]** 23/7
**progress [1]** 11/24
**progressed [1]** 9/20
**progression [1]** 43/19
**proposal [3]** 6/15 32/11 56/14
**proposals [1]** 46/13
**propose [4]** 31/5 31/6 37/24 45/7
**proposed [3]** 15/11 43/21 54/12
**proposing [4]** 6/11 6/12 42/15 56/13
**prosecution [1]** 23/11
**prosecutor [2]** 28/12 36/22
**protocol [1]** 53/15
**provide [7]** 16/5 16/12 17/1 27/16 28/16 32/17 47/14
**provided [14]** 4/22 4/24 4/24 8/2 10/5 11/12 16/9 22/22 23/2 23/10 23/12 23/15 32/22 33/8
**providing [1]** 16/17
**published [1]** 8/16
**purposes [1]** 28/10
**push [5]** 40/2 40/8 45/4 55/4 55/16
**pushed [1]** 22/9
**pushing [2]** 38/16 51/21
**put [13]** 20/2 25/6 27/22 44/4 44/6 48/17 49/11 49/19 54/10 55/13 55/25 59/5 60/10
**puts [1]** 42/23
**putting [5]** 12/16 26/4 40/18 52/24 59/6

**Q**
**question [6]** 5/3 11/10 20/19 25/1 37/6 55/10
**questions [3]** 11/1 14/21 26/5
**quick [1]** 4/23
**quickly [5]** 11/12 15/24 38/24 41/19 43/11
**quite [3]** 12/21 29/19 32/4

**R**
**raise [3]** 22/21 23/22 48/13
**raised [4]** 35/13 42/8 49/21 60/16
**ramifications [1]** 13/9
**rarely [1]** 32/25
**rather [8]** 16/22 16/25 17/6 17/7 17/9 18/11 18/20 38/23
**re [1]** 27/14
**re-litigate [1]** 27/14
**read [3]** 12/6 16/24 18/17
**ready [5]** 29/14 37/6 39/4 45/15 58/12
**realistically [1]** 54/23
**realities [2]** 38/17 39/12
**reality [1]** 28/15
**realize [3]** 30/21 31/22 61/1
**really [4]** 10/25 15/19 54/11 56/23
**reason [8]** 28/24 28/25 40/25 51/2 51/8 51/17 51/19 59/9
**reasonable [2]** 31/9 41/3
**reasonably [1]** 28/22
**reasoning [1]** 48/2
**reasons [3]** 29/5 39/16 55/18

**R**

recap [1]  4/23
receive [9]  3/19 5/6 5/11 5/12 5/13 5/24
6/3 7/12 9/25
received [3]  27/10 60/19 60/20
record [7]  3/4 17/13 44/6 52/21 60/15
60/23 61/17
recorded [1]  2/23
records [2]  7/5 7/6
red [2]  23/9 24/5
red-herring [2]  23/9 24/5
redo [1]  16/17
redone [1]  27/17
redoubling [1]  28/6
refile [2]  15/16 17/22
regard [4]  26/20 27/5 27/15 37/22
regarding [1]  32/13
relate [1]  13/3
relates [1]  10/25
relating [2]  35/12 54/7
relatively [1]  55/9
relevance [2]  7/11 21/13
relevancy [1]  9/9
relevant [3]  6/6 8/25 29/1
religious [2]  49/12 59/14
remain [1]  9/6
remainder [3]  20/13 20/21 22/10
remember [1]  34/7
replies [1]  37/16
reply [4]  14/7 15/2 15/9 42/17
report [9]  3/15 3/16 31/6 32/13 54/2
54/7 57/25 58/21 58/22
reporter [3]  2/9 2/9 3/22
reports [5]  31/4 31/8 31/15 31/16 54/9
request [10]  4/7 9/25 10/7 10/14 12/12
14/14 15/8 41/3 53/5 56/6
requested [1]  5/22
requesting [2]  7/8 20/11 40/23
requests [4]  12/20 13/17 13/19 53/7
require [1]  24/13
required [2]  21/11 26/9
requirements [2]  20/4 24/21
requires [4]  32/21 46/20 52/13 52/13
requiring [1]  35/16
resolution [1]  48/19
resolve [5]  4/13 10/15 11/19 15/23
19/21
resolved [7]  11/3 11/8 14/4 15/5 18/5
38/25 48/25
resources [5]  28/8 28/13 28/16 29/6
53/3
respond [1]  15/13
responded [3]  14/14 26/20 53/1
responding [1]  35/22
response [9]  15/1 15/9 15/17 16/2 19/4
19/13 27/5 37/13 42/17
rest [5]  22/15 43/3 43/16 54/16 57/5
result [2]  21/2 24/16
resulted [1]  7/7
return [2]  17/20 34/3
review [2]  11/7 11/14
revisit [2]  14/21 38/14
right [37]  3/10 3/14 4/19 5/17 6/25 7/14
8/5 8/12 8/16 10/23 12/7 12/15 13/12
14/16 16/7 16/23 17/7 17/16 18/4 18/14
18/16 18/23 19/15 20/1 25/7 29/23 34/9
37/21 39/8 39/20 42/21 47/16 48/11
49/5 52/8 55/24 61/10
rights [2]  10/14 16/12
rising [1]  30/15
road [3]  5/11 6/7 8/12
room [5]  2/10 48/11 50/8 52/4 55/15
ROSEN [2]  2/2 3/12

RPR [3]  2/9 61/16 61/23
rule [1]  58/16
ruled [5]  16/10 45/11 45/12 50/25 58/7
rules [1]  21/11
rulings [5]  39/25 40/1 41/19 52/14 54/15
run [1]  59/4

**S**

sacrosanct [1]  9/6
safe [1]  12/4
said [22]  15/25 16/10 16/20 18/17 20/5
29/21 31/5 33/7 41/8 44/4 48/23 50/3
50/9 51/16 52/19 52/25 53/6 53/13
56/14 58/6 58/21 61/2
sake [1]  30/16
same [3]  25/15 36/8 48/10
saving [1]  17/19
say [21]  6/20 11/24 12/4 14/1 16/21
16/23 16/24 17/23 21/22 27/19 28/5
29/3 29/25 33/1 33/5 40/9 40/24 44/9
51/6 51/14 59/12
saying [7]  7/3 17/25 18/4 18/5 28/14
33/12 52/21
says [3]  12/5 18/25 29/13
schedule [32]  13/23 14/6 14/9 14/20
15/15 19/4 20/5 22/3 22/6 29/17 30/7
30/9 34/21 35/4 38/1 38/5 38/7 43/13
48/19 49/4 50/4 50/11 50/20 50/22
51/25 52/15 54/11 54/17 54/19 54/21
55/3 57/22
scheduled [1]  48/18
schedules [1]  56/4
scheduling [1]  15/22
SCIF [2]  47/12 53/16
SCOTT [2]  2/3 3/12
scrapping [1]  56/18
screwed [1]  60/4
sealed [1]  4/18
second [30]  10/2 15/7 15/15 16/6 16/18
19/2 19/5 20/9 22/13 27/17 35/9 36/4
36/6 36/18 38/9 43/23 43/25 44/3 44/17
44/19 45/12 46/18 48/24 50/18 50/25
54/15 55/7 56/25 58/2 58/8
section [4]  32/21 46/20 52/13 52/13
section [1]  1/19 10/8 26/25 27/1 27/2
27/8 27/11 27/17 27/18
Security [1]  3/20
see [24]  9/16 13/24 17/3 18/22 19/2 19/3
19/5 19/14 25/12 29/3 31/11 37/14
39/13 43/24 45/9 46/9 46/23 49/9 50/22
55/6 56/16 59/4 59/10 61/7
seeing [1]  6/14
seek [1]  47/14
seeking [1]  21/10
seem [2]  17/3 36/9
seemed [2]  17/9 31/25
seems [11]  15/14 22/16 27/13 31/14
33/21 35/15 44/24 47/8 51/3 51/8 57/21
seen [7]  9/7 14/15 14/17 33/4 36/15
38/2 47/9
sense [10]  13/15 16/21 17/14 18/12 25/3
35/18 41/10 43/20 55/2 58/25
sentence [1]  32/19
separate [7]  4/7 4/9 4/10 28/3 44/1
45/21 49/4
series [1]  58/14
served [1]  17/10
services' [1]  3/15
session [1]  3/3
set [41]  11/17 13/2 15/15 22/6 24/8 30/7
30/9 31/3 31/20 32/16 37/25 38/1 38/12
38/23 39/11 39/15 39/16 40/4 42/11
42/25 43/22 43/25 45/16 46/14 46/15
49/4 50/11 50/14 50/17 53/22 54/2
54/18 54/21 55/1 55/13 56/19 56/19

57/3 58/14 58/17 60/7
setting [9]  26/18 30/25 31/1 32/1 36/19
41/23 42/24 50/7
seventh [5]  11/4 11/20 12/4 14/19 21/3
several [1]  39/16
shape [1]  41/16
shorter [4]  31/12 34/3 40/10 51/21
shot [1]  55/21
should [37]  4/15 5/6 6/2 7/12 10/11
10/15 20/3 20/6 22/11 22/12 22/20
26/18 26/25 26/25 27/2 27/9 27/11 28/5
29/13 29/14 29/18 32/22 34/5 35/6
35/25 36/10 36/12 44/6 44/6 45/13
47/15 50/14 54/18 56/2 56/4 56/15 58/6
shouldn't [4]  10/13 17/23 36/15 43/11
show [2]  19/18 19/20
shows [2]  12/12 19/22
side [4]  15/12 26/6 27/13 60/15
sides [4]  5/11 22/8 30/2 31/10
sideways [1]  52/24
significant [3]  24/16 49/15 49/18
simply [2]  22/4 33/7
since [1]  36/21
single [4]  33/8 44/5 60/19 61/2
sit [1]  31/21
sixth [2]  11/3 28/11
skepticism [1]  51/13
skew [2]  50/4 54/11
skip [1]  17/17
slightly [1]  55/14
small [2]  7/16 37/10
smooth [1]  37/1
smoothly [1]  50/5
so [111]
solutions [1]  15/11
some [67]
somebody [2]  8/14 29/9
something [14]  4/15 9/13 9/15 10/16
11/11 13/25 26/1 35/19 40/10 44/11
50/1 53/25 55/6 59/6
sometimes [2]  32/24 32/25
somewhat [1]  19/14
soon [2]  9/10 38/8
sooner [1]  32/21
sorry [4]  14/1 23/19 37/19 48/23
sort [12]  12/13 13/14 13/23 15/24 18/21
20/6 25/15 41/6 42/9 43/19 49/11 51/22
sound [1]  9/12
source [2]  8/16
sources [1]  8/3
specific [1]  15/8
specificity [1]  47/13
speedily [1]  20/4
spending [1]  43/18
spent [1]  36/4
spirit [1]  18/22
spring [1]  60/3
standard [1]  24/24
start [9]  30/18 46/13 55/11 56/3 56/15
56/18 61/2 61/8 61/9
started [1]  32/3
starting [2]  36/20 46/2
starts [1]  56/3
state [1]  60/23
statement [2]  23/24 23/25
statements [4]  33/14 46/6 49/9 59/10
STATES [5]  1/1 1/3 1/11 3/3 3/6
stating [1]  33/18
status [14]  1/10 3/16 4/4 32/13 32/15
34/13 37/25 45/7 45/21 50/21 51/4
54/19 56/7 57/16
statute [1]  32/21
stenography [1]  2/23
step [7]  5/3 10/6 10/7 13/11 17/7 17/19

**S**

step... [1] 17/19
STEPHEN [1] 1/6
Steven [1] 3/3
stick [1] 39/13
sticking [1] 50/16
still [9] 8/19 11/23 18/20 20/6 25/1
35/25 42/22 49/20 57/4
stone [1] 42/11
stopping [1] 27/8
Street [2] 1/16 1/20
strictly [1] 36/12
strike [1] 17/16
strong [1] 39/10
stuck [2] 16/3 44/15
stuff [6] 19/23 30/6 30/12 47/1 50/8 57/5
subject [2] 12/22 24/12
submission [3] 20/9 20/24 21/1
submissions [1] 48/20
submit [1] 48/9
subpoena [1] 36/20
subpoenaed [1] 21/21
subpoenas [2] 21/11 49/23
such [5] 8/13 13/10 31/5 31/8 40/11
suggest [6] 16/20 29/16 50/22 51/2 51/7
54/1
suggested [4] 34/21 47/8 50/19 57/15
suggestion [5] 24/19 35/11 37/8 48/18
53/21
Suite [1] 2/4
summer [1] 56/3
suppose [1] 12/9
supposed [1] 11/16
suppress [1] 49/20
sure [13] 3/18 12/2 18/1 18/10 20/14
25/22 42/16 50/15 52/19 52/20 57/12
59/15 60/11
surprised [1] 47/23
susceptible [1] 25/13
suspect [1] 40/24
system [4] 25/24 29/10 36/24 37/1

**T**

take [18] 13/7 13/11 17/9 17/12 17/15
18/21 22/14 25/3 28/4 28/6 30/21 38/9
51/5 52/23 53/10 54/6 54/24 60/22
taken [8] 10/6 10/7 28/14 28/14 31/9
34/12 47/25 58/19
takes [1] 40/23
taking [1] 44/8
talk [11] 3/15 4/3 4/16 31/13 36/23
36/25 56/22 58/6 60/9 61/5 61/9
talked [4] 4/4 36/1 36/13 56/5
talking [9] 14/11 25/18 25/19 25/23
37/11 37/11 37/12 48/22 56/3
task [4] 4/14 47/22 47/24 53/1
tasks [1] 51/12
team [2] 4/23 8/2
teams [1] 23/11
tee [2] 8/25 21/16
telephone [1] 4/25
tell [9] 3/16 16/14 18/3 21/14 29/9 35/6
37/5 41/25 44/11
telling [1] 24/11
tentative [1] 60/19
tentatively [2] 46/15 60/7
terms [36] 4/2 13/14 14/9 17/21 19/20
22/6 22/10 22/13 22/17 25/13 26/18
30/3 30/10 30/11 30/23 30/25 31/3
31/14 31/15 32/12 32/13 34/10 35/5
36/9 41/8 41/9 41/16 41/19 43/1 46/12
51/17 55/1 55/2 55/5 57/22 58/2
terribly [1] 29/18

testifies [2] 24/23 32/22
testify [2] 16/13 29/4
testifying [3] 24/4 25/17 26/22
testimony [6] 23/18 24/12 26/5 26/21
27/3 29/1
than [24] 3/24 7/18 9/21 13/21 16/22
16/25 17/6 17/7 17/9 18/11 18/20 18/20
19/1 22/5 30/23 32/21 40/10 47/25
48/15 49/18 51/4 51/22 55/14 61/2
Thank [1] 47/3
that [430]
that's [48] 5/17 6/14 7/4 10/2 10/18
10/22 11/20 13/1 13/6 13/13 14/18 15/4
18/13 19/23 21/25 24/4 26/11 28/13
29/11 29/15 30/8 30/12 30/19 32/3
33/15 34/3 34/6 37/7 38/16 38/16 39/1
40/25 41/24 44/7 44/10 47/23 50/3
50/17 51/9 53/10 54/5 58/6 56/11
59/25 60/3 60/12 60/22 61/10
their [15] 5/1 7/4 14/7 24/12 25/14 27/2
28/11 33/19 33/24 34/3 34/11 34/18
44/8 47/11 56/4
them [30] 7/21 9/25 15/12 16/3 16/6
25/13 29/22 31/4 33/14 33/16 36/8
36/25 38/9 39/5 39/13 39/14 44/1 44/8
44/19 45/15 45/17 46/22 49/10 51/7
54/9 55/22 56/5 58/13 59/7 60/24
themselves [4] 27/11 31/16 50/10 54/9
then [60] 4/12 4/19 5/13 8/23 8/24 10/21
12/12 12/13 13/9 13/10 14/21 15/9
15/23 17/1 17/12 18/14 18/25 19/13
19/18 20/8 26/25 31/2 33/17 34/4 34/15
34/16 35/3 35/22 36/7 37/12 38/15 39/4
39/14 40/9 41/25 42/2 42/3 42/4 42/6
42/6 42/7 44/21 45/6 45/10 45/15 49/1
50/2 50/7 50/13 51/23 54/16 55/10
55/19 55/22 56/17 57/6 58/6 60/7 60/10
61/10
theoretical [1] 29/8
theoretically [3] 20/23 21/17 59/24
there [57] 3/20 3/23 5/2 6/9 6/11 7/20
7/21 8/13 11/10 12/8 13/19 13/20 19/23
20/11 20/11 20/15 20/17 20/21 21/17
21/19 21/20 21/20 23/23 24/2 24/2 24/5
30/6 30/24 34/15 35/10 38/5 38/24 39/3
39/3 42/9 44/16 46/9 46/15 46/21 48/3
49/1 49/12 49/12 49/15 50/3 50/4 50/8
52/4 52/25 53/18 53/20 55/14 55/15
58/11 58/24 59/6 60/11
there's [31] 7/24 11/2 11/9 11/25 14/3
14/4 23/5 24/15 26/13 27/7 28/23 30/4
32/1 32/11 32/19 34/6 36/11 41/13
43/24 47/1 47/10 48/11 49/5 50/12 55/7
55/21 59/3 59/4 60/11 60/12 61/11
thereafter [1] 20/11
therefore [1] 29/8
these [20] 7/5 10/4 22/10 30/4 32/7
38/25 40/1 41/22 42/11 43/1 46/10
46/11 46/12 46/13 46/21 55/21 57/6
57/9 58/18 60/8
they [70]
they'd [1] 9/18
they're [28] 4/7 7/3 8/12 8/16 8/18 11/16
22/23 25/16 26/13 26/22 27/1 33/12
33/13 33/13 34/8 34/9 34/10 36/22 37/6
38/24 40/23 44/7 44/10 46/22 46/15 52/5
55/11 58/12 60/9
they've [2] 33/11 44/6
thing [8] 25/9 28/24 34/1 41/6 42/2 47/4
52/25 59/25
things [40] 3/14 4/3 8/10 11/2 12/9
18/19 20/4 28/23 29/16 31/3 32/4 32/5
32/8 34/12 34/22 34/23 35/4 35/7 35/8
39/13 40/7 41/12 43/2 44/9 46/6 46/12

46/16 47/21 48/17 51/24 52/3 52/4
53/18 53/20 54/25 55/4 56/9 57/6 58/16
58/18
think [57] 6/5 7/10 9/22 9/23 10/5 10/10
10/11 10/23 13/13 16/20 17/25 18/5
19/8 19/10 20/20 20/21 23/9 26/17 27/7
27/15 28/22 30/16 30/23 34/23 35/5
35/23 35/25 36/20 40/4 41/4 41/10
41/25 42/13 43/9 43/11 46/20 47/7
49/20 50/9 50/10 51/9 51/22 53/13
53/24 54/18 54/22 54/25 55/13 55/21
56/7 56/15 56/21 56/22 60/12 60/12
61/4 61/10
thinking [3] 22/3 50/20 52/18
thinks [1] 8/7
third [31] 15/25 17/5 17/13 19/5 20/10
20/23 22/15 27/11 27/18 27/20 27/22
35/25 36/7 36/9 36/18 38/9 43/23 43/24
44/1 44/2 44/18 45/12 46/18 48/24
50/18 50/25 54/15 55/7 56/25 58/3 58/8
this [108]
THOMAS [1] 1/15
those [20] 12/21 13/2 13/8 13/21 16/2
21/16 21/24 26/15 28/13 29/3 29/23
31/20 35/2 36/23 37/25 38/18 48/13
50/1 53/13 55/9
though [4] 6/5 17/18 44/13 57/4
thought [7] 9/3 16/22 18/21 31/20 42/2
44/13 52/22
three [7] 22/11 22/19 33/3 33/5 50/17
52/22 59/21
threshold [1] 13/12
through [14] 4/3 6/9 7/20 9/17 16/8
19/17 21/12 34/1 35/1 41/21 43/16
44/17 59/4 59/18
throw [2] 13/23 13/24
tight [3] 11/15 13/24 19/24
tighten [1] 43/22
time [39] 5/19 6/8 6/9 6/16 8/10 8/15
8/21 9/18 11/23 19/3 21/25 27/21 30/4
30/21 31/12 33/14 34/3 35/5 36/5 36/8
36/17 38/18 38/20 40/23 40/24 41/12
42/6 43/18 44/11 46/2 53/2 53/13 54/8
54/23 57/22 58/14 60/3 60/23 61/3
timeframes [1] 11/16
timely [1] 41/7
timing [1] 11/14
titled [1] 61/18
today [19] 3/6 3/19 4/16 11/21 13/15
13/18 14/12 14/15 21/14 22/7 22/22
31/7 31/23 38/23 40/9 46/14 47/4 52/17
52/18
together [4] 22/19 30/4 40/18 51/5
told [2] 3/20 44/7
too [6] 9/10 15/4 19/25 20/4 29/18 45/4
top [1] 31/7
topics [1] 12/17
total [1] 29/17
totally [2] 4/7 50/4
touched [1] 48/15
Touhy [3] 21/12 21/12 36/20
towards [1] 39/2
traditional [2] 13/15 13/22
trailing [1] 12/14
transcript [3] 1/10 2/23 61/17
transcription [1] 2/24
trial [21] 12/20 13/4 13/12 13/20 19/17
19/19 22/3 24/17 26/24 30/13 32/8 33/2
34/15 34/25 40/11 46/7 47/1 49/5 49/10
51/18 58/15
trials [1] 13/22
tried [2] 20/4 32/2 49/16 52/2
true [2] 10/3 13/1
try [4] 15/23 53/3 54/12 60/21

**T**

trying [5] 17/20 36/5 48/6 50/24 52/17
tug [1] 34/5
tuning [1] 42/10
turn [1] 36/2
turns [3] 38/23 55/17 55/22
tweak [2] 51/7 57/5
tweaked [1] 17/17
tweaking [2] 18/21 55/14
two [16] 8/10 9/22 16/6 16/19 19/15
21/18 22/19 25/6 26/7 27/17 28/9 30/2
30/19 33/23 36/18 52/16
types [1] 4/3
typical [7] 32/8 58/16 58/16

**U**

U.S [3] 1/15 2/10 3/7
ultimately [2] 7/11 51/25
under [6] 7/18 9/24 21/11 26/4 44/21
60/18
understand [17] 4/1 7/5 13/19 16/4
27/24 28/5 28/19 28/21 30/14 39/14
40/1 42/25 43/14 47/20 51/20 52/16
56/12
understanding [7] 11/23 27/8 31/18
32/10 40/13 49/12 60/18
understood [2] 33/16 56/23
UNITED [5] 1/1 1/3 1/11 3/2 3/6
universe [3] 11/21 12/3 36/9
unless [6] 30/13 37/14 44/6 44/10 45/8
60/12
unlikely [1] 50/6
unlimited [1] 53/4
until [4] 31/13 33/19 38/21 43/24
unusual [1] 30/20
up [43] 3/25 8/25 9/15 9/16 9/22 9/24
10/2 12/12 13/19 15/8 17/9 19/6 19/22
21/10 21/17 21/21 22/7 22/18 24/8 28/6
30/9 30/11 30/22 31/11 32/9 35/3 35/24
37/14 39/14 39/16 40/5 41/23 42/22
42/24 43/17 43/22 47/11 48/25 49/9
52/2 54/8 55/19 59/6
up-front [1] 15/8
upon [1] 8/23
upsetting [1] 29/18
us [24] 3/23 4/13 8/23 12/11 14/6 16/25
17/5 17/9 17/12 17/14 17/20 18/5 18/12
19/12 20/6 21/22 27/16 33/8 33/19 49/2
51/3 51/8 51/12 51/25
use [7] 9/3 9/13 9/14 10/12 25/22 33/15
44/5
used [1] 45/2
useful [2] 30/8 36/21
USG [4] 5/6 5/12 6/24 7/13
using [3] 26/13 26/21 27/25
usually [1] 47/10

**V**

vacant [1] 56/1
vacated [1] 11/5
various [2] 49/13 53/8
varying [1] 25/4
vein [1] 31/2
versus [1] 3/3
very [11] 11/1 11/15 13/1 13/24 15/8
15/23 19/24 20/12 28/19 43/17 53/13
view [5] 29/10 35/15 45/6 49/8 51/10
violin [2] 28/4 28/7
volunteered [1] 33/2

**W**

wait [3] 19/3 38/21 43/24
waiting [1] 25/9

want [28] 4/3 5/1 5/5 9/2 10/8 10/24
11/12 11/23 14/8 17/15 27/14 31/5 31/5
34/7 35/7 36/8 36/10 38/14 39/11 47/5
47/15 55/5 55/6 55/11 56/9 56/11 59/22
60/21
wanted [7] 9/13 9/14 28/24 39/5 39/6
44/17 60/13
wants [1] 49/4
war [1] 34/5
was [31] 3/19 5/16 7/9 7/20 8/16 14/1
15/5 15/16 20/23 24/13 25/22 25/22
26/12 29/15 31/12 39/2 40/18 41/10
42/13 44/8 48/7 49/14 50/20 50/24
51/2 56/6 57/14 57/16 57/17 60/19
Washington [5] 1/5 1/16 1/21 2/5 2/11
wasn't [3] 4/5 25/22 26/11
way [29] 9/22 10/2 10/9 11/8 11/19
16/21 16/24 17/14 17/18 19/6 24/20
26/10 31/8 31/10 32/2 33/23 38/25 41/7
41/10 42/1 42/10 43/9 43/20 47/7 47/9
52/23 53/6 55/9 59/11
ways [2] 9/22 16/19
we [262]
we'd [4] 7/25 34/4 46/22 54/2
we'll [18] 9/13 12/9 13/7 17/13 17/15
19/17 33/25 37/2 38/14 39/13 40/12
55/1 55/1 55/22 57/2 58/3 59/10 60/7
we're [29] 6/4 6/14 7/8 7/21 8/8 8/19
8/20 9/17 16/20 17/18 17/19 17/20
17/25 18/10 18/21 22/5 26/22 28/13
29/16 29/22 29/23 33/17 37/12 41/12
45/17 45/21 52/18 55/12 60/18
we've [17] 5/5 8/9 15/14 17/8 19/14
20/14 21/6 25/1 25/4 26/8 36/1 36/13
43/22 55/3 56/16 60/9 60/19
week [8] 19/15 25/6 29/14 37/24 52/10
59/14 59/14 59/18
weeks [3] 25/6 32/25 49/11
weird [1] 59/25
well [13] 15/18 16/23 25/11 41/20 44/12
49/7 50/2 51/16 53/18 54/25 59/1 59/25
61/4
went [3] 50/13 50/13 52/23
were [14] 4/6 5/2 5/18 9/24 11/5 21/14
21/14 21/16 22/21 23/16 44/5 44/12
47/8 50/20 59/13
weren't [2] 3/18 44/14
what [138]
what's [3] 11/19 27/15 37/23
whatever [22] 15/17 19/13 20/5 20/6
20/13 27/4 27/23 33/13 34/21 34/23
35/9 36/10 36/12 46/6 47/5 48/1 48/25
49/1 52/11 54/13 58/15 58/24
when [36] 6/20 8/20 8/24 8/24 11/5
12/17 12/19 13/6 13/20 14/21 15/8
15/12 15/15 15/24 17/22 22/22 25/25
26/10 28/5 29/12 31/1 32/12 33/25 34/5
34/12 34/20 35/5 36/17 38/1 40/12
42/25 44/9 52/17 58/18 59/25 61/2
whenever [1] 4/14
where [10] 8/6 10/8 26/2 26/11 33/2
34/15 41/13 53/17 59/10 61/7
whether [43] 4/6 5/24 6/7 6/12 6/17 6/18
6/22 7/1 7/9 7/12 8/8 8/25 10/7 11/25
13/24 16/13 17/4 18/10 18/11 19/15
20/10 21/19 26/1 27/4 29/3 35/19 35/20
37/7 43/3 43/24 46/19 48/7 49/3 50/15
52/10 54/4 54/5 54/16 55/7 55/10 55/11
58/11 59/3
which [73]
while [2] 14/2 28/25
white [1] 32/22
who [10] 21/16 21/21 24/11 29/7 29/9
29/21 33/17 53/10 59/15 61/5

whoever [1] 19/1
whole [5] 22/6 39/1 55/3 55/13 58/14
why [22] 9/19 10/9 10/9 14/20 17/23
18/2 18/19 18/25 24/5 27/24 28/1 28/14
29/11 32/3 38/16 41/22 41/24 41/25
42/25 43/20 56/13 56/22
will [83]
willing [4] 29/8 42/1 42/10 57/3
wind [6] 22/18 30/11 37/14 40/5 49/9
59/6
winds [1] 55/19
winnows [1] 36/15
wish [1] 10/12
within [7] 9/6 11/16 23/6 32/8 35/20
41/18 52/5
without [4] 9/14 32/23 50/24 51/23
witness [12] 24/1 24/3 24/23 27/4 27/4
27/5 32/22 32/23 33/15 34/2 34/17
45/16
witnesses [23] 12/18 12/20 13/8 13/10
21/7 21/16 21/19 21/22 21/23 22/23
22/24 25/8 25/12 25/20 27/25 29/6
44/25 49/23 53/11 56/2 56/3 59/8 60/9
won't [3] 31/6 33/23 44/5
WOO [1] 1/6
word [2] 17/7 44/8
words [3] 5/15 11/22 55/5
work [38] 7/4 8/19 9/8 10/10 10/19 11/23
15/3 18/17 22/7 30/2 30/11 32/10 32/11
33/25 36/3 36/7 36/23 36/24 37/1 38/8
38/25 40/6 40/20 41/18 43/4 45/4 46/12
46/19 46/21 48/7 51/23 54/3 55/12
56/17 56/17 59/1 59/12 60/5
workable [6] 13/25 39/1 46/20 54/5
54/17 55/11
worked [7] 14/6 17/12 17/12 19/2 19/3
19/6 53/15
working [6] 28/10 30/4 34/10 41/9 41/15
55/6
works [4] 44/23 56/16 57/22 58/9
worse [1] 39/25
worthwhile [1] 50/7
would [132]
wouldn't [4] 17/12 33/5 34/18 40/11
write [1] 48/9
writing [3] 11/12 14/14 47/22
written [1] 12/22
wrong [4] 8/18 19/7 19/8 36/2

**Y**

yeah [3] 18/4 26/25 48/24
year [1] 32/2
yes [8] 4/8 4/17 7/19 10/20 14/10 14/13
29/3 51/6
yet [1] 21/6
you [211]
you'd [4] 3/22 6/23 32/19 46/23
you'll [5] 46/15 49/3 56/20 58/1 58/25
you're [26] 9/12 10/14 14/2 14/18 16/3
17/21 19/16 22/7 22/15 25/18 27/23
27/25 34/9 35/22 36/4 36/6 41/21 43/17
44/15 44/24 45/3 46/9 48/22 52/17
55/14 58/18
you've [25] 4/4 13/16 14/15 16/24 17/5
18/19 20/2 22/3 22/5 28/3 28/19 31/18
35/11 42/7 43/21 44/11 47/14 48/17
49/2 49/21 50/16 51/12 51/12 56/5 58/4
your [65]
yourselves [1] 3/4