IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Government,                     CR No. 10-225

                                          Washington, DC
        vs.                         February 7, 2014
                                          1:05 p.m.
STEPHEN JIN-WOO KIM,

        Defendant.
_____

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:           G. MICHAEL HARVEY, ESQUIRE
                            JONATHAN M. MALIS, ESQUIRE
                            THOMAS A. BEDNAR, ESQUIRE
                            U.S. Attorney's Office
                            555 Fourth Street, NW
                            Washington, DC  20530
                            (202) 252-7810

                            JULIE A. EDELSTEIN, ESQUIRE
                            Department of Justice
                            NSD Counterespionage Section
                            600 E Street, NW
                            10th Floor
                            Washington, DC  20004
                            (202) 233-2113

```
For the Defendant:          ABBE D. LOWELL, ESQUIRE
                            KEITH M. ROSEN, ESQUIRE
                            SCOTT W. COYLE, ESQUIRE
                            Chadbourne & Parke, LLP
                            1200 New Hampshire Avenue, NW
                            Suite 300
                            Washington, DC  20036
                            (202) 974-5605




Court Reporter:             Lisa M. Foradori, RPR, FCRR
                            Official Court Reporter
                            U.S. Courthouse, Room 6706
                            333 Constitution Avenue, NW
                            Washington, DC  20001
                            (202) 354-3269
```

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1          P R O C E E D I N G S

2          COURTROOM DEPUTY:  Criminal Case 10-225, the United

3     States of America versus Steven Kim.  Counsel, please come

4     forward and identify yourself for the record.

5          MR. HARVEY:  Good afternoon, Your Honor.  Michael

6     Harvey for the United States.  And with me here today is

7     Jonathan Malis and Thomas Bednar from the U.S. Attorney's

8     Office, and Julie Edelstein from the Counterespionage Section

9     from the Department of Justice.

10         MR. LOWELL:  Good afternoon, Your Honor.  Abbe

11    Lowell, Keith Rosen and Scott Coyle on behalf of Mr. Kim who

12    is also in court today.

13         THE COURT:  All right.  How are we proceeding

14    today?

15         MR. LOWELL:  Your Honor, pursuant to the

16    conversations we've been having between the Government and

17    ourselves and as communicated to the Court, today should be

18    changed from a status conference into a change of plea

19    conference.

20         THE COURT:  I have received some materials in

21    advance, have there been any changes in those?

22         MR. HARVEY:  There are not, Your Honor, and we have

23    signed copies for the Court, fully executed copies, an

24    original version, which we've passed up prior to the hearing

25    today.

1          THE COURT:  Then if Mr. Kim is ready to proceed.
2     If I can have him up, I'll swear him in and proceed.  You
3     should have the paperwork with you, it will make it easier for
4     him.
5          (Defendant sworn by clerk).
6          THE COURT:  Mr. Kim, you're going to need to speak
7     louder because we do need a record.  Do the microphone
8     straight up, you're tall, so you don't have to keep leaning
9     over.
10          All right.  I'm going to be asking you some
11     questions as part of this plea to make sure that you
12     understand what you're doing and that you're entering this
13     plea voluntarily.
14          THE DEFENDANT:  Yes.
15          THE COURT:  If you don't understand something I'm
16     asking, particularly when I go over the plea agreement, I may
17     explain it differently than what you understand or what you
18     discussed with your lawyer.  Please don't hesitate to ask me
19     to clarify something.
20          Also, you can consult with your lawyer at any time.
21     So, if you want to ask him a question, that's not a problem,
22     just indicate that.  At the end of this I need to make a
23     finding that you've entered this plea knowingly and you've
24     entering it voluntarily.  So, what we need to do is make sure
25     we put on the record your understanding of all of the terms of

1  the agreement.  I will go over the plea letter.  I won't hit

2  everything, but I will go through what I think is probably the

3  most important.  But I want to make sure you have

4  everything -- that we have everything on the record.  You

5  can't come back later and say, well, I thought this or that

6  was part of the plea agreement.

7           Also, I want to make sure, at least as to your

8  decision today, that this is really what you want to do,

9  since -- although, I will go through a Rule 11(c)(1)(C),

10  what's involved with that, you can't sort of shift or change

11  your mind after we've gone forward with this proceeding and if

12  I accept your plea.

13           Do you understand?

14           THE DEFENDANT:  Yes, I do.

15           THE COURT:  I have sworn you in, so I want to make

16  sure that you understand that you're now under oath.  If you

17  don't answer my questions truthfully, you could be prosecuted

18  for perjury or for making a false statement.

19           Do you understand that?

20           THE DEFENDANT:  Yes, I understand.

21           THE COURT:  All right.  I'm going to go over, just

22  briefly, what the core terms of the agreement are without

23  going through the letter.  I'll go through that later.  You

24  have been indicted on two charges, Count 1 is unauthorized

25  disclosure of national defense information, and Count 2 is

1    false statements.  The plea involves -- you're pleading guilty

2    to Count 1 of the indictment, the unauthorized disclosure of

3    national defense information.  The Government at sentencing

4    will dismiss Count 2.  They have also indicated they would not

5    bring any other nonviolent crimes that you may have told them

6    about, having committed them in D.C. prior to this agreement,

7    should there be any such.

8              Now, this is a Rule 11(c)(1)(C) plea, and what that

9    means is that you and the Government have agreed to a sentence

10   of 13 months in jail and one year of supervised release to --

11   subsequent to that jail sentence.  They've also agreed not to

12   request any fine.  So, I assume they're expecting the Court to

13   accept all three, am I correct?  It wasn't quite clear on the

14   fine, but I'm assuming that it is.

15             MR. LOWELL:  I'm sorry, Your Honor.  Yes, they're

16   all in the 11(c)(1)(C) conditions, subject to the Court's

17   acceptance, of course.

18             THE COURT:  All right.  So, you have an agreement

19   with the Government.  From my perspective, I'm going to order

20   a presentence report so I have some information concerning

21   you.  If I agree to the sentence that you and the Government

22   have agreed to, then that will be your sentence.  You'll have

23   no fine, you'll be sentenced to 13 months followed by one year

24   of supervised release.

25             If I don't accept the sentence that you've agreed

1    to with the Government, then you have two choices.  You can

2    choose to withdraw, which would put you back where we are now,

3    which is with a trial date moving forward with discovery; or

4    you could decide to simply go forward and be sentenced without

5    having a specific agreement.  The Government has also put in

6    that they are in a position, should I reject the plea -- the

7    agreement, not the plea -- the agreement as to the sentence,

8    that they also could withdraw the plea.

9           So, at this point you and the Government have an

10   agreement, we will go forward with the plea.  If I accept the

11   plea, I'll order the presentence report and then I will

12   indicate whether or not I'm accepting the actual sentence

13   agreement, and that gives you the option at that point.  If

14   I've accepted it, you know what your sentence is and we'll be

15   going forward.  I will set a sentencing date today as well as

16   the presentence report.  And if for some reason I reject it,

17   I'll bring you in back in and we'll discuss with your counsel

18   what it is that you wish to do.

19          So, is that your understanding?

20          THE DEFENDANT:  Yes, it is.

21          THE COURT:  All right.  The Government has also

22   agreed that pending your sentence that you could remain in the

23   community on release as long as you're in compliance.  They

24   have reserved allocution, which means they've reserved the

25   right to address the Court at sentencing, however,

 1   obviously -- on certain issues -- if I accept it, then they

 2   will not be arguing against what they've already agreed to,

 3   but there are, obviously, conditions on supervised release or

 4   other kinds of things that they may make a recommendation to

 5   the Court on.

 6             So, do you agree and understand that portion of it?

 7             THE DEFENDANT:  Yes, I agree and understand.

 8             THE COURT:  Then let me go into some background

 9   information.  How old are you, sir?

10             THE DEFENDANT:  46.

11             THE COURT:  And what is your date of birth?

12             THE DEFENDANT:  August 15th, 1967.

13             THE COURT:  How far have you gone in school?

14   What's the highest educational level?

15             THE DEFENDANT:  Doctorate.

16             THE COURT:  What was it in?

17             THE DEFENDANT:  In history.

18             THE COURT:  And where were you born?

19             THE DEFENDANT:  Seoul, Korea.

20             THE COURT:  Now, I do need to get into whether he's

21   a U.S. citizen or not because the Court is required to go

22   through issues relating to -- if there's any potential for

23   deportation -- in terms of what discussions you've had.

24             Are you a U.S. citizen?

25             THE DEFENDANT:  Yes.

1          THE COURT:  And is that your understanding as well,

2    Mr. Lowell?

3          MR. LOWELL:  It is, Your Honor.

4          THE COURT:  If there's no contrary information, I

5    won't bother discussing the deportation issues.

6          MR. LOWELL:  There is no contradictory information.

7          THE COURT:  You have been on release, have you

8    taken any alcohol or drugs in the last 48 hours?

9          THE DEFENDANT:  No.

10          THE COURT:  Have you taken any kind of medication

11    that could affect your understanding about what you're doing

12    today?

13          THE DEFENDANT:  No.

14          THE COURT:  What was the process that you had for

15    going over the materials that you signed, which would be the

16    plea agreement and the proffer?  Did you read them yourself?

17    Did you discuss it with your lawyer?  Can you go through just

18    sort of what the procedure was?

19          THE DEFENDANT:  I went through it in conjunction

20    with all three members of my legal team.

21          THE COURT:  Have you ever received any treatment

22    for any type of mental illness or emotional disturbance?

23          THE DEFENDANT:  No.

24          THE COURT:  Now, you've received a copy of the

25    indictment originally when you were arraigned, which sets out

1    the two pending charges.  Have you fully discussed those

2    charges and the case in general with your counsel?

3                THE DEFENDANT:  Yes, I have.

4                THE COURT:  And did you actually sit down and read

5    the indictment in terms of what the charges were?

6                THE DEFENDANT:  Yes.

7                THE COURT:  And are you completely satisfied with

8    the services of your lawyer in this case?

9                THE DEFENDANT:  Yes, they are -- they are the best.

10   Thank you.

11               THE COURT:  Have you had enough time to talk with

12   your attorney, discuss the case, the plea offer, and whether

13   or not you should accept it?

14               THE DEFENDANT:  Yes, I have.

15               THE COURT:  All right.  Let me go through your

16   Constitutional rights because by pleading guilty you'll be

17   giving up certain rights, so let me go through these.  And

18   basically, initially, it's going to be whether you understand

19   these rights.

20               Now, the first is you have a right to plead not

21   guilty and have a jury trial in this case.  And, actually, we

22   do have a trial date now of April 28th.  So, you would be

23   giving up not only the trial, which we've set, but any

24   requests for further discovery as well as any decision on the

25   pending motion to suppress.  Do you understand that?

1                    THE DEFENDANT:  Yes.

2                    THE COURT:  In terms of the jury trial, citizens of

3    the District of Columbia would be summoned to the courtroom,

4    you, through counsel, and the Government and the Court would

5    ask them questions in order to have you and the Government

6    select a jury that would be fair and impartial.  They would

7    listen to the evidence, they would be provided jury

8    instructions, they would review the evidence, and 12 citizens

9    of the District of Columbia would determine your guilt or

10   innocence based on the evidence presented in the courtroom.

11                   Do you understand your right to a jury trial?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  Do you understand that if you did have

14   a trial, you would have a right to be represented by a lawyer

15   at that trial, and one could be appointed if you did not have

16   one.  Do you understand that?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  Do you understand that at a trial you

19   would have a right, through your attorney, to confront and

20   cross-examine any witnesses against you?

21                   THE DEFENDANT:  Yes.

22                   THE COURT:  Do you understand that you would have a

23   right to present your own witnesses, and that you would have a

24   right to subpoena them, in other words, to require them to

25   come and testify in your defense?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that if there were a

3    trial, you would have a right to testify and present evidence

4    on your own behalf if you wanted to, but that you wouldn't

5    have to testify or present any evidence if you didn't want to,

6    and that's because you can't be forced to incriminate

7    yourself, that is, to present evidence of your own guilt.

8          And if you decided to exercise your Constitutional

9    right and not testify, if requested, I would tell the jury

10   that the failure to testify can't be held against you and

11   there could be no inference of guilt based on your exercise of

12   your Constitutional rights.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand that unless and until

16   I accept your guilty plea you are presumed by the law to be

17   innocent because it's the Government's burden to prove your

18   guilt beyond a reasonable doubt, and until it does you cannot

19   be convicted at trial?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that if you went

22   forward to trial and were convicted, you would have a right to

23   appeal your conviction to the Court of Appeals and have a

24   lawyer help you prepare your appeal?

25         THE DEFENDANT:  Yes.

```
1              THE COURT:  Do you understand that by pleading
2   guilty you're giving up all your rights to appeal except for
3   the following.  I think it's probably easiest if you have the
4   plea agreement in front of you, and if you looked at Page 6,
5   Paragraph C, which talks about appeal rights.  You're giving
6   up certain statutory rights to appeal, you're not giving up
7   your Constitutional rights to appeal.  So, if there were
8   Constitutional violations, you are still preserving that
9   right.
10             So, if it was unlawful or involuntary or there's
11  some other fundamental defect of a Constitutional proportion
12  in these proceedings, you're not giving up that right.  But
13  you are giving up your right to a statutory.  So, if we look
14  at Page 6 in front of you, just make sure.  It sets out --
15  there's a statutory provision that allows you to appeal your
16  sentence in certain circumstances.
17             And you're agreeing to waive the right to appeal
18  the sentence in this case, which would include the term of
19  imprisonment, fine, any forfeiture, should that be
20  appropriate, or award of restitution, should that be
21  appropriate, as well as a term of supervised release.  And,
22  also, you'd be giving up the manner in which the sentence was
23  determined.
24             There are some exceptions, and that would be if I
25  sentence you above the statutory maximum, which would be an
```

1    illegal sentence, or the guideline range determined by the

2    Court, then you could appeal that illegal sentence or the

3    above guideline sentence, but you wouldn't be able to raise

4    other issues.  If I accept the agreement that we've set out on

5    the Rule 11(c)(1)(C), but for some reason I impose a different

6    sentence that is inconsistent with that agreement, then again,

7    you would have a right to appeal that.

8              Is that your understanding and agreement?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Now, in terms of the Constitutional

11   rights that would be left for you to appeal.  Any notice of

12   appeal would have to be filed within 14 days of judgment being

13   entered into this case.  If you're unable to pay the cost of

14   an appeal, you can apply to have the costs of an appeal borne

15   by the Court.  If you request, you can also have counsel

16   appointed for you if you needed one.

17             Do you understand all of that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you understand that if you plead

20   guilty in this case and I accept your guilty plea, you'll be

21   giving up the rights I've just gone over with you because

22   there won't be any trial or any appeal except on the limited

23   areas I've indicated?

24             THE DEFENDANT:  Yes, I understand.

25             THE COURT:  Do you want to plead guilty in this

1    case, give up your rights to a trial and your right to an

2    appeal, as I've explained it, and all of the other rights I've

3    just gone over if your case went to trial?

4              THE DEFENDANT:  Yes.

5              THE COURT:  At this point we're going to go over

6    the proffer.  The Government will state the evidence they

7    would have presented if the case had gone to trial.  I need to

8    make a finding that they have evidence, based on the proffer,

9    beyond a reasonable doubt, that meets the elements of the

10   offense that you are pleading guilty to.

11             So, they will set out the proffer, as well as tie

12   it up to the elements, not only setting the elements out but

13   what facts support it.  And then I will -- I want you to

14   listen carefully to that -- and then I will ask you whether

15   you agree with it.  I realize you've signed something

16   indicating you have, but it's my practice to go through and

17   make sure that there's no disagreement about the information

18   and that you're admitting to conduct that also meets those

19   elements, because I need to make a finding that the Government

20   has proof beyond a reasonable doubt, based on the proffer, and

21   that you're admitting conduct that meets the elements of the

22   offense.

23             THE DEFENDANT:  Yes.

24             THE COURT:  You can go ahead and sit down with

25   counsel while we go through this.

1        MR. HARVEY:  Your Honor, I would like to -- first,

2   I'll review the elements of the offense and then I will read

3   the factual proffer, and then I will tie it up, that is, the

4   principal facts to the elements, Your Honor.

5        THE COURT:  All right.

6        MR. HARVEY:  As for the elements of an 18 U.S.C.

7   793(d) offense, there are four.  First, the defendant lawfully

8   had possession of, access to, control over or was entrusted

9   with.  Second, information relating to the national defense.

10  Third, that the defendant had reason to believe it could be

11  used to the injury of the United States or to the advantage of

12  any foreign nation.  And, fourth, that the defendant willfully

13  communicated, delivered or transmitted such information to a

14  person not entitled to receive it.

15       As for the statement of offense, Your Honor, one

16  clarification the Government would like to make, and this is

17  at the Court's request.  The written statement of offense

18  identifies an individual only as Reporter A.  For sake of

19  clarity, and as the defendant is aware, the individual being

20  referred to as Reporter A in the statement of offense is James

21  Rosen of Fox News.  Mr. Rosen is the only reporter identified

22  in the statement of offense.

23       THE COURT:  All right.

24       MR. HARVEY:  With that, I will now read the

25  statement of offense.  Should this matter have proceeded to

1    trial, the United States of America would have proved the

2    following facts beyond a reasonable doubt:

3              On or about June 11th of 2009, the defendant,

4    Steven Jin-Woo Kim, having authorized access to national

5    defense information, that is, the contents of an intelligence

6    report classified at the Top Secret/Sensitive Compartmented

7    Information level, which I will refer to as Top Secret/SCI

8    information, identified herein by the last six digits of its

9    report number, which is 3630-09, hereinafter I'll refer to

10   that as the Intelligence Report, knowingly and willfully

11   disclosed national defense information, specifically about the

12   military capabilities and preparedness of North Korea, to a

13   person not entitled to receive it, namely, a reporter with a

14   national news organization (Reporter A), that is James Rosen

15   of Fox News.  At the time of his unauthorized disclosure,

16   Mr. Kim had reason to believe that his unauthorized disclosure

17   of such national defense information could be used to the

18   injury of the United States or to the advantage of a foreign

19   nation.

20             In or about June of 2009, Mr. Kim was a Lawrence

21   Livermore National Laboratory employee working at the

22   Department of State's Bureau of Verification, Compliance and

23   Implementation, VCI.  VCI was responsible for ensuring that

24   appropriate verification requirements are fully considered and

25   properly integrated into arms control, nonproliferation and

1    disarmament agreements and to monitor other countries'

2    compliance with such agreements.

3          Mr. Kim worked as a Senior Advisor for Intelligence

4    to the Assistant Secretary of State for VCI.  Mr. Kim held a

5    Top Secret security clearance on account of his official

6    responsibilities at VCI, and as a result, Mr. Kim had regular

7    access to classified and national defense information relating

8    to the activities of numerous members of the United States

9    Intelligence Community.

10          Prior to the June of 2009, Mr. Kim entered into

11    various nondisclosure agreements with the United States,

12    obligating him not to disclose classified information to any

13    unauthorized person, and advising him that any such

14    unauthorized disclosure could constitute a violation of United

15    States criminal laws, including Title 18 United States Code

16    Section 793.

17          Mr. Kim entered into such nondisclosure agreements

18    both prior to and during his work at the Department of State.

19    The scope of those nondisclosure agreements encompasses the

20    classified information referenced in this statement of

21    offense.

22          In the spring of 2009, Mr. Kim met with Mr. Rosen.

23    Beginning no later than in or about early May 2009, Mr. Kim

24    and the reporter began to communicate via telephone, e-mail

25    and in person on a number of subjects, including North Korea.

1    Both Mr. Kim and the reporter, who was then assigned to cover

2    the Department of State, had offices in the headquarters

3    building of the Department of State.

4              On or about June 11th of 2009, at approximately

5    9:50 a.m., the Intelligence Report was disseminated for the

6    first time to members of the United States Intelligence

7    Community on a classified database, access to which was

8    restricted to authorized users.  Lawful access to the

9    Intelligence Report on the classified database required a Top

10   Secret security clearance; authorized access to the clarified

11   information sensitive compartment to which the contents of the

12   Intelligence Report related; and authorized access to the

13   classified database itself.  As of June 11th, 2009, Mr. Kim

14   was entrusted with such lawful access, permitting him to

15   access and read the Intelligence Report on the classified

16   database.  The reporter did not have lawful access to the

17   Intelligence Report.

18             On or about June 11th of 2009, Mr. Kim and the

19   reporter contacted each other by telephone, both using the

20   Department of State desk phones.  Beginning at approximately

21   11:27 a.m., Mr. Kim accessed and read the Intelligence Report

22   on the classified database using his Department of State

23   computer in his office.  At approximately 11:37 a.m., Mr. Kim

24   called the Reporter's Department of State desk phone.  This

25   call lasted approximately 20 seconds.  Immediately thereafter,

1    Mr. Kim called the Reporter's cell phone.  The second call

2    lasted approximately 1 minute and 8 seconds.

3            Less than a half hour later, Mr. Kim and the

4    reporter met outside of the headquarters building at the

5    Department of State.  Badge records demonstrate that they

6    exited the building at nearly the same time, were absent from

7    the building for approximately 25 minutes, and then reentered

8    the building very close in time.

9            In his interactions with the reporter, Mr. Kim

10   orally disclosed to the reporter Top Secret/SCI defense

11   information from the Intelligence Report, specifically about

12   the military capabilities and preparedness of North Korea.

13           Within a few hours after Mr. Kim and the reporter

14   reentered the headquarters building at the Department of

15   State, very close in time, at approximately 12:30 p.m. Fox

16   News published an article on the Internet, which would be

17   referred herein as the June 11th article, that included Top

18   Secret/SCI national defense information from the Intelligence

19   Report that Mr. Kim disclosed to the reporter, that is, the

20   Top Secret/SCI national defense information specifically about

21   the military capabilities and preparedness of North Korea.

22           Mr. Kim was never authorized, directly or

23   indirectly, by the United States Government to deliver,

24   communicate or transmit any national defense information to

25   the reporter or any other member of the media.

1          The Federal Bureau of Investigation interviewed

2     Mr. Kim on September 24th of 2009, and again on March 29th

3     of 2010.  In his FBI interview on September 24th, Mr. Kim said

4     that he had not had any contact with Mr. Rosen since meeting

5     him in March of 2009.  In his FBI interview on March 29th

6     of 2010, Mr. Kim acknowledged that the information from the

7     Intelligence Report that appeared in the June 11th article was

8     national defense information and properly classified at the

9     Top Secret/SCI level.  Mr. Kim further acknowledged that the

10    unauthorized disclosure and publication of that information

11    could be used to the injury of the United States or to the

12    advantage of a foreign nation.

13         Mr. Kim engaged in the contact described above

14    knowingly and willfully and not by accident or mistake.  In

15    disclosing national defense information to the reporter,

16    Mr. Kim did not believe that he was exposing government waste,

17    fraud, abuse or any other kind of government malfeasance or

18    misfeasance.

19         I will now tie the principal facts from the

20    statement of offense to the four elements, Your Honor.

21         THE COURT:  All right.

22         MR. HARVEY:  First, with regard to the first

23    element, that is, that the defendant lawfully had possession

24    of, access to, control over or was entrusted with the

25    information at issue.  The Government would point to the facts

1    in Paragraph 5, which articulate that Mr. Kim was entrusted

2    with lawful access to the Intelligence Report as of June 11th,

3    that is, that he had Top Secret security clearance, that he

4    had authorized access to the classified information, to the

5    SCI compartment to which the contents of the Intelligence

6    Report related, and he had authorized access to the classified

7    database where the Intelligence Report was located.

8            As for the second element, Your Honor, that is,

9    that the information at issue was national defense

10   information.  The Government would first point out that, as

11   the Court knows pursuant to its prior rulings, national

12   defense information as used in Section 793(d) should be

13   defined as the Supreme Court defined it in US v. Gorin, that

14   is, that it is a general concept or broad connotation,

15   referring to the military and Navy establishments, and related

16   activities of national preparedness.

17           As for the factual basis for this element, the

18   Government would point the Court to Paragraph 1 in the

19   statement of offense, which states that the information at

20   issue was derived from a Top Secret/SCI Intelligence Report

21   related to the military capabilities and preparedness in North

22   Korea, which the Court is aware, has a long history of

23   hostility towards the nation.  The Government would also

24   points to Paragraph 11, which states that the defendant

25   admitted in his FBI interview that the information from the

1    Intelligence Report that appeared in the June 11th article was

2    national defense information, properly classified at the Top

3    Secret/SCI level.

4          The Court is also -- I know that the Court is aware

5    that some case law directs that, as part of this first

6    element, the Court must also show that the information was

7    closely held.  I would just remind the Court that under that

8    case law, information is not closely held only if it's

9    either -- has been made public by the U.S. Government and

10   found in sources lawfully available to the general public, or

11   where sources of information are lawfully available to the

12   public and the U.S. Government has made no effort to guard

13   such information.

14         As for facts demonstrating that the information at

15   issue was closely held by the Government, Your Honor, we would

16   point to Paragraphs 1 and 11, which again state that the

17   information at issue was derived from an Intelligence Report

18   classified TS -- Top Secret/SCI.  Further, Paragraph 5 states

19   that the Intelligence Report was disseminated only to members

20   of the Intelligence Community on a classified database, access

21   to which was restricted as indicated in that paragraph.

22         Further, Paragraph 10 states that Mr. Kim was never

23   authorized, directly or indirectly, by the United States

24   Government to communicate any national defense information to

25   the reporter or any other member of the media.

1           As for the third element, that is, that the

2    defendant had reason to believe that the unauthorized

3    disclosure could be used to the injury of the United States or

4    to the advantage of any foreign nation.  The Government would

5    remind the Court that it's previously held that it's

6    irrelevant whether or not the unauthorized disclosure actually

7    injured the United States or aided a foreign nation.  The

8    language only requires that the Government show that the

9    defendant had reason to believe that the disclosure could be

10   used to the injury of the United States or to the advantage of

11   any foreign nation.

12          And on this element, the Government believes that

13   the facts show that -- both, that the disclosure could be used

14   both to the injury of the United States or to the advantage of

15   a foreign nation, here, North Korea.  As for the factual basis

16   for that element, the Government would point to Paragraph 2,

17   which demonstrates that Mr. Kim was a sophisticated consumer

18   of intelligence, he was a Senior Advisor for intelligence to

19   the Assistant Secretary of State for VCI, and in that position

20   he possessed a Top Secret security clearance and had regular

21   access to classified and national defense information relating

22   to the activities of numerous members of the United States

23   Intelligence Community.

24          We'd also point to Paragraphs 1 and 11, which

25   states that the information at issue was national defense

1  information classified at the Top Secret/SCI level, and the

2  defendant knew that.  And, again, as the Court has previously

3  held, the operative executive order defined Top Secret

4  information as information, the unauthorized disclosure of

5  which reasonably could be expected to cause exceptionally

6  grave damage to national security.

7       Further, we would point to Paragraph 3 of the

8  statement of offense that sets forth the classified

9  information at issue was encompassed within the nondisclosure

10 agreements, which Mr. Kim entered into, and that those

11 agreements obligated him not to disclose that classified

12 information to any unauthorized person, and advised him that

13 any such disclosure could be a violation of federal law.

14      We'd also point to Paragraphs 1, 5, 8 and 9, which

15 describes -- even setting aside the classification of the

16 information -- the sensitive timely subject matter of the

17 information at issue, all of which the defendant new.  That

18 is, that the information was derived from an Intelligence

19 Report related to the military capabilities and preparedness

20 of North Korea.

21      Further, that the Intelligence Report had been

22 released to the Intelligence Community only hours before its

23 unauthorized disclosure on the Internet, thereby, informing

24 North Korea, once it was published, at that moment what the

25 U.S. knew or did not know about the subject matter of the

1   report.

2            Once again, I would just refer the Court back to

3   Gorin.  Once the intelligence was publicized, the North Korean

4   Government would be in a position to use that intelligence to

5   its benefit as a check upon this country's efficiency in

6   ferreting out intelligence about its country -- about North

7   Korea.

8            Finally, the Government would point the Court to

9   Paragraph 11, which describes the defendant's admission to the

10  FBI that the unauthorized disclosure and publication of the

11  information could be used to the injury of the United States

12  or the advantage of a foreign nation.  As for the fourth

13  element, that is, that the defendant willfully communicated,

14  delivered or transmitted such information to a person not

15  entitled to receive it.

16           I would remind the Court, again, of its prior

17  ruling, that the phrase "person not entitled to receive it"

18  should be defined in conjunction with the Government's

19  classification system, which sets out who is entitled to

20  receive classified information, that is, those with the

21  property security clearance, the Need to Know, et cetera.

22           As to the factual basis for this element, the

23  Government points the Court to Paragraphs 1 and 5 of the

24  statement of offense, which demonstrates that Mr. Rosen did

25  not have such lawful -- did not have such lawful access to the

1    classified information at issue and he was not entitled to

2    receive it.

3           As for willfulness, Your Honor, the courts

4    previously held that the term in this context means that the

5    defendant acted with knowledge that his conduct was unlawful.

6    As to the factual basis for that part of the fourth element,

7    we'd point the Court to Paragraphs 1 and 11, which state that

8    the information at issue was Top Secret/SCI and the defendant

9    knew it.

10          Paragraph 3, which sets forth that Mr. Kim entered

11   into various nondisclosure agreements which advised him that

12   the unauthorized disclosure of classified information could

13   constitute a violation of U.S. criminal laws, including

14   18 U.S.C. 793.  Paragraph 10, which states that Mr. Kim was

15   never authorized, directly or indirectly, by the United States

16   Government to communicate that national defense information to

17   the reporter or any other member of the media.

18          We'd also point to Paragraphs 4, 6 through 8 and

19   11, which demonstrates that when Mr. Kim was interviewed by

20   the FBI on September 24, 2009, he lied to the agents

21   concerning the extent of contact with the reporter, which the

22   Government submits reflects the defendant's consciousness of

23   guilt.

24          Finally, we'd point to Paragraph 12, which states

25   that in disclosing national defense information to the

1    reporter, Mr. Kim did not believe that he was exposing

2    government waste, fraud, abuse or any other kind of government

3    malfeasance, he did so knowingly and willfully and not by

4    accident or mistake.

5                THE COURT:  All right.  Let me have Mr. Kim come

6    back up -- and counsel.  Let me just -- you've obviously

7    signed it -- you need to move the microphone in front of you

8    so we can hear.  There you go.  You obviously signed the

9    material, but let me just ask you generally.  Do you agree

10   with what has been stated by the Government, which states what

11   is in here?

12               MR. LOWELL:  I have to respond first, Your Honor.

13               THE COURT:  Okay.

14               MR. LOWELL:  As the Court knows from our pleadings,

15   we don't agree with the Government as to all the parts of all

16   the elements that Mr. Harvey just set out.  And there's no

17   reason to quarrel about that, given your Court's rulings.

18   However, he has put a lot more into that statement, I can say,

19   and Mr. Kim will also say, nevertheless, we are affirming that

20   the statements of facts which are signed are sufficient to

21   support each of the elements for which Mr. Kim has pleaded --

22   now is about to plead.

23               So, I needed to make that clear because there was

24   more in there.

25               THE COURT:  I understand.  All right.  So, Mr. Kim,

1   is there anything you don't disagree -- that you don't agree

2   with in here or something that you don't know about?

3           MR. LOWELL:  I'm sorry, Your Honor, you mean the

4   statement of offense?

5           THE COURT:  In terms of the factual proffer, that's

6   all I'm asking.  He's strictly the factual proffer, he doesn't

7   have to do anything from a legal perspective.  You've made

8   your statement; they have as well.  All I would ask from him

9   is -- I know he's signed it, but I have found every once in

10  awhile that people have nuance feelings about how it's written

11  or there's something in here that they feel that the

12  Government has as evidence but not something they would know.

13          Is there anything in here that fits that category

14  from your perspective, Mr. Kim?

15          THE DEFENDANT:  Well, the last time I checked the

16  agreement or the documents in question, that was --

17          THE COURT:  -- the factual proffer.

18          THE DEFENDANT:  Right.  That's the agreement that

19  I, me, I authorized my lawyer to approve -- the language that

20  they have used in the presentation of that, I do not agree.

21          THE COURT:  So, in terms of his discussion of what

22  the legal elements are --

23          THE DEFENDANT:  I do not agree.

24          THE COURT:  All right.  So, let's move to the

25  factual, which is what I'm going to be focusing on at this

1  point.  So, if you have it in front of you, it will make it

2  easier in terms of my going through it.  I'm going to start

3  with -- that in June of 2009, what your position was.  As I

4  understand it, you worked for the Lawrence Livermore National

5  Laboratory and they had a contract with the Department of

6  State's Bureau of Verification, Compliance and Implementation,

7  and that you worked as a Senior Advisor for intelligence for

8  the Assistant Secretary of State/VCI; is that correct?

9            THE DEFENDANT:  Yes.

10           THE COURT:  And that you held, in that position, a

11  Top Secret security clearance based on your official

12  responsibilities at VCI; is that correct?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And so because you had the

15  classification, security clearances, and because of your

16  position, you had regular access to classified and national

17  defense information relating to various members of the

18  U.S. Intelligence Community, which involves different agencies

19  -- but based on your position you had access?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And prior to June of 2009, did you sign

22  off on various nondisclosure agreements with the United States

23  which would obligate you not to disclose classified material

24  to anyone who was unauthorized, and which also told you that

25  if you did engage in an unauthorized disclosure that that

1    could be a violation of the U.S. criminal laws, specifically,

2    18 U.S. Code Section 793?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And I take it before your work at the

5    Department of State and during your work, you entered into

6    these nondisclosure agreements; is that correct?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And do you agree that the scope of

9    these nondisclosure agreements as to the classified

10   information includes the classified information that's

11   involved in this Intell Report that's at issue?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Now, in the spring of 2009, is it

14   correct that you met with James Rosen of Fox News?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And some time in early May of 2009, you

17   and Mr. Rosen began to communicate by phone, e-mail and in

18   person about a number of topics, but it did include North

19   Korea; is that correct?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And did you and Mr. Rosen, who also

22   evidently was assigned to cover the Department of State, have

23   offices in the headquarters building of the Department of

24   State?  So, you in your position and he as a reporter had

25   offices in the building; is that correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And on or about June 11, 2009, which is

3    the key date, at approximately 9:50, did an Intelligence

4    Report -- and this is the one that is at issue in this whole

5    case -- was that disseminated on a classified database for the

6    first time to members of the U.S. Intelligence Community so

7    that it would -- it was on a classified database, which would

8    mean that the access was restricted to authorized users; is

9    that correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And if you -- what lawful access to

12   this report in the classified database would mean that the

13   person would have to have a Top Secret security clearance,

14   would have to be authorized to access the classified

15   information, Sensitive Compartment, the SCI portion, as to the

16   contents of the Intell Report; is that correct?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Those two.  And, also, they would have

19   to have authorized access to the classified database itself;

20   is that correct?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And did you have all of that?  In other

23   words, were you in that position to be authorized to access

24   the database because you had the Top Secret/SCI and you were,

25   therefore, allowed to look at the database in this particular

1    report?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So, as of June 11, 2009, the day in

4    question, you did have lawful access which allowed you to

5    access and read this report on the classified database; is

6    that correct?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And did you do so?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Did you read it?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And do you agree that Mr. Rosen did not

13   have lawful access to the Intelligence Report?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And also around June 11, 2009, did you

16   and Mr. Rosen contact each other by telephone using the phones

17   provided by the Department of State?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And starting at around 11:27, did you

20   access and read the Intelligence Report on the classified

21   database using your computer in your office?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And at around 11:37 a.m. did you call

24   Mr. Rosen on the Department of State desk phone and talk to

25   him for about 20 seconds?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And did you shortly thereafter call

3    Mr. Rosen on his cell phone?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And after this -- this cell phone call

6    lasted about a minute and eight seconds; is that correct?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And less than half an hour later you

9    and Mr. Rosen met outside the headquarters building of the

10   Department of State; is that correct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And did you both depart or exit the

13   building at about the same time?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And were you gone from the building for

16   approximately 25 minutes and then reenter the building close

17   in time to each other?

18         THE DEFENDANT:  Yes.

19         THE COURT:  I'm sorry?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Now, in your interactions with

22   Mr. Rosen when you met, did you orally disclose to Mr. Rosen

23   the Top Secret/SCI national defense information from the

24   Intelligence Report, specifically about the military

25   capabilities and preparedness of North Korea?

 1          THE DEFENDANT:  Yes.

 2          THE COURT:  Now, within a few hours after you and

 3     Mr. Rosen had reentered the headquarters building of the

 4     Department of State at about 12:30 then, to your knowledge, do

 5     you know that Mr. Rosen of Fox News published an article on

 6     the Internet that included the TS/SCI national defense

 7     information that we've just talked about, Paragraph 8, from

 8     the Intelligence Report that you had disclosed to Mr. Rosen?

 9     In other words, the TS/SCI national defense information,

10     specifically about the military capabilities and the

11     preparedness of North Korea?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Have I made it too long or should I

14     break it down?

15          MR. LOWELL:  He said Yes.

16          THE COURT:  Did you say Yes?

17          THE DEFENDANT:  Yes.

18          THE COURT:  You need to speak up so we have both a

19     recording as well as the court reporter.  So, you've agreed to

20     that; is that correct?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And is it correct that you were never

23     authorized, either directly or indirectly, by the United

24     States Government to deliver, communicate or transmit any

25     national defense information, which in this proffer is the

1   military capabilities and preparedness of North Korea to

2   Mr. Rosen or any other member of the media; is that correct?

3               THE DEFENDANT:  Yes.

4               THE COURT:  Now, did you also meet with the Federal

5   Bureau of Investigation and were interviewed on

6   September 24th, 2009, and again on March 29th, 2010; do you

7   have those two interviews?

8               THE DEFENDANT:  Yes.

9               THE COURT:  Now, in the first interview with the

10  FBI in September 24, 2009, did you say you had not had any

11  contact with Mr. Rosen since meeting Mr. Rosen in March

12  of 2009; is that correct?

13              MR. LOWELL:  Your Honor, the factual statement is

14  signed.  I want to just make clear for the record that we have

15  no contest that the FBI 302 interview memorandum indicates

16  that that's what Mr. Kim said, but as this is not part of the

17  agreement as to Count 2, it is there for purposes of

18  background.

19              So, if the Court would have Mr. Kim say that

20  there's this memorandum that says what it is, then of course

21  he will not deny that.

22              THE COURT:  Okay.  Is that acceptable to you?

23              THE DEFENDANT:  Yes.

24              THE COURT:  I'm asking the Government.

25              MR. HARVEY:  That's fine, Your Honor.

1          THE COURT:  All right.  Then I'll reword this.  In

2     your FBI interview on September 24, 2009, is it correct that

3     the FBI 302, which would be the report of the interview, did

4     that say that you had indicated that you had not met with

5     Mr. Rosen since seeing him in March of 2009; is that correct?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Did you look at that FBI 302?

8          THE DEFENDANT:  Yes, I have.

9          THE COURT:  Now, on your March 29th, 2010

10    interview, do you agree that the information that you

11    indicated to them, to the FBI, that the information from the

12    Intelligence Report that appeared in the June 11th article,

13    which was Mr. Rosen's article, was national defense

14    information which is the military capabilities and

15    preparedness of North Korea, as we've set out, and that was

16    properly classified as TS/SCI level; do you agree with that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And did you further tell them that the

19    unauthorized disclosure and publication of that information

20    could be used to the injury of the United States or the

21    advantage of a foreign nation?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Did you engage in the conduct we've

24    just talked about -- I'm not talking about the FBI interview,

25    but the rest of it in terms of involving Mr. Rosen -- did you

1    know what you were doing?  In other words, was this a mistake

2    on your part or an accident or did you know what you were

3    doing?

4              THE DEFENDANT:  Yes.

5              THE COURT:  -- in taking your actions.  Okay.  And

6    did you know that this was -- would be -- could constitute a

7    violation of the U.S. criminal laws?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And then in Paragraph 12, I take it

10   you're not claiming that by giving this information to

11   Mr. Rosen that you were exposing government waste, fraud,

12   abuse or some other kind of government malfeasance or

13   misfeasance?

14             THE DEFENDANT:  Yes.

15             THE COURT:  In other words, you're not claiming

16   that you were a whistleblower; is that correct?

17             THE DEFENDANT:  Yes.

18             THE COURT:  I'm sorry, I didn't hear you.

19             THE DEFENDANT:  Yes.

20             THE COURT:  Mr. Lowell, is there any other defense

21   that has to be specifically waived here that I need to have a

22   discussion with him about, or is this sufficient?

23             MR. LOWELL:  I believe, Your Honor, on the basis of

24   the elements as Mr. Harvey set them out and the statement of

25   facts that we signed them, as I said before, there is a

1   factual predicate for each of those elements, as now you have

2   recounted with Mr. Kim himself.  So, the answer to that is, if

3   the Government were able to prove that beyond a reasonable

4   doubt, as they proffered that they could do, and we have

5   agreed to the statement of facts that they could do that, it

6   would support the plea that Mr. Kim is entering.

7           THE COURT:  Okay.  Every once in awhile there's a

8   specific defense.  I wasn't particularly aware of one, but I

9   always ask because sometimes there is a defense that needs to

10  be specifically waived.  So...

11          MR. LOWELL:  Right.

12          THE COURT:  Other than could they actually prove

13  all of this, I'm not talking about that, I'm talking about

14  something else.

15          MR. LOWELL:  For example, even Mr. Harvey said --

16  and I don't mean to prolong this, Your Honor -- but even

17  Mr. Harvey said that there are differences among the circuits

18  as to the elements of what is NDI.  And I think that because

19  of your rulings in this case, I understand what they are as

20  applied to the facts, therefore, this is a proper statement.

21          On the other hand, for example, the statement in

22  the statement of facts that Mr. Kim was not acting to expose

23  malfeasance or misfeasance or not a whistleblower is probably

24  not, quote, a defense, end quote, to the unauthorized

25  disclosure of national defense information, so it's there for

1      the purposes, I suppose, of background.

2                THE COURT:  All right.  Let me, in terms of both

3      having heard the Government's proffer as well as the

4      admissions of Mr. Kim in agreement to the statement, with the

5      one proviso about the FBI 302.  So, let me, in very summary

6      form, since I need to make a finding as to -- that the

7      elements of the offense and the evidence as both the

8      Government has set it out and the defense have set it out,

9      meet all of the elements.

10               So, it's the defendant lawfully had possession,

11     access to or entrusted with the classification information at

12     issue.  He worked as a Senior Advisor for intelligence to the

13     Assistant Secretary of State within VCI.  He had a Top Secret

14     clearance with certain SCI compartments as well -- clearances.

15     He was authorized to access to classified national defense,

16     both database and information generally, and specifically the

17     Intelligence Report at issue that was classified Top

18     Secret/SCI.  So, he had authorized access to the sensitive

19     compartmented information in the report at issue.

20               The information related to national defense.  The

21     Top Secret/SCI Intelligence Report at issue addressed or

22     contained information about the military capabilities and

23     preparedness of North Korea, which is generally viewed as a

24     country hostile to the United States.

25               In terms of reason to believe classified

1    information could be used to the injury of the United States

2    or to the advantage of any foreign nation.  Looking at the

3    timing on June 11th, 9:50, the Intell Report is disseminated

4    to members of the U.S. Intelligence Community on a classified

5    database restricted to authorized users.  That same day at

6    11:27 the defendant accessed it and reads it.

7            Then the defendant calls Mr. Rosen at 11:37,

8    talking 20 seconds, and then he calls him again on the cell

9    phone, it lasted a minute and eight seconds.  They meet

10   outside at around noon.  They reenter the State Building at

11   12:25 and around 12:30 the National News Agency, Fox News,

12   Mr. Rosen, publishes the article containing information from

13   the Intell Report.  So, it's up-to-the-minute dissemination,

14   access, disclosure, publication.

15           The defendant had subjectivity believed that it

16   could be used to the injury of United States or advantage of a

17   foreign nation.  He acknowledges this in the FBI interview.

18   The defendant's belief is reasonable in light of the

19   timeliness of the Top Secret/SCI intelligence related to

20   national security, the military capacity and preparedness of

21   North Korea, being the national security.

22           The release of Top Secret/SCI intell to a

23   reporter likely to publish this, the intelligence, would

24   indicate what the United States knows or doesn't know about

25   the military capacities and preparedness of North Korea, not

1   only to North Korea and other countries at that point in time,

2   which could be used in terms of what intelligence the United

3   States had, and also North Korea could do a review of where

4   potential sources might be.

5            When Mr. Kim spoke to the reporter, the reporter

6   was likely to publish the information, again, provides any

7   foreign country with knowledge about what U.S. Intelligence

8   knew at that particular point in time.  The defendant

9   willfully communicated/transmitted information to a person not

10   authorized, entitled to receive it, and willfully acted with

11   knowledge that his conduct was unlawful.  He signed these

12   nondisclosure agreements not to disclose classified

13   information to any unauthorized person.  He was told that if

14   he did so that he could violate the U.S. criminal laws, and he

15   signed these agreements before and during his work at the

16   State Department.

17            The Top Secret/SCI Intell Report at issue was

18   encompassed within those nondisclosure agreements that Mr. Kim

19   signed.  Mr. Rosen did not have lawful access to the

20   Intelligence Report at issue or information.  The defendant

21   was never authorized by the U.S. Government to deliver,

22   communicate, transmit national intelligence information, as

23   we've defined it, to Mr. Rosen or any other member of the

24   media.  Potential consciousness of guilt is when he was

25   interviewed first by the FBI, according to the FBI he denied

1    disclosing this information to Mr. Rosen.  And also it

2    indicates that we've eliminated the possibility of a later

3    claim of a whistleblower.

4            The Government has stated a more detailed factual

5    recitation, and I will adopt that as well.  It had more

6    details, at least, as to some of the things, but I think

7    based -- I've given enough of a framework to be able to say

8    that both the proffer and Mr. Kim's statements and agreement

9    to the contents of the proffer meet the elements of the

10   offense.  So, I'll accept that and move on to the contents,

11   actually, of the plea agreement.

12           So, if you have that in front of you, let me go

13   through that.  Let me make just one final thing.  Both the

14   Government and the admissions, the proffer of the fact, meet

15   the elements beyond a reasonable doubt for the elements that

16   have been set out.

17           Now, you've got the agreement.  I'm going to go

18   through portions of it, I'm not going to go through

19   everything, but I want to make sure we hit certain things to

20   make sure that we have a meeting of the mind of what's in

21   here.  I'm going to start with the penalties which are set out

22   here.  They set out the statutory penalties.  The Court cannot

23   sentence you lawfully above those maximums.

24           The maximum statutory penalty in terms of a jail

25   sentence is 10 years or 120 months.  The maximum fine is

1   $250,000.  The Court cannot sentence you to more than three

2   years of supervised release.  There is a special assessment

3   that needs to be paid of $100, which I cannot waive.

4           The supervised release, if I could just explain.

5   You've agreed to a 13-month jail sentence and to a period of

6   supervised release.  Supervised release sets certain

7   conditions.  No additional criminal conduct.  You need to

8   report.  Do various things that are -- that Probation requires

9   of you while you're in the community for the period of time

10  that you're on the year's supervised release.

11          What I want to make sure that you understand is

12  that if you violate those conditions, whether with new

13  offenses or if you violated with more technical things, not

14  reporting, doing something of that nature, the supervised

15  release can be revoked.  If it is revoked, a new sentence can

16  be imposed.  The new sentence is set out both on the

17  sentencing guidelines and by statute.  The important thing for

18  your perspective is that it will not be reduced by the time

19  that you already will have served.  So, you would get a new

20  sentence and serve the new sentence, not reduced by the --

21  assuming it's the 13 months, by the 13 months.  Obviously, the

22  sentence that you originally received and the sentence that is

23  based on the violation cannot exceed the maximum.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  All right.  I'm going to move to --

2  we've talked about the factual stipulation on Page 2.  We've

3  discussed the additional charges and the fact that they will

4  be dismissing Count 2.  We've discussed the Rule 11(c)(1)(C)

5  plea being 13 months of incarceration, one year of supervised

6  release and no fine.

7          If I accept it, then that's the sentence, at least

8  in terms of that portion of any sentence.  If I don't, you

9  have a right to withdraw, the Government has a right to

10  withdraw the plea as well, or you could decide to go forward

11  with the sentencing without having an agreement about it.  So,

12  that really takes you through Page 3.

13          I'm going to discuss the sentencing framework which

14  I have to do whether or not I accept the Rule 11(c)(1)(C).

15  It's not exactly in the same order you have it in the plea

16  agreement, so I'm going to go through it in the way I would

17  set it out, just so you understand it.  As I've talked about

18  the statutory maximum, I cannot sentence you to beyond that.

19  And we've already said what that is.  The framework within

20  which the Court sentences is set out by statute, it's

21  18 U.S.C. 3553(a) and some other sections, and it sets factors

22  out.  The nature of the offense, the seriousness of it, your

23  background and history, any needs for rehabilitation, a

24  deterrent effect to you or to others, punishment, those kinds

25  of very broad concepts the Court has to consider in coming up

1    with a reasonable and appropriate sentence.

2             A presentence report is prepared by the Probation

3    Office.  They will talk to you and others.  They will give

4    background information about you to the Court.  They will also

5    do a calculation of the advisory sentencing guidelines, which

6    they will include, and they make recommendations to the Court.

7             You and your counsel and the Government will have

8    an opportunity to look at it before I get it to make

9    objections, either factual inaccuracies or you disagree with

10   say the calculations.  The presentence report writer will

11   either agree and change them or won't agree; if they don't

12   agree, then when I get the report it will indicate what the

13   objection is, why Probation didn't change it, and I will,

14   before I go forward with the sentencing, resolve that

15   objection.

16            In terms of the advisory sentencing guidelines,

17   there are two calculations that are made.  The offense level.

18   And the Government has calculated -- it's not included in the

19   plea agreement, but I'll go over what the Government has

20   indicated they think the calculation would be.  The offense

21   level starts off with a base offense, which is a number, that

22   relates to the nature of the crime, it has a number associated

23   with it.  So, whatever the type of crime is, the advisory

24   sentencing guidelines gives you numbers.

25            They've indicated that they would be asking for an

1   additional two points, an adjustment of the offense level, for

2   abuse of position of trust.  They have indicated, if you

3   accept responsibility for your actions, that there would be

4   three points reduction, two would be -- the Court would give

5   without -- based on the information the Court has, the

6   additional point for the third point, the Government would

7   have to file a motion that the Court would grant.  So, if you

8   add all of that together, we're talking about a 34 as an

9   offense level.

10          The offense level includes putting in various

11   aspects of it in terms of either your role or the nature of

12   the offense.  It's all related to points.  The criminal

13   history, my understanding is, you have no prior convictions.

14   It relates to convictions, not arrests.  Even with the

15   convictions, again, points are assessed.  It depends on the

16   nature of the conviction, in other words, the charge, how long

17   ago it was, and what kind of a sentence you got as to what the

18   number would be.  You would be in criminal history category 1.

19          So, if you look at the chart that I gave you, which

20   is down the left is 34, across the top to 1, is 151 to 188

21   months, which is obviously above the statutory maximum of 120

22   months.  So, the Court could not sentence you to what the

23   advisory sentencing guidelines show, according to the

24   calculation that the Government has done.

25          Then, still talking about the advisory sentencing

1    guidelines, once you get the offense level, criminal history,

2    there are what they call departures; they're very narrow.  The

3    Commission has tried to come up with uniform considerations,

4    depending on the type of the crime and the offense or the

5    nature of the role of the offender.

6            The departures I don't think apply in this

7    particular case.  The typical one for going up is criminal

8    history doesn't reflect the seriousness of your convictions.

9    We understand you don't have any.  And the other one is 5K1.1,

10   which is substantial assistance, where you would be entering

11   into a cooperation agreement as part of the plea.  You don't

12   have that, so that wouldn't apply either.  The departures are

13   very narrow, they're generally areas that the Sentencing

14   Commission may not have considered.

15           Now, because the advisory sentencing guidelines are

16   advisory, they are not mandatory on the Court, the Court can

17   sentence you to what we call a variance.  In other words, I

18   can decide to give you a different sentence, which is what is

19   being asked in this particular case.  It is a variance, it's

20   13 months, which is different than what the advisory

21   calculations are.  I can do that.  I would set out on the

22   record what my justification was for it, but I have authority

23   to do it.  And the 13 months would be a variation.

24           So, is that a discussion you've had with your

25   lawyer about -- maybe not quite in the way I presented it --

```
 1    but at some point in terms of the framework, the presentence
 2    report, the advisory sentencing guidelines, sort of the scheme
 3    of how these sentencings work?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  Do you have any questions about it?
 6              THE DEFENDANT:  No.
 7              THE COURT:  Can I ask Mr. Lowell, did you have a
 8    discussion about the -- specifically about the guidelines?
 9    Were they any different than what the Government has talked
10    about?
11              MR. LOWELL:  We and the Government did, and
12    obviously Mr. Kim and his lawyers have.  And as the Court may
13    know, we have no quarrel with the Government's assessment of
14    what the base offense would be, it's a very large amount.  And
15    as the Court indicated, it would exceed the statutory maximum.
16              We have a quarrel with the Government as to whether
17    or not, for example, the add on of two points would be the
18    abuse of trust, is duplicative of what's already contained in
19    the offense, and I don't know that we have to get to that.
20    And of course we have explained --
21              THE COURT:  Okay.  I just wanted to get a sense of
22    what you talked to him about.
23              MR. LOWELL:  We have.  And we've gone over that
24    very much in detail.  And, last, we've certainly explained to
25    Mr. Kim the issues of both departures and variances and the
```

1    legal framework of whether or not a guideline is and what the

2    Sentencing Commission believed to be the heartland of what it

3    is that the guideline is supposed to address, i.e., here it's

4    called the Espionage Act.  His offense is not espionage,

5    per se, we've gone through that.  We've talked about

6    variances.  We've talked about what would have happened if

7    this wasn't an 11(c)(1)(C) plea.  So, we have done all that,

8    Your Honor.

9              THE COURT:  All right.  Is that correct, Mr. Kim?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Then let me get back to the plea

12   letter.  I think we're at Page 4.

13             MR. LOWELL:  The Court has mentioned both the

14   allocution earlier --

15             THE COURT:  Right.

16             MR. LOWELL:  I'm sorry, on Page 4, that's

17   allocution and the release which you've mentioned.

18             THE COURT:  Right.  So this is -- the allocation

19   that I had talked about, what they had preserved, which I

20   can't remember, is discussing -- being able to inform the

21   presentence report writer, dispute inaccuracies, those kinds

22   of things or anything in terms of the Court.  We've talked

23   about the conditions of release.

24             Statute of limitations, which is on Page 5, 8-A.

25   If for some reason it's vacated at some later point, then as

 1    long as the prosecution was not time-barred at the signing of

 2    this agreement, then if it's vacated it can be resumed.  If,

 3    for instance, the statute of limitations runs between the time

 4    you entered the plea and it's vacated, you're indicating you

 5    will not raise that as a defense.

 6                 Is that your understanding and agreement?

 7                 THE DEFENDANT:  Yes.

 8                 THE COURT:  We've gone over, I think, everything in

 9    the trial rights.  I did go through the fact that you're

10    not -- you've agreed to forego the right to get any further

11    classified/unclassified discovery or any other kind of

12    information that would have been leading up to the trial; is

13    that correct?

14                 THE DEFENDANT:  Yes.

15                 THE COURT:  Okay.  The bottom of 5 I think is

16    important.  You're agreeing that discussing with your lawyer

17    the Rule 11(f), as well as 410, Rule of Evidence.  Ordinarily,

18    those limit the admissibility of statements of a defendant in

19    either plea proceedings or plea discussions, if the plea is

20    withdrawn -- a little different than vacated.  If the plea is

21    withdrawn, then ordinarily those rules would limit the use

22    that could be made of statements you might have made that are

23    admissions.  In general, they would be used for impeachment

24    purposes.

25                 As I understand it, and correct me if I'm wrong, if

1   you withdraw your plea, not in the context of the Rule 11, but

2   just withdraw your plea, not based on the fact that I've

3   rejected the sentence.  So, put the Rule 11(c)(1)(C) aside.

4   If the plea is withdrawn for some other reason, then you're

5   agreeing that they can use any statements that you may have

6   made as admissions against you, and they can use it either

7   directly or indirectly; is that your understanding?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Now, that's not correct.  If you

10  withdraw because I reject it, then as I said it, the

11  Government has agreed that they will not use any statements

12  they made, including the statements you made today, against

13  you, should the case proceed to trial.

14         So, is that your understanding, Mr. Lowell?

15         MR. LOWELL:  It's not only my understanding of our

16  agreement, but it also carries out what the law of Rule 11 and

17  the case law says.

18         THE COURT:  All right.  When I read this I wanted

19  to make sure that that was crystal clear, and that's my

20  understanding the Government's position as well; right?

21         MR. HARVEY:  That is correct.

22         THE COURT:  Is that your understanding, Mr. Kim?

23         THE DEFENDANT:  Yes.

24         THE COURT:  We've gone over the appeal rights on

25  Page 6.  Collateral attack.  You're giving up your right to

1   challenge, et cetera, on collateral attack, not a direct

2   appeal, we've already talked about what your appeal rights are

3   on that, which is Paragraph C above.  But you're giving up a

4   motion brought under 28 U.S.C. 2255, which is in essence a

5   habeas corpus kind of proceeding or a Rule of Civil Procedure

6   60(b), which is basically grounds of relief from a final

7   judgment, usually it's mistake, newly discovered evidence,

8   some sort of fraud, the judgment is void, something of that

9   nature.  You're agreeing not to bring it under those, except

10  if the motion is based on newly discovered evidence or you're

11  making a claim that you received ineffective assistance of

12  counsel.

13          Is that your understanding and agreement?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Is that something that you talked about

16  with your lawyer about what those two things meant?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And you've also agreed not to bring a

19  collateral attack under 18 U.S.C. 3580 -- no, excuse me -- the

20  other exception -- let me just read this again.  Hold on.  The

21  motion brought under 18 U.S.C. 1382(c)(2).  My understanding

22  is that you can actually bring that.

23          MR. MALIS:  That's actually waived, Your Honor.

24          THE COURT:  So he is waiving that?

25          MR. HARVEY:  He is waiving that.  That's just a

1    motion where the defendant was sentenced and they've lowered

2    the guideline range.

3              THE COURT:  This has been written differently in

4    different ones, that's why I wanted to look at it again.

5              MR. LOWELL:  That is part of the waiver, Your

6    Honor.

7              THE COURT:  So, what you've given up as a waiver

8    is -- in the case that you've been sentenced to a term of

9    imprisonment based on -- that the sentencing range that has

10   been subsequently lowered by the Sentencing Commission,

11   pursuant to 28 U.S.C. 994(o), either on the motion of yourself

12   or the Director of the Bureau of Prisons, I could reduce the

13   term of imprisonment after I considered the factors under

14   3553(a), to the extent that they were applicable, if the

15   reduction is consistent with policy statements issued by the

16   Sentencing Commission.

17             In other words, the Sentencing Commission changes

18   the sentencing guidelines, I guess is the easiest way of

19   putting it, which potentially would have lowered it.  You're

20   giving up your right to make a claim that your sentence should

21   be different.

22             THE DEFENDANT:  Yes.

23             THE COURT:  Is that your understanding and

24   agreement?

25             THE DEFENDANT:  Yes.

 1          THE COURT:  Is that the way you explained it to

 2   him, Mr. Lowell?

 3          MR. LOWELL:  It is, Your Honor.  And, of course,

 4   it's all informed by the nature of this particular kind of

 5   plea, of course, but yes.

 6          THE COURT:  Privacy and FOIA rights.  You're also

 7   agreeing to waive all rights, either yourself, or through a

 8   representative, to request or receive from a department or an

 9   agency of the United States, any records pertaining to the

10   investigation or the prosecution of this case, any records

11   that could be sought under the Freedom of Information Act,

12   which would allow you to ask for records.  You've agreed not

13   to ask for any records that relate to the investigation or the

14   prosecution of this particular case.

15          Is that your understanding and agreement?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Any admissions you've made can be used

18   against you at the time of sentencing.  You evidently have an

19   agreement between the two of you relating to a designation at

20   the Bureau of Prisons.  I'm willing to make recommendations

21   that you come up with.  And the Government has also agreed to

22   allow you to remain in the community.  After you are

23   sentenced, to appear voluntarily at the Bureau of Prisons.

24          Is that your understanding and agreement?

25          THE DEFENDANT:  Yes.

1          THE COURT:  One other big portion here is a

2    potential breach.  If you fail to perform or fulfill your

3    obligations under the agreement or if you engage in new

4    criminal conduct before sentencing, you've breached the

5    agreement and there are certain consequences.

6          The Government is free from its obligation.  You

7    will not have a right to withdraw the guilty plea on those

8    grounds.  You will be fully subject to any criminal

9    prosecution should you commit new crimes.  The Government will

10   be free to use against you, directly or indirectly, in any

11   criminal or civil proceeding, any statements that you would

12   have made, including the Rule 11.  Again, this is not based on

13   the Rule 11(c)(1)(C), this is if you breached the agreement.

14   So, it would be on a different basis that these statements

15   could be used against you.

16          Is that your understanding and agreement?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Now, the Government is required to

19   prove a breach of the agreement by a preponderance of the

20   evidence, which is at the civil suit level, it's below beyond

21   a reasonable doubt.  And if the breach is based on a violation

22   of federal, state or local criminal law, then they only have

23   to prove it by probable cause, which is even lower than the

24   preponderance of the evidence.

25          Is that your understanding and agreement?

1          THE DEFENDANT:  Yes.

2          THE COURT:  The agreement sets out that this

3     doesn't entitle you to commit perjury, make false statements.

4     Should you do that, the Government reserves the right to

5     prosecute you, and also they would view this as a breach of

6     the agreement.  And they would be absolved of their

7     obligations, but you would not be allowed to withdraw your

8     guilty plea on those grounds.

9          Is that your understanding and agreement?

10         THE DEFENDANT:  Yes.

11         THE COURT:  All right.  Is this the complete

12    agreement as I've discussed it -- we've discussed orally and

13    in writing?  Is there anything else I haven't talked about or

14    that you think is out there?

15         THE DEFENDANT:  No.

16         THE COURT:  Mr. Lowell, anything?

17         MR. LOWELL:  None that you haven't gone over,

18    Judge.

19         THE COURT:  All right.  Do you understand that this

20    agreement binds the United States, it doesn't bind any other

21    state or local prosecutor.  It also doesn't compromise any

22    civil tax or administrative claim pending against you.  I

23    think that's it in terms of that.  I have a few additional

24    questions in terms of --

25         Now, I'm obligated to ask some of these questions.

1    We've gone over the advisory sentencing guidelines and I've

2    talked to you about the presentence report.  I've discussed

3    with you the departures.  I've also discussed the -- and as I

4    understand it, you understand all of that; is that correct?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Do you also understand that parole has

7    been abolished?  I don't know whether you know what parole is,

8    probably from the old movies.  Basically, it used to be if you

9    get a jail sentence then you could be released into the

10   community to serve part of your jail sentence in the

11   community, not like supervised release where you do your term

12   in jail and then you're out in the community, so it's a

13   different -- so, I want to make sure you understand that.  I'm

14   still obliged to do this.

15                   You serve the sentence that you're given with a

16   possible reduction for good time up to 54 days a year, but you

17   won't be released early on parole; do you understand that?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  Now, you're pleading guilty to a felony

20   offense.  If I accept your plea and you're found guilty, that

21   finding may deprive you of valuable civil rights, and it

22   depends on where you live and they are time limited.  They

23   include the right to vote, the right to hold public office,

24   and the right to serve on a jury.  The right to possess any

25   kind of firearm, unless they change the federal statute, even

1    if you lived in a place where you could get a gun or

2    ammunition, under the federal statute, as a convicted felon,

3    you cannot possess either a weapon or ammunition; do you

4    understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  A few questions about the

7    voluntariness.  Has anyone, including your attorney, the

8    prosecutor, anybody else you've come in contact with since

9    your arrest, promised or suggested to you that just by

10   pleading guilty that you're guaranteed a lighter sentence?  I

11   know we have an agreement, but the part of it is that you're

12   not guaranteed.

13             THE DEFENDANT:  No.

14             THE COURT:  Has anyone forced, threaten or coerced

15   you in any way into entering this plea agreement?

16             THE DEFENDANT:  No.

17             THE COURT:  Do you understand that the agreement,

18   at least at that point, resulted in negotiations between your

19   lawyer and the Government's lawyer?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Has anyone made any promises to you in

22   connection with your guilty plea other than those in the

23   letter or what we talked about in court?

24             THE DEFENDANT:  No.

25             THE COURT:  And you understand that I'm going to be

1    ordering a presentence report and then make a decision as to

2    whether to accept the Rule 11(c)(1)(C) agreement that you have

3    as to what your sentence is; do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Are you entering this plea of guilty

6    voluntarily and of your own free will?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Are you entering this plea of guilty

9    because you are guilty?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Anything you don't understand?

12    Anything you want to ask me or your lawyer?

13             THE DEFENDANT:  Not at this time.  No.

14             THE COURT:  All right.  Steven Kim, how do you

15    plead to Count 1 of the indictment, unauthorized disclosure of

16    national defense information?

17             THE DEFENDANT:  I plead guilty.

18             THE COURT:  All right.  I'm satisfied that the

19    defendant, Mr. Kim, is fully competent, capable of making a

20    decision, he understands the nature and consequences of what

21    he's doing, he's acting voluntarily and of his own free will.

22    There is an adequate factual basis for his plea, therefore,

23    the plea is accepted and I find Steven Kim guilty of Count 1

24    of the indictment, unauthorized disclosure of national defense

25    information.

1           And what I am doing, I will hold in abeyance the

2    actual acceptance of the sentence itself.  So, why don't you

3    go ahead and sit down and let me sign the paperwork and then

4    we'll set the dates.

5           All right.  I've signed the paperwork, which I'm

6    handing up.  We discussed the presentence report being done by

7    March 24th, which is earlier than they usually do it.  It

8    would be when I get it, so I would simply ask that when they

9    talk to you about the report or send you the draft, if you

10   could get back to them as quickly as possible -- this is

11   counsel -- get back to them as quickly as possible and have an

12   opportunity to talk to Mr. Kim to go over it with him.  The

13   sooner they get the acknowledgment or issues that you want

14   resolved in the presentence report, the more likely they are

15   to actually meet that deadline.

16          Memorandum in aid of sentencing and the

17   justification for the variance should be filed that same day,

18   March 24th, you will have already seen the report.  I'm

19   getting it, but you'll already know what's in it.  And we will

20   set the sentencing date, if this is still good, for April 2nd

21   at 10:00 o'clock.

22          So, are those dates acceptable to everybody?

23          MR. HARVEY:  They are acceptable to the Government,

24   Your Honor.  Just one quick question.  I'm not certain how

25   long -- when the parties will first receive the presentence

1    report, but I would just note for the Court under Rule 32 that

2    there's a requirement that they receive it 35 days before

3    sentencing, unless the defendant waives that requirement.

4              THE COURT:  Okay.

5              MR. HARVEY:  So, I would just want to get that

6    waiver on the record.

7              THE COURT:  All right.  Do you want to talk to him

8    about this for a second?

9              MR. LOWELL:  We have, Your Honor.  Again, because

10   of the nature of the way -- this is a plea, and as Your Honor

11   had talked about, what are the parameters of allocution, Your

12   Honor, for example, indeed, we do waive that requirement of

13   the 35 days notice.  We'd like to get the PSR done as quickly

14   as possible.  We would have done an earlier sentence if it was

15   possible.  We do in fact want to expedite this event.  Again,

16   we're hoping the Court will do what the parties have agreed

17   and we think that's sufficient time.

18             THE COURT:  All right.  Mr. Kim, can I ask you to

19   come back up and --

20             MR. HARVEY:  There's a related issue, too.  Just

21   that the presentence report has -- I think we're okay -- seven

22   days before the sentencing, which I think --

23             THE COURT:  Which I think is correct here.  So,

24   Mr. Kim, under the Rules, generally, you have 35 days in which

25   to have this prepared and have notice of what they are

1   considering in the report.  Are you willing to have it

2   expedited and made shorter, such that we could have the

3   sentencing on the 2nd, get the report by the 24th, and any

4   memorandum in aid of sentencing or justifications done?

5               THE DEFENDANT:  Yes.

6               THE COURT:  All right.  Then I'll find that he's

7   waived the requirements of Rule 32.  I did talk to -- you can

8   sit down -- I did talk to Probation, assuming all goes

9   smoothly, they should be able to get the report done.

10              In terms of conditions of release, I have the

11  presentence report -- not presentence -- the pretrial

12  services' report.  He's in compliance.  There was one failure

13  to report by phone, but he's been consistent.  So, I will

14  leave him with the same conditions that he has had all along,

15  and just ask, Mr. Kim, that you make sure that you do that.

16              You also, obviously, have to coordinate,

17  Mr. Lowell, in terms of how he's going to expeditiously see

18  Probation to start the process.  All right.  Any other

19  questions?  Any other comments?  Anything else we need to

20  cover?

21              MR. LOWELL:  One issue I'd like to approach the

22  Court with.

23              THE COURT:  Sure.

24  SIDEBAR DISCUSSION ON THE RECORD AS FOLLOWS:

25              MR. LOWELL:  This is a ministerial issue --

1           THE COURT:  Does he want to listen?

2           MR. LOWELL:  He doesn't.  He knows what I'm saying.

3    This is so ministerial, I loathe to bring it up, but I want to

4    anyway.  So, this is the third time in the three years plus

5    that we've been together where somebody from the Marshal's

6    have said that they don't have his photograph or fingerprints.

7    I was there on one occasion when they took it and on another

8    occasion which another associate was there.  I don't

9    understand that.

10          I think they want him to go and do it yet a third

11   time.  What I would ask is the Court allow me to work out with

12   them to let him leave and come back, even Monday if they need

13   to.  This is a traumatic event.  He wants to get out of here.

14   The press is here and I don't want him to have to linger.  I

15   can't imagine if I don't get involved and prove to them that

16   this would be the third time they've taken his fingerprints

17   and photographs, there's got to be some bureaucratic snafu.

18   But even if they can't find it, we're very happy, especially

19   since he has to come and see Probation, I just don't want him

20   to have to suffer any greater trauma.

21          MR. HARVEY:  We don't have an objection.

22          THE COURT:  Okay.  I think the easier way of doing

23   this is -- I will release him, he's under the same conditions.

24   You should coordinate, not with the Marshal in the courtroom

25   but with the Marshal's office, and I'm not sure precisely who

1    it is.

2             MR. LOWELL:  We'll do that today, but --

3             THE COURT:  So that you can -- he can come from the

4    Probation interview and do --

5             MR. LOWELL:  Would you do that?  That would be

6    great.  I appreciate the courtesy.

7             THE COURT:  Okay.

8    SIDEBAR DISCUSSION CONCLUDED

9             THE COURT:  All right.  Under those circumstances,

10   parties are excused.  Take care.

11   END OF PROCEEDINGS AT 2:30 P.M.

12

13                 C E R T I F I C A T E

14             I, Lisa M. Foradori, RPR, FCRR, certify that

15   the foregoing is a correct transcript from the record of

16   proceedings in the above-titled matter.

17

18

19

20   Date:_____        _____

21                               Lisa M. Foradori, RPR, FCRR

22

23

24

25

Case 1:10-cr-00225-CKK    Document 298    Filed 11/12/...

**$**
**$100 [1]** 44/3
**$250,000 [1]** 44/1

**0**
**09 [1]** 17/9

**1**
**10 [3]** 23/22 27/14 43/25
**10-225 [2]** 1/4 3/2
**10:00 o'clock [1]** 61/21
**10th [1]** 1/20
**11 [20]** 5/9 6/8 6/16 14/5 22/24 23/16
24/24 26/9 27/7 27/19 45/4 45/14 50/7
51/17 52/1 52/3 52/16 56/12 56/13 60/2
**11:27 [2]** 33/19 41/6
**11:27 a.m [1]** 19/21
**11:37 [1]** 41/7
**11:37 a.m [2]** 19/23 33/23
**11th [10]** 17/3 19/4 19/13 19/18 20/17
21/7 22/22 23/1 37/12 41/3
**12 [3]** 11/8 27/24 38/9
**120 [2]** 43/25 47/21
**1200 [1]** 2/3
**12:25 [1]** 41/11
**12:30 [2]** 35/4 41/11
**12:30 p.m [1]** 20/15
**13 [7]** 6/10 6/23 44/21 44/21 45/5 48/20
48/23
**13-month [1]** 44/5
**1382 [1]** 53/21
**14 [1]** 14/12
**151 [1]** 47/20
**15th [1]** 8/12
**18 [7]** 16/6 18/15 27/14 31/2 45/21
53/19 53/21
**188 [1]** 47/20
**1967 [1]** 8/12
**1:05 [1]** 1/6

**2**
**20 [3]** 19/25 33/25 41/8
**20001 [1]** 2/10
**20004 [1]** 1/20
**20036 [1]** 1/20
**2009 [23]** 17/3 17/20 18/10 18/22 18/23
19/4 19/13 19/18 21/2 21/5 27/20 30/3
30/21 31/13 31/16 32/2 33/3 33/15 36/6
36/10 36/12 37/2 37/5
**2010 [4]** 21/3 21/6 36/6 37/9
**2014 [1]** 1/5
**202 [4]** 1/17 1/21 2/4 2/10
**20530 [1]** 1/16
**2113 [1]** 1/21
**225 [2]** 1/4 3/2
**2255 [1]** 53/4
**233-2113 [1]** 1/21
**24th [6]** 21/2 21/3 36/6 61/7 61/18 63/3
**25 [2]** 20/7 34/16
**252-7810 [1]** 1/17
**28 [2]** 53/4 54/11
**28th [1]** 10/22
**29th [4]** 21/2 21/5 36/6 37/9
**2:30 P.M [1]** 65/11
**2nd [2]** 61/20 63/3

**3**
**300 [1]** 2/3
**302 [4]** 36/15 37/3 37/7 40/5
**32 [2]** 62/1 63/7
**3269 [1]** 2/10
**333 [1]** 2/9
**34 [2]** 47/8 47/20

**35 [3]** 62/2 62/13 63/24
**354-3269 [1]** 2/10
**3553 [2]** 45/21 54/14
**3580 [1]** 53/19
**3630-09 [1]** 17/9

**4**
**410 [1]** 51/17
**46 [1]** 8/10
**48 [1]** 9/8

**5**
**54 [1]** 58/16
**555 [1]** 1/16
**5605 [2]** 2/4
**5K1.1 [1]** 48/9

**6**
**60 [1]** 53/6
**600 [1]** 1/19
**6706 [1]** 2/9

**7**
**7810 [1]** 1/17
**793 [5]** 16/7 18/16 22/12 27/14 31/2

**8**
**8-A [1]** 50/24

**9**
**974-5605 [1]** 2/4
**994 [1]** 54/11
**9:50 [2]** 32/3 41/3
**9:50 a.m [1]** 19/5

**A**
**a.m [4]** 19/5 19/21 19/23 33/23
**ABBE [2]** 2/1 3/10
**abeyance [1]** 61/1
**able [5]** 14/3 39/3 43/7 50/20 63/9
**abolished [1]** 58/7
**about [63]** 6/6 9/11 13/5 15/17 17/3
17/11 17/20 18/23 19/4 19/18 20/11
20/20 25/25 26/6 26/6 28/17 28/22 29/2
29/10 31/18 32/2 33/25 34/6 34/13
34/24 35/4 35/7 35/10 37/24 37/24
38/22 39/13 39/13 40/5 40/22 41/24
42/7 45/2 45/11 45/17 46/4 47/8 47/25
48/25 49/5 49/8 49/8 49/10 49/22 50/5
50/6 50/19 50/23 53/2 53/15 53/16
57/13 58/2 59/6 59/23 61/9 62/8 62/11
**above [7]** 13/25 14/3 21/13 43/23 47/21
53/3 65/16
**above-titled [1]** 65/16
**absent [1]** 20/6
**absolved [1]** 57/6
**abuse [5]** 21/17 28/2 38/12 47/2 49/18
**accept [15]** 5/12 6/13 6/25 7/10 8/1
10/13 12/16 14/4 14/20 43/10 45/7
45/14 47/3 58/20 60/2
**acceptable [3]** 36/22 61/22 61/23
**acceptance [2]** 6/17 61/2
**accepted [2]** 7/14 60/23
**accepting [1]** 7/12
**access [33]** 16/8 17/4 18/7 19/7 19/8
19/10 19/12 19/14 19/15 19/16 21/24
22/2 22/4 22/6 23/20 24/21 26/25 30/16
30/19 32/8 32/17 33/2 34/12 34/19 35/23
33/4 33/5 33/13 33/20 40/11 40/15
40/18 41/14 42/19
**accessed [2]** 19/21 41/6
**accident [3]** 21/14 28/4 38/2
**according [2]** 42/25 47/23
**account [1]** 18/5

**acknowledged [2]** 21/6 21/9
**acknowledges [1]** 41/7
**acknowledgment [1]** 61/13
**across [1]** 47/20
**Act [2]** 50/4 55/11
**acted [2]** 27/5 42/10
**acting [2]** 39/22 60/21
**actions [2]** 38/5 47/3
**activities [3]** 18/8 22/16 24/22
**actual [2]** 7/12 61/2
**actually [8]** 10/4 10/21 24/6 39/12 43/11
53/22 53/23 61/15
**add [2]** 47/8 49/17
**additional [5]** 44/7 45/3 47/1 47/6 57/23
**address [2]** 7/25 50/3
**addressed [1]** 40/21
**adequate [1]** 60/22
**adjustment [1]** 47/1
**administrative [1]** 57/22
**admissibility [1]** 51/18
**admission [1]** 26/9
**admissions [5]** 40/4 43/14 51/23 52/6
55/17
**admitted [1]** 22/25
**admitting [2]** 15/18 15/21
**adopt [1]** 43/5
**advance [1]** 3/21
**advantage [10]** 16/11 17/18 21/12 24/4
24/10 24/14 26/12 37/21 41/2 41/16
**advised [2]** 25/12 27/11
**advising [1]** 18/13
**Advisor [4]** 18/3 24/18 30/7 40/12
**advisory [10]** 46/5 46/16 46/23 47/23
47/25 48/15 48/16 48/20 49/2 58/1
**affect [1]** 9/11
**affirming [1]** 28/19
**after [6]** 5/11 20/13 34/5 35/2 54/13
55/22
**afternoon [2]** 3/5 3/10
**again [15]** 14/6 21/2 23/16 25/2 26/2
26/16 36/6 41/8 42/6 47/15 53/20 54/4
56/12 62/9 62/15
**against [9]** 8/2 11/20 12/10 52/6 52/12
55/18 56/10 56/15 57/22
**agencies [1]** 30/18
**agency [2]** 41/11 55/9
**agents [1]** 27/20
**ago [1]** 47/17
**agree [16]** 6/21 8/6 8/7 15/15 28/9 28/15
29/1 29/20 29/23 31/8 33/12 37/10
37/16 46/11 46/11 46/12
**agreed [15]** 6/9 6/11 6/22 6/25 7/22 8/2
35/19 39/5 44/5 51/10 52/11 53/18
55/12 55/21 62/16
**agreeing [5]** 13/17 51/16 52/5 53/9 55/7
**agreement [50]** 4/16 5/1 5/6 5/22 6/6
6/18 7/5 7/7 7/7 7/10 7/13 9/16 13/4
14/4 14/6 14/8 29/16 29/18 36/17 40/4
43/8 43/11 43/17 45/11 45/16 46/19
48/11 51/2 51/6 52/16 53/13 54/24
55/15 55/19 55/24 56/3 56/5 56/13
56/16 56/19 56/25 57/2 57/6 57/9 57/12
57/20 59/11 59/19 59/25 60/17 60/2
**agreements [14]** 18/1 18/2 18/11 18/17
18/19 25/10 25/11 27/11 30/22 31/6
31/9 42/12 42/15 42/18
**ahead [2]** 15/24 61/3
**aid [2]** 61/16 63/4
**aided [2]** 2/23 24/7
**alcohol [1]** 9/8
**all [50]** 3/13 4/10 4/25 5/21 6/13 6/16
6/18 7/21 9/20 10/15 13/2 14/17 15/2
16/5 16/23 21/21 25/17 28/5 28/15
28/15 28/25 29/6 29/8 29/24 32/22 37/1

**A**

all... [24] 39/13 40/2 40/9 45/1 47/8
47/12 50/7 50/9 52/18 55/4 55/7 57/11
57/19 58/4 60/14 60/18 61/5 62/7 62/18
63/6 63/8 63/14 63/18 65/9
allocation [1] 50/18
allocution [4] 7/24 50/14 50/17 62/11
allow [3] 55/12 55/22 64/11
allowed [3] 32/25 33/4 57/7
allows [1] 13/15
along [1] 63/14
already [7] 8/2 44/19 45/19 49/18 53/2
61/18 61/19
also [35] 3/12 4/20 5/7 6/4 6/11 7/5 7/8
7/21 13/22 14/15 15/18 22/23 23/4 23/6
24/24 25/14 27/18 28/19 30/24 31/21
32/18 33/15 36/4 42/3 43/1 46/4 52/16
53/18 55/6 55/21 57/5 57/21 58/3 58/6
63/16
although [1] 5/9
always [1] 39/9
am [2] 6/13 61/1
AMERICA [3] 1/3 3/3 17/1
ammunition [2] 59/2 59/3
among [1] 39/17
amount [1] 49/14
another [2] 64/7 64/8
answer [2] 5/17 39/2
any [66]
anybody [1] 59/8
anyone [4] 30/24 59/7 59/14 59/21
anything [9] 29/1 29/7 29/13 50/22
57/13 57/16 60/11 60/12 63/19
anything you [1] 29/1
anyway [1] 64/4
appeal [19] 12/23 12/24 13/2 13/5 13/6
13/7 13/15 13/17 14/2 14/7 14/11 14/12
14/14 14/14 14/22 15/2 52/24 53/2 53/2
Appeals [1] 12/23
appear [1] 55/23
APPEARANCES [1] 1/13
appeared [3] 21/7 23/1 37/12
applicable [1] 54/14
applied [1] 39/20
apply [3] 14/14 48/6 48/12
appointed [2] 11/15 14/16
appreciate [1] 65/6
approach [1] 63/21
appropriate [4] 13/20 13/21 17/24 46/1
approve [1] 29/19
approximately [9] 19/4 19/20 19/23
19/25 20/2 20/7 20/15 32/3 34/16
April [2] 10/22 61/20
April 28th [1] 10/22
April 2nd [1] 61/20
are [50] 3/13 3/22 5/22 7/2 7/6 8/3 8/9
8/24 10/7 10/9 10/9 12/16 13/8 13/13
13/24 15/10 16/7 17/24 23/11 28/19
28/20 28/20 29/22 39/17 39/19 43/21
44/8 46/17 46/17 47/15 48/2 48/12
48/15 48/16 48/21 51/22 53/2 55/22
56/5 58/22 60/5 60/8 60/9 61/14 61/22
61/23 62/11 62/25 63/1 65/10
areas [2] 14/23 48/13
arguing [1] 8/2
arms [1] 17/25
around [5] 33/15 33/19 33/23 41/10
41/11
arraigned [1] 9/25
arrest [1] 59/9
arrests [1] 47/14
article [8] 20/16 20/17 21/7 23/1 35/5
37/12 37/13 41/12

**(column 2)**
articulate [1] 22/1
as [109]
aside [2] 25/15 52/3
ask [16] 4/18 4/21 11/5 15/14 28/9 29/8
39/9 49/7 55/12 55/13 57/25 60/12 61/8
62/18 63/15 64/11
asked [1] 48/19
asking [5] 4/10 4/16 29/6 36/24 46/25
aspects [1] 47/11
assessed [2] 47/15
assessment [2] 44/2 49/13
assigned [2] 19/1 31/22
assistance [2] 48/10 53/11
Assistant [4] 18/4 24/19 30/8 40/13
associate [1] 64/8
associated [1] 46/22
assume [1] 6/12
assuming [3] 6/14 44/21 63/8
attack [3] 52/25 53/1 53/19
attorney [3] 10/12 11/19 59/7
Attorney's [2] 1/15 3/7
August [1] 8/12
August 15th [1] 8/12
authority [1] 48/22
authorized [20] 17/4 19/8 19/10 19/12
20/22 22/4 22/6 23/23 27/15 29/19 32/8
32/14 32/19 32/23 35/23 40/15 40/18
41/5 42/10 42/21
available [2] 23/10 23/11
Avenue [2] 2/3 2/9
award [1] 13/20
aware [4] 16/19 22/22 23/4 39/8
awhile [2] 29/10 39/7

**B**
back [10] 5/5 7/2 7/17 26/2 28/6 50/11
61/10 61/11 62/19 64/12
background [5] 8/8 36/18 40/1 45/23
46/4
Badge [1] 20/5
barred [1] 51/1
base [2] 46/21 49/14
based [14] 11/10 12/11 15/8 15/20
30/11 30/19 43/7 44/23 47/5 52/2 53/10
54/9 56/12 56/21
basically [3] 10/18 53/6 58/8
basis [7] 22/17 24/15 26/22 27/6 38/23
56/14 60/22
be [98]
because [17] 4/7 8/21 10/16 12/6 12/17
14/21 15/19 28/23 30/14 30/15 32/24
39/9 39/18 48/15 52/10 60/9 62/9
BEDNAR [2] 1/15 3/7
been [15] 3/16 3/21 5/24 9/7 23/9 25/21
28/10 43/16 51/12 54/3 54/8 54/10 58/7
63/13 64/5
before [10] 1/10 25/22 31/4 38/25 42/15
46/8 46/14 56/4 62/2 62/22
began [2] 18/24 31/17
Beginning [2] 18/23 19/20
behalf [2] 3/11 12/4
being [7] 14/12 16/19 41/21 45/5 48/19
50/20 61/6
belief [1] 41/18
believe [8] 16/10 17/16 21/16 24/2 24/9
28/1 38/23 40/25
believed [2] 41/15 50/2
believes [1] 24/12
below [1] 56/20
benefit [1] 26/5
best [1] 10/9
between [4] 3/16 51/3 55/19 59/18
beyond [8] 12/18 15/9 15/20 17/2 39/3
43/15 45/18 56/20

**(column 3)**
big [1] 56/1
blind [1] 57/20
binds [1] 57/20
birth [1] 8/11
born [1] 8/18
borne [1] 14/14
both [15] 18/18 19/1 19/19 24/13 24/14
34/12 35/18 40/2 40/7 40/16 43/8 43/13
44/16 49/25 50/13
bother [1] 9/5
bottom [1] 51/15
breach [4] 56/2 56/19 56/21 57/5
breached [2] 56/4 56/13
break [1] 35/14
briefly [1] 5/22
bring [6] 6/5 7/17 53/9 53/18 53/22 64/3
broad [2] 22/14 45/25
brought [2] 53/4 53/21
building [14] 19/3 20/4 20/6 20/7 20/8
20/14 31/23 31/25 34/9 34/13 34/15
34/16 35/3 41/10
burden [1] 12/17
Bureau [7] 17/22 21/1 30/6 36/5 54/12
55/20 55/23
bureaucratic [1] 64/17

**C**
calculated [1] 46/18
calculation [3] 46/5 46/20 47/24
calculations [3] 46/10 46/17 48/21
call [7] 19/25 20/1 33/23 34/2 34/5 48/2
48/17
called [3] 19/24 20/1 50/4
calls [2] 41/7 41/8
can [24] 4/2 4/20 7/1 9/17 14/14 14/15
15/24 28/8 28/18 44/15 44/15 48/16
48/18 48/21 49/7 51/2 52/5 52/6 53/22
55/17 62/18 63/7 65/3 65/3
can't [7] 5/5 5/10 12/6 12/10 50/20
64/15 64/18
cannot [7] 12/18 43/22 44/1 44/3 44/23
45/18 59/3
capabilities [10] 17/12 20/12 20/21
22/21 25/19 34/25 35/10 36/1 37/14
40/22
capable [1] 60/19
capacities [1] 41/25
capacity [1] 41/20
care [1] 65/10
carefully [1] 15/14
carries [1] 52/16
case [22] 3/2 10/2 10/8 10/12 10/21
13/18 14/13 14/20 15/1 15/3 15/7 23/5
23/8 32/5 39/19 48/7 48/19 52/13 52/17
54/8 55/10 55/14
category [2] 29/13 47/18
cause [2] 25/5 56/23
cell [4] 20/1 34/3 34/5 41/8
certain [9] 8/1 10/17 13/6 13/16 40/14
43/19 44/6 56/5 61/24
certainly [1] 49/24
certify [1] 65/14
cetera [2] 26/21 53/1
Chadbourne [1] 2/2
challenge [1] 53/1
change [5] 3/18 5/10 46/11 46/13 58/25
changed [1] 3/18
changes [2] 3/21 54/17
charge [1] 47/16
charges [5] 5/24 10/1 10/2 10/5 45/3
chart [1] 47/19
check [1] 26/5
checked [1] 29/15
choices [1] 7/1

**C**

**choose** [1] 7/2
**circuits** [1] 39/17
**circumstances** [2] 13/16 65/9
**citizen** [2] 8/21 8/24
**citizens** [2] 11/2 11/8
**civil** [5] 53/5 56/11 56/20 57/22 58/21
**claim** [4] 43/3 53/11 54/20 57/22
**claiming** [2] 38/10 38/15
**clarification** [1] 16/16
**clarified** [1] 19/10
**clarify** [1] 4/19
**clarity** [1] 16/19
**classification** [4] 25/15 26/19 30/15 40/11
**classified** [40] 17/6 18/7 18/12 18/20 19/7 19/9 19/13 19/15 19/22 21/8 22/4 22/6 23/2 23/18 23/20 24/21 25/1 25/8 25/11 26/20 27/1 27/12 30/16 30/23 31/9 31/10 32/5 32/7 32/12 32/14 32/19 33/5 33/20 37/16 40/15 40/17 40/25 41/4 42/12 51/11
**classified/unclassified** [1] 51/11
**clear** [4] 6/13 28/23 36/14 52/19
**clearance** [8] 18/5 19/10 22/3 24/20 26/21 30/11 32/13 40/14
**clearances** [2] 30/15 40/14
**clerk** [1] 4/5
**close** [3] 20/8 20/15 34/16
**closely** [3] 23/7 23/8 23/15
**Code** [2] 18/15 31/2
**coerced** [1] 59/14
**collateral** [3] 52/25 53/1 53/19
**COLLEEN** [1] 1/10
**COLUMBIA** [3] 1/1 11/3 11/9
**come** [11] 3/3 5/5 11/25 28/5 48/3 55/21 59/8 62/19 64/12 64/19 65/3
**coming** [1] 45/25
**comments** [1] 63/19
**Commission** [6] 48/3 48/14 50/2 54/10 54/16 54/17
**commit** [2] 56/9 57/3
**committed** [1] 6/6
**communicate** [7] 18/24 20/24 23/24 27/16 31/17 35/24 42/22
**communicated** [4] 3/17 16/13 26/13 42/9
**communicated/transmitted** [1] 42/9
**community** [14] 7/23 18/9 19/7 23/20 24/23 25/22 30/18 32/6 41/4 44/9 55/22 58/10 58/11 58/12
**compartment** [3] 19/11 22/5 32/15
**compartmented** [2] 17/6 40/19
**compartments** [1] 40/14
**competent** [1] 60/19
**complete** [1] 57/11
**completely** [1] 10/7
**compliance** [5] 7/23 17/22 18/2 30/6 63/12
**compromise** [1] 57/21
**computer** [3] 2/23 19/23 33/21
**computer-aided** [1] 2/23
**concept** [1] 22/14
**concepts** [1] 45/25
**concerning** [2] 6/20 27/21
**CONCLUDED** [1] 65/8
**conditions** [8] 6/16 8/3 44/7 44/12 50/23 63/10 63/14 64/23
**conduct** [7] 15/18 15/21 27/5 37/23 42/11 44/7 56/4
**conference** [2] 3/18 3/19
**confront** [1] 11/19
**conjunction** [2] 9/19 26/18

**connection** [1] 59/23
**connotation** [1] 2/14
**consciousness** [2] 27/22 42/24
**consequences** [2] 56/5 60/20
**consider** [1] 45/25
**considerations** [1] 48/3
**considered** [3] 17/24 48/14 54/13
**considering** [1] 63/1
**consistent** [2] 54/15 63/13
**constitute** [3] 18/14 27/13 38/6
**Constitution** [1] 2/9
**Constitutional** [7] 10/16 12/8 12/12 13/7 13/8 13/11 14/10
**consult** [1] 4/20
**consumer** [1] 24/17
**contact** [6] 21/4 21/13 27/21 33/16 36/11 59/8
**contacted** [1] 19/19
**contained** [2] 40/22 49/18
**containing** [1] 41/12
**contents** [6] 17/5 19/11 22/5 32/16 43/9 43/10
**contest** [1] 36/15
**context** [2] 27/4 52/1
**contract** [1] 30/5
**contradictory** [1] 9/6
**contrary** [1] 9/4
**control** [3] 16/8 17/25 21/24
**conversations** [1] 3/16
**convicted** [3] 12/19 12/22 59/2
**conviction** [2] 12/23 47/16
**convictions** [4] 47/13 47/14 47/15 48/8
**cooperation** [1] 48/11
**coordinate** [2] 63/16 64/24
**copies** [2] 3/23 3/23
**copy** [1] 9/24
**core** [1] 5/22
**corpus** [1] 53/5
**correct** [28] 6/13 30/8 30/12 31/6 31/14 31/19 31/25 32/9 32/16 32/20 33/6 34/6 34/10 35/20 35/22 36/2 36/12 37/2 37/5 38/16 50/9 51/13 51/25 52/9 52/21 58/4 62/23 65/15
**cost** [1] 14/13
**costs** [1] 14/14
**could** [41] 5/17 7/4 7/8 7/22 9/11 11/15 12/11 14/2 16/10 17/17 18/14 21/11 24/3 24/9 24/15 25/5 25/13 26/11 27/12 31/1 37/20 38/6 39/4 39/5 39/12 41/1 41/16 42/2 42/3 42/14 44/4 45/10 47/22 51/22 54/12 55/11 56/15 58/9 59/1 61/10 63/2
**counsel** [10] 3/3 7/17 10/2 11/4 14/15 15/25 28/6 46/7 53/12 61/11
**Count** [8] 5/24 5/25 6/2 6/4 36/17 45/4 60/15 60/23
**Counterespionage** [2] 1/19 3/8
**countries** [1] 42/1
**countries'** [1] 18/1
**country** [3] 26/6 40/24 42/7
**country's** [1] 26/5
**course** [6] 6/17 36/20 49/20 55/3 55/5
**court** [53] 1/1 2/8 2/8 3/12 3/17 3/23 6/12 7/25 8/5 8/21 11/4 12/23 14/2 14/15 22/11 22/13 22/18 22/22 23/4 23/4 23/6 23/7 24/5 25/2 26/2 26/8 26/16 26/23 27/7 28/14 35/19 36/19 43/22 44/1 45/20 45/25 46/4 46/6 47/4 47/5 47/7 47/22 48/16 48/16 49/12 49/15 50/13 50/22 59/23 62/1 62/16 63/22 64/11
**Court's** [3] 6/16 16/17 28/17
**courtesy** [1] 65/6
**Courthouse** [1] 2/9

**courtroom** [3] 1/3 11/10 64/24
**courts** [1] 27/3
**cover** [3] 19/1 31/22 63/20
**COYLE** [2] 2/2 3/11
**CR** [1] 1/4
**crime** [3] 46/22 46/23 48/4
**crimes** [2] 6/5 56/9
**criminal** [15] 3/2 18/15 27/13 31/1 38/7 42/14 44/7 47/12 47/18 48/1 48/7 56/4 56/8 56/11 56/22
**cross** [1] 11/20
**cross-examine** [1] 11/20
**crystal** [1] 52/19

**D**

**D.C** [1] 6/6
**damage** [1] 25/6
**database** [17] 19/7 19/9 19/13 19/16 19/22 22/7 23/20 32/5 32/7 32/12 32/19 32/24 32/25 33/5 33/21 40/16 41/5
**date** [7] 7/3 7/15 8/11 10/22 32/3 61/20 65/20
**dates** [2] 61/4 61/22
**day** [3] 33/3 41/5 61/17
**days** [6] 14/12 58/16 62/2 62/13 62/22 62/24
**DC** [5] 1/5 1/16 1/20 2/4 2/10
**deadline** [1] 61/15
**decide** [3] 7/4 45/10 48/18
**decided** [1] 12/8
**decision** [4] 5/8 10/24 60/1 60/20
**defect** [1] 13/11
**defendant** [27] 1/7 2/1 4/5 16/7 16/10 16/12 16/19 17/3 21/23 22/24 24/2 24/9 25/2 25/17 26/13 27/8 27/8 40/10 41/6 41/7 41/15 42/8 42/20 51/18 54/1 60/19 62/3
**defendant's** [3] 26/9 27/22 41/18
**defense** [39] 5/23 6/3 11/25 16/9 17/5 17/11 17/17 18/7 20/10 20/18 20/20 20/24 21/8 21/15 22/9 22/12 23/2 23/24 24/21 24/25 27/16 27/25 30/17 34/23 35/6 35/9 35/25 37/13 38/20 39/8 39/9 39/24 39/25 40/8 40/15 40/20 51/5 60/16 60/24
**defined** [5] 22/13 22/13 25/3 26/18 42/23
**deliver** [3] 20/23 35/24 42/21
**delivered** [2] 16/13 26/14
**demonstrate** [1] 20/5
**demonstrates** [3] 24/17 26/24 27/19
**demonstrating** [1] 23/14
**denied** [1] 42/25
**deny** [1] 36/21
**depart** [1] 34/12
**department** [21] 1/18 3/9 17/22 18/18 19/2 19/3 19/20 19/22 19/24 20/5 20/14 30/5 31/5 31/22 31/23 33/17 33/24 34/10 35/4 42/16 55/8
**departures** [5] 48/2 48/6 48/12 49/25 58/3
**depending** [1] 48/4
**depends** [2] 47/15 58/22
**deportation** [2] 8/23 9/5
**deprive** [1] 58/21
**derived** [3] 22/20 23/17 25/18
**described** [1] 21/13
**describes** [2] 25/15 26/9
**designation** [1] 55/19
**desk** [3] 19/20 19/24 33/24
**detail** [1] 49/24
**detailed** [1] 43/4
**details** [1] 43/6
**determine** [1] 11/9

| | | |
|---|---|---|

**D** — Case 1:10-cr-00225-CKK

**determined [2]** 13/23 14/1
**deterrent [1]** 45/24
**did [45]** 9/16 9/17 10/4 11/13 11/15 19/16 21/16 25/25 26/24 26/25 28/1 28/3 30/21 30/25 31/18 31/21 32/3 32/22 33/4 33/8 33/10 33/12 33/15 33/19 33/23 34/2 34/12 34/16 36/4 36/10 37/3 37/7 37/18 37/23 37/25 38/2 38/6 42/14 42/19 49/7 49/11 51/9 63/7 63/8
**didn't [3]** 12/5 38/18 46/13
**differences [1]** 39/17
**different [10]** 14/5 30/18 48/18 48/20 49/9 51/20 54/4 54/21 56/14 58/13
**differently [2]** 4/17 54/3
**digits [1]** 17/8
**direct [1]** 53/1
**directly [6]** 20/22 23/23 27/15 35/23 52/7 56/10
**Director [1]** 54/12
**directs [1]** 23/5
**disagree [2]** 29/1 46/9
**disagreement [1]** 15/17
**disarmament [1]** 18/1
**disclose [5]** 18/12 25/11 30/23 34/22 42/12
**disclosed [4]** 17/11 20/10 20/19 35/8
**disclosing [3]** 21/15 27/25 43/1
**disclosure [21]** 5/25 6/2 17/15 17/16 18/14 21/10 24/3 24/6 24/9 24/13 25/4 25/13 25/23 26/10 27/12 30/25 37/19 39/25 41/14 60/15 60/24
**discovered [2]** 53/7 53/10
**discovery [3]** 7/3 10/24 51/11
**discuss [4]** 7/17 9/17 10/12 45/13
**discussed [9]** 4/18 10/1 45/3 45/4 57/12 57/12 58/2 58/3 61/6
**discussing [3]** 9/5 50/20 51/16
**discussion [6]** 29/21 38/22 48/24 49/8 63/24 65/8
**discussions [2]** 8/23 51/19
**dismiss [1]** 6/4
**dismissing [1]** 45/4
**dispute [1]** 50/21
**disseminated [4]** 19/5 23/19 32/5 41/3
**dissemination [1]** 41/13
**DISTRICT [5]** 1/1 1/1 1/11 11/3 11/9
**disturbance [1]** 9/22
**do [66]**
**Doctorate [1]** 8/15
**documents [1]** 29/16
**does [2]** 12/18 64/1
**doesn't [7]** 29/6 41/24 48/8 57/3 57/20 57/21 64/2
**doing [8]** 4/12 9/11 38/1 38/3 44/14 60/21 61/1 64/22
**don't [25]** 4/8 4/15 4/18 5/17 6/25 28/15 29/1 29/1 29/2 39/16 45/8 46/11 48/6 48/9 48/11 49/19 58/7 60/11 61/2 64/6 64/8 64/14 64/15 64/19 64/21
**done [7]** 47/24 50/7 61/6 62/13 62/14 63/4 63/9
**doubt [7]** 12/18 15/9 15/20 17/2 39/4 43/15 56/21
**down [6]** 10/4 15/24 35/14 47/20 61/3 63/8
**draft [1]** 61/9
**drugs [1]** 9/8
**duplicative [1]** 49/18
**during [3]** 18/18 31/5 42/15

**E**

**e-mail [2]** 18/24 31/17

**each [5]** 19/19 28/21 33/16 34/17 39/1
**earlier [3]** 50/14 61/7 62/14
**early [4]** 18/23 31/16 58/17
**easier [3]** 4/3 30/2 64/22
**easiest [2]** 13/3 54/18
**EDELSTEIN [2]** 1/18 3/8
**educational [1]** 8/14
**effect [1]** 45/24
**efficiency [1]** 26/5
**effort [1]** 23/12
**eight [2]** 34/6 41/9
**either [11]** 23/9 35/23 46/9 46/11 47/11 48/12 51/19 52/6 54/11 55/7 59/3
**element [10]** 21/23 22/8 22/17 23/6 24/1 24/12 24/16 26/13 26/22 27/6
**elements [20]** 15/9 15/12 15/12 15/19 15/21 16/2 16/4 16/6 21/20 28/16 28/21 29/22 38/24 39/1 39/18 40/7 40/9 43/9 43/15 43/15
**eliminated [1]** 43/2
**else [4]** 39/14 57/13 59/8 63/19
**emotional [1]** 9/22
**employee [1]** 17/21
**encompassed [2]** 25/9 42/18
**encompasses [1]** 18/19
**end [3]** 4/22 39/24 65/11
**engage [3]** 30/25 37/23 56/3
**engaged [1]** 21/13
**enough [2]** 10/11 43/7
**ensuring [1]** 17/23
**entered [8]** 4/23 14/13 18/10 18/17 25/10 27/10 31/5 51/4
**entering [7]** 4/12 4/24 39/6 48/10 59/15 60/5 60/8
**entitle [1]** 57/3
**entitled [7]** 16/14 17/13 26/15 26/17 26/19 27/1 42/10
**entrusted [6]** 16/8 19/14 21/24 22/1 40/11
**especially [1]** 64/18
**espionage [2]** 50/4 50/4
**ESQUIRE [7]** 1/14 1/14 1/15 1/18 2/1 2/1 2/2
**essence [1]** 53/4
**establishments [1]** 22/15
**et [2]** 26/21 53/1
**even [8]** 25/15 39/15 39/16 47/14 56/23 58/25 64/12 64/18
**event [2]** 62/15 64/13
**ever [1]** 9/21
**every [2]** 29/9 39/7
**everybody [1]** 61/22
**everything [5]** 5/2 5/4 5/4 43/19 51/8
**evidence [15]** 11/7 11/8 11/10 12/3 12/5 12/7 15/6 15/8 15/9 22/12 40/7 51/17 53/7 53/10 56/20 56/24
**evidently [2]** 31/22 55/18
**exactly [1]** 45/15
**examine [1]** 11/20
**example [4]** 39/15 39/21 49/17 62/12
**exceed [2]** 44/23 49/15
**except [3]** 13/2 14/22 53/9
**exception [1]** 53/20
**exceptionally [1]** 25/5
**exceptions [1]** 13/24
**excuse [1]** 53/19
**excused [1]** 65/10
**executed [1]** 3/23
**executive [1]** 25/3
**exercise [2]** 12/8 12/11
**exit [1]** 34/12
**exited [1]** 20/6
**expected [1]** 25/5
**expecting [1]** 6/12

**expedite [1]** 63/15
**expedited [1]** 63/2
**expeditiously [1]** 63/17
**explain [2]** 4/17 44/4
**explained [4]** 15/2 49/20 49/24 55/1
**expose [1]** 39/22
**exposing [3]** 21/16 28/1 38/11
**extent [2]** 27/21 54/14

**F**

**fact [5]** 43/14 45/3 51/9 52/2 62/15
**factors [2]** 45/21 54/13
**facts [12]** 15/13 16/4 17/2 21/19 21/25 23/14 24/13 28/20 38/25 39/5 39/20 39/22
**factual [15]** 16/3 22/17 24/15 26/22 27/6 29/5 29/6 29/17 29/25 36/13 39/1 43/4 45/2 46/9 60/22
**fail [1]** 56/2
**failure [2]** 12/10 63/12
**fair [1]** 11/6
**false [5]** 5/18 6/1 57/3
**far [1]** 8/13
**FBI [16]** 21/3 21/5 22/25 26/10 27/20 36/10 36/15 37/2 37/3 37/7 37/11 37/24 40/5 41/17 42/25 42/25
**FCRR [2]** 2/8 65/14 65/21
**February [1]** 1/5
**federal [6]** 21/1 25/13 36/4 56/22 58/25 59/2
**feel [1]** 29/11
**feelings [1]** 29/10
**felon [1]** 59/2
**felony [1]** 58/19
**ferreting [1]** 26/6
**few [4]** 20/13 35/2 57/23 59/6
**file [1]** 47/7
**filed [2]** 14/12 61/17
**final [2]** 43/13 53/6
**Finally [2]** 26/8 27/24
**find [3]** 60/23 63/6 64/18
**finding [5]** 4/23 15/8 15/19 40/6 58/21
**fine [7]** 6/12 6/14 6/23 13/19 36/25 43/25 45/6
**fingerprints [2]** 64/6 64/16
**firearm [1]** 58/25
**first [13]** 10/20 16/1 16/7 19/6 21/22 21/22 22/10 23/5 28/12 32/6 36/9 42/25 61/25
**fits [1]** 29/13
**Floor [1]** 1/20
**focusing [1]** 29/25
**FOIA [1]** 55/6
**followed [1]** 6/23
**following [2]** 13/3 17/2
**FOLLOWS [1]** 63/24
**Foradori [2]** 2/8 65/14 65/21
**forced [2]** 12/6 59/14
**forego [1]** 51/10
**foregoing [1]** 65/15
**foreign [12]** 16/12 17/18 21/12 24/4 24/7 24/11 24/15 26/12 37/21 41/2 41/17 42/7
**forfeiture [1]** 13/19
**form [1]** 40/6
**forth [2]** 25/8 27/10
**forward [9]** 3/4 5/11 7/3 7/4 7/10 7/15 12/22 45/10 46/14
**found [3]** 23/10 29/9 58/20
**four [2]** 16/7 21/20
**fourth [4]** 1/16 16/12 26/12 27/6
**Fox [5]** 16/21 17/15 20/15 31/14 35/5 41/11
**framework [5]** 43/7 45/13 45/19 49/1

**F**

framework... [1] 50/1
fraud [4] 21/17 28/2 38/11 53/8
free [4] 56/6 56/10 60/6 60/21
Freedom [1] 55/11
front [5] 13/4 13/14 28/7 30/1 43/12
fulfill [1] 56/2
fully [5] 3/23 10/1 17/24 56/8 60/19
fundamental [1] 13/11
further [8] 10/24 21/9 23/18 23/22 25/7 25/21 37/18 51/10

**G**

gave [1] 47/19
general [4] 10/2 22/14 23/10 51/23
generally [5] 28/9 40/16 40/23 48/13 62/24
get [21] 8/20 44/19 46/8 46/12 48/1 49/19 49/21 50/11 51/10 58/9 59/1 61/8 61/10 61/11 61/13 62/5 62/13 63/3 63/9 64/13 64/15
getting [1] 61/19
give [4] 15/1 46/3 47/4 48/18
given [4] 28/17 43/7 54/7 58/15
gives [2] 7/13 46/24
giving [13] 10/17 10/23 13/2 13/5 13/6 13/12 13/13 13/22 14/21 38/10 52/25 53/3 54/20
go [29] 4/16 5/1 5/2 5/9 5/21 5/23 7/4 7/10 8/8 8/21 9/17 10/15 10/17 15/5 15/16 15/24 15/25 28/8 43/12 43/17 43/18 45/10 45/16 46/14 46/19 51/9 61/3 61/12 64/10
goes [1] 63/8
going [21] 4/6 4/10 5/21 5/23 6/19 7/15 9/15 10/18 15/5 29/25 30/2 30/2 43/17 43/18 43/21 45/1 45/13 45/16 48/7 59/25 63/17
gone [12] 5/11 8/13 14/21 15/3 15/7 34/15 49/23 50/5 51/8 52/24 57/17 58/1
good [4] 3/5 3/10 58/16 61/20
Gorin [2] 22/13 26/3
got [3] 43/17 47/17 64/17
government [66]
Government's [6] 12/17 26/18 40/3 49/13 52/20 59/19
grant [1] 47/7
grave [1] 25/6
great [1] 65/6
greater [1] 64/20
grounds [3] 53/6 56/8 57/8
guaranteed [2] 59/10 59/12
guard [1] 23/12
guess [1] 54/18
guideline [5] 14/1 14/3 50/1 50/3 54/2
guidelines [11] 44/17 46/5 46/16 46/24 47/23 48/1 48/15 49/2 49/8 54/18 58/1
guilt [6] 11/9 12/7 12/11 12/18 27/23 42/24
guilty [20] 6/1 10/16 10/21 12/16 13/2 14/20 14/20 14/25 15/10 56/7 57/8 58/19 58/20 59/10 59/22 60/5 60/8 60/9 60/17 60/23
gun [1] 59/1

**H**

habeas [1] 53/5
had [42] 8/23 9/14 10/11 15/7 16/8 16/10 17/16 18/6 19/2 21/4 21/4 21/23 22/3 22/4 22/6 24/2 24/9 24/20 25/21 30/5 30/14 30/16 30/19 31/24 32/24 35/3 35/8 36/10 36/10 37/4 37/4 40/10 40/13 40/18 41/15 42/3 43/5 48/24

half [2] 20/3 64/8
Hampshire [1] 2/3
hand [1] 39/21
handing [1] 61/6
happened [1] 50/6
happy [1] 64/18
HARVEY [6] 1/14 3/6 28/16 38/24 39/15 39/17
has [35] 7/5 7/21 15/20 22/22 23/9 23/12 25/22 28/18 28/21 29/12 38/21 40/8 43/4 45/9 45/25 46/18 46/19 46/22 47/5 47/24 48/3 49/9 50/13 52/11 54/3 54/9 55/21 58/6 59/7 59/14 59/25 62/21 63/14 64/19
have [137]
haven't [2] 57/13 57/17
having [6] 3/16 6/6 7/5 17/4 40/3 45/11
he [39] 21/4 21/16 22/3 22/3 22/6 24/18 24/20 27/1 27/20 28/1 28/3 28/18 29/6 31/24 35/15 36/21 40/12 40/13 40/15 40/18 41/8 41/17 42/11 42/13 42/14 42/14 42/14 42/24 42/25 53/24 53/25 60/20 63/14 64/1 64/2 64/2 64/13 64/19 65/3
he's [10] 8/20 29/6 29/9 60/21 60/21 63/6 63/12 63/13 63/17 64/23
headquarters [6] 19/2 20/4 20/14 31/23 34/9 35/3
hear [1] 28/8 38/18
heard [1] 40/3
hearing [2] 1/10 3/24
heartland [1] 50/2
held [9] 12/10 18/4 23/7 23/8 23/15 24/5 25/3 27/4 30/10
help [1] 12/24
here [14] 3/6 24/15 28/11 29/2 29/11 29/13 38/21 43/21 43/22 50/3 56/1 62/23 64/13 64/14
herein [1] 17/8 20/17
hereinafter [1] 17/9
hesitate [1] 4/18
highest [1] 8/14
him [26] 4/2 4/4 4/21 18/12 18/13 19/14 21/5 25/11 25/12 27/11 29/8 33/25 37/5 38/22 41/9 48/22 55/2 61/12 62/7 63/14 64/10 64/12 64/14 64/19 64/23
himself [1] 39/2
his [21] 17/15 17/16 18/5 18/18 19/22 19/23 20/9 21/3 21/5 22/25 27/5 29/21 34/3 42/11 42/15 49/12 50/4 60/21 60/22 64/6 64/16
history [7] 8/17 22/22 45/23 47/13 47/18 48/1 48/8
hit [2] 5/1 43/19
hold [3] 53/20 58/23 61/1
Honor [27] 3/5 3/10 3/15 3/22 6/15 9/3 16/1 16/4 16/15 21/20 22/8 23/15 27/3 28/12 29/3 36/13 36/25 38/23 39/16 50/8 53/23 54/6 55/3 61/24 62/9 62/10 62/12
HONORABLE [1] 1/10
hoping [1] 62/16
hostile [1] 40/24
hostility [1] 22/23
hour [2] 20/3 34/8
hours [4] 9/8 20/13 25/22 35/2
how [9] 3/13 8/9 8/13 29/10 47/16 49/3 60/14 61/24 63/17
however [2] 7/25 28/18

**I**

I'd [1] 63/21

I'll [10] 4/2 5/23 7/12 7/17 16/2 17/9 37/1 43/6 46/19 63/6
I'm [35] 4/10 4/15 5/21 6/14 6/15 6/19 7/12 29/3 29/6 29/25 30/2 34/19 36/24 37/24 38/18 39/13 39/13 43/17 43/18 43/21 45/1 45/13 45/16 50/16 51/25 55/20 57/25 58/13 59/25 60/18 61/5 61/18 61/24 64/2 64/25
I've [13] 7/14 14/21 14/23 15/2 15/2 43/7 45/17 52/2 57/12 58/1 58/2 58/3 61/5 63/1
i.e [1] 50/3
identified [2] 16/21 17/8
identifies [1] 16/18
identify [1] 3/4
illegal [2] 14/1 14/2
illness [1] 9/22
imagine [1] 64/15
Immediately [1] 19/25
impartial [1] 11/6
impeachment [1] 51/23
Implementation [2] 17/23 30/6
important [3] 5/3 44/17 51/16
impose [1] 14/5
imposed [1] 44/16
imprisonment [3] 13/19 54/9 54/13
inaccuracies [2] 46/9 50/21
incarceration [4] 45/5
include [3] 13/18 31/18 46/6 58/23
included [3] 20/17 35/6 46/18
includes [2] 31/10 47/10
including [6] 18/15 18/25 27/13 52/12 56/12 59/7
inconsistent [1] 14/6
incriminate [1] 12/6
indeed [1] 62/12
indicate [4] 4/22 7/12 41/24 46/12
indicated [9] 6/4 14/23 23/21 37/4 37/11 46/20 46/25 47/2 49/15
indicates [2] 36/15 43/2
indicating [2] 15/16 51/4
indicted [1] 5/24
indictment [5] 6/2 9/25 10/5 60/15 60/24
indirectly [6] 20/23 23/23 27/15 35/23 52/7 56/10
individual [2] 16/18 16/19
ineffective [1] 53/11
inference [1] 12/11
inform [1] 50/20
information [92]
informed [1] 55/4
informing [1] 25/23
initially [1] 10/18
injured [1] 24/7
injury [10] 16/11 17/18 21/11 24/3 24/10 24/14 26/11 37/20 41/1 41/16
innocence [1] 11/10
innocent [1] 12/17
instance [1] 51/3
instructions [1] 11/8
integrated [1] 17/25
intell [6] 31/11 32/16 41/3 41/13 41/22 42/17
intelligence [50] 17/5 17/10 18/3 18/9 19/5 19/6 19/9 19/12 19/15 19/17 19/21 20/11 20/13 22/5 22/5 22/7 22/20 23/1 23/17 23/19 23/20 24/18 24/18 24/23 25/18 25/21 25/22 26/3 26/4 26/6 30/7 30/18 32/3 32/6 33/13 33/20 34/24 35/8 37/12 40/12 40/17 40/21 41/4 41/19 41/23 42/12 42/20 42/22
interactions [2] 20/9 34/21
Internet [3] 20/16 25/23 35/6
interview [11] 21/3 21/5 22/25 36/9 36/15 37/2 37/3 37/10 37/24 41/17 65/4

## I

interviewed [4]  21/1 27/19 36/5 42/25
interviews [1]  36/7
investigation [4]  21/1 36/5 55/10 55/13
involuntary [1]  13/10
involved [3]  5/10 31/11 64/15
involves [2]  6/1 30/18
involving [1]  37/25
irrelevant [1]  24/6
is [196]
issue [21]  21/25 22/9 22/20 23/15 23/17 24/25 25/9 25/17 27/1 27/8 31/11 32/4 40/12 40/17 40/19 40/21 42/17 42/20 62/20 63/21 63/25
issued [1]  54/15
issues [6]  8/1 8/22 9/5 14/4 49/25 61/13
it [131]
it's [27]  10/18 12/17 13/3 15/16 23/8 24/5 24/5 29/10 39/25 40/10 41/13 44/21 45/15 45/20 46/18 47/12 48/19 49/14 50/3 50/25 51/2 51/4 52/15 53/7 55/4 56/20 58/12
its [7]  17/8 22/11 25/22 26/5 26/6 26/16 56/6
itself [3]  19/13 32/19 61/2

## J

jail [7]  6/10 6/11 43/24 44/5 58/9 58/10 58/12
James [3]  16/20 17/14 31/14
JIN [2]  1/6 17/4
JIN-WOO [2]  1/6 17/4
JONATHAN [2]  1/14 3/7
JUDGE [2]  1/11 57/18
judgment [3]  14/12 53/7 53/8
JULIE [2]  1/18 3/8
June [17]  17/3 17/20 18/10 19/4 19/13 19/18 20/17 21/7 22/2 23/1 30/3 30/21 32/2 33/3 33/15 37/12 41/3
June 11, 2009 [3]  32/2 33/3 33/15
June 11th [9]  17/3 19/4 19/18 20/17 21/7 22/2 23/1 37/12 41/3
jury [7]  10/21 11/2 11/6 11/7 11/11 12/9 58/24
just [28]  4/22 5/21 9/17 13/14 14/21 15/3 23/7 26/2 28/6 28/9 28/16 35/7 36/14 37/24 43/13 44/4 45/17 49/21 52/2 53/20 53/25 59/9 61/24 62/1 62/5 62/20 63/15 64/19
Justice [2]  1/18 3/9
justification [2]  48/22 61/17
justifications [1]  63/4

## K

keep [1]  4/8
KEITH [2]  2/1 3/11
key [1]  32/3
KIM [64]  1/6 3/3 3/11 4/1 4/6 17/4 17/16 17/20 18/3 18/4 18/6 18/10 18/17 18/22 18/23 19/1 19/13 19/18 19/21 19/23 20/1 20/3 20/9 20/10 20/19 20/22 21/2 21/3 21/6 21/9 21/13 21/16 22/1 23/22 24/17 25/10 27/10 27/14 27/19 28/1 28/5 28/19 28/21 28/25 29/14 36/16 36/19 39/2 39/6 39/22 40/4 42/5 42/18 49/12 49/25 50/9 52/22 60/14 60/19 60/23 61/12 62/18 62/24 63/15
Kim's [1]  43/8
kind [9]  9/10 21/17 28/2 38/12 47/17 51/11 53/5 55/4 58/25
kinds [3]  8/4 45/24 50/21
knew [4]  25/2 25/25 27/9 42/8
know [18]  7/14 23/4 25/25 26/21 29/2

29/9 29/12 35/5 38/6 38/2 38/6 41/34 49/13 49/19 50/7 58/7 59/11 61/13
knowingly [4]  4/23 17/10 21/14 28/3
knowledge [4]  27/5 35/4 42/7 42/11
knows [4]  22/11 28/14 41/24 64/2
KOLLAR [1]  1/10
KOLLAR-KOTELLY [1]  1/10
Korea [20]  8/19 17/12 18/25 20/12 20/21 22/22 24/15 25/20 25/24 26/7 31/19 34/25 35/11 36/1 37/15 40/23 41/21 41/25 42/1 42/3
Korean [1]  26/3
KOTELLY [1]  1/10

## L

Laboratory [2]  17/21 30/5
language [2]  24/8 29/19
large [1]  49/14
last [4]  9/8 17/8 29/15 49/24
lasted [4]  19/25 20/2 34/6 41/9
later [7]  5/5 5/23 18/23 20/3 34/8 43/2 50/25
law [7]  12/16 23/5 23/8 25/13 52/16 52/17 56/22
lawful [10]  19/8 19/14 19/16 22/2 26/25 26/25 32/11 33/4 33/13 42/19
lawfully [6]  16/7 21/23 23/10 23/11 40/10 43/23
Lawrence [2]  17/20 30/4
laws [5]  18/15 27/13 31/1 38/7 42/14
lawyer [13]  4/18 4/20 9/17 10/8 11/14 12/24 29/19 48/25 51/16 53/16 59/19 59/19 60/12
lawyers [1]  49/12
leading [1]  9/12
leaning [1]  4/8
least [4]  5/7 43/6 45/7 59/18
leave [2]  63/14 64/12
left [2]  14/11 47/20
legal [4]  9/20 29/7 29/22 50/1
less [2]  20/3 34/8
let [14]  8/8 10/15 10/17 28/5 28/6 28/9 40/2 40/5 43/12 43/13 50/11 53/20 61/3 64/12
let's [1]  29/24
letter [4]  5/1 5/23 50/12 59/23
level [13]  8/14 17/7 21/9 23/3 25/1 37/16 46/17 46/21 47/1 47/9 47/10 48/1 56/20
lied [1]  27/20
light [1]  41/18
lighter [1]  59/10
like [5]  16/1 16/16 58/11 62/13 63/21
likely [3]  41/23 42/6 61/14
limit [2]  51/18 51/21
limitations [2]  50/24 51/3
limited [2]  14/22 58/22
linger [1]  64/14
Lisa [3]  2/8 65/14 65/21
listen [3]  11/7 15/14 64/1
little [1]  51/20
live [1]  58/22
lived [1]  59/1
Livermore [2]  17/21 30/4
LLP [1]  2/2
loathe [1]  64/3
local [2]  56/22 57/21
located [1]  22/7
long [6]  7/23 22/22 35/13 47/16 51/1 61/25
look [6]  13/13 32/25 37/7 46/8 47/19 54/4
looked [1]  13/4
Looking [1]  41/2
lot [1]  28/18

louder [1]  4/7
LOWELL [9]  2/1 3/11 3/9/2 38/20 49/7 52/14 55/2 57/16 63/17
lower [1]  56/23
lowered [3]  54/1 54/10 54/19

## M

made [14]  23/9 23/12 29/7 35/13 46/17 51/22 51/22 52/6 52/12 52/12 55/17 56/12 59/21 63/2
mail [2]  18/24 31/17
make [30]  4/3 4/11 4/22 4/24 5/3 5/7 5/15 8/4 13/14 15/8 15/17 15/19 16/16 28/23 30/1 36/14 40/6 43/13 43/19 43/20 44/11 46/6 46/8 52/19 54/20 55/20 57/3 58/13 60/1 63/15
making [3]  5/18 53/11 60/19
malfeasance [4]  21/17 28/3 38/12 39/23
MALIS [2]  1/14 3/7
mandatory [1]  48/16
manner [1]  13/22
March [9]  21/2 21/5 21/5 36/6 36/11 37/5 37/9 61/7 61/18
March 24th [2]  61/7 61/18
March 29th [4]  21/2 21/5 36/6 37/9
Marshal [1]  64/24
Marshal's [2]  64/5 64/25
material [2]  28/9 30/23
materials [2]  3/20 9/15
matter [4]  16/25 25/16 25/25 65/16
maximum [7]  13/25 43/24 43/25 44/23 45/18 47/21 49/15
maximums [1]  43/23
may [9]  4/16 6/5 8/4 18/23 31/16 48/14 49/12 52/5 58/21
May 2009 [1]  18/23
maybe [1]  43/25
me [20]  3/6 4/18 8/8 10/15 10/17 28/5 28/6 28/9 29/19 40/2 40/5 43/12 43/13 50/11 51/25 53/19 53/20 60/12 61/3 64/11
mean [4]  29/3 32/8 32/12 39/16
means [3]  6/9 7/24 27/4
meant [1]  53/16
mechanical [1]  2/22
media [5]  20/25 23/25 27/17 36/2 42/24
medication [1]  9/10
meet [6]  36/4 40/9 41/9 43/9 43/14 61/15
meeting [3]  21/4 36/11 43/20
meets [3]  15/9 15/18 15/21
member [5]  20/25 23/25 27/17 36/2 42/23
members [8]  9/20 18/8 19/6 23/19 24/22 30/17 32/6 41/4
memorandum [4]  36/15 36/20 61/16 63/4
mental [1]  9/22
mentioned [2]  50/13 50/17
met [6]  18/22 20/4 31/14 34/9 34/22 37/4
MICHAEL [2]  1/14 3/5
microphone [2]  4/7 28/7
might [2]  42/4 51/22
military [13]  17/12 20/12 20/21 22/15 22/21 25/19 34/24 35/10 36/1 37/14 40/22 41/20 41/25
mind [2]  5/11 43/20
ministerial [2]  63/25 64/3
minute [4]  20/2 34/6 41/9 41/13
minutes [2]  20/7 34/16
misfeasance [3]  21/18 38/13 39/23
mistake [4]  21/14 28/4 38/1 53/7
moment [1]  25/24

Case 1:10-cr-00225-CKK    Filed 11/12/1.    76

## M

**Monday [1]** 64/12
**monitor [1]** 18/1
**month [1]** 44/5
**months [10]** 6/10 6/23 43/25 44/21
44/21 45/5 47/21 47/22 48/20 48/23
**more [7]** 28/18 28/24 43/4 43/5 44/1
44/13 61/14
**most [1]** 5/3
**motion [7]** 10/25 47/7 53/4 53/10 53/21
54/1 54/11
**move [4]** 28/7 29/24 43/10 45/1
**movies [1]** 58/8
**moving [1]** 7/3
**Mr [41]** 9/2 16/21 18/6 18/22 21/4 26/24
27/19 28/16 29/14 31/17 31/21 33/12
33/16 33/24 34/3 34/9 34/22 34/22 35/3
35/5 35/8 36/2 36/11 36/11 37/5 37/13
37/25 38/11 38/20 38/24 39/15 39/17
41/7 41/12 42/19 42/23 43/1 49/7 52/14
55/2 63/17
**Mr. [58]** 3/11 4/1 4/6 17/16 17/20 18/3
18/4 18/10 18/17 18/22 18/23 19/1
19/13 19/18 19/21 19/23 20/1 20/3 20/9
20/13 20/19 20/22 21/2 21/3 21/6 21/9
21/13 21/16 22/1 23/22 24/17 25/10
27/10 27/14 28/1 28/5 28/19 28/21
28/25 36/16 36/19 39/2 39/6 39/22 40/4
42/5 42/18 49/12 49/25 50/9 52/22
57/16 60/19 61/12 62/18 62/24 63/15
**Mr. Kim [56]** 3/11 4/1 4/6 17/16 17/20
18/3 18/4 18/10 18/17 18/22 18/23 19/1
19/13 19/18 19/21 19/23 20/1 20/3 20/9
20/13 20/19 20/22 21/2 21/3 21/6 21/9
21/13 21/16 22/1 23/22 24/17 25/10
27/10 27/14 28/1 28/5 28/19 28/21
28/25 36/16 36/19 39/2 39/6 39/22 40/4
42/5 42/18 49/12 49/25 50/9 52/22
60/19 61/12 62/18 62/24 63/15
**Mr. Kim's [1]** 43/8
**Mr. Lowell [1]** 57/16
**much [1]** 49/24
**must [1]** 23/6
**my [11]** 5/17 6/19 9/20 15/16 29/19 30/2
47/13 48/22 52/15 52/19 53/21

## N

**namely [1]** 17/13
**narrow [2]** 48/2 48/13
**nation [12]** 16/12 17/19 21/12 22/23
24/4 24/7 24/11 24/15 26/12 37/21 41/2
41/17
**national [40]** 5/25 6/3 16/9 17/4 17/11
17/14 17/17 17/21 18/7 20/18 20/20
20/24 21/8 21/15 22/9 22/11 22/16 23/2
23/24 24/21 24/25 25/6 27/16 27/25
30/4 30/16 34/23 35/6 35/9 35/25 37/13
39/25 40/15 40/20 41/11 41/20 41/21
42/22 60/16 60/24
**nature [10]** 44/14 45/22 46/22 47/11
47/16 48/5 53/9 55/4 60/20 62/10
**Navy [1]** 22/15
**NDI [1]** 39/18
**nearly [1]** 2/4
**need [15]** 4/6 4/7 4/22 4/24 8/20 15/7
15/19 26/21 28/7 35/18 38/21 40/6 44/7
63/19 64/12
**needed [2]** 14/16 28/23
**needs [3]** 39/9 44/3 45/23
**negotiations [1]** 59/18
**never [5]** 20/22 23/22 27/15 35/22 42/21
**nevertheless [1]** 28/19
**new [9]** 2/3 25/17 44/12 44/15 44/16

44/19 44/20 56/3 56/9
**newly [2]** 33/7 33/10
**news [8]** 16/21 17/14 17/15 20/16 31/14
35/5 41/11 41/11
**no [24]** 1/4 6/23 9/4 9/6 9/9 9/13 9/23
12/11 15/17 18/23 23/12 28/16 36/15
44/7 45/6 47/13 49/6 49/13 53/19 57/15
59/13 59/16 59/24 60/13
**nondisclosure [10]** 18/11 18/17 18/19
25/9 27/11 30/22 31/6 31/9 42/12 42/18
**None [1]** 57/17
**nonproliferation [1]** 17/25
**nonviolent [1]** 6/5
**noon [1]** 41/10
**North [20]** 17/12 18/25 20/12 20/21
22/21 24/15 25/20 25/24 26/3 26/6
31/18 34/25 35/11 36/1 37/15 40/23
41/21 41/25 42/1 42/3
**not [91]**
**note [1]** 62/1
**notice [3]** 14/11 62/13 62/25
**now [24]** 5/16 6/8 7/2 8/20 9/24 10/20
10/22 14/10 16/24 21/19 28/22 31/13
34/21 35/2 36/4 36/9 37/9 39/1 43/17
48/15 52/9 56/18 57/25 58/19
**NSD [1]** 1/19
**nuance [1]** 29/10
**number [6]** 17/9 18/25 31/18 46/21
46/22 47/18
**numbers [1]** 46/24
**numerous [2]** 18/8 24/22
**NW [4]** 1/16 1/19 2/3 2/9

## O

**o'clock [1]** 61/21
**oath [1]** 5/16
**objection [3]** 46/13 46/15 64/21
**objections [1]** 46/9
**obligate [1]** 30/23
**obligated [2]** 25/11 57/25
**obligating [1]** 18/12
**obligation [1]** 56/6
**obligations [2]** 56/3 57/7
**obliged [1]** 58/14
**obviously [8]** 8/1 8/3 28/6 28/8 44/21
47/21 49/12 63/16
**occasion [2]** 64/7 64/8
**of 2009 [14]** 17/3 17/20 18/10 18/22 19/4
19/18 21/2 21/5 30/3 30/21 31/13 31/16
36/12 37/5
**of 2010 [2]** 21/3 21/6
**off [2]** 30/22 46/21
**offender [1]** 48/5
**offense [31]** 15/10 15/22 16/2 16/7
16/15 16/17 16/20 16/22 16/25 18/21
21/20 22/19 25/8 26/24 29/4 40/7 43/10
45/22 46/17 46/20 46/21 47/1 47/9
47/10 47/12 48/1 48/4 49/14 49/19 50/4
58/20
**offenses [1]** 44/13
**offer [1]** 10/12
**office [7]** 1/15 3/8 19/23 33/21 46/3
58/23 64/25
**offices [3]** 19/2 31/23 31/25
**official [3]** 2/8 18/5 30/11
**okay [10]** 28/13 36/22 38/5 39/7 49/21
51/15 62/4 62/21 64/22 65/7
**old [2]** 8/9 58/8
**once [6]** 25/24 26/2 26/3 29/9 39/7 48/1
**one [18]** 6/10 6/23 11/15 11/16 14/16
16/15 32/4 39/8 40/5 43/13 45/5 48/7
48/9 56/1 61/24 63/12 63/21 64/7
**ones [1]** 54/4
**only [11]** 10/23 15/12 16/18 16/21 23/8

23/18 24/8 25/22 42/1 52/15 56/22
**operative [1]** 25/3
**opportunity [2]** 46/8 61/12
**option [1]** 7/13
**orally [3]** 20/10 34/22 57/12
**order [5]** 6/19 7/11 11/5 25/3 45/15
**ordering [1]** 60/1
**ordinarily [2]** 51/17 51/21
**organization [1]** 17/14
**original [1]** 3/24
**originally [2]** 9/25 44/22
**other [39]** 6/5 8/4 11/24 13/11 14/4 15/2
18/1 19/19 20/25 21/17 23/25 27/17
28/2 32/22 33/16 34/17 35/9 36/2 38/1
38/12 38/15 38/20 39/12 39/21 42/1
42/23 45/21 47/16 48/9 48/17 51/11
52/4 53/20 54/17 56/1 57/20 59/22
63/18 63/19
**others [2]** 45/24 46/3
**our [2]** 28/14 52/15
**ourselves [1]** 3/17
**out [27]** 9/25 13/14 14/4 15/11 15/12
22/10 26/6 26/19 28/16 37/15 38/24
40/8 40/8 43/16 43/21 43/22 44/16
45/17 45/20 45/22 48/21 52/16 57/2
57/14 58/12 64/11 64/13
**outside [3]** 20/4 34/9 41/10
**over [17]** 4/9 4/16 5/1 5/21 9/15 14/21
15/3 15/5 16/8 21/24 46/19 49/23 51/8
52/24 57/17 58/1 61/12
**own [5]** 11/23 12/4 12/7 60/6 60/21

## P

**p.m [3]** 1/6 20/15 65/11
**Page [8]** 13/4 13/14 45/2 45/12 50/12
50/16 50/24 52/25
**paid [1]** 44/3
**paperwork [3]** 4/3 61/3 61/5
**paragraph [16]** 13/5 22/1 22/18 22/24
23/18 23/21 23/22 24/16 25/7 26/9
27/10 27/14 27/24 35/7 38/9 53/3
**Paragraphs [1]** 23/16 24/24 25/14 26/23
27/7 27/18
**parameters [1]** 62/11
**Parke [1]** 2/2
**parole [3]** 58/6 58/7 58/17
**part [10]** 4/11 5/6 23/5 27/6 36/16 38/2
48/11 54/5 58/10 59/11
**particular [6]** 32/25 42/8 48/7 48/19 55/4
55/14
**particularly [2]** 4/16 39/8
**parties [3]** 61/25 62/16 65/10
**parts [1]** 28/15
**passed [1]** 3/24
**pay [1]** 14/13
**penalties [2]** 43/21 43/22
**penalty [1]** 43/24
**pending [4]** 7/22 10/1 10/25 57/22
**people [1]** 29/10
**per [1]** 50/5
**perform [1]** 56/2
**period [2]** 44/5 44/9
**perjury [2]** 5/18 57/3
**permitting [1]** 19/14
**person [16]** 16/14 17/13 18/13 18/25
25/12 26/14 26/17 31/18 32/13 42/9
42/13
**perspective [4]** 6/19 29/7 29/14 44/18
**pertaining [1]** 55/9
**phone [8]** 19/24 20/1 31/17 33/24 34/3
34/5 41/9 63/13
**phones [2]** 19/20 33/16
**photograph [1]** 64/6
**photographs [1]** 64/17

**P**

phrase [1] 26/17
place [1] 59/1
plea [49] 1/10 3/18 4/11 4/13 4/16 4/23
5/1 5/6 5/12 6/1 6/8 7/6 7/7 7/8 7/10
7/11 9/16 10/12 12/16 13/4 14/20 39/6
43/11 45/5 45/10 45/15 46/19 48/11
50/7 50/11 51/4 51/19 51/19 51/19
51/20 52/1 52/2 52/4 55/5 56/7 57/8
58/20 59/15 59/22 60/5 60/8 60/22
60/23 62/10
plead [6] 10/20 14/19 14/25 28/22 60/15
60/17
pleaded [1] 28/21
pleading [6] 6/1 10/16 13/1 15/10 58/19
59/10
pleadings [1] 28/14
please [2] 3/3 4/18
plus [1] 64/4
point [23] 7/9 7/13 15/5 21/25 22/10
22/18 23/16 24/16 24/24 25/7 25/14
26/8 27/7 27/18 27/24 30/1 42/1 42/8
47/6 47/6 49/1 50/25 59/18
points [7] 22/24 26/23 47/1 47/4 47/12
47/15 49/17
policy [1] 54/15
portion [4] 8/6 32/15 45/8 56/1
portions [1] 43/18
position [11] 7/6 24/19 26/4 30/3 30/10
30/16 30/19 31/24 32/23 47/2 52/20
possess [2] 58/24 59/3
possessed [1] 24/20
possession [3] 16/8 21/23 40/10
possibility [1] 45/2
possible [5] 58/16 61/10 61/11 62/14
62/15
potential [4] 8/22 42/4 42/24 56/2
potentially [1] 54/19
practice [1] 15/16
precisely [1] 64/25
predicate [1] 39/1
prepare [1] 12/24
prepared [2] 46/2 62/25
preparedness [13] 17/12 20/12 20/21
22/16 22/21 25/19 34/25 35/11 36/1
37/15 40/23 41/20 41/25
preponderance [2] 56/19 56/24
present [4] 11/23 12/3 12/5 12/7
presentation [1] 29/20
presented [3] 11/10 15/7 48/25
presentence [15] 6/20 7/11 7/16 46/2
46/10 49/1 50/21 58/2 60/1 61/6 61/14
61/25 62/21 63/11 63/11
preserved [1] 50/19
preserving [1] 13/8
press [1] 64/14
presumed [1] 12/16
pretrial [1] 63/11
previously [3] 24/5 25/2 27/4
principal [2] 16/4 21/19
prior [8] 3/24 6/6 18/10 18/18 22/11
26/16 30/21 47/13
Prisons [3] 54/12 55/20 55/23
Privacy [1] 55/6
probable [1] 56/23
probably [4] 5/2 13/3 39/23 58/8
Probation [7] 44/8 46/2 46/13 63/8
63/18 64/19 65/4
problem [1] 4/21
procedure [2] 9/18 53/5
proceed [3] 4/1 4/2 52/13
proceeded [1] 16/25
proceeding [4] 3/13 5/11 53/5 56/11

proceedings [5] 3/22 13/12 51/10 65/12
65/16
process [2] 9/14 63/18
produced [1] 2/23
proffer [14] 9/16 15/6 15/8 15/11 15/20
16/3 29/5 29/6 29/17 35/25 40/3 43/8
43/9 43/14
proffered [1] 39/4
prolong [1] 39/16
promised [1] 59/9
promises [1] 59/21
proof [1] 15/20
proper [1] 39/20
properly [4] 17/25 21/8 23/2 37/16
property [1] 26/21
proportion [1] 13/11
prosecute [1] 57/5
prosecuted [1] 5/17
prosecution [4] 51/1 55/10 55/14 56/9
prosecutor [2] 57/21 59/8
prove [6] 12/17 39/3 39/12 56/19 56/23
64/15
proved [1] 17/1
provided [2] 11/7 33/17
provides [2] 42/6
provision [1] 13/15
proviso [1] 40/5
PSR [1] 62/13
public [2] 23/9 23/10 23/12 58/23
publication [2] 21/10 26/10 37/19 41/14
publicized [1] 26/3
publish [2] 41/23 42/6
published [3] 20/16 25/24 35/5
publishes [1] 41/12
punishment [1] 45/2
purposes [3] 36/17 40/1 51/24
pursuant [3] 3/15 22/11 54/11
put [5] 4/25 7/2 7/5 28/18 52/3
putting [2] 47/10 54/19

**Q**

quarrel [3] 28/17 49/13 49/16
question [4] 4/21 29/16 33/4 61/24
questions [8] 4/11 5/17 11/5 49/5 57/24
57/25 59/6 63/19
quick [1] 61/24
quickly [3] 61/10 61/11 62/13
quite [2] 6/13 48/25
quote [2] 39/24 39/24

**R**

raise [2] 14/3 51/5
range [3] 14/1 54/2 54/9
read [11] 9/16 10/4 16/2 16/24 19/15
19/21 33/5 33/10 33/20 52/18 53/20
reads [1] 41/6
ready [1] 4/1
realize [1] 15/15
really [2] 5/8 45/12
reason [10] 7/16 14/5 16/10 17/16 24/2
24/9 28/17 40/25 50/25 52/4
reasonable [9] 12/18 15/9 15/20 17/2
39/3 41/18 43/15 46/1 56/21
reasonably [1] 25/5
receive [10] 16/14 17/13 26/15 26/17
26/20 27/2 42/10 55/8 61/25 62/2
received [5] 3/20 9/21 9/24 44/22 53/11
recitation [1] 43/5
recommendation [1] 8/4
recommendations [2] 46/6 55/20
record [9] 3/4 4/7 4/25 5/4 36/14 48/22
62/6 63/24 65/15
recorded [1] 2/22
recording [1] 35/19

records [5] 20/5 56/9 55/10 55/13 55/13
recounted [1] 39/2
reduce [1] 54/12
reduced [2] 44/18 44/20
reduction [3] 47/4 54/15 58/16
reenter [2] 34/16 41/10
reentered [3] 20/7 20/14 35/3
refer [3] 17/7 17/9 26/2
referenced [1] 18/20
referred [2] 16/20 20/17
referring [1] 22/15
reflect [1] 48/8
reflects [1] 27/22
regard [1] 21/22
regular [3] 18/6 24/20 30/16
rehabilitation [1] 45/23
reject [3] 7/6 7/16 52/10
rejected [1] 52/3
relate [1] 55/13
related [9] 19/12 22/6 22/15 22/21 25/19
40/20 41/19 47/12 62/20
relates [2] 46/22 47/14
relating [6] 8/22 16/9 18/7 24/21 30/17
55/19
release [19] 6/10 6/24 7/23 8/3 9/7 13/21
41/22 44/2 44/4 44/6 44/6 44/10 44/15
45/6 50/17 50/23 58/11 63/10 64/23
released [3] 25/22 58/9 58/17
relief [1] 53/6
remain [2] 7/22 55/22
remember [1] 50/20
remind [3] 23/7 24/5 26/16
report [64] 6/20 7/11 7/16 17/6 17/9
17/10 19/5 19/9 19/12 19/15 19/17
19/21 20/11 20/19 21/7 22/2 22/6 22/7
22/20 23/1 23/17 23/19 25/19 25/21
26/1 31/11 32/4 32/12 32/16 33/1 33/5
33/13 33/20 34/24 35/8 37/3 37/12
40/17 40/19 40/21 41/3 41/13 42/17
42/20 44/8 46/10 46/12 49/2 50/21
58/2 60/1 61/6 61/9 61/14 61/18 62/1
62/21 63/1 63/3 63/9 63/11 63/22 64/1
64/21 65/24 65/24 65/24 65/24 65/25
35/19 41/23 42/5 42/5
Reporter's [2] 19/24 20/1
reporting [1] 44/14
representative [1] 55/8
represented [1] 11/14
request [4] 6/12 14/15 16/17 55/8
requested [1] 12/9
requests [1] 10/24
require [1] 11/24
required [3] 8/21 19/9 56/18
requirement [3] 62/2 62/3 62/12
requirements [2] 17/24 63/7
requires [2] 24/8 44/8
reserved [1] 7/24 7/24
reserves [1] 57/4
resolve [1] 46/14
resolved [1] 61/14
respond [1] 28/12
responsibilities [2] 18/6 30/12
responsibility [1] 47/3
responsible [1] 17/23
rest [1] 37/25
restitution [1] 13/20
restricted [4] 19/8 23/21 32/8 41/5
result [1] 18/6
resulted [1] 59/18
resumed [1] 51/2
review [3] 11/8 16/2 42/3

reporter [27] 2/8 2/8 16/18 16/20 16/21
17/13 17/14 18/24 19/1 19/16 19/19
20/4 20/9 20/10 20/13 20/19 20/25
21/15 23/25 27/17 27/21 28/1 31/24
35/19 41/23 42/5 42/5

**R**

revoked [2] 44/15 44/15
reword [1] 37/1
right [59] 3/13 4/10 5/21 6/18 7/21 7/25
10/15 10/20 11/11 11/14 11/19 11/23
11/24 12/3 12/9 12/22 13/9 13/12 13/13
13/17 14/7 15/1 16/5 16/23 21/21 28/5
28/25 29/18 29/24 37/1 39/11 40/2 45/1
45/9 45/9 50/9 50/15 50/18 51/10 52/18
52/20 52/25 54/20 56/7 57/4 57/11
57/19 58/23 58/23 58/24 58/24 60/14
60/18 61/5 62/7 62/18 63/6 63/18 65/9
rights [18] 10/16 10/17 10/19 12/12 13/2
13/5 13/6 13/7 14/11 14/21 15/1 15/2
51/9 52/24 53/2 55/6 55/7 58/21
role [2] 47/11 48/5
Room [1] 2/9
ROSEN [32] 2/1 3/11 16/21 16/21 17/14
18/22 21/4 26/24 31/14 31/17 31/21
33/12 33/16 33/24 34/3 34/9 34/22
34/22 35/3 35/5 35/8 36/2 36/11 36/11
37/5 37/25 38/11 41/7 41/12 42/19
42/23 43/1
Rosen's [1] 37/13
RPR [3] 2/8 65/14 65/21
Rule [16] 5/9 6/8 14/5 45/4 45/14 51/17
51/17 52/1 52/3 52/16 53/5 56/12 56/13
60/2 62/1 63/7
rules [2] 51/21 62/24
ruling [1] 26/17
rulings [3] 22/11 28/17 39/19
runs [1] 51/3

**S**

said [9] 21/3 35/15 36/16 38/25 39/15
39/17 45/19 52/10 64/6
sake [1] 16/18
same [7] 20/6 34/13 41/5 45/15 61/17
63/14 64/23
satisfied [2] 10/7 60/18
say [9] 5/5 28/18 28/19 35/16 36/10
36/19 37/4 43/7 46/10
saying [1] 64/2
says [2] 36/20 52/17
scheme [1] 49/2
school [1] 8/13
SCI [23] 17/7 20/10 20/18 20/20 21/9
22/5 22/20 23/3 23/18 25/1 27/8 32/15
32/24 34/23 35/6 35/9 37/16 40/14
40/18 40/21 41/19 41/22 42/17
scope [2] 18/19 31/8
SCOTT [2] 2/2 3/11
se [1] 50/5
second [4] 16/9 20/1 22/8 62/8
seconds [6] 19/25 20/2 33/25 34/6 41/8
41/9
Secret [26] 17/6 17/7 18/5 19/10 20/10
20/18 20/20 21/9 22/3 22/20 23/3 23/18
24/20 25/1 25/3 27/8 30/11 32/13 32/24
34/23 40/13 40/18 40/21 41/19 41/22
42/17
Secret/SCI [17] 17/7 20/10 20/18 20/20
21/9 22/20 23/3 23/18 25/1 27/8 32/24
34/23 40/18 40/21 41/19 41/22 42/17
Secret/Sensitive [1] 17/6
Secretary [4] 18/4 24/19 30/8 40/13
Section [5] 1/19 3/8 18/16 22/12 31/2
sections [1] 45/21
security [11] 18/5 19/10 22/3 24/20 25/6
26/21 30/11 30/15 32/13 41/20 41/21
see [2] 63/17 64/19
seeing [1] 37/5
seen [1] 61/18

select [1] 11/6
send [1] 61/9
Senior [4] 18/3 24/18 30/7 40/12
sense [1] 49/21
sensitive [5] 17/6 19/11 25/16 32/15
40/18
sentence [44] 6/9 6/11 6/21 6/22 6/25
7/7 7/12 7/14 7/22 13/16 13/18 13/22
13/25 14/1 14/2 14/3 14/6 43/23 43/25
44/1 44/5 44/15 44/16 44/20 44/20
44/22 44/22 45/7 45/8 45/18 46/1 47/17
47/22 48/17 48/18 52/3 54/20 58/9
58/10 58/15 59/10 60/3 61/2 62/14
sentenced [5] 6/23 7/4 54/1 54/8 55/23
sentences [1] 45/20
sentencing [30] 6/3 7/15 7/25 44/17
45/11 45/13 46/5 46/14 46/16 46/24
47/23 47/25 48/13 48/15 49/2 50/2 54/9
54/10 54/16 54/17 54/18 55/18 56/4
58/1 61/16 61/20 62/3 62/22 63/3 63/4
sentencings [1] 49/3
Seoul [1] 8/19
September [6] 21/2 21/3 27/20 36/6
36/10 37/2
September 24, 2009 [3] 27/20 36/10 37/2
September 24th [3] 21/2 21/3 36/6
seriousness [2] 45/22 48/8
serve [4] 44/20 58/10 58/15 58/24
served [1] 44/9
services [1] 10/8
services' [1] 63/12
set [18] 7/15 10/23 14/4 15/11 28/16
37/15 38/24 40/8 40/8 43/16 43/21
43/22 44/16 45/17 45/20 48/21 61/4
61/21
sets [8] 9/25 13/14 25/8 26/19 27/10
44/6 45/21 57/2
setting [2] 15/12 25/15
seven [1] 62/21
shift [1] 5/10
shorter [1] 63/2
shortly [1] 34/2
should [18] 3/17 4/3 6/7 7/6 10/13 13/19
13/20 16/25 22/12 26/18 35/13 52/13
54/20 56/9 57/4 61/17 63/9 64/24
show [4] 23/6 24/8 24/13 47/23
SIDEBAR [2] 63/24 65/8
sign [2] 30/21 61/3
signed [13] 3/23 9/15 15/15 28/7 28/8
28/20 29/9 36/14 38/25 42/11 42/15
42/19 61/5
signing [1] 51/1
simply [2] 7/4 61/8
since [7] 5/9 21/4 36/11 37/5 40/6 59/8
64/19
sir [1] 8/9
sit [4] 10/4 15/24 61/3 63/8
six [1] 17/8
smoothly [1] 63/9
snafu [1] 64/17
so [69]
some [20] 3/20 4/10 6/20 7/16 8/8 13/11
13/24 14/5 23/5 31/16 38/12 43/6 45/21
49/1 50/25 50/25 52/4 53/8 57/25 64/17
somebody [1] 64/5
something [10] 4/15 4/19 15/15 29/2
29/11 29/12 39/14 44/14 53/8 53/15
sometimes [1] 64/3
sooner [1] 61/13
sophisticated [1] 24/17
sorry [5] 6/15 29/3 34/19 38/18 50/16
sort [4] 5/10 9/18 49/2 53/8
sought [1] 55/11
sources [3] 23/10 23/11 42/4

speaks [2] 4/6 35/18
special [1] 44/2
specific [2] 7/5 39/8
specifically [10] 17/11 20/11 20/20 31/1
34/24 35/10 38/21 39/10 40/16 49/8
spoke [1] 42/5
spring [2] 18/22 31/13
start [3] 30/2 43/21 63/18
starting [1] 33/19
starts [1] 46/21
state [26] 15/6 18/4 18/18 19/2 19/3
19/20 19/22 19/24 20/5 20/15 23/16
24/19 27/7 30/8 31/5 31/22 31/24 33/17
33/24 34/10 35/4 40/13 41/10 42/16
56/22 57/21
State's [2] 17/22 30/6
State/VCI [1] 30/8
stated [2] 28/10 43/4
statement [21] 5/18 16/15 16/17 16/20
16/22 16/25 18/20 21/20 22/19 25/8
26/24 28/18 29/4 29/8 36/13 38/24 39/5
39/20 39/21 39/22 40/4
statements [12] 6/1 28/20 43/8 51/18
51/22 52/5 52/11 52/12 54/15 56/11
56/14 57/3
states [41] 1/1 1/3 1/11 3/3 3/6 16/11
17/1 17/18 18/8 18/11 18/15 18/15 19/6
20/23 21/11 22/19 23/24 23/18 23/22
23/23 24/3 24/7 24/10 24/14 24/22
24/25 26/1 27/14 27/15 27/24 28/10
30/22 35/24 37/20 40/24 41/1 41/16
41/24 42/3 55/9 57/20
status [1] 3/18
statute [6] 44/17 45/20 50/24 51/3 58/25
59/2
statutory [9] 13/6 13/13 13/15 13/25
43/22 43/24 45/18 47/21 49/15
stenography [1] 2/22
STEPHEN [1] 1/6
Steven [4] 3/3 17/4 60/14 60/23
still [4] 13/8 47/25 58/14 61/20
stipulation [1] 45/2
straight [1] 4/8
Street [2] 1/16 1/19
strictly [1] 29/6
subject [4] 6/16 25/16 25/25 56/8
subjectivity [1] 41/15
subjects [1] 18/25
submits [1] 27/22
subpoena [1] 11/24
subsequent [1] 6/11
subsequently [1] 54/10
substantial [1] 48/10
such [13] 6/7 16/13 17/17 18/2 18/13
18/17 19/14 23/13 25/13 26/14 26/25
26/25 63/2
suffer [1] 64/20
sufficient [3] 28/20 38/22 62/17
suggested [1] 59/9
suit [1] 56/20
Suite [1] 2/3
summary [1] 40/5
summoned [1] 11/3
supervised [12] 6/10 6/24 8/3 13/21
44/2 44/4 44/6 44/6 44/10 44/14 45/5
58/11
support [3] 15/13 28/21 39/6
suppose [1] 40/1
supposed [1] 50/3
suppress [1] 10/25
Supreme [1] 22/13
sure [15] 4/11 4/24 5/3 5/7 5/16 13/14
15/17 43/19 43/20 44/11 52/19 58/13
63/15 63/23 64/25

**S**

swear [1] 4/2
sworn [2] 4/5 5/15
system [1] 26/19

**T**

take [3] 31/4 38/9 65/10
taken [5] 9/8 9/10 64/16
takes [1] 45/12
taking [1] 38/5
talk [8] 10/11 33/24 46/3 61/9 61/12
62/7 63/7 63/8
talked [16] 35/7 37/24 45/2 45/17 49/9
49/22 50/5 50/6 50/19 50/22 53/2 53/15
57/13 58/2 59/23 62/11
talking [6] 37/24 39/13 39/13 41/8 47/8
47/25
talks [1] 13/5
tall [1] 4/8
tax [1] 57/22
team [1] 9/20
technical [1] 44/13
telephone [3] 18/24 19/19 33/16
tell [2] 12/9 37/18
term [6] 13/18 13/21 27/4 54/8 54/13
58/11
terms [23] 4/25 5/22 8/23 10/5 11/2
14/10 29/5 29/21 30/2 37/25 40/2 40/25
42/2 43/24 45/8 46/16 47/11 49/1 50/22
57/23 57/24 63/10 63/17
testify [5] 11/25 12/3 12/5 12/9 12/10
than [12] 4/17 18/23 20/3 34/8 39/12
44/1 48/20 49/9 51/20 56/23 59/22 61/7
Thank [1] 10/10
that [408]
that's [17] 4/21 12/6 29/5 29/18 31/10
31/11 36/16 36/25 45/7 50/16 52/9
52/19 53/23 53/25 54/4 57/23 62/17
their [1] 57/6
them [15] 6/5 6/6 9/16 11/5 11/24 11/24
37/11 37/18 38/24 38/25 46/11 61/10
61/11 64/12 64/15
then [36] 4/1 6/22 7/1 7/11 8/1 8/8 14/2
14/6 15/13 15/14 16/2 16/3 19/1 20/7
34/16 35/4 36/20 37/1 38/9 41/7 41/8
45/7 46/12 47/25 50/11 50/25 51/2
51/21 52/4 52/10 56/22 58/9 58/12 60/1
61/3 63/6
there [33] 3/21 3/22 6/7 8/3 9/6 12/2
12/11 13/7 13/24 14/22 16/7 28/8 28/23
28/24 29/1 29/13 36/17 38/20 38/25
39/9 39/17 39/25 44/2 46/17 47/3 48/2
56/5 57/13 57/14 60/2 63/12 64/7 64/8
there's [12] 8/22 9/4 13/10 13/15 15/17
28/16 29/11 36/20 39/7 62/2 62/20
64/17
thereafter [2] 19/25 34/2
thereby [1] 25/23
therefore [3] 32/25 39/20 60/22
these [10] 10/17 10/19 13/12 31/6 31/9
42/11 42/15 49/3 56/14 57/25
they [69]
they're [4] 6/12 6/15 48/2 48/13
they've [6] 6/11 7/24 8/2 46/25 54/1
64/16
thing [2] 43/13 44/17
things [7] 8/4 43/6 43/19 44/8 44/13
50/22 53/16
think [7] 5/2 13/3 39/18 43/6 46/20
48/6 50/12 51/8 51/15 57/14 57/23
62/17 62/21 62/22 62/23 64/10 64/22
third [6] 16/10 24/1 47/6 64/4 64/10
64/16

this [86]
those [23] 3/21 10/1 15/18 18/19 25/10
26/20 32/18 36/7 39/1 42/18 43/23
44/12 45/24 50/21 51/18 51/21 53/9
53/16 56/7 57/8 59/22 61/22 65/9
thought [1] 5/5
threaten [1] 59/14
three [5] 6/13 9/20 44/1 47/4 64/4
through [23] 5/2 5/9 5/23 5/23 8/22 9/17
9/19 10/15 10/17 11/4 11/19 15/16
15/25 27/18 30/2 43/13 43/18 43/18
42/25 45/16 50/5 51/9 55/7
tie [3] 15/11 16/3 21/19
time [26] 4/20 10/11 17/15 19/6 20/6
20/8 20/15 29/15 31/16 32/6 34/13
34/17 42/1 42/8 44/9 44/18 51/1 51/3
55/18 58/16 58/22 60/13 62/17 64/4
64/11 64/16
time-barred [1] 51/1
timeliness [1] 41/19
timely [1] 25/16
timing [1] 41/3
Title [1] 18/15
titled [1] 65/16
today [10] 3/6 3/12 3/14 3/17 3/25 5/8
7/15 9/12 52/12 65/2
together [2] 47/8 64/5
told [5] 6/5 30/24 42/13
too [2] 35/13 62/20
took [1] 64/7
top [27] 17/6 17/7 18/5 19/9 20/10 20/17
20/20 21/9 22/3 22/20 23/2 23/18 24/20
25/1 25/3 27/8 30/11 32/13 32/24 34/23
40/13 40/17 40/21 41/19 41/22 42/17
47/20
topics [1] 31/18
towards [1] 22/23
transcript [3] 1/10 2/22 65/15
transcription [1] 2/23
transmit [3] 20/24 35/24 42/22
transmitted [5] 16/13 26/14 42/9
trauma [1] 64/20
traumatic [1] 64/13
treatment [1] 9/21
trial [20] 7/3 10/21 10/22 10/23 11/2
11/11 11/14 11/15 11/18 12/3 12/19
12/22 14/22 15/1 15/3 15/7 17/1 51/9
51/12 52/13
tried [1] 48/3
trust [2] 47/2 49/18
truthfully [1] 5/17
TS [4] 23/18 35/6 35/9 37/16
TS/SCI [3] 35/6 35/9 37/16
two [14] 5/24 7/1 10/1 32/18 36/7 46/17
47/1 47/4 49/17 53/16 55/19
type [3] 9/22 46/23 48/4
typical [1] 48/7

**U**

U.S [18] 1/15 2/9 3/7 8/21 8/24 23/9
23/12 25/25 27/13 30/18 31/1 31/2 32/6
38/7 41/4 42/7 42/14 42/21
U.S.C [7] 16/6 27/14 45/21 53/4 53/19
53/21 54/11
unable [1] 14/13
unauthorized [21] 5/24 6/2 17/15 17/16
18/13 18/14 21/10 24/2 24/6 25/4 25/12
25/23 26/10 27/12 30/24 30/25 37/19
39/24 42/13 60/15 60/24
unclassified [1] 51/11
under [14] 5/16 23/7 53/4 53/9 53/19
53/21 54/13 55/11 56/3 59/2 62/1 62/24
64/23 65/9

understand [44] 4/12 4/15 4/17 5/13
5/16 5/19 5/20 8/6 8/7 10/18 10/25
11/11 11/13 11/16 11/18 11/22 12/2
12/13 12/15 12/21 13/1 14/17 14/19
14/24 28/25 30/4 39/19 44/11 44/24
45/17 48/9 51/25 57/19 58/4 58/4 58/6
58/13 58/17 59/4 59/17 59/25 60/3
60/11 64/9
understanding [20] 4/25 7/19 9/1 9/11
14/8 47/13 51/6 52/7 52/14 52/15 52/20
52/22 53/13 53/21 54/23 55/15 55/24
56/16 56/25 57/9
understands [1] 60/20
uniform [1] 48/3
UNITED [33] 1/1 1/3 1/11 3/2 3/6 16/11
17/1 17/18 18/8 18/11 18/14 18/15 19/6
20/23 21/1 23/23 24/3 24/7 24/10
24/14 24/22 26/11 27/15 30/22 35/23
37/20 40/24 41/1 41/16 41/24 42/2 55/9
57/20
unlawful [3] 13/10 27/5 42/11
unless [2] 12/15 58/25 62/3
until [2] 12/15 12/18
up [31] 3/24 4/2 4/8 10/17 10/23 13/2
13/6 13/6 13/12 13/13 13/22 14/21 15/1
15/12 16/3 28/6 35/18 41/13 45/25 48/3
48/7 51/12 52/25 53/3 54/7 54/20 55/21
58/16 61/6 62/19 64/3
up-to-the-minute [1] 41/13
upon [1] 26/5
US [1] 22/13
use [6] 26/4 51/21 52/5 52/6 52/11
56/10
used [17] 16/11 17/17 21/11 22/12 24/3
24/10 24/13 26/11 29/20 37/20 41/1
41/16 42/2 51/23 55/17 56/15 58/8
users [3] 19/8 32/8 41/5
using [4] 19/19 19/22 33/16 33/21
usually [2] 53/7 61/7

**V**

vacated [4] 50/25 51/2 51/4 51/20
valuable [1] 58/21
variance [3] 48/17 48/19 61/17
variances [2] 49/25 50/6
variation [1] 48/23
various [6] 18/11 27/11 30/17 30/22
44/8 47/10
VCI [8] 17/23 17/23 18/4 18/6 24/19
30/8 30/12 40/13
verification [3] 17/22 17/24 30/6
version [1] 3/24
versus [1] 3/3
very [9] 20/8 20/15 40/5 45/25 48/2
48/13 49/14 49/24 64/18
via [1] 18/24
view [1] 57/5
viewed [1] 40/23
violate [2] 42/14 44/12
violated [1] 44/13
violation [7] 18/14 25/13 27/13 31/1
38/7 44/23 56/21
violations [1] 13/8
void [1] 53/8
voluntarily [5] 4/13 4/24 55/23 60/6
60/21
voluntariness [1] 59/7
vote [1] 58/23

**W**

waive [4] 13/17 44/3 55/7 62/12
waived [4] 38/21 39/10 53/23 63/7
waiver [3] 54/5 54/7 62/6
waives [1] 62/3

76

**waiving [2]** 53/24 53/25
**want [22]** 4/21 5/3 5/7 5/8 5/15 12/5 14/25 15/13 36/14 43/19 44/11 58/13 60/12 61/13 62/5 62/7 62/15 64/1 64/3 64/10 64/14 64/19
**wanted [4]** 12/4 49/21 52/18 54/4
**wants [1]** 64/13
**was [72]**
**Washington [5]** 1/5 1/16 1/20 2/4 2/10
**wasn't [3]** 6/13 39/8 50/7
**waste [3]** 21/16 28/2 38/11
**way [7]** 45/16 48/25 54/18 55/1 59/15 62/10 64/22
**we [43]** 3/13 3/22 4/7 4/24 4/25 5/4 7/2 7/10 10/21 13/13 15/25 23/15 25/7 28/8 28/15 28/19 35/18 36/14 38/25 39/4 43/19 43/20 48/9 48/17 49/11 49/13 49/16 49/19 49/20 49/23 50/7 59/11 59/23 61/6 61/19 62/9 62/12 62/14 62/15 62/17 63/2 63/19 64/21
**we'd [6]** 24/24 25/14 27/7 27/18 27/24 62/13
**we'll [4]** 7/14 7/17 61/4 65/2
**we're [6]** 15/5 47/8 50/12 62/16 62/21 64/18
**we've [26]** 3/16 3/24 5/11 10/23 14/4 35/7 37/15 37/23 42/23 43/2 45/2 45/2 45/4 45/19 49/23 49/24 50/5 50/5 50/6 50/22 51/8 52/24 53/2 57/12 58/1 64/5
**weapon [1]** 59/3
**well [15]** 5/5 7/15 9/1 10/24 13/21 15/11 29/8 29/15 35/19 40/3 40/14 43/5 45/10 51/17 52/20
**went [3]** 9/19 12/21 15/3
**were [19]** 8/18 9/25 10/5 12/2 12/22 13/7 20/6 32/23 32/24 34/15 35/22 36/5 38/1 38/2 38/11 38/16 39/3 49/9 54/14
**what [68]**
**what's [5]** 5/10 8/14 43/20 49/18 61/19
**whatever [1]** 46/23
**when [12]** 4/16 9/25 27/19 34/22 42/5 42/24 46/12 52/18 61/8 61/8 61/25 64/7
**where [11]** 7/2 8/18 22/7 23/11 42/3 48/10 54/1 58/11 58/22 59/1 64/5
**whether [12]** 7/12 8/20 10/12 10/18 15/14 24/6 44/12 45/14 49/16 50/1 58/7 60/2
**which [82]**
**while [2]** 15/25 44/9
**whistleblower [3]** 38/16 39/23 43/3
**who [6]** 3/11 19/1 26/19 30/24 31/21 64/25
**whole [1]** 32/4
**why [3]** 46/13 54/4 61/2
**will [48]** 4/3 5/1 5/2 5/9 6/4 6/22 7/10 7/11 7/15 8/2 15/6 15/11 15/13 15/14 16/2 16/3 16/24 17/7 21/19 28/19 30/1 36/21 43/5 44/18 44/19 45/3 46/3 46/3 46/4 46/6 46/7 46/10 46/12 46/13 51/5 52/11 56/7 56/8 56/9 60/6 60/21 61/1 61/18 61/19 61/25 62/16 63/13 64/23
**willfully [7]** 16/12 17/10 21/14 26/13 28/3 42/9 42/10
**willfulness [1]** 27/3
**willing [2]** 55/20 63/1
**wish [1]** 7/18
**withdraw [9]** 7/2 7/8 45/9 45/10 52/1 52/2 52/10 56/7 57/7
**withdrawn [3]** 51/20 51/21 52/4
**within [7]** 14/12 20/13 25/9 35/2 40/13 42/18 45/19
**without [4]** 5/22 7/4 45/11 47/5

**witnesses [2]** 11/30 61/22
**won't [5]** 5/1 9/5 14/22 46/11 58/17
**WOO [2]** 1/6 17/4
**words [8]** 11/24 32/23 35/9 38/1 38/15 47/16 48/17 54/17
**work [6]** 18/18 31/4 31/5 42/15 49/3 64/11
**worked [4]** 18/3 30/4 30/7 40/12
**working [1]** 17/21
**would [93]**
**wouldn't [3]** 12/4 14/3 48/12
**writer [2]** 46/10 50/21
**writing [1]** 57/13
**written [3]** 16/17 29/10 54/3
**wrong [1]** 51/25

**Y**

**year [4]** 6/10 6/23 45/5 58/16
**year's [1]** 44/10
**years [3]** 43/25 44/2 64/4
**yes [93]**
**yet [1]** 64/10
**you [322]**
**you'd [1]** 13/22
**you'll [5]** 6/22 6/23 10/16 14/20 61/19
**you're [36]** 4/6 4/8 4/12 4/12 5/16 6/1 7/23 9/11 13/2 13/5 13/6 13/12 13/17 14/13 15/18 15/21 38/10 38/15 44/9 44/10 51/4 51/9 51/16 52/4 52/25 53/3 53/9 53/10 54/19 55/6 58/12 58/15 58/19 58/20 59/10 59/11
**you've [21]** 4/23 4/23 6/25 8/23 9/24 15/15 28/6 29/7 35/19 43/17 44/5 48/24 50/17 51/10 53/18 54/7 54/8 55/12 55/17 56/4 59/8
**your [126]**
**yourself [5]** 3/4 9/16 12/7 54/11 55/7